**EXHIBIT 6**

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of

    ORLY GENGER,

            Petitioner,

        -against-

LEAH FANG, DAVID A. PARNES, THE SAGI
GENGER TRUST, DALIA GENGER, JOEL
ISAACSON and MARTIN COLEMAN,

            Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

File No. 0017/2008

**AMENDED PETITION
TO DESIGNATE
TRUSTEE OR, IN THE
ALTERNATIVE, TO
APPOINT A SPECIAL
TRUSTEE, AND TO
COMPEL ACCOUNTING**

TO THE SURROGATE'S COURT, COUNTY OF NEW YORK:

Petitioner, Orly Genger, alleges as follows:

## Purpose of Proceeding

1.     Petitioner, Orly Genger ("Orly") is the lifetime beneficiary of the

Orly Genger Trust ("Orly Trust"). Orly seeks, in this proceeding:; a) an

order appointing Joel Isaacson or Martin Coleman as trustee of the Orly

Trust and declaring that Dalia Genger ("Dalia") has no authority to act as

Trustee of the Trust, as she was not duly appointed as Trustee, or

b) alternatively, an order appointing Orly a Special Trustee of the Orly Trust

for the purpose of investigation and taking discovery with respect to the

wrongful dealings concerning the assets and income of the Orly Trust, since

Dalia, is conflicted from making such an investigation.

**Parties and Interested Persons**

2.      Orly is the lifetime beneficiary of the Orly Trust, a true and complete copy of which is annexed hereto as Exhibit 1.   Orly is a resident of the County of New York.

3.      Respondent David A. Parnes ("Parnes") is a former trustee of the Orly Trust, and a resident of the State of Israel.   Parnes is also a member of the Bar of the State of New York.   Mr. Parnes resides at 29 Elkachi Street, Tel-Aviv 69497 Israel, and has appeared in this proceeding by the Law Offices of Seth Rubenstein.

4.      Respondent Leah Fang ("Fang") purported to act as trustee of the Orly Trust from on or about April 26, 2007 until on or about December 13, 2007, although she was not properly authorized to do so.   Respondent Fang is a resident of the County of New York.   Fang is also a member of the Bar of the State of New York.   Fang resides at 630 First Avenue, Apartment 25G, New York, New York 10016, and has appeared in this proceeding through Matthew Hoffman, Esq.

5.      Respondent, The Sagi Genger 1993 Trust ("Sagi Trust") is the contingent remainder of the Orly Trust, in the event Orly, who is now 29 and without children, dies without children or, having had children, fails to appoint her children the remainder beneficiaries.   The Trustee of the Sagi

-2-

Genger Trust is Rochelle Fang, a resident of the State of New York. Rochelle
Fang resides at 253 West 73rd Street, Apt. 14A, New York 10023.

6.      Respondent Dalia Genger ("Dalia"), although never properly
designated or authorized to act as a trustee of the Orly Trust, is purporting
to be a current trustee of the Orly Trust. Dalia is a resident of the County of
New York and is the mother of Orly. Dalia is divorced from Orly's father,
Arie, the Grantor of the Orly Trust. Dalia resides at 200 East 65th Street,
32W, New York, New York, 10021.

7.      Respondent Martin Coleman is named in the Orly Trust to be
the Successor Trustee if the originally named trustees failed to designate
successors.    Mr. Coleman has consented to serve as trustee, without
commission, if designated.

8.      Respondent Joel Isaacson is a resident of the State of New
York.  He is a certified public accountant, as well as a certified financial
planner.    Mr. Isaacson has consented to serve as trustee, without
commission, if designated. Mr. Isaacson resides at 135 East 83rd Street,
New York, NY 10028.

9.      There are no persons other than those here named in who are
interested in this proceeding.

## THE ORLY TRUST

10.   The Orly Trust was created by Orly's father, Arie Genger, to benefit Orly during her life. Under the terms of the Orly Trust, the trustees serve without compensation. The trustee has absolute discretion to pay out all principal to Orly, and to collapse the Orly Trust.

11.   At the same time the Orly Trust was created, Arie created the Sagi Trust to benefit Sagi. The terms of the Sagi Trust are virtually identical to the Orly Trust.

12.   Lawrence M. Small and Sash A. Spencer were appointed trustees of both the Orly Trust and the Sagi Trust, and they duly qualified as the original trustees ("Original Trustees"). (Ex. 1, Article SEVENTH (A))

## SUBSEQUENT TRUSTEES:
## APPOINTMENT, AND RESIGNATION, OF PARNES AND GRIBETZ

13.   In or about October 2004, the Original Trustees resigned and designated Respondent David Parnes and Eric Gribetz, friends of Sagi Genger, to serve as successor trustees. This change was effected at the request of Sagi Genger, and at the same time Parnes and Gribetz were designated trustees of the Sagi Trust. Parnes and Gribetz duly qualified as trustees, pursuant to Article Seventh of the Orly Trust. (Exhibit 2)

14.   Once installed as trustees, Gribetz and Parnes failed to abide by their fiduciary obligations and refused to provide to Orly information requested by her, including: i) information relating to the Orly Trust's assets,

-4-

Genger-Amended Petition

income and expenses, and (ii) the use of the Trust's main asset – a closely held corporation, TPR Investment Associates, Inc. ("TPR") – to support Sagi, his family and Dalia, but not to support Orly.

15.     In addition, Parnes engaged in conduct that caused him to be conflicted between his duty as trustee and his personal interests.

16.     After demands and questions were raised, Gribetz and Parnes resigned as trustees on February 12, 2007 and April 26, 2007, respectively. (Exhibit 3)

17.     Gribetz made no attempt to designate a successor trustee. Parnes, however, attempted to designate a successor trustee, and named Sagi's sister-in-law, Leah Fang, to that position.   The designation was ineffective, as was Leah's attempted acceptance, since neither satisfied the requirement under the Trust that both the designation and the acceptance be in acknowledged form, and sent to the Grantor or the beneficiary by certified or registered mail.  (Ex 1, Article Seventh)

## FANG'S PING-PONG GAME WITH THE TRUST

18.     Nonetheless, since April 26, 2007, Parnes has repudiated any responsibility as Trustee, and thereafter Fang purported to act as Trustee of the Orly Trust.   However, Fang, as Parnes, failed to respond to Orly's requests for information, failed to take action against TPR, Sagi or Dalia for

-5-

Genger-Amended Petition

the monies Sagi and Dalia have taken from TPR, and failed to provide adequately for Orly.

19. Orly became increasingly concerned about the administration of the Orly Trust, and hired counsel. Faced with demands made upon her, by Orly, Fang apparently decided that it would be easier to resign as trustee, although she still did not provide any information about the Orly Trust and its assets to Orly. Thereafter, on or about December 12, 2007, Fang sent a notice to Orly, as the beneficiary, that she was resigning as Trustee, and appointing Patricia Enriquez in her place. Upon information and belief, Patricia Enriquez who is the life partner of Leah Fang's sister, is without any financial experience. Neither the purported resignation, nor Enriquez' purported acceptance was properly acknowledged or delivered by registered or certified mail.

20. Enriquez, through counsel, has now declared that she is not acting as trustee, never has acted as trustee, and has no intention of qualifying to act as trustee. (Exhibit 4)

21. Shortly after Enriquez repudiated all interest in serving as trustee, this proceeding was commenced. Fang, upon information and belief, had by that time left her job as an associate of the law firm Latham & Watkins, for medical leave. It is unclear whether she is still employed at the firm. Fang, upon information and belief, made herself purposely unavailable

-6-

Genger-Amended Petition

for service of the petition in this proceeding, and Petitioner was required to obtain a supplemental service order.

22. Nonetheless, on or about January 3, 2008, after Fang had resigned and attempted to appoint Enriquez, and upon information and belief after she learned she had been named in this proceeding, Fang again tried to make another designation of a successor trustee, this time to Dalia, Sagi's partner in living off the teat of TPR. Fang was clearly acting as the nominee of Sagi and Dalia.

23. Fang's designation of Dalia was without effect, because Leah: i) was never properly designated herself, and never properly accepted the position of trustee; and ii) had already resigned and repudiated any position she might have had as Trustee.

24. There is, therefore, currently no trustee in place and the so-called trust appointment by Leah is merely another part of a wrongful scheme by Sagi and Dalia to divert to them the assets and property of the Orly Trust to control the Orly Trust.

## TRUST ASSETS

25. The Orly Trust's greatest asset is shares in TPR, the closely held corporation from which Dalia and Sagi have been receiving bogus salary payments for years. Together, Dalia and Sagi have taken approximately $900,000 a year in "compensation" from TPR, while Orly has been allowed

-7-

only a fraction of that, and recently has been cut off from income, completely.

26.    The TPR shares were purchased by the Orly Trust by provision of a $9 million promissory note ("Note") from the Orly Trust and the Sagi Trust, which purchased an equal number of shares. The shares were posted as collateral for the Note.

27.    In 2006, while he was still trustee of the Orly Trust, Parnes attempted to take assignment of the Note from TPR for a purported $12,000. He did so without consultation with Orly, and against her wishes and best interests.  Part of the arrangement in the purported assignment was that Parnes would turn over to the benefit of Sagi a certain percentage of whatever he collected on the Note. (Exhibit 5)

## NEED FOR A TRUSTEE

28.    As described above, Sagi, with the agreement and cooperation of Parnes and Fang, distributed to himself and to Dalia approximately $900,000 a year from TPR and upon information and belief, distributed to Parnes other monies from TPR.  At the same time, Orly received far less money from TPR, and even those payments she was receiving have recently been terminated.

29.    While Orly does not concede that the Note was effectively assigned to Parnes, since it is unclear whether the assignment was

-8-

perfected, it is clear that Parnes in conjunction with Sagi, attempted to take control of the Note, and that the transaction constituted a violation of his fiduciary obligations as trustee of the Orly Trust. Such actions were taken without Orly's knowledge and consent. On information and belief, such actions were taken with the knowledge and approval of Dalia.

30. For months, Orly has continued to seek information about the Orly Trust assets, and about TPR and the $9 million Note that Parnes purportedly purchased from TPR for $12,000, and she continues to be kept in the dark. It is essential that a proper trustee be appointed to protect the interests of the Orly Trust.

31. If the Court will not appoint a proper trustee who is not aligned with Dalia and/or Sagi, then the Court should appoint Orly Special Trustee to investigate and address the TPR issues. Since Dalia has benefited from TPR's payments for years, and since Dalia was involved in the attempted sale of the Note to Parnes for little or no consideration, she can not possibly investigate this matter.

## Isaacson and Coleman Are Both Appropriate Trustees

32. When Petitioner commenced this proceeding, she requested that Lawrence Small, one of the Original Trustees (who served from 1993 to 2004) be appointed to serve at this time, and to fill the vacuum left by the resignation of Parnes and Gribetz.

-9-

Genger-Amended Petition

33.    Sagi Genger objected, and raised objections to the Court, suggesting that Small is not an appropriate trustee. Petitioner continues to assert that Small would be an appropriate trustee, but to the extent the Court has any questions about Small's qualifications, Petitioner provides two alternative persons who have agreed to serve as trustee, if appointed, and to serve without compensation.

34.    Joel Isaacson is a certified public accountant and a certified financial planner. He has served as Chairman and President of the New York Chapter of the International Association for Financial Planning, Chairman of the Personal Financial Planning Committee of the New York State Society of Certified Public Accountants, and as an active member of both the American Institute of Certified Public Accountants and the Estate Planning Council. He is the founder of Joel Isaacson & Co.

35.    The other proposed trustee is Martin Coleman. Mr. Coleman is named in the Trust instrument as the successor trustee if either of the Original Trustees failed to designate a successor.

36.    No previous application for the relief prayed for herein has been made to this Court or to any other court or judge, except as set forth in the original petition.

WHEREFORE, the petitioners pray that an order be issued:

i. Appointing Joel Isaacson or Martin Coleman as trustee of the

-10-

Orly Trust and declaring that Dalia Genger has no authority to act as Trustee of the Trust, as she was not duly appointed as Trustee; or, alternatively, appointing Orly a Special Trustee of the Orly Trust for the purpose of investigation and taking discovery with respect to the wrongful dealings concerning the assets and income of the Orly Trust;

ii. Directing David Parnes and Leah Fang to account; and

iii. Awarding such other and further relief as to this Court seems just and proper.

Dated:  February __, 2008
        New York, New York

MARKEWICH AND ROSENSTOCK LLP
*Attorneys for Petitioner*

By: _____
    EVE RACHEL MARKEWICH
    8 East 41st Street, Fifth Floor
    New York, New York 10017
    (212) 542-3156

-11-

## **VERIFICATION**

STATE OF NEW YORK )

                   : ss.:

COUNTY OF NEW YORK )

      ORLY GENGER, being duly sworn, deposes and says:

      I am the Petitioner in the within proceeding. I am acquainted with the facts and circumstances set forth herein, have read the foregoing Amended Petition, and know the contents thereof; that the same is true to my own knowledge except as to those matters therein stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

                                _____
                                     ORLY GENGER

Sworn to before me this __14__ day
of February 2008

_____
NOTARY PUBLIC
Notary Public - State of Florida
My Commission Expires Apr 21, 2009
Commission # DD 421456
Bonded By National Notary Assn.



TRUST AGREEMENT



BETWEEN

ARIE GENGER

AS GRANTOR

AND

LAWRENCE M. SMALL AND SASH A. SPENCER

AS TRUSTEES

CREATING

THE ORLY GENGER 1993 TRUST

Dated:  December  /3  , 1993

Copy 2 of 4

RUBIN BAUM LEVIN CONSTANT & FRIEDMAN
30 ROCKEFELLER PLAZA  ·  NEW YORK, N.Y. 10112

Index to the Orly Genger 1993 Trust Agreement

| Article | Contents | Page |
|---|---|---|
| FIRST: | Disposition of Principal and Income During the Life of the Grantor's Daughter, ORLY GENGER . . . . . . . . . . . . | 1 |
| SECOND: | Continuing Trust for Descendants of the Grantor's Daughter, ORLY GENGER . . . . . . | 5 |
| THIRD: | Disposition of Property if No Descendant of the Grantor is Living . . . . . . . . . . | 9 |
| FOURTH: | Additions to the Trusts . . . . . . . . . | 13 |
| FIFTH: | Irrevocability . . . . . . . . . . . . | 13 |
| SIXTH: | Governing Law . . . . . . . . . . . . | 13 |
| SEVENTH: | Trustees . . . . . . . . . . . . | 13 |
| EIGHTH: | Compensation of Trustees . . . . . . . . | 18 |
| NINTH: | Settlement of Trustees' Accounts; Exoneration of Trustees . . . . . . . . . | 18 |
| TENTH: | Definitions . . . . . . . . . . . . | 21 |
| ELEVENTH: | Administrative Powers . . . . . . . . . | 22 |
| TWELFTH: | Provisions Relating to the GST . . . . . . . | 32 |
| THIRTEENTH: | Release of Powers . . . . . . . . . . | 37 |
| FOURTEENTH: | Provision with Respect to Closely Held Businesses . . . . . . . . . . | 38 |
| FIFTEENTH: | Headings . . . . . . . . . . . . | 39 |
| SIXTEENTH: | Severability . . . . . . . . . . . . | 39 |

TRUST AGREEMENT dated December /3 , 1993, between ARIE GENGER (now residing at 1067 Fifth Avenue, New York, New York), as Grantor, and LAWRENCE M. SMALL (now residing at 2804 Woodland Drive, Washington, D.C. 20008) and SASH A. SPENCER (now residing at 251 Crandon Boulevard, Townhouse 164, Key Biscayne, Florida 33149), as Trustees.

The Grantor hereby transfers to the Trustees, and the Trustees hereby acknowledge receipt of, the sum of Six Hundred Thousand Dollars ($600,000.00), to be held, administered and disposed of in accordance with the provisions of Article FIRST hereof.  Said sum and any other property that may be received by the Trustees pursuant to the provisions of Article FOURTH hereof, and all investments and reinvestments thereof, and all proceeds thereof which constitute principal, are hereinafter collectively called "principal."

This Trust Agreement shall be known as the "Orly Genger 1993 Trust Agreement" and the trust created by Article FIRST hereof shall be known as the "Orly Genger 1993 Trust."

FIRST:    Disposition of Principal and Income
          During the Life of the Grantor's Daughter,
          ORLY GENGER.

A.    The Trustees shall hold, manage, invest and rein-vest the principal of the trust created by this Article, IN TRUST, and, so long as the Grantor's daughter, ORLY GENGER, shall live, the Trustees are authorized and empowered to pay such part, parts or all, if any, of the net income of the trust

created by this Article (hereinafter referred to in this Article as "Orly's Trust") to, or apply such part, parts or all, if any, of such net income for the use or benefit of, such one or more of the following individuals living from time to time in such equal or unequal amounts or proportions, and at such time or times, as the Trustees, in their discretion, shall determine:

1.   The Grantor's daughter, ORLY GENGER.

2.   Each descendant of ORLY GENGER.

The Trustees shall accumulate all income of Orly's Trust not so paid to or applied and, at least annually, add such net income to the principal of Orly's Trust.

In making such distributions, the Trustees are requested (but they are not directed) to limit the total amount of the distributions made to any descendant of ORLY GENGER with respect to any calendar year to the amount necessary to increase such descendant's taxable income for United States income tax purposes for such year to the greatest amount that shall still result in such descendant not being subject to United States income taxes at the highest marginal rate in effect for such year, after taking into account all of such descendant's other income and deductions for such year.

B.   The Trustees are authorized and empowered to pay to, or apply for the use or benefit of, the Grantor's said daughter such part, parts or all, if any, of the principal of Orly's Trust, and at such time or times, as said Trustees, in

-2-

their discretion, shall determine, without regard to the inter-
est in the trust of any other person and without regard to the
fact that any such payment or application may result in the
termination of Orly's Trust.

      C.   Upon the death of the Grantor's said daughter,
the Trustees shall pay the then principal of Orly's Trust,
together with all net income thereof then accrued but not yet
collected, and collected but not yet disposed of, as follows:

      1.   The Trustees shall pay one-half (1/2) of
such income and principal, in such equal or unequal amounts or
proportions, to or for the use or benefit of such one or more of
the descendants of the Grantor's said daughter, and upon such
terms, conditions and trusts, if any, as the Grantor's said
daughter, by a provision in her Will expressly referring to this
Article of this Trust Agreement, shall validly direct and
appoint. If, or to the extent that, the Grantor's said daughter
shall fail so validly to direct and appoint such principal and
income, the Trustees, at the death of the Grantor's said daugh-
ter, shall pay the same, per stirpes, to such of the descendants
of the Grantor's said daughter as shall survive her, subject,
however, to the provisions of Article SECOND hereof, or, if no
descendant of the Grantor's said daughter shall survive her, per
stirpes, to such of the Grantor's descendants as shall so sur-
vive, or, if no descendant of the Grantor shall so survive, in
accordance with the provisions of Article THIRD hereof.

-3-

2.   The Trustees shall pay one-half (1/2) of such income and principal, per stirpes, to such of the descendants of the Grantor's said daughter as shall survive her, subject, however, to the provisions of Article SECOND hereof, or, if no descendant of the Grantor's said daughter shall survive her, per stirpes, to such of the Grantor's descendants as shall so survive, or, if no descendant of the Grantor shall so survive, in accordance with the provisions of Article THIRD hereof

3.   If, pursuant to the provisions of paragraph 1 or paragraph 2 of this Section C, the Trustees are directed to pay a per stirpital share of such income and principal to a descendant of the Grantor, and if at the time the Trustees are so directed there shall be in existence a trust for such descendant under a trust agreement between Arie Genger, as grantor, and Lawrence M. Small and Sash A. Spencer, as trustees, executed on the date hereof and known as the "Sagi Genger 1993 Trust Agreement," the Trustees shall not pay such per stirpital share to such descendant but shall instead pay such per stirpital share to the trustees then acting under said trust agreement, to be disposed of by them pursuant to the provisions of the trust for such descendant under said trust agreement.

D.   Notwithstanding anything herein to the contrary, if any Trustee hereunder shall be one of the potential income beneficiaries of Orly's Trust, such Trustee shall not, in his or her capacity as such a Trustee, have any voice or vote or other-

-4-

wise participate in any decision pertaining to the payment or application of the income or principal of Orly's Trust to or for the use or benefit of him or her in his or her capacity as a beneficiary of such trust or to or for the use or benefit of any person whom he or she has an obligation to support, and, in each such event, the other Trustee or Trustees shall make all decisions relating to such trust that pertain to such matters.

SECOND: Continuing Trusts for
Descendants of the Grantor's Daughter,
ORLY GENGER.

A.    If, under any provision of this Trust Agreement, any property is directed to be paid to a descendant of the Grantor's daughter, ORLY GENGER, subject to the provisions of this Article, such property shall not be distributed or paid to such descendant.   Instead, the Trustees shall continue to hold such property, IN TRUST (in a separate trust for each such descendant which is referred to in this Article as "such descendant's trust"; provided, however, that if there shall be property so directed to be paid on more than one occasion to any such descendant, all such property shall be held in a single trust for such descendant), and, so long as such descendant shall live before attaining the age of twenty-one (21) years, the Trustees, other than such descendant if he or she shall be a Trustee hereunder, are authorized and empowered to pay to, or apply for the use or benefit of, such descendant, such part, parts or all, if any, of the net income of such descendant's

-5-

trust, and at such time or times, as said Trustees, in their discretion, shall determine, and the Trustees shall accumulate the balance of such net income, if any, and, at least annually, add it to the principal of such descendant's trust, and, so long as such descendant shall live after attaining the age of twenty-one (21) years, the Trustees shall pay to such descendant all of the net income of such descendant's trust in at least quarterly installments.

B.    The Trustees, other than such descendant if he or she shall be a Trustee hereunder, are authorized and empowered to pay to, or apply for the use or benefit of, such descendant, such part, parts or all, if any, of the principal of such descendant's trust, and at such time or times, as said Trustees, in their discretion, shall determine, without regard to the interest in the trust of any other person and without regard to the fact that any such payment or application may result in the termination of the trust.'

C.    Upon the death of such descendant (hereinafter referred to in this Article as "such deceased descendant"), the Trustees shall pay the then principal of such deceased descendant's trust, together with all net income thereof accrued but not yet collected, and collected but not yet disposed of, as follows:

-6-

1.    The Trustees shall pay one-half (1/2) of such income and principal, in such equal or unequal amounts or proportions, to or for the use or benefit of such one or more of the descendants of such deceased descendant, and upon such terms, conditions and trusts, if any, as such deceased descendant, by a provision in his or her Will expressly referring to this Article of this Trust Agreement, shall validly direct and appoint.  If, or to the extent that, such deceased descendant shall fail so expressly and so validly to direct and appoint such principal and income, the Trustees shall, at the death of such deceased descendant, pay the same, per stirpes, to such of the descendants of such deceased descendant as shall survive such deceased descendant, subject, however, to the provisions of this Article, or, if no such descendant shall so survive, per stirpes, to such of the descendants as shall so survive of the ancestor of such deceased descendant closest in degree of relationship to such deceased descendant who (i) shall have descendants who shall so survive and (ii) shall have been a descendant of the Grantor or shall have been the Grantor, subject, however, to the provisions of this Article; or, if no such descendant shall so survive, in accordance with the provisions of Article THIRD hereof.

2.    The Trustees shall pay one-half (1/2) of such income and principal, per stirpes, to such of the descendants of such deceased descendant as shall survive such deceased

-7-

descendant, subject, however, to the provisions of this Article, or, if no such descendant shall so survive, per stirpes, to such of the descendants as shall so survive of the ancestor of such deceased descendant closest in degree of relationship to such deceased descendant who (i) shall have descendants who shall so survive and (ii) shall have been a descendant of the Grantor or shall have been the Grantor, subject, however, to the provisions of this Article, or, if no such descendant shall so survive, in accordance with the provisions of Article THIRD hereof.

3.    If, pursuant to the provisions of paragraph 1 or paragraph 2 of this Section C, the Trustees are directed to pay a per stirpital share of such income and principal to a descendant of the Grantor subject to the provisions of this Article, and if at the time the Trustees are so directed there shall be in existence a trust for such descendant under a trust agreement between Arie Genger, as grantor  and Lawrence M. Small and Sash A. Spencer, as trustees, executed on the date hereof and known as the "Sagi Genger 1993 Trust Agreement," the Trustees shall not pay such per stirpital share to such descendant subject to the provisions of this Article but shall instead pay such per stirpital share to the trustees then acting under said trust agreement, to be disposed of by them pursuant to the provisions of the trust for such descendant under said trust agreement.

-8-

D.    Notwithstanding anything herein to the contrary, each trust created by the terms of this Article shall terminate, if not sooner terminated, upon the expiration of twenty-one (21) years after the death of the last surviving descendant of the Grantor's parents, SHARGA GENGER and DORA GENGER, who shall have been in being on the date hereof; and the Trustees shall thereupon pay the then principal of any trust terminated in accordance with the provisions of this Section, together with all net income thereof accrued but not yet collected and collected but not yet disposed of, to the descendant of the Grantor with respect to whom such trust is being held.

THIRD:    Disposition of Property if No Descendant
          of the Grantor is Living.

A.    As used in this Article:

1.    The words "such time" shall mean the time as of which any property is directed to be paid in accordance with the provisions of this Article.

2.    The term "Qualified Charitable Organization" shall mean an organization that shall be qualified as an organization to which contributions and bequests are deductible for both United States income tax, gift tax and estate tax purposes under the provisions of Section 170, Section 2522 and Section 2055 of the Internal Revenue Code.

-9-

B.   If, under any provision of this Trust Agreement,
any property is directed to be paid in accordance with the pro-
visions of this Article, the Trustees shall pay such property as
follows:

1.   If the Grantor, the Grantor's spouse and/or
any one or more descendants of the Grantor shall have caused
there to be created a foundation known as The Genger Foundation,
and if at such time said Foundation shall be in existence and
shall be a Qualified Charitable Organization, then, in such
event, the Trustees shall pay such property to said Foundation.

2.   If at such time either The Genger Foundation
created as aforesaid shall not be in existence or said Founda-
tion shall be in existence but shall not be a Qualified Charit-
able Organization, and if at such time the Trustees are autho-
rized under applicable law to cause to be organized a corpora-
tion under and in accordance with the laws of any state of the
United States which the Trustees, in their discretion, shall
select, which corporation (i) shall be known by the name of The
Genger Foundation (or by such other name as the Trustees, in
their discretion, shall select if the name of The Genger Founda-
tion shall not be available to be utilized as the name of said
corporation), (ii) shall have as its purposes the encouragement,
promotion, support and enhancement of non-orthodox study and
education for children in the State of Israel pertaining to the
customs, practices and ancient and modern history of the Jewish

-10-

people and shall maintain all of the property held by it, and use all of the net income thereof received from time to time, for the encouragement, promotion, support and enhancement of such study and education for children, (iii) shall be required to maintain all of the property held by it, and use all of the net income thereof received from time to time, for such purposes, with such property and income to be expended for such purposes in such amounts, at such time or times and to or for the use or benefit of such recipient or recipients as the directors, trustees and/or the officers of such corporation shall, in their discretion, determine from time to time, subject, however, to the other provisions of this paragraph 2, (iv) shall have as its initial directors or trustees the Trustees hereunder, the Grantor's cousin, JEREMIAH WOHLBERG (now residing at 2325 Lindenmere Drive, Merrick, New York), if he shall not then be a Trustee hereunder, and also such other individual or individuals, if any, as may be designated by the Trustees, and thereafter to have as directors or trustees such individuals as shall from time to time be determined as provided for in the certificate of incorporation and/or by-laws of said corporation, and (v) shall be organized and maintained in such manner as to be and continue to be a Qualified Charitable Organization, then, in such event, the Trustees shall organize such a corporation, and the Trustees shall pay such property to such corporation.

-11-

3.    If at such time (i) either The Genger Foundation created as aforesaid shall not be in existence or said Foundation shall be in existence but shall not be a Qualified Charitable Organization, and (ii) the Trustees are not authorized under applicable law to cause to be organized a corporation of the nature referred to in paragraph 2 of this Section B, then, in such event, the Trustees shall pay such property to the JEWISH COMMUNAL FUND OF NEW YORK, New York, New York, to be held, administered and disposed of pursuant to the rules and regulations thereof as an Undesignated Philanthropic Fund to be known as the Genger Philanthropic Fund and with the privilege of making advisory recommendations with respect thereto to be held in the first instance by the Trustees, said JEREMIAH WOHLBERG, if he shall not then be a Trustee hereunder, and also by such other individual or individuals, if any as the Trustees may designate, and thereafter by such other individual or individuals as such designees and their successors acting in such capacity may from time to time designate, and it is requested (but not directed) that the principal and income of such Fund shall be utilized to encourage, promote, support and enhance non-orthodox study and education for children in the State of Israel pertaining to the customs, practices and ancient and modern history of the Jewish people.

-12-

FOURTH:    Additions to the Trusts.

Any person, including the Grantor, by a transfer to take effect during the life of such person or upon the death of such person, may, at any time or times, add to the principal of any trust hereunder any property of any kind or nature accept- able to the Trustees, and any such additional property so received by the Trustees pursuant to the provisions of this Article shall thereafter be deemed to be part of the principal of such trust subject to all of the terms, provisions and condi- tions of this Trust Agreement.

FIFTH:    Irrevocability.

This Trust Agreement and the trusts hereby created are irrevocable and not subject to amendment or change.

SIXTH:    Governing Law.

This Trust Agreement and the trusts hereby created shall be governed by the laws of the State of New York.

SEVENTH:  Trustees.

A.   The initial Trustees acting hereunder shall be LAWRENCE M. SMALL and SASH A. SPENCER.

B.   Each individual acting as a Trustee hereunder (whether such Trustee is initially a party to this Trust Agree- ment or a successor Trustee named in Section C of this Article

-13-

or appointed pursuant to the provisions of this Section B) is authorized and empowered to appoint another individual (other than the Grantor) to act in his or her place and stead as a Trustee hereunder.   Each appointment of a successor Trustee hereunder shall be made by the execution of an instrument of appointment signed and acknowledged by the individual who shall have made such appointment and by delivering such instrument in accordance with the provisions of Section G of this Article; and any such appointment may be revoked in the same manner by the individual Trustee who shall have made it at any time before the occurrence of the event or events as of which such appointment shall, by its provisions, become effective.   Any appointment made in accordance with the provisions of this Section B shall be valid only if the individual so appointed shall, within thirty (30) days after the later of (i) the date on which a copy of such instrument of appointment is so delivered to him or her, and (ii) the occurrence of the event or events as of which such appointment shall, by its provisions, become effective, qualify as a successor Trustee under this Trust Agreement in accordance with the provisions of Section D of this Article.   Each successor Trustee named in Section C of this Article or appointed in accordance with the provisions of this Section B shall be vested with the same powers and authority as the initial Trustees who are parties to this Trust Agreement; provided, however, that no such Trustee shall be permitted to exercise any authority or

-14-

power which such Trustee shall be prohibited from exercising by
an express provision of this Trust Agreement.

C.  1.  If either LAWRENCE M. SMALL or SASH A.
SPENCER shall cease to act as a Trustee hereunder, and no suc-
cessor Trustee appointed by him pursuant to the provisions of
Section B of this Article shall quality and act as a Trustee
hereunder, MARTIN A. COLEMAN (now residing at 51 Cambridge Road,
Great Neck, New York 11023) shall act as Trustee hereunder.

2.  If MARTIN A. COLEMAN shall fail or cease
cease to act as a Trustee hereunder, and no successor Trustee
appointed by him pursuant to the provisions of Section B of this
Article shall quality and act as a Trustee hereunder, THOMAS G.
HARDY (now residing at 935 Park Avenue, New York, New York
10028) shall act as a Trustee hereunder.

D.  Each successor Trustee hereunder shall qualify as
such by accepting the trusteeship by the execution of a signed
and acknowledged instrument of acceptance and by delivering such
instrument in accordance with the provisions of Section G of
this Article.

E.  Any individual Trustee hereunder may resign as
such a Trustee by the execution of a signed and acknowledged
instrument of resignation and by delivering such instrument in
accordance with the provisions of Section G of this Article.

-15-

Any such resignation shall become effective upon the receipt of such instrument of resignation by each individual to whom it is delivered or mailed as aforesaid or at such later date as may be specified therein.

F.    If any individual while acting as a Trustee here-under shall become incapable of discharging his or her responsi-bilities and duties as such a Trustee by reason of a physical, emotional or intellectual incapacity and such incapacity shall be confirmed by each of two medical doctors in written state-ments, copies of which shall be delivered or mailed as hereinaf-ter provided, the individual who is so incapacitated shall be deemed for the purposes of construing and applying all of the provisions of this Trust Agreement to have effectively resigned as such Trustee in compliance with the provisions of Section E of this Article, such resignation to be deemed to be effective upon the delivery or mailing of the aforesaid statements as hereinafter provided. Each of the aforesaid statements shall be signed and acknowledged by the medical doctor making the same and copies of the same shall be delivered or mailed by regis-tered or certified mail to the individual, if any, who will become the successor Trustee hereunder in the place and stead of the incapacitated Trustee to whom such statement pertains, to each Trustee, if any, then acting hereunder (other than the incapacitated Trustee to whom such statement pertains), and also to either (i) the Grantor (or, if the Grantor shall not then be

-16-

living. to the executors, administrators or personal representatives tives of the Grantor's estate), or (ii) ary one or more of the adult individuals to whom or for whose use or benefit the income of any trust hereunder may then be paid or applied.

G.    Each instrument directed to be delivered in accordance with the provisions of this Section G shall be delivered in person or by mailing a copy of the same by registered or certified mail to each Trustee, if any, then acting hereunder (other than the Trustee, if any, who shall have executed such instrument), and to either (i) the Grantor (or, if the Grantor is not then living, to the executors, personal representatives or administrators of the Grantor's estate), or (ii) any one or more of the adult individuals to whom or for whose use or benefit the income of any trust hereunder may then be paid or applied.

H.    No bond or other security shall be given by or required in any jurisdiction (whether in the State of New York or elsewhere) of any Trustee at any time acting hereunder (whether such Trustee is named herein or appointed pursuant to the provisions hereof) for the faithful performance of such Trustee's fiduciary duties in any capacity hereunder regardless of whether such Trustee is or may become a non-resident of the State of New York or elsewhere.

-17-

EIGHTH:    <u>Compensation of Trustees.</u>

No Trustee hereunder, whether such Trustee is herein-
above named or appointed pursuant to the provisions hereof,
shall be entitled to any compensation (other than reimbursement
for out-of-pocket expenses) for services rendered as a Trustee
hereunder; and each Trustee who is a party to this Trust Agree-
ment or who qualifies as a successor Trustee hereunder as pro-
vided herein shall be deemed to have agreed to serve as such
Trustee without receiving any such compensation.

NINTH:    Settlement of Trustees' Accounts;
<u>Exoneration of Trustees.</u>

A.    To the fullest extent permitted by law, the
Trustees shall not be required to file with or render to, and
the Grantor waives and excuses the filing with or rendering to,
any Court an account of their transactions or inventories, ac-
counts, statements or reports of principal and/or income with
respect to any trust created hereunder.    Nevertheless, the
Trustees may at any time have their accounts judicially settled
with respect to any trust created hereunder, and in any such
proceeding it shall not be necessary to serve any person who is
under a disability if there is another party to the proceeding
who is not under any disability and who has the same interest as
the person who is under a disability, and, in such event, it
shall not be necessary to appoint a guardian ad litem for any
such party who is under a disability.    The expenses of any such

-18-

account shall be a proper administration expense of the trust to
which such account relates.

B.    If any Trustee shall resign as a Trustee here-
under, the continuing Trustee, if any, or, if there is no con-
tinuing Trustee, any successor Trustee who shall have qualified
to act in accordance with the provisions of Section D of Article
SEVENTH hereof, may deliver to the Trustee so resigning an
instrument whereby such resigning Trustee shall be released and
discharged, to the extent stated therein, of and from any and
all accountability, liability and responsibility for acts or
omissions as Trustee. Any such release and discharge shall be
binding upon all persons, whether or not then in being, then or
thereafter interested in either the income or the principal of
any trust hereunder and shall have the force and effect of a
final decree, judgment or order of a court of competent juris-
diction rendered in an appropriate action or proceeding for the
judicial settlement of the account of such Trustee in which
jurisdiction was obtained of all necessary and proper parties.
The foregoing provision, however, shall not preclude any Trustee
so resigning from having his or her account judicially settled,
and in any such proceeding it shall not be necessary to serve
any person who is under a disability if there is another party
to the proceeding who is not under any disability and who has
the same interest as the person who is under a disability, and,
in such event, it shall not be necessary to appoint a guardian

-19-

ad litem for any such party who is under a disability.   The
expenses of any judicial account rendered by a Trustee who shall
resign shall be a proper administration expense of the trust to
which such account relates.

C.   In addition to the foregoing, the Trustees are
hereby authorized, at any time and from time to time, with re-
spect to any trust hereunder, to settle the account of the
Trustees by agreement between the Trustees and the then adult
individual or individuals to whom or for whose use or benefit
the income of such trust may then be paid or applied and the
adult or adults who would be entitled to the principal in case
such trust were to terminate at the time of such agreement,
excluding any such individual who is under a disability if there
is a party to the agreement who is not under any disability and
who has the same interest as the individual who is under a dis-
ability, which agreement shall bind all persons, whether or not
then in being, then or thereafter interested in either the
income or the principal of such trust.   Any such settlement
shall have the same force and effect as a final decree, judgment
or order of a court of competent jurisdiction rendered in an
appropriate action or proceeding for the judicial settlement of
such account in which jurisdiction was obtained of all necessary
and proper parties.   The expenses of any such account shall be
a proper administration expense of such trust.

-20-

D.    To the extent permitted by law, no Trustee shall be accountable, liable or responsible for any act, default, negligence, or omission of any other Trustee.

TENTH:    <u>Definitions</u>.

Wherever used in this Trust Agreement:

1.    The word "Trustees" and all references to the Trustees shall mean and refer to the Trustees and successor Trustees hereinabove named, any successor Trustee appointed pursuant to the provisions hereof, any substitute Trustee appointed by a court of competent jurisdiction, the survivors or survivor of them, and their and each of their successors or successor, as may be acting hereunder from time to time.

2.    The words "IN TRUST" shall mean "in trust, nevertheless, to hold, manage, invest and reinvest, and, until payment thereof as hereinafter directed, to receive the income thereof."

3.    The word "pay" shall, where applicable, mean "convey, transfer and pay" and the word "payment" shall, where applicable, mean "conveyance, transfer and payment."

4.    The words "descendant" and "descendants," when used with respect to any person, shall be deemed to include (i) every individual who is born to such person, (ii) every individual who is lawfully adopted by such person, and (iii)

-21-

every individual who is otherwise descended from such person, whether by birth, or by lawful adoption, or by a combination thereof.

5.    The words "Internal Revenue Code" shall mean and refer to "the United States Internal Revenue Code of 1986 (as amended from time to time)," and any reference to a specific section, chapter or other provision of the Internal Revenue Code shall mean and refer to said section, chapter or other provision and any successor statute thereto pertaining to the same subject matter as said section, chapter or other provision.

ELEVENTH: <u>Administrative Powers</u>

A.    In addition to and in amplification of the powers given by law to trustees, the Trustees, but solely in their fiduciary capacities, are hereby authorized and empowered, in their discretion:

1.    To sell, exchange, make contracts with respect to, grant options on or otherwise dispose of, at public or private sale, at such prices, on such terms (including sales on credit with or without security) and at such time or times as the Trustees shall determine, any property, real or personal, which may at any time form part of any trust hereunder.

2.    To lease, for such periods (whether or not any such period shall extend beyond the period prescribed by law

-22-

or the probable term of any trust hereunder), on such terms and
conditions and at such time or times as the Trustees shall
determine, the whole or any portion or portions of any property,
real or personal, which may at any time form part of any trust
hereunder, whether the same be held in severalty or as
tenant-in-common with others or in a partnership, syndicate or
joint venture or otherwise, and release and convey any undivided
interest in any such property for the purpose of effecting par-
tition of the whole or any part thereof; and make, place, extend
or renew mortgages, pledges, building loan agreements or build-
ing loan mortgages upon or affecting any and all such property;
and make, execute and deliver such mortgages, pledges and agree-
ments, together with proper bonds, notes or other instruments of
indebtedness to accompany the same, and such extension or
renewal agreements, as to the Trustees shall seem necessary,
advisable or proper; and also to repair, alter, reconstruct,
build upon or improve any such property and on such terms and at
such time or times as the Trustees shall determine, give and
grant to others the right so to do, or agree in, or so modify
any lease affecting any such property that the lessee may alter,
repair, reconstruct, build upon, improve, mortgage and pledge
any such property; and generally to make, alter and modify all
agreements, leases, mortgages, pledges, building loans, sales,
exchanges, transfers and conveyances of or affecting any such
property which the Trustees shall determine to be necessary,
advisable or proper for the preservation, improvement, enhance-

-23-

ment in value of, or betterment of or addition to, such prop-
erty.

3. To hold any part or all of the assets of any
trust hereunder invested in the same form of property in which
the same shall be invested when received by the Trustees, and
invest and reinvest the assets of any such trust, or any portion
thereof, in any form of investment which the Trustees may deter-
mine (including, without limitation, mutual funds, common trust
funds, investment trusts, general partnerships and limited part-
nerships), whether or not such investment is of the nature pre-
scribed by law as a legal investment for fiduciaries or is spec-
ulative in nature, and without regard to the percentage of the
assets of such trust which such investment or similar invest-
ments may constitute.

4. To vote in person or by proxy all stocks and
other securities held by any trust hereunder; grant, exercise,
sell or otherwise turn to account rights to subscribe for stock
and securities and options of any nature  amortize or refrain
from amortizing premiums on bonds or other securities which the
Trustees may purchase or receive; participate in reorganiza-
tions, mergers, liquidations or dissolutions, and contribute to
the expenses of, and deposit securities with, protective commit-
tees in connection therewith; participate in voting trusts; and
generally exercise, in respect of said stock and securities, all

-24-

rights, powers or privileges which may be lawfully exercised by any person owning similar property in his or her own right.

5.    To employ any investment counsel, corporate custodians, agents, accountants, brokers and attorneys which the Trustees may select and pay the charges thereof (including charges for preparation of trust tax returns, the Trustees' accounts and any other necessary trust records); and the Trustees, or a partnership, corporation or other entity in which any Trustee shall be interested, or by which any Trustee may be employed, may be retained in any such capacity, and, in such event, the charges which shall be payable to such Trustee, or to any such partnership, corporation or other entity, shall be in addition to compensation otherwise allowable to such Trustee and may be paid without prior judicial approval.

6.    In any case in which the Trustees are authorized or required to pay or distribute any share of any trust hereunder, to make such payment or distribution in kind, or partly in kind and partly in money and, in connection therewith, to allocate equal or unequal interests in, or amounts of, specific property in satisfaction of such payment or distribution; provided, however, that any property distributed in kind shall be valued, for purposes of such distribution, at its fair market value on the date of distribution.

-25-

2007-01-16 17:05    Segal A. Genger    <<1212750660211>>

7.    To settle, adjust, compromise or submit to arbitration any dispute, claim or controversy in which any trust hereunder may be in any way interested.

8.    To borrow money from any person, partnership, corporation or other entity, who may be any Trustee or a partnership, corporation or other entity in which any Trustee may be interested, or by which any Trustee may be employed, for the purpose of meeting any and all charges against any trust hereunder or for any other purpose connected with the administration, preservation, improvement or enhancement in value of any such trust, and, in connection with any such borrowing, to pledge, hypothecate or mortgage any part or all of the assets of any such trust.

9.    To keep any or all of the securities at any time forming a part of any trust hereunder in the name of one or more nominees.

10.    In any case where doubt or uncertainty exists under applicable law or this Trust Agreement, to credit receipts and charge expenses to principal or income, or partly to each.

11.    By instrument or instruments signed by all of the Trustees qualified and acting as such at any time with respect to any trust hereunder, to delegate, in whole or in part, to any person or persons (including any one or more of the

-26-

Trustees) the authority and power to (i) sign checks, drafts or orders for the payment or withdrawal of funds from any bank account or other depository in which funds of such trust shall be held, (ii) endorse for sale, transfer or delivery, or sell, transfer or deliver, or purchase or otherwise acquire, any and all stocks, stock warrants, stock rights, bonds or other securities whatsoever with respect to such trust, and (iii) gain access to any safe deposit box which may be in the names of the Trustees and remove part or all of the contents of any such safe deposit box and release and surrender the same.

12.    To pay or deliver to either parent or to the guardian of the property of any minor or to an adult with whom such minor resides, and, with respect to any person for whom it is permissible to do so under applicable law, to a custodian for such person under a Uniform Gifts to Minors Act or Uniform Transfers to Minors Act of any state until the age of eighteen (18) years (or until such age in excess of eighteen (18) years as shall be permissible under applicable law and which the Trustees, in their discretion, shall select) any sum or property, including income, which such minor or such person shall either be entitled to receive or to have applied for his or her use or benefit under any of the provisions hereof, without requiring that such parent, adult or custodian obtain letters of guardianship or that such parent, guardian, adult or custodian give any bond or other security for any such payment or delivery

-27-

so made; and the receipt of such parent, guardian, adult or custodian for the amount of such payment, or for the property so delivered, shall be an absolute protection to the Trustees and a complete release and discharge from all further accountability in respect of any such payment or delivery.

13.  If any beneficiary of any trust hereunder shall, in the opinion of the Trustees, be or become incapacitated (whether by reason of illness, age or other causes) the Trustees may, in their discretion, wholly or partly in lieu of paying net income or principal of such trust to such beneficiary as authorized or directed by this Trust Agreement, dispose of the same in one or more of the following ways:

(a)  by making payment of such net income or principal to a legally appointed guardian or other fiduciary of such beneficiary;

(b)  by making payment of such net income or principal, on behalf of such beneficiary, to any person with whom such beneficiary resides or who has charge of his or her care; and/or

(c)  by applying such net income or principal directly for the use or benefit of such beneficiary.

-28-

14.   To remove the assets of, hold and administer any such assets in, and/or move the situs of the administration of any trust hereunder to, such location or locations (which may be in a state or other jurisdiction other than the State of New York) as the Trustees, in their discretion, shall select.   If the Trustees, in their discretion, shall determine it advisable to move the situs of the administration of any trust hereunder to a location where the judicial administration of trusts is required or permitted, the Trustees are authorized to select and request a court in such location having jurisdiction over the administration of trusts to accept jurisdiction over the administration of such trust, and it is requested that such court accept, and that it be permitted to accept, jurisdiction over the administration of such trust; and it is directed that the administration of such trust shall be governed from time to time by the laws of the jurisdiction in which the administration of such trust is then located.

15.   To make, or refrain from making, elections or allocations permitted under any applicable tax law without regard to the effect of any such election or allocation on the interest of any beneficiary of any trust hereunder and, if any such election or allocation shall be made, to apportion, or refrain from apportioning, any benefits thereof among the respective interests of the beneficiaries of such trust, all in such manner as the Trustees shall deem appropriate.

-29-

16.    To retain or invest in solido the property held in any trust hereunder with the property held in one or more of the other trusts hereunder or with the property held in any other trust created by the Grantor or by any other person for purposes of convenience or for the better investment thereof.

17.    To exercise all authority, powers, privileges and discretion conferred in this Article after the termination of any trust created hereunder and until all of the assets of such trust are fully distributed.

B.    No person or party dealing with the Trustees shall be bound to see to the application of any money or other consideration paid by him or her to the Trustees.

C.    Neither the principal nor the income of any trust hereunder, or any part thereof, shall or may at any time be liable or subject in any manner whatsoever to the debts or liabilities of any beneficiary entitled to receive any principal or income therefrom; nor shall the principal or income of any trust hereunder be liable to attachment by garnishment proceedings or other legal process issued by any creditor of any beneficiary of such trust for debts heretofore or hereafter contracted by such beneficiary; nor shall any assignment, conveyance, charge, encumbrance or order, either of principal or income, given by any such beneficiary be valid.

-30-

D.    Wherever in this Trust Agreement it is provided
that an instrument is to be "acknowledged," such instrument
shall be acknowledged in such manner as would be required if the
same were a conveyance of real property entitled to be recorded
in the State of New York.

E.    1.    To the fullest extent permitted by law, no
transaction or decision involving any trust hereunder shall be
deemed invalidated in any way by reason of any personal, benefi-
cial or other interest which any Trustee may have with respect
to such transaction or decision, including, without limitation,
any transaction or decision with respect to any corporation,
company, partnership, association, estate, trust or other entity
in which any Trustee may have an interest in a capacity other
than as a Trustee hereunder, regardless of any conflict of
interest as to any such transaction or decision, and any such
transaction or decision shall be lawful and proper and shall not
be questioned unless such Trustee is guilty of fraud with
respect thereto.    Without limiting the foregoing, no Trustee
shall be disqualified or barred from acting as such or have any
liability hereunder in exercising any power, authority or dis-
cretion conferred upon the Trustees by reason of the fact that
such Trustee may be a stockholder, officer  director, partner,
executor, administrator, personal representative, trustee, bene-
ficiary, or in any other way interested in the corporation, com-
pany, partnership, association, estate, trust or other entity

-31-

whose securities or property are the subject matter of the exercise of such power, authority or discretion.

2.   The Trustees hereunder shall be entitled to compensation as officers, directors, fiduciaries or other participants in any such entity notwithstanding the fact that they are Trustees hereunder and are also entitled to receive reimbursement for their out-of-pocket expenses as such Trustees.

F.   The Trustees shall be under no duty or obligation and shall not be liable to any trust hereunder or to any person or persons interested in any trust hereunder or be surcharged for failure to buy, sell or engage in any transaction directly or indirectly involving securities issued or to be issued by any corporation or other business organization concerning which any of the Trustees, in a capacity other than as a Trustee hereunder, may have acquired any information which has not been disclosed to the public.

TWELFTH:   Provisions Relating to the GST.

A.   As used in this Article:

1.   "GST" shall mean and refer to "the United States generation-skipping transfer tax imposed by Chapter 13 of the Internal Revenue Code."

-32-

2.    The words "inclusion ratio" shall have the same meaning as those words are given in Section 2642 of the Internal Revenue Code.

3.    The words "Net Death Taxes" shall mean and refer to "the aggregate death taxes (including, without limitation, United States, state, local and other estate taxes and inheritance taxes but not including any interest and penalties thereon), after taking into account all applicable credits, payable with respect to the estate of such beneficiary."

B.    1.    Notwithstanding any other provision in this Trust Agreement to the contrary, and in addition to any other power of appointment hereinabove given by the previous provisions of this Trust Agreement to any individual at whose death the inclusion ratio with respect to any trust under this Trust Agreement would, but for the provisions of this Section B, be more than zero (such individual being referred to in this Article as "such beneficiary"), the Trustees of such trust are authorized and empowered, by an acknowledged instrument in writing (with such instrument to be filed with the court, if any, then having jurisdiction over such trust, if such court shall accept such instrument for filing), (i) to create in such beneficiary a power (hereinafter referred to in this Section B as "such power"), to be exercised by a provision in his or her Will expressly referring to this Article of this Trust Agreement, to appoint to the creditors of his or her estate any portion of the

-33-

property held in such trust at the death of such beneficiary, and (ii) to limit such power, by formula or otherwise, to less than all of the property held in such trust at the death of such beneficiary; provided, however, that with respect to each such trust, the maximum amount of property over which such power may be created shall not, after taking into account the property, if any, over which any other such power is created in such beneficiary, exceed the amount, if any, above which any further addition to the amount subject to such power would increase the Net Death Taxes determined with respect to such beneficiary's estate by an amount equal to or greater than the net decrease in the aggregate of (x) the GST and (y) any state and/or local tax on generation-skipping transfers imposed as a result of the death of such beneficiary that would result from such further addition.    Unless such beneficiary's Will otherwise provides by express reference to this Trust Agreement and such power, the increase in the Net Death Taxes on such beneficiary's estate resulting from such power shall be paid from that part of the principal of such trust over which such power is exercisable. If, or to the extent that, such beneficiary shall fail so expressly and so validly to exercise any power created in such beneficiary by the Trustees pursuant to the provisions of this paragraph, the unappointed portion (or, as the case may be, all) of the property subject to such power shall pass pursuant to the provisions of this Trust Agreement otherwise applicable to such property.

-34-

2.    The Trustees are further authorized and empowered, by an acknowledged instrument in writing (with such instrument to be filed with the court, if any, then having jurisdiction over the trust to which such power relates, if such court shall accept such instrument for filing), to revoke any power created by the Trustees pursuant to the provisions of paragraph 1 of this Section B at any time prior to the death of the beneficiary in whom such power was created, and to release, in the manner set forth in Article THIRTEENTH hereof, the right to create such a power.  The Trustees shall not be liable for any exercise, release or failure to exercise the authority and power granted to them by the provisions of said paragraph 1 or for the revocation of any power created by them pursuant to the provisions of said paragraph 1, provided they utilize good faith in considering whether or not to exercise or release such power or to cause such revocation, whether such consideration be at their own instance or at the request of an individual who is a beneficiary of a trust hereunder, the guardian or other fiduciary of such an individual, or a member of his or her family.

C.    1.    Notwithstanding any other provision in this Trust Agreement to the contrary, if at any time any property is to be placed in a trust under the provisions of any Article of this Trust Agreement, the Trustees shall, if need be, and if it is possible to do so, divide such property and place the same in separate trusts to the end that one such trust shall have an

-35-

20-01010-jlg   Doc 13-6   Filed 06/25/20   Entered 06/25/20 23:33:41   Exhibit 6
Pg 51 of 65

inclusion ratio of zero, and if any property which is directed to be added to a trust hereunder shall have an inclusion ratio which is different than the inclusion ratio of such trust, the Trustees shall not make such addition but shall instead administer such property in a separate trust under this Trust Agreement; and, in each such instance, the property to be placed or held in such a separate trust shall be held, administered and disposed of by the Trustees pursuant to provisions identical to the provisions of the trust to which, but for the provisions of this paragraph 1, such property would have been placed or added.

2.   If, pursuant to the provisions of paragraph 1 of this Section C, any property that would otherwise be held in a single trust hereunder is instead held in separate trusts hereunder, the Trustees of such trusts may, at any time or from time to time, (i) make different tax elections and allocations with respect to each such trust, (ii) expend principal and income and exercise any discretionary power differently with respect to each such trust, (iii) invest each such trust differently, and/or (iv) take all other actions consistent with such trusts being separate entities. Furthermore, the donee of any power of appointment with respect to such trusts may exercise such power differently with respect to each such trust.

D.   Notwithstanding the provisions of the foregoing Sections of this Article to the contrary, if any Trustee hereunder is a current beneficiary of the income of any trust here-

-36-

under, or may, in the discretion of the Trustees, be a current
income beneficiary of any such trust, then, in such event, such
Trustee shall not, in his or her capacity as a Trustee of such
trust, have any voice or vote or otherwise participate in any
decision pertaining to the matters relating to such trust that
are addressed in the foregoing Sections of this Article, and, in
each such event, the other Trustee or Trustees of such trust
shall make all decisions relating to such trust that pertain to
such matters.

THIRTEENTH:   Release of Powers.

Any beneficiary and any Trustee hereunder may at any
time or times release any discretionary power of appointment or
discretionary power to distribute principal or income or any
other discretionary power hereby given to such beneficiary or
Trustee, either with or without consideration, with respect to
the whole or any part of the property subject to such power and
also in such manner as to reduce or limit the persons or objects
or classes of persons or objects in whose favor such power would
otherwise be exercisable, by an instrument signed and acknowl-
edged by the beneficiary or Trustee releasing such power and
delivered to (i) each Trustee then acting hereunder (other than
the Trustee, if any, who shall have executed such instrument),
(ii) the Grantor (or, if the Grantor is not then living, to the
executors, administrators or personal representatives of the

-37-

Grantor's estate), or (iii) any one or more of the adult indi
viduals to whom or for whose use or benefit the income of any
trust hereunder may then be paid or applied.  In the event of
the release of any such power by any Trustee, the remaining
Trustee or Trustees hereunder, if any, may thereafter exercise
such power, other than any discretionary power which was not
initially vested in such remaining Trustee or Trustees.   The
release of any power by any Trustee hereunder pursuant to the
provisions of this Article shall not be binding upon any Trustee
who may thereafter act as a Trustee hereunder unless such power
shall have been released by all of the Trustees then in office
who are vested with such power by their execution of a signed
and acknowledged instrument specifically providing that such
release is to be binding upon all successor Trustees hereunder.

FOURTEENTH:     Provision With Respect To
                Closely Held Businesses.

Without limiting the powers and authority conferred
upon the Trustees by Article ELEVENTH hereof but in extension
thereof, the Trustees are specifically authorized and empowered,
in their discretion, to retain for as long as they, in their
discretion, shall deem advisable, any or all shares of stock in
any closely held corporation, or any indebtedness owing by any
such corporation, or any or all interests in any proprietorship,
unincorporated business, partnership, joint venture, realty or

-38-

any other asset, whether owned individually, as tenant-in-com-
mon, partner or otherwise, regardless of whether such asset or
assets shall be producing profits or losses through ownership or
operation thereof, and regardless of the percentage of the
trusts hereunder which such assets or similar assets may consti-
tute; and their decision to retain and hold any such asset or
liability shall be binding and conclusive upon and shall not be
subject to question by any person interested, or who may become
interested, in any of the trusts hereunder, and the Trustees
shall not incur any liability by reason thereof.

FIFTEENTH:   Headings.

The Article headings contained herein are inserted
only as a matter of convenience and in no way define, limit,
extend or describe the scope hereof or the intent of any provi-
sion hereof.

SIXTEENTH:   Severability.

Should any part, clause, provision or condition hereof
be held to be void or invalid, then such invalidity shall not
affect any other part, clause, provision or condition hereof,
but the remainder hereof shall be effective as though such void

-39-

part, clause, provision or condition had not been contained herein.

WITNESS the due execution hereof by the Grantor and Trustees on the day and year first above written.

ARIE GENGER,
as Grantor

LAWRENCE M. SMALL,
as Trustee

SASH A. SPENCER,
as Trustee

-40-

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

On this 13 day of December, 1993, before me personally appeared ARIE GENGER, to me known and known to me to be a person described in and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

_____
Notary Public

BRIT GEIGER
Notary Public, State of New York
No. 24-45023*8 Qual. in Kings Co.
Certificate Filed in New York County
Commission Expires June 30, 19__

District of Columbia
~~STATE OF~~      )
                  )    ss.:
~~COUNTY OF~~     )

On this 15ᵗʰ day of December, 1993, before me personally appeared LAWRENCE M. SMALL, to me known and known to me to be a person described in and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

_____
Jeanne M. Meister
Notary Public

My Commission Expires July 31, 1997

STATE OF New York   )
                    )    ss.:
COUNTY OF New York  )

On this 16ᵗʰ day of December, 1993, before me personally appeared SASH A. SPENCER, to me known and known to me to be a person described in and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

_____
Stella M. Orso
Notary Public

STELLA M. ORSO
Notary Public, State of New York
No. 24-4334037
Qualified in Kings County
Certificate Filed In New York County,
Commission Expires March 30, 19__

-41-

ORLY GENGER 1993 TRUST

## INSTRUMENT OF RESIGNATION OF TRUSTEE
## AND APPOINTMENT OF SUCCESSOR TRUSTEE

The undersigned, SASH A. SPENCER, now acting as a Trustee of the Orly Genger 1993 Trust under Trust Agreement dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, does hereby, pursuant to the provisions of Section B of Article SEVENTH of said Trust Agreement, appoint ERIC GRIBETZ to act as a Trustee under said Trust Agreement in the place and stead of the undersigned in the event of the resignation of the undersigned as such a Trustee, and the undersigned does hereby resign as such a Trustee as of the date hereof.

Dated: October 22, 2004

_____
Sash A. Spencer

STATE OF      NY      )
                      ) ss.
COUNTY OF    NY      )

On the 22nd day of October, 2004, before me, the undersigned, personally appeared SASH A. SPENCER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his capacity as aforesaid, and that by his signature on the instrument, he executed the same in the State and County set forth above and in the City/~~Town/Village~~ of ____New York____.

_____
Notary Public

RITA L. SETO-LAI
Notary Public, State of New York
No. 01SE6083338
Qualified in New York County
Commission Expires November 12, 2006

992351P.V-1

## ORLY GENGER 1993 TRUST

### INSTRUMENT OF RESIGNATION OF TRUSTEE
### AND APPOINTMENT OF SUCCESSOR TRUSTEE

The undersigned, LAWRENCE M. SMALL, now acting as a Trustee of the Orly Genger 1993 Trust under Trust Agreement dated December 13, 1993 between ARIE GENGER, as Grantor, and LAWRENCE M. SMALL and SASH A. SPENCER, as Trustees, does hereby, pursuant to the provisions of Section B of Article SEVENTH of said Trust Agreement, appoint DAVID A. PARNES to act as a Trustee under said Trust Agreement in the place and stead of the undersigned in the event of the resignation of the undersigned as such a Trustee, and the undersigned does hereby resign as such a Trustee as of the date hereof.

Dated: October **22**, 2004

_____
Lawrence M. Small

CITY OF WASHINGTON    )
                      ) ss.
DISTRICT OF COLUMBIA  )

On the **22d** day of October, 2004, before me, the undersigned, personally appeared LAWRENCE M. SMALL, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his capacity as aforesaid, and that by his signature on the instrument, he executed the same in the City of Washington, District of Columbia.

_____
Notary Public

Moire M. Queen
Notary Public, District of Columbia
My Commission Expires 09-30-2006

9923320\V-1

VIA CERTIFIED MAIL

David Parness
29 Elkachi Street
Tel Aviv 69497
Israel

Arie Genger
2600 Williams Island Blvd
Aventura, FL 33160

This is to confirm that effective immediately, I hereby resign as a trustee of the Orly Genger 1993 Trust and the Sagi Genger 1993 Trust.

Sincerely,

Eric Gribetz

Sworn to before me this 12th day of February, 2007

Notary Public

KELLY OWEN
Notary Public, State of New York
No. 01OW6026357
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires June 14, 20__

## MEMORANDUM

**TO:**      MR. ARIE GENGER

**FROM:**      DAVID PARNES

**SUBJECT:**      THE ORLY GENGER 1993 TRUST

**DATE:**      MAY 1, 2007

**CC:**      MS. LEAH FANG

Please be advised that on April 26, 2007 I resigned from the position of trustee of the Orly Genger 1993 Trust. Ms. Leah Fang has been appointed successor trustee in my stead as of April 26, 2007.

## Eve Rachel Markewich

| | |
|---|---|
| **From:** | carlyn.mccaffrey@weil.com |
| **Sent:** | Wednesday, December 26, 2007 3:53 PM |
| **To:** | Eve Rachel Markewich |
| **Subject:** | The Orly Genger 1993 Trust |

**Attachments:** DOC22.PDF

Eve,

Attached is a copy of the document signed by Leah Fang purporting to appoint Patricia Enriquez as successor trustee of the Orly Genger 1993 Trust and signed by Patricia Enriquez purporting to accept the appointment (the "Document").

Article SEVENTH B. of the trust agreement that established the Orly Genger 1993 Trust (the "Trust Agreement") requires that an appointment of a successor trustee be made by an instrument of appointment signed and acknowledged by the individual making the appointment and delivered in accordance with the provisions of Section G of Article SEVENTH. Article SEVENTH D. of the Trust Agreement requires that a successor Trustee qualify as a successor Trustee by the execution of a signed and acknowledged instrument of acceptance and by delivering the instrument in accordance with the provisions of Section G of Article SEVENTH. Article SEVENTH G provides that an instrument that is directed to be delivered is to be delivered in person or by mailing a copy of the instrument by registered or certified mail to each Trustee, other than the one who has executed the instrument, and to either the Grantor or any one of more of the adult individuals to whom income may then be paid.

Patricia has told me that she did not acknowledge her signature before a notary and that she did not satisfy the delivery requirement. She does not know whether Leah Fang acknowledged her signature before a notary or satisfied the delivery requirement..

Based on the facts described to me by Patricia and my reading of the Trust Agreement, I have advised Patricia that she has not qualified as a successor trustee of the Orly Ganger 1993 Trust. She has told me that she has no intention of taking the additional steps necessary to qualify as trustee.

Carlyn S. McCaffrey
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Tel 212-310-8136
Fax 212-310-8007
carlyn.mccaffrey@weil.com

"Eve Rachel Markewich" <emarkewich@mrlawllp.com>

12/26/2007 03:08 PM

To <carlyn.mccaffrey@weil.com>

cc

Subject

Carlyn,

Thanks for speaking with me on the phone this afternoon, on behalf of your client, Patricia Enriquez.

I'd appreciate your confirmation of what I understand the upshot of our conversation to be:

1.    Patricia was never effectively appointed trustee, pursuant to the terms of the Trust; and

2.    Patricia does not take the position that she was appointed, and she is not currently acting as Trustee, nor has she ever done so.

Thanks.

Eve Rachel Markewich
MARKEWICH AND ROSENSTOCK LLP
8 East 41st Street; Fifth Floor
New York, New York 10017
Tel. (212) 542-3156; Fax. (212) 481-1761
emarkewich@mrlawllp.com

< END >

< END >

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you

12/27/2007

Leah Fang, Esq.
630 1ʳᵗ Avenue
Apt. 25G
New York, NY 10016

December 12, 2007

Ms. Patricia Enriquez
414 7th Avenue, #2
Brooklyn, NY 11215

Dear Patricia,

I have acted as Trustee of the Orly Genger 1993 Trust ("Trust"), since April 26, 2007.

Pursuant to Section B of Article Seventh of the Trust Agreement dated December 13,
1993, I hereby appoint you to serve as replacement trustee.

Kindly acknowledge your acceptance to act as successor trustee by signing below and
returning a copy to me at which time your appointment and my resignation will become
effective.

Sincerely,

Leah Fang

Acknowledged:

Patricia Enriquez

# Memorandum

To:    David Parnes

CC:    Dalia Genger

From:  Sagi Genger

Date:  August 2, 2006

Re:    Assignment by TPR of D&K LP's 1993 Promissory Note

Dear David,

This will set in writing what I recently proposed to you:



I fully acknowledge the commitment to you to sponsor your MBA studies;

Instead of making the next payment due, in connection with the MBA fees (approximately $12,000), TPR Investment Associates Inc. ("TPR") will assign to you a promissory note made in its favor by D&K LP ("Note").

This promissory Note will be assigned to you on an 'as is' basis.

D&K LP and its partners have a variety of claims against TPR, and deny the enforceability of the Note.

5.  Collections by you on the Note will be deposited into a separate account, preferably with a mutually acceptable escrow agent. Such amounts collected will be released to you on the earlier of (a) December 31, 2013, or (b) your declaration that you will make no further claims in connection with the Note.

6.  D&K will refrain from making claims against TPR, so long as the Note is not enforced by you against it. However, should your collection efforts result in, D&K making a counter-claim against TPR – the funds in the escrow account will be applied towards TPR's defense and any other related outlays, before making any distributions therefrom.

7.  You will not assign the Note to any third party without the consent of D&K and TPR.

1

August 2, 2006

8. TPR will retain the right to 7.5% of your net collections and the right to enforce the note.

9. Additional terms in connection with the assignment of the Note will follow.

Be advised that we hereby waive all past, present or future existing conflict of interest we may have.

TPR Investment Associates, Inc.
By: Sagi Genger, President

D&K LP
By: D&K GP LLC
By: Sagi Genger, Managing Member

Read this ___ day of August 2006

2