**EXHIBIT 26**

Genger v Genger, 39 Misc.3d 1235(A) (2013)
972 N.Y.S.2d 143, 2013 N.Y. Slip Op. 50886(U)

Unreported Disposition

🚩 KeyCite Red Flag - Severe Negative Treatment
Affirmed as Modified by Genger v. Genger, N.Y.A.D. 1 Dept., September 23, 2014

39 Misc.3d 1235(A), 972 N.Y.S.2d 143 (Table), 2013 WL 2396219 (N.Y.Sup.), 2013 N.Y. Slip Op. 50886(U)

This opinion is uncorrected and will not be published in the printed Official Reports.

*1 Orly Genger, in her individual capacity and on behalf of the Orly Genger 1993 Trust (both in its individual capacity and on behalf of D & K Limited Partnership), Plaintiff,
v.
Dalia Genger, SAGI GENGER, LEAH FANG, D & K GP LLC, and TPR INVESTMENT ASSOCIATES, INC., Defendants.

109749/09
Supreme Court, New York County
Decided on May 29, 2013

CITE TITLE AS: Genger v Genger

ABSTRACT

Pleading
Amendment
Answer—Prejudice

Injunctions
Preliminary Injunction
Prohibiting Foreclosure or Execution upon Trust without Requiring Posting of Additional Undertaking

Genger v Genger, 2013 NY Slip Op 50886(U). Pleading—Amendment—Answer—Prejudice. Injunctions—Preliminary Injunction—Prohibiting Foreclosure or Execution upon Trust without Requiring Posting of Additional Undertaking. (Sup Ct, NY County, May 29, 2013, Jaffe, J.)

APPEARANCES OF COUNSEL

For plaintiff Orly Genger and Orly Genger 1993 Trust:
Yoav M. Griver
Bryan D. Leinbach
ZEICHNER ELLMAN & KRAUSE
575 LEXINGTON AVENUE - 10TH FL
NEW YORK, NEW YORK
10022
(212) 223-0400
For defendant Dalia Genger:
Robert A. Meister
Marisa Warren
PEDOWITZ & MEISTER LLP
570 Lexington Avenue, 18th Floor
New York, New York 10022
(212) 403-7333
For defendant TPR Investment Associates, Sagi Genger and Sagi Genger 1993 Trust:
John Dellaportas
Evan Michailidis
DUANE MORRIS LLP
1540 BROADWAY
NEW YORK, NY
10036
For defendant Leah Fang: JUDITH LISA BACHMAN, ESQ.
254 S. MAIN STREET, SUITE 306
NEW YORK, NY
10956
212-501-2219
For defendants:
YANKWITT & MCGUIRE, LLP
140 GRAND STREET, PENTHOUSE #2
WHITE PLAINS, N.Y.
10601
For defendant Rochelle Fang and as Trustee for Sagi Genger 1993 Trust:
Desmond C.B. Lyons
LYONS MCGOVERN LLP
39 Knollwood Road, Suite 216
White Plains, New York 10603
(914) 631-1336

OPINION OF THE COURT

Barbara Jaffe, J.

This decision and order addresses motion sequence numbers 013, 014, 015, and 016. In motion sequence number 013, defendant TPR Investment Associates, Inc. (TPR) seeks an order granting it leave to amend its answer to add an affirmative defense of release, and granting

**Genger v Genger, 39 Misc.3d 1235(A) (2013)**
972 N.Y.S.2d 143, 2013 N.Y. Slip Op. 50886(U)

it summary judgment dismissing the second amended complaint (complaint) of Orly Genger, in her individual capacity and on behalf of the Orly Genger 1993 Trust (Orly Trust) and on behalf of D & K Limited Partnership (D & K LP) (collectively, plaintiff). Plaintiff opposes and, by motion sequence number 014, cross moves for an order lifting the stay of discovery and for sanctions against defendants Dalia Genger, Sagi Genger, Leah Fang, D & K GP, LLC (D & K GP), and TPR.

In motion sequence number 015, brought on by order to show cause, plaintiff seeks, *inter alia*, to enjoin defendants preliminarily from foreclosing on the Orly Trust's interests in TPR and Trans Resources Inc. (TRI, a subsidiary of TPR), and to require Sagi and Dalia to post $4.44 million as security for certain debts that encumbered the Orly Trust's assets in a series of transactions whereby nonparty Manhattan Safety Company Ltd. (Manhattan Safety) was assigned a restated promissory note issued in 1993 by D & K LP in favor of TPR, the assignor.

In motion sequence number 016, Fang, the former trustee of the Orly Trust, seeks an order granting her summary judgment dismissing the complaint as against her.

The motions are consolidated for disposition.

### I. BACKGROUND

The background of this action is set forth in several opinions and decisions of this court and the Delaware courts, among others. Additional background is furnished here to address the instant motions. *2

Arie Genger is Orly and Sagi's father, and Dalia's husband before their 2004 divorce. Arie founded TPR and TRI, and in 1993, he established the Orly Trust and the 1993 Sagi Genger Trust (Sagi Trust) (collectively, the Trusts) for his children as part of a family estate plan. He funded each Trust with a $600,000 gift and assigned each a 48 percent interest in D & K LP (Complaint, ¶ 19). The remaining 4 percent of D & K LP was held by Dalia, who also later held a 99 percent interest in D & K GP, the general partner of D & K LP. As a result, each Trust became a limited partner of D & K LP. (*Id.*, ¶ 20).

After the Trusts were funded, D & K LP purchased 240 shares of TPR's common stock for $10,200,000, a 49 percent interest. The purchase price was satisfied as follows: (1) the Trusts each paid $600,000; (2) Dalia paid $50,000, and (3) Dalia, as the general partner of D & K LP acting on its behalf, executed a promissory note in favor of TPR for $8,950,000 (1993 Note). The 1993 Note required that D & K LP repay principal and interest in annual installments over ten years, and the Trusts and Dalia assumed liability for repayment in proportion to their respective ownership interests in D & K LP. (*Id.*, ¶¶ 21-22). The 1993 Note was secured by D & K LP's pledge of its 240 shares in TPR (pledge). (*Id.*, ¶ 23). As a result, each of the Trusts held a 23.52 percent indirect interest in TPR, Dalia held a 1.96 percent indirect interest in TPR, and Arie held a 51 percent direct interest in TPR. (*Id.*, ¶ 24).

In the complaint, it is alleged that all of the Genger family members, including those who manage or control TPR, understood that the 1993 Note and Pledge were created solely for tax and estate planning purposes, and that they were not to be collected and enforced. (*Id.*, ¶ 25). It is also alleged that in the course of the arbitration proceedings conducted in connection with the 2004 Genger divorce, the 1993 Note was adjudicated as "worthless and uncollectible," based on the submissions and testimony of Dalia, as TPR's board member, Sagi, as TPR's president and CEO, and David Parnes, as TPR's vice president, that the 1993 Note and Pledge were "never intended to be enforced." (*Id.*, ¶ 26).

Pursuant to Arie's and Dalia's 2004 divorce settlement, Dalia obtained control of TPR, and in exchange, Arie and the trusts would directly hold their interests in TRI. The divorce stipulation provides that: (1) Dalia receive Arie's 51 percent interest in TPR and retain her 4 percent interest in D & K LP via D & K GP; and (2) TPR's 52.85 percent interest in TRI be transferred to Arie and the Trusts such that Arie would hold 13.99 percent of the TRI shares and each Trust would hold 19.43 percent of the TRI shares; with the remaining 47.15 percent of the TRI shares to be held by the "Trump Group," a TRI minority shareholder in 2004. (*Id.*, ¶ 28).

Dalia and Arie's bitter divorce spawned the allegations that Dalia and Sagi had colluded to destroy Arie financially, and that their actions threatened Orly's destruction as well. (*Id.*, ¶ 31). Soon after the divorce, Dalia ceded to Sagi control of TPR and D & K LP, and it is alleged that, by forming D & K GP, Dalia and Sagi attempted to shield themselves from personal liability stemming from their interests in D & K LP, while exposing the Trusts to potential liability to TPR on the 1993 Note. (*Id.*, ¶¶ 32-33). After Sagi obtained control from Dalia over TPR and its interest as payee on the 1993 Note, it is also alleged that he used his position as CEO of TPR and as manager of D & K LP to engage in self-dealing with respect

20-01010-jlg Doc 13-26 Filed 06/25/20 Entered 06/25/20 23:33:41 Exhibit 26 Pg 4 of 9
Case 1:19-cv-06642-LGS-DCF Document 54-11 Filed 11/13/19 Page 4 of 9

Genger v Genger, 39 Misc.3d 1235(A) (2013)
972 N.Y.S.2d 143, 2013 N.Y. Slip Op. 50886(U)

to the 1993 Note in order to disadvantage Orly and the Orly Trust financially. (*Id.*, ¶¶ 37-41).

In 2007, Sagi's sister-in-law, defendant Fang, was appointed trustee of the Orly Trust. Orly alleges that Fang colluded with Sagi to diminish the value of the Orly Trust by entering into *3 agreements that would allow the Orly Trust's interest in the TPR shares and the TRI shares to be pledged or encumbered by Sagi and/or TPR without notice to Orly. (*Id.*, ¶¶ 43-44). Specifically, in November 2007, Fang as trustee and Sagi as manager of D & K GP, the general partner of D & K LP, signed the "Amended and Restated Limited Partnership Agreement" of D & K LP (D & K Agreement), which granted D & K GP the authority to pledge or otherwise encumber Orly Trust's interest in the TRI shares for the benefit of the partnership, without providing any notice or benefit to Orly and the Orly Trust. (*Id.*, ¶¶ 72-75). In January 2008, upon Fang's resignation, Dalia was appointed as successor trustee to the Orly Trust, and then divested herself of her interest in the TPR shares. (*Id.*, ¶ 39).

In January 2009, Dalia, as successor trustee to the Orly Trust, and Sagi, on behalf of D & K GP, along with TPR, then under Sagi's control, entered into an agreement entitled "Meeting of Partners of D & K LP," in which it was agreed that D & K GP would sign for D & K LP and its limited partners when making their assets subject to a pledge in the same manner that the TPR shares were pledged in conjunction with the 1993 Note (Meeting Agreement). (*Id.*, ¶ 76). The D & K Agreement and the Meeting Agreement were prepared and executed without Orly's knowledge, even though Orly requested information about the Orly Trust's assets during Fang's and Dalia's respective tenures as trustee. (*Id.*, ¶ 79).

Repayments on the 1993 Note were made by D & K LP until 1999, and in keeping with the parties' understanding that the 1993 Note obligation would not be enforced, no attempt was made to collect on it for almost 10 years until August 2008 when Sagi sought to enforce it on behalf of TPR by causing TPR to send a notice of default to himself as the manager of D & K LP. (*Id.*, ¶¶ 50, 64). In February 2009, the 1993 Note was foreclosed upon at an auction at which the 240 shares of TPR stock pledged by D & K LP as collateral were purchased by TPR for $2.2 million, thereby decreasing D & K LP's obligation, but leaving a "deficiency" of approximately $8.8 million guaranteed by the Trusts. (*Id.*, ¶¶ 65-70). Orly Trust's interest in D & K LP's interest in TPR, the Orly Trust's sole asset, was thereby transferred to TPR, resulting in a serious financial loss to Orly and the Orly Trust. (*Id.*,

¶ 71). Plaintiff alleges that the deficiency "manufactured by this sham auction" gave Sagi and TPR a potential basis upon which to foreclose on the Orly Trust's remaining principal asset, its interest in the TRI shares. (*Id.*, ¶ 70).

On August 22, 2008, the Trump Group and TPR entered into a stock purchase agreement whereby TPR agreed to sell the Sagi Trust's shares of TRI stock to the Trump Group for $26.7 million, which would result in the Trump Group becoming TRI's majority stockholder. (*Id.*,

¶¶ 82-84). Moreover, that same day, the parties entered into a side letter agreement whereby TPR agreed that if the transfers made by TPR of the TRI shares to the Orly Trust and to Arie in the Divorce Stipulation were determined to be invalid, the Trump Group would be entitled to purchase directly from TPR the Orly Trust's TRI shares and Arie's TRI shares at less than 60 percent of the per share price paid by the Trump Group for the Sagi Trust TRI shares. These agreements, and the transactions contemplated thereunder, engendered significant litigation in various jurisdictions, including Delaware, the Southern District of New York (SDNY), as well as this court and the Surrogate's Court.

In an amended decision dated July 28, 2010, which replaced the June 28, 2010 decision addressing motion sequence numbers 001 through 006, the justice previously assigned to this Part denied defendants' motions to dismiss Orly's first amended complaint, granted Orly's request *4 for leave to file the complaint to add Fang as a defendant, and issued certain injunctive relief against defendants in Orly's favor. (*See Genger v Genger*, New York County, July 28, 2010, Feinman, J., index number 109749/2009) (July 28 decision).

The complaint contains 16 causes of action, including: breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, tortious interference with contract, fraud, aiding and abetting fraud, constructive trust, conversion, replevin, and promissory estoppel, as well as requests for various declaratory judgments and injunctive reliefs. In sum, plaintiff alleges that the defendants acted in concert to defraud Orly and loot the Orly Trust of its assets.

## II. TPR'S MOTION AND PLAINTIFF'S CROSS MOTION

*A. TPR's motion for leave to amend its answer*

TPR filed its answer to the complaint on October 7, 2010, and by motion dated July 12, 2012 (sequence number 013),

seeks leave to amend its answer to plead release as an additional affirmative defense, asserting that after filing its answer, it entered into a settlement on March 16, 2012 (2012 Settlement) with the Orly Trust, acting through Dalia, and D & K LP, acting through D & K GP, that restates and amends an earlier settlement dated October 3, 2011 among the same parties (2011 Settlement), pursuant to which they agreed, *inter alia*, to release each other.

Pursuant to the 2011 Settlement, TPR agreed to relinquish in favor of the Orly Trust any economic interest in the Orly Trust's TRI shares and sale proceeds, including the $10.3 million resulting from TPR's sale to the Trump Group of those shares under the 2008 side letter agreement. Orly Trust, acting through Dalia, agreed to transfer to TPR its interest in D & K LP and disclaim its interest in it (D & K Interest) as well as any shares of TPR (TPR Interest). It was also agreed that the Orly Trust would be released from its $4.5 million obligation under the 1993 Note, that the 1993 Note would be cancelled and replaced with the 2011 Note in the amount of $4 million,[1] and that TPR would relinquish its claim to the remaining $500,000 under the 1993 Note. The parties to the settlement then agreed to release each other, including their directors, agents, trustees, fiduciaries, etc. in connection with the 1993 Note, the Orly Trust TRI shares, the D & K Interest, the TPR Interest, and the 2008 side letter agreement.

As an additional provision, the parties agreed that the 2011 Note was to be made payable to TPR on the earlier of November 1, 2012 or Orly Trust's receipt of any sale proceeds of the Orly Trust TRI shares, and that the removal of Dalia as trustee would be deemed to constitute an event of default, making the 2011 Note immediately due and payable.

In the 2012 Settlement, the parties added a provision between D & K LP and TPR whereby they agreed that the parties' rights vis-a-vis the Orly Trust under the D & K Agreement and the Meeting Agreement would be canceled. Thereafter, in May 2012, TPR assigned the 2011 Note to Manhattan Safety, a St. Kitts company, in exchange for an alleged $40,000, and the Orly Trust, by Dalia, signed another note for $200,000, thereby increasing the 2011 Note to $4,240,000 (New Note). The Orly Trust, by Dalia, also agreed, among other things, that it would: (1) waive all defenses it would have to repayment, including any defenses as to Manhattan Safety and TPR; (2) indemnify Manhattan Safety if Orly challenges the 2011 Note, the New Note, and the related credit agreement; (3) pay for all costs of collection, including legal *5 fees; and (4) make Dalia's removal as trustee an event of default, rendering the New Note immediately due and payable.

In support of its motion for leave to amend its answer to add the affirmative defense of release, TPR argues that because the 2011 and 2012 Settlements were entered into after the answer was filed, leave to amend should be granted pursuant to CPLR 3025(b).

"Leave to amend a pleading should be freely given, provided that the amendment is not palpably insufficient, does not prejudice or surprise the opposing party, and is not patently devoid of merit." (*Sheila Props., Inc. v A Real Good Plumber, Inc.*, 59 AD3d 424, 426 [2d Dept 2009] [internal citation omitted]). Moreover, "[a] determination whether to grant such leave is within the Supreme Court's broad discretion, and the exercise of that discretion will not be lightly disturbed." (*Gitlin v Chirinkin*, 60 AD3d 901, 902 [2d Dept 2009]).

It is undisputed that Orly was unaware of the settlements until July 6, 2012, when the relevant documents were produced as part of Dalia's document production (Orly Affidavit, dated Aug. 1, 2012, ¶ 2), and the transactions contemplated by the settlements, including the releases, which TPR maintains have been executed and bind Orly and the Orly Trust, are prejudicial to Orly and the Orly Trust, as well as contrary to the court's prior decisions. That the settlements were entered into on a later date is not dispositive. Consequently, there is an insufficient basis upon which to grant leave TPR leave to amend its answer.

### B. TPR'S MOTION FOR SUMMARY JUDGMENT

TPR also seeks summary judgment dismissing the complaint on the ground that the settlements released it from any and all liability, and specifically that: (1) Dalia is the trustee of the Orly Trust and is empowered to enter into settlements that contain releases; (2) all of Orly's claims are brought on behalf of the releasors (i.e., the Orly Trust and D & K LP), but Orly has no right to bring derivative claims when the releasors themselves can no longer pursue them directly under the settlements; and (3) Orly has no standing to assert derivative claims on behalf of D & K LP because the Orly Trust no longer owns any interest in it. (TPR's Brief at 7-20).

In the July 28, 2010 decision, the justice then assigned to this Part held that Orly, as the beneficiary of the Orly Trust, has the right to assert causes of action on behalf of the Orly Trust,

20-01010-jlg Doc 13-26 Filed 06/25/20 Entered 06/25/20 23:33:41 Exhibit 26
Pg 6 of 9
Case 1:19-cv-09642-LGS-DCF Document 54-11 Filed 11/15/19 Page 6 of 9

Genger v Genger, 39 Misc.3d 1235(A) (2013)
972 N.Y.S.2d 143, 2013 N.Y. Slip Op. 50886(U)

and that because the Orly Trust is a partner of D & K LP, Orly has the right to sue on its behalf. Thus, any argument that Orly may not bring derivative claims on behalf of the Orly Trust or D & K LP against TPR fails given the law of the case.

In the same decision, the court also enjoined defendants TPR, Sagi, Dalia, and D & K GP from transferring, pledging, assigning or disposing of D & K LP's shares in TPR pending a judicial determination as to the ownership of the shares. (*Id.* at 32). Yet TPR argues that it cannot be enjoined because the settlement "does not actually transfer, sell, pledge, assign or otherwise dispose of D & K [LP]'s shares in TPR" (TPR Reply Brief), however, the 2011 Settlement provides, in relevant part, that "the [Orly] Trust - irrespective of any claim made or asserted on its behalf by Orly Genger - hereby transfers to TPR its limited partnership interest in DK (the DK Interest') and disclaims any interest in, or any shares of TPR, either directly or indirectly through DK (the TPR Interest')" (2011 Settlement Agreement, ¶ 1[b]). Therefore, the Orly Trust's direct interest in D & K LP and its indirect interest in TPR (through D & K LP) were adversely affected by the settlement, inasmuch as the Orly Trust was required to disclaim any and all interest in the TPR shares. The 2012 Settlement retained this language. (2012 Settlement *6 Agreement, ¶ 1[b]).

Thus, it is undisputed that any transfer to TPR of the Orly Trust's interest in TPR would involve a transfer through and by D & K LP, because the Orly Trust is a partner of D & K LP which, in turn, is a TPR shareholder. Also, the Orly Trust and D & K LP are parties to the settlements and are purportedly required to exchange mutual releases with TPR which, among other things, release all claims and causes of action in connection with the DK Interest and the TPR Interest. (*See* 2011 and 2012 Settlement Agreements, ¶ 4). The settlements thus affect or otherwise dispose of the Orly Trust's and D & K LP's interests in TPR.

Moreover, TPR ignores the fact that Orly is suing on behalf of D & K LP, whose interest in TPR is explicitly addressed in the injunctive provision of the July 28 decision. Indeed, TPR admits that Orly Trust's interest in TPR is affected by the settlements, stating that, "even were [defendants] not so released, all of Orly's claims brought on behalf of D & K' would still be barred because, under Section 1 of the Settlement Agreement, the [Orly] Trust has transferred to TPR its limited partnership interest in D & K." (TPR Brief at 9).

TPR also ignores the injunctive relief granted in favor of plaintiff because the court state that "the family shares at issue are intertwined among various family [corporate] entities, [and] defendants have not offered sufficient evidence to show that the shares of either TPR or [TRI] owned by the Orly Trust are not unique' and should not be protected from transfer, sale, or assignment until this litigation is ultimately decided." (July 28 decision, at 14). Yet, TPR and other defendants entered into settlements that impacted the Orly Trust's interests in the TPR shares and/or the TRI shares before any judicial determination of their ownership. Hence, the settlements violate the letter and spirit of the injunctive provision of the decision.

### C. PLAINTIFF'S CROSS MOTION

On December 28, 2011, in the related action under index number 651089/2010, the previously assigned justice enjoined defendants Dalia, Sagi, and TPR from using or spending the proceeds derived from TPR's purported sale to the Trump Group of the Orly Trust shares and the Arie shares in TRI, pending a judicial determination of their beneficial ownership. TPR and the Trump Group were also directed to give plaintiffs Arie and Orly 10 business days' notice of any future transactions that may impact such shares. In her cross motion (sequence number 014) filed in this action, Orly opposes TPR's motion and seeks sanctions against defendants for violating the restraint and injunction set forth in the July 28 and December 28 decisions.

TPR denies that the settlements violate the December 28 decision and the notice requirement set forth therein because TPR was not required to "notify [Orly] before selling its own promissory note [i.e., the 2011 Note] to a third party [i.e. Manhattan Safety]." (TPR's Brief In Opposition to Plaintiff Cross Motion for Sanctions, filed Aug. 10, 2012 at 4). Notably, in connection with the 2012 Settlement and the May 2012 assignment of the 2011 Note to Manhattan Safety, Dalia, on behalf of the Orly Trust, and TPR agreed to use the proceeds derived from TPR's purported sale of the Orly Trust TRI shares to the Trump Group to pay the 2011 Note and/ or New Note. Even though no payment has yet been made, the above arrangement impacts the Orly Trust TRI shares to the extent it seeks to "use" or "spend" the sale proceeds to pay the 2011 Note or New Note, which, according to plaintiff, is a "sham transaction" in that TPR/Sagi tries to revive the worthless 1993 Note, and replace it with a purportedly valid 2011 Note that is assigned to an off-shore entity located outside of this court's jurisdiction. *7

20-01010-jlg Doc 13-26 Filed 06/25/20 Entered 06/25/20 23:33:41 Exhibit 26
Case 1:19-cv-09642-LGS-DCF Document 54-11 Filed 11/15/19 Page 7 of 9
Pg 7 of 9

Genger v Genger, 39 Misc.3d 1235(A) (2013)
972 N.Y.S.2d 143, 2013 N.Y. Slip Op. 50886(U)

Accordingly, the transactions under the settlements, as agreed to by defendants including TPR, impact Orly Trust's interest in the TRI shares, and thus defendants should have given Orly 10 days' notice pursuant to the December 28 decision. The failure to do so violates the court's order and subjects defendants to sanctions, namely, plaintiff's costs in preparing and filing these motions, and in answering defendants' motions.

Plaintiff's request to lift the automatic stay of discovery is mooted by compliance conference order dated September 19, 2012, which lifted the stay in connection with TPR's summary judgment motion. In any event, because TPR's summary judgment motion is denied (*supra*, II.B.), the stay is unwarranted.

As the settlement agreements are contracts entered into in violation of court orders, they are either void or voidable. (*Gerdus v New York Council 66 of Am. Fed. of State, County & Mun. Empls.*, 101 AD2d 682 [3d Dept 1984]; *see also Skiff-Murray v Murray*, 17 AD3d 807 [3d Dept 2005] [transfer of subject real property in violation of restraining order would make new deed void or voidable]). At a minimum, the settlements and releases are subject to judicial review and approval, notwithstanding TPR's contention that they are valid and enforceable and that the claims of Orly and the Orly Trust against TPR have been settled and released.

Moreover, TPR's asserted claim to the $10.3 million proceeds, held in escrow in connection with its sale to the Trump Group of the Orly Trust's interest in the TRI shares, is an untenable attempt to bypass a judicial determination as to the beneficial ownership of the shares and proceeds thereof. In its opposition brief (docket no. 266), TPR asserts that, "[p]ursuant to the Settlement Agreement, TPR does relinquish its economic interest in certain TRI shares to the Orly Trust, of which Orly is the main beneficiary," and that by "relinquishing its right to the aforementioned TRI shares[, TPR obtained] in exchange [] a general release of liability." (TPR Opposition Brief at 1, 10-11). TPR's assertion of ownership interest in the TRI shares and the escrowed $10.3 million cannot be reconciled with its acknowledgment that "Orly is the main beneficiary." Nor can TPR's unilateral declaration of ownership be reconciled with the undisputed fact that the issue of ultimate beneficial ownership in such shares and the related proceeds has not yet been judicially determined by a court of competent jurisdiction. (Dec. 28 decision, at 14). That the Delaware court has determined that TPR is the record owner of the TRI shares is immaterial absent a judicial determination as to their beneficial ownership.

The complaint also raises significant issues of fact as to whether defendants, including TPR, have breached their fiduciary duties and engaged in collusion and self-dealing.

### III. FANG'S MOTION

Fang, the former trustee of the Orly Trust, seeks dismissal of the complaint against her, contending that: (1) she was given a full release by Dalia, the successor trustee, after she served as trustee for only nine months; (2) the Orly Trust instrument granted the trustee the power to settle any claims, and Dalia was empowered to grant her the release; (3) under the settlement agreements, she was also released of any and all liability; and (4) under New York trust law, a trustee, such as Dalia, is authorized to settle any claim in favor of the trust estate or in favor of third persons against the estate. (Estates, Powers and Trusts Law [EPTL] § 11-11.1[b][13]).

As discussed *supra*, II.C., the releases under the settlements are void or voidable because they violate the injunctive and notice provisions of prior court orders. Also, Fang has never explained why she, on behalf of the Orly Trust, signed the D & K Agreement, which granted D & *8 K GP the authority to pledge the Orly Trust's interest in the TRI shares for the benefit of D & K LP, waived the Orly Trust's right to bring action against D & K GP, and never informed Orly of this arrangement despite her request. Because of Fang's involvement in this arrangement, Orly was granted leave in the July 28 decision to add Fang as a defendant and asserts claims of breach of fiduciary duty and fraud against Fang.

While exculpatory clauses in a trust agreement may be valid and enforceable, the trustee nevertheless remains liable "if he commits a breach of trust in bad faith or intentionally or with reckless indifference to the interests of the beneficiaries, or if he has personally profited through a breach of trust because the trustee must be accountable for acts committed while in a fiduciary relationship." (*Matter of Jastrzebski*, 97 AD3d 819 [2d Dept 2012]; *see also Matter of Tydings*, 32 Misc 3d 1204[A] [Sur Ct, Bronx County 2011]). Similarly, New York's trust law prohibits the inclusion in a trust instrument of a provision exculpating a trustee of liability, as an exculpation for failure to uphold one's fiduciary duty and exercise reasonable care is against public policy. (EPTL § 11-1.7).

Here, that the release was signed by Dalia, the successor trustee, does not vitiate the public policy consideration that a former trustee should not be exculpated for a breach of fiduciary duty simply because a successor trustee has signed a release. And, even if the release was arguably binding on the beneficiary, as Fang urges, without first obtaining Orly's consent or providing her with notice, the complaint contains sufficient allegations of breach of fiduciary duty, fraud, and collusion against defendants Sagi, Dalia and Fang, which raise factual issues.

### IV. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff seeks, *inter alia*, a temporary restraining order (TRO) and preliminary injunction to restrain and enjoin defendants from encumbering the Orly Trust with debts or selling the trust assets in connection with the settlements and Manhattan Safety transactions. On August 9, 2012, the previously assigned justice issued a TRO (docket no. 242) restraining defendants "from taking any action that encumbers the trust with debt and from liquidating, transferring or selling any stocks or other assets of the trust," and directing them to inform Orly "within 24 hours of the receipt of any notice of default or other attempt to enforce any provision of the notes in any way." The TRO was continued and modified by interim order dated August 15, 2012 (docket no. 311).

In support of the instant motion, which constitutes an extension of her cross motion to lift the automatic stay and for sanctions (sequence no. 014), Orly argues that additional injunctive relief is necessary to protect the Orly Trust's assets in the Manhattan Safety transactions because defendants have disregarded and violated prior status quo orders of this court. She seeks a preliminary injunction: (1) enjoining the defendants from participating in or allowing any party such as Manhattan Safety to foreclose or otherwise execute upon the Orly Trust's interest in the TRI shares; and (2) requiring Sagi and Dalia to deposit $4.44 million with the court, as security for the debts that were purportedly incurred by the Orly Trust in connection with the Manhattan Safety transactions, including the New Note ($4.24 million), an additional $200,000 promissory note, and any other debt instrument (Notes).

TPR opposes the motion, and argues that the injunctive relief sought by plaintiff should be denied based on the settlements and the releases.

For the reasons stated above (II.C.), the settlements and releases are void or voidable *9 because they violate the status quo orders of the court and public policy. The request to enjoin defendants including TPR from participating in any attempt by Manhattan Safety or allowing Manhattan Safety to foreclose or otherwise execute upon the Orly Trust's interest in the TRI shares is appropriate under the circumstances, especially as Manhattan Safety is an off-shore entity located outside of this court's jurisdiction and may try to enforce the Notes against the Orly Trust without notice.

Moreover, under the Settlements and related transactions, Manhattan Safety may enforce and collect on the Notes at the earliest of the following events: (a) Dalia no longer serving as the trustee of the Orly Trust; (b) the resolution of the federal interpleader action; or (c) November 1, 2014. As it appears that the interpleader action has been resolved, Manhattan Safety may accelerate the Notes and make them immediately due and payable. This court has also granted specific injunctive relief in plaintiff's favor in the July 28 decision. (*Id.* at 32). Therefore, the requested injunctive relief is warranted.

TPR argues that if a preliminary injunction is granted, Orly should be required to post a $10.3 million bond pursuant to CPLR 6312 (b), which requires a plaintiff to give "an undertaking in an amount to be fixed by the court." TPR argues that $10.3 million is necessary because it was "the principal consideration TPR paid for the release pursuant to the Settlement Agreement." (TPR Opposition Brief, at 19). As the release is void or voidable, whatever amount TPR had purportedly paid for it is irrelevant.

And, in the July 28 decision, the undertaking first posted by plaintiff in the amount of $150,000 for its original application was continued. (*Id.* at 32). This amount remains appropriate, and need not be increased under present circumstances, particularly in light of the fact that TPR has no absolute right to $10.3 million, having conceded that Orly is the main beneficiary.

However, to require Sagi and Dalia to post $4.44 million in personal assets in connection with the settlements and the Manhattan Safety transactions, is unwarranted, and Orly cites no applicable law in support.

Article 62 of the CPLR sets forth the grounds for seeking an order of attachment, a provisional remedy, but Orly articulates no basis for her request, which is akin to a prejudgment

attachment. She merely asserts that "[t]he only way to restore and protect the status quo is for defendants Sagi and Dalia pay $4.44 million into the Court, so funds are available to pay [Manhattan Safety,] if and when it seeks to collect [on the Notes.]" (Pl. Reply Brief, at 2).

Orly has failed, however, to demonstrate that a money judgment in her favor will be insufficient to remedy the alleged harm or that she will suffer irreparable injury so as to justify the granting of injunctive relief under CPLR 6311. Consequently, the requested injunctive or provisional relief is inappropriate. (*See Zodkevitch v Feibush*, 49 AD3d 424, 425 [1st Dept 2008] ["Supreme Court erred in directing appellant to place into an escrow account the funds he allegedly misappropriated since plaintiffs failed to make a clear showing that they would suffer irreparable injury unless that relief were granted, a necessary element on a motion for a preliminary injunction"]).

## V. CONCLUSION

Accordingly, it is hereby

ORDERED, that with respect to motion sequence number 013, defendant TPR *10 Investment Associates, Inc.'s motion for an order seeking leave of the court to amend its answer is denied, and its motion for an order granting it summary judgment dismissing the second amended complaint is also denied; it is further

ORDERED, that with respect to motion sequence number 014, the branch of plaintiff's cross motion seeking an order lifting the automatic stay of discovery is denied as moot, and the branch of the cross motion seeking sanctions against defendants is granted to the extent of plaintiff's costs in preparing and filing the cross motions and opposing defendants' motions; it is further

ORDERED, that with respect to motion sequence number 015, defendants named in this action, except defendant Leah Fang, as well as their agents, assigns, and counsel, are preliminarily enjoined from participating in the foreclosure or execution of or permitting any assignee of the notes that were issued in connection with the settlements and the related transactions to foreclose or execute upon the Orly Genger 1993 Trust's interest in the shares of Trans Resources Inc. until further order of this Court, and that plaintiff is not required to post any additional undertaking for the relief granted herein; and it is further

ORDERED, that with respect to motion sequence number 016, defendant Leah Fang's motion for an order granting summary judgment dismissing the second amended complaint as against her is denied.

ENTER:

_____ Barbara Jaffe, JSC

DATED: May 29, 2013

New York, New York

## FOOTNOTES

Copr. (C) 2019, Secretary of State, State of New York

---

Footnotes

1      In contrast to the Orly Trust, the Sagi Trust was not required to repay obligations under the 1993 Note or the 2011 Note.

---