**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza,*
*Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Rocco A. Cavaliere, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                              Chapter 7

ORLY GENGER,
                                                                    Case No.:  19-13895 (JLG)

                                   Debtor.

------------------------------------------------------------x

DALIA GENGER,

                                   Plaintiff,

                     -against-                                     Adv. Pro. No. 20-01010 (JLG)


ORLY GENGER, MICHAEL BOWEN,
ARIE GENGER, ARNOLD BROSER,
DAVID BROSER, ERIC HERSCHMANN,
THE GENGER LITIGATION TRUST,
ADBG LLC, TEDCO INC., and
DEBORAH PIAZZA as chapter 7 trustee,

                                   Defendants.

------------------------------------------------------------x


## NOTICE OF CHAPTER 7 TRUSTEE'S MOTION
## TO DISMISS DALIA GENGER'S COMPLAINT

TO:    THE HONORABLE JAMES L GARRITY
       UNITED STATES BANKRUPTCY JUDGE

       **PLEASE TAKE NOTICE,** that upon the motion dated June 26, 2020 (the "Motion"),

Deborah J. Piazza, ("Trustee")  shall move before the Honorable James L. Garrity, United States

Bankruptcy Judge, in his courtroom at the United States Bankruptcy Court, One Bowling Green, New York 10004, on **July 21, 2020  at 11:00 a.m.** or as soon thereafter as counsel may be heard, for an order dismissing the complaint filed by Dalia Genger in this adversary proceeding.

        **PLEASE TAKE FURTHER NOTICE,** that objections, if any, to the relief requested in the Motion shall be (i) filed with the Clerk of the Bankruptcy Court on the Court's ECF system; and served upon (ii) Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, New York 10018, Attn: Rocco Cavaliere, Esq., (iii) counsel to the other Defendants; and (iv) delivered to the chambers of the Honorable James L. Garrity, United States Bankruptcy Judge, so that same are received on or before **4:00 p.m. on July 14, 2020**.

Dated:  New York, New York
       June 26, 2020

                    **TARTER KRINSKY & DROGIN LLP**
                    *Attorneys for Deborah J. Piazza,*
                    *Chapter 7 Trustee*

                  By:  s/ Rocco A. Cavaliere
                      Rocco A. Cavaliere
                      1350 Broadway, 11th Floor
                      New York, New York 10018
                      (212) 216-8000

**Tarter Krinsky & Drogin LLP**
*Attorneys for Deborah J. Piazza,*
*Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Rocco A. Cavaliere, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:

ORLY GENGER,

       Debtor.

Chapter 7

Case No.:  19-13895 (JLG)

-------------------------------------------------------------x

DALIA GENGER,

       Plaintiff,

    -against-

ORLY GENGER, MICHAEL BOWEN,
ARIE GENGER, ARNOLD BROSER,
DAVID BROSER, ERIC HERSCHMANN,
THE GENGER LITIGATION TRUST,
ADBG LLC, TEDCO INC., and
DEBORAH PIAZZA as chapter 7 trustee,

       Defendants.

Adv. Pro. No. 20-01010 (JLG)

-------------------------------------------------------------x

## CHAPTER 7 TRUSTEE'S MOTION TO DISMISS DALIA GENGER'S AMENDED COMPLAINT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

JURISDICTION ...................................................................................................................... 2

RELEVANT BACKGROUND ................................................................................................... 2

    A.   The Chapter 7 Case ................................................................................. 3

    B.   Trump Group Settlement Agreement ...................................................... 4

    C.   The 2004 Agreements and Forrest Decisions ......................................... 5

RELIEF REQUESTED ............................................................................................................. 6

BASIS FOR RELIEF ............................................................................................................... 7

  I.   Legal Standard ........................................................................................... 7

  II.   The Complaint Must Be Dismissed Because The Statute of Limitations Has Lapsed ........ 8

  III.   Count I of the Amended Complaint, Seeking A Declaratory Judgment, Should be Dismissed ........ 8

  IV.   Plaintiff's Constructive Trust Claim Should be Dismissed with Prejudice ................... 9

    A.   The Amended Complaint Fails to State a Claim for Constructive Trust ........................ 9

      1.   Plaintiff Cannot Show a Confidential or Fiduciary Relationship.............................. 10

      2.   Plaintiff Does Not Identify Any Promise by the Debtor That Was Relied Upon in Connection with the Transfer ........................ 11

      3.   Plaintiff Fails to Properly Allege A Transfer In Reliance on A Promise .................. 12

      4.   Plaintiff Fails to Allege Unjust Enrichment ............................. 12

  V.   Plaintiff's Request For An Equitable Lien Must Be Dismissed With Prejudice ............... 15

  VI.   Plaintiff's Request For An Injunction Should Be Dismissed With Prejudice................ 17

  VII.   This Court Should Not Permit Plaintiff To Amend The Complaint ............................. 19

JOINDER IN OTHER MOTIONS TO DISMISS ....................................................................... 20

NOTICE ............................................................................................................................. 21

NO PRIOR REQUEST FOR RELIEF....................................................................................... 21

CONCLUSION .................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Ades & Berg Grp. Investors v. Breeden (In re Ades & Berg Grp. Investors),*
550 F.3d 240, 245 (2d Cir. 2008) ........................................................................................ 14

*Allen-Bradley Co., Inc. v. Commodore Bus. Mach., Inc. (In re Commodore Bus. Mach., Inc.),*
180 B.R. 72, 78-79 (Bankr. S.D.N.Y. 1995) .......................................................................... 7

*Am. Civil Liberties Union v. Clapper,*
785 F.3d 787, 825 (2d Cir. 2015) ......................................................................................... 18

*Amusement Indus., Inc. v. Citigroup Glob. Mkts. Realty Corp. (In re First Republic Group Realty, LLC.),*
421 B.R. 659, 677 (Bankr. S.D.N.Y. 2009) .......................................................................... 17

*Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570) ............... 7

*Bell Atlantic v. Twombly,*
550 U.S. 544, 555 (2007) ......................................................................................................... 7

*Bertoni v. Catucci,*
117 A.D.2d 892 (1986) .......................................................................................................... 12

*Blue Trees Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,*
369 F.3d 212, 217 (2d Cir. 2004) ............................................................................................ 2

*Boyle v. Kelley,*
42 N.Y.2d 88, 91 (1977) ........................................................................................................ 11

*Caballero v. Anselmo,*
759 F. Supp. 144, 148 (S.D.N.Y. 1991) ............................................................................... 12

*Cadle Co. v. Mangan (In re Flanagan),*
503 F.3d 171, 182 (2d Cir. 2007) ......................................................................................... 14

*Conkling v. First Nat'l Bank of Olean,*
 N.Y., 286 A.D. 537, 541, 145 N.Y.S.2d 682 (App.Div.4th Dept.1955) ............................... 16

*Cuoco v. Moritsugu,*
222 F.3d 99, 112 (2d Cir. 2000) ........................................................................................... 20

*Ellis v. Chao,*
336 F.3d 114, 127 (2d Cir.2003) ........................................................................................... 19

*Evans v. Winston & Strawn,*
757 N.Y.S.2d 532, 534 (2003) ............................................................................................... 12

*Fangio v. DivLend Equip. Leasing, LLC (In re Ajax Integrated, LLC),*
2016 WL 1178350, at *7 (Bankr. N.D.N.Y. Mar. 23, 2016) ................................................ 13

*Farr v. Covert*,
34 A.D.3d at 1205, 824 N.Y.S.2d 515 ............................................................................... 16

*First Central*,
377 F.3d at 215 ................................................................................................................ 11

*Genger v. Genger*,
2018 U.S. Dist Lexis 126958 at *15 (S.D.N.Y. July 27, 2018) ......................................... 6

*Genger v. Genger*,
52 Misc.3d 926, 931 (Sup. Ct. N.Y. 2016) ..................................................................... 22

*Genger v. Genger*,
663 Fed. App'x 44, 49-50 (2d Cir. 2016) ......................................................................... 6

*Genger v. Genger*,
76 F.Supp.3d 488 (S.D.N.Y. 2015) .................................................................................. 6

*Genger v. Genger*,
771 Fed. App's 99 (2d Cir. 2019) ..................................................................................... 6

*Hanson Trust PLC v. SCM Corp.*,
774 F.2d 47, 60 (2d Cir. 1985) ....................................................................................... 17

*In re Adelphia Communications, Corp.*,
325 B.R. 89, 112-13 (Bankr. S.D.N.Y. 2005) ................................................................. 15

*In re Ajax Integrated, LLC*,
2016 WL 1178350 ........................................................................................................... 13

*In re Ames Dept. Stores, Inc.*,
274 B.R. at 626 ............................................................................................................... 12

*In re Corporate Resources Services, Inc.*,
2020 WL 1907538 at *6 (Bankr. S.D.N.Y. April 15, 2020) ........................................... 17

*In re DJK Residential LLC*,
416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949) .......... 7

*In re Dreier LLP*,
429 B.R. 112, 137 (Bankr. S.D.N.Y. 2010) .................................................................... 14

*In re Food Management Group LLC*,
2008 WL 2788738 at *5 (Bankr. S.D.N.Y. July 18, 2008) ............................................. 15

*In re Houbigant, Inc.*,
182 B.R. 958, 981 (Bankr. S.D.N.Y. 1995) .................................................................... 18

*In re Integrated Resources, Inc.*,
123 B.R. 181, 187 (Bankr. S.D.N.Y.1991) ..................................................................... 16

*In re MF Global Holdings Ltd.*,
562 B.R. 55, 66 (Bankr. S.D.N.Y. 2017) ...............................................................................17

*In re O.P.M. Leasing Services, Inc.*,
23 B.R. 104, 119 (Bankr. S.D.N.Y. 1982) ..............................................................................16

*In re Tesmetges*,
47 B.R. 385, 391 (E.D.N.Y. 1984)...........................................................................................8

*In re Trim-Lean Meat Products, Inc.*,
10 B.R. 333, 335 (D. Del. 1981) ............................................................................................16

*In re Worldcom Inc.*,
372 B.R. 159, 164 (Bankr. S.D.N.Y. 2007) ...........................................................................19

Joblove v. Barr Labs., Inc.,
466 F.3d 187, 220 (2d Cir. 2006) ) .........................................................................................20

*Leonelli v. Pennwalt Corp.*,
997 F.2d 1195, 1198 (2d Cir.1989).........................................................................................19

*LFD Operating, Inc. v. Ames Dept. Stores, Inc. (In re Ames Dept. Stores, Inc.)*,
274 B.R. 600, 626 (Bankr. S.D.N.Y. 2002) ...........................................................................10

*Lucente v. Int'l Bus. Machs. Corp.*,
310 F.3d 243, 258 (2d Cir. 2002).............................................................................................19

Mazurek v. Armstrong,
520 U.S. 968, 972 (1997)........................................................................................................17

*MBM Entertainment, LLC*,
531 B.R. 363, 416 (Bankr. S.D.N.Y. 2015) ...........................................................................15

McGovern v. Solomon,
466 F.Supp.2d 554, 558 (S.D.N.Y. 2006)................................................................................8

Miller v. Wells Fargo Bank International Corp.,
406 F.Supp. 452, 484 (S.D.N.Y.1975)...................................................................................16

Nat'l Credit Union Admin. Bd. v. HSBC Bank USA, N.A.,
117 F. Supp. 3d 392, 398 (S.D.N.Y. 2015) ...........................................................................20

*O'Brien v. Nat'l Property Analysts Partners*,
936 F.2d 674 (2d Cir. 1991).....................................................................................................7

Panther Partners Inc. v. Ikanos Commc'ns, Inc.,
347 Fed. Appx. 617, 622 (2d Cir. 2009) ................................................................................20

*Reale v. Reale*,
485 F.Supp. 247, 252 (W.D.N.Y. 2007) (*quoting* N.Y. C.P.L.R. 213(1) ..................................8

*Schmieder v. Hall,*
421 F.Supp. 1208 (S.D.N.Y.1976)............................................................................................... 10

*Superintendent of Ins. for the State of N.Y. v. Ochs (In re First Central Fin. Corp.),*
377 F.3d 209, 212 (2d Cir. 2004).................................................................................................. 9

*Sussman v. Crawford,*
488 F.3d 136, 139–40 (2d Cir. 2007).......................................................................................... 17

*Travellers Int'l AG v. Trans World Airlines, Inc.,*
722 F.Supp. 1087, 1096 (S.D.N.Y.1989), *aff'd,* 41 F.3d 1570 (2d Cir.1994)........................... 18

*Van Brunt v. Rauschenberg,*
799 F.Supp. 1467, 1474 (S.D.N.Y. 1992)................................................................................... 12

*Winter v. Nat. Res. Def. Council, Inc.,*
555 U.S. 7, 20 (2008).................................................................................................................. 18

TO:    THE HONORABLE JAMES L GARRITY
       UNITED STATES BANKRUPTCY JUDGE:

Deborah J. Piazza, not individually but solely in her capacity as the Chapter 7 trustee (the "Trustee" or the "Defendant") of the estate of Orly Genger (the "Debtor") in the above captioned case, by her attorneys, Tarter Krinsky & Drogin LLP, respectfully submits this motion to dismiss (the "Motion") the Amended Complaint (the "Amended Complaint") filed by Dalia Genger ("Dalia" or "Plaintiff"), pursuant to Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable pursuant to Rules 7008, 7009 and 7012(b) and of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), respectfully represents:

## PRELIMINARY STATEMENT

In her Amended Complaint, Plaintiff asserts that she is entitled to a constructive trust on up to $12.25 million of a potential avoidance action that may be recovered against all or some of the other named Defendants in the amount of $32.3 million that is the subject of the Trump Settlement Group Agreement (defined below) and which amount has been referred to in the bankruptcy case as the "Potential Avoidance Action" that the Trustee maintains against the Defendants in this action.  Notably, notwithstanding many years of litigation involving Dalia and the Debtor, Plaintiff never asserted a constructive trust on any funds, and instead, Dalia obtained a judgment for $6 million against her son, Sagi for breach of contract.  Sagi, in turn, has obtained a judgment against the Debtor for approximately $3.2 million (including legal fees) on account of Debtor's breach of an indemnity obligation, as determined in the Forrest Action (defined below).

Plaintiff's latest legal position seems to have been formed during the pendency of this case in a blatant and transparent attempt to prevent the prior trustee, who had reached a settlement agreement with some of the Defendants (which did not go forward) and to prevent the current

Trustee from, in the future, settling or pursuing the Potential Avoidance Action for the benefit of the bankruptcy estate.  Through her action, Dalia is clearly attempting to evade the provisions of the Bankruptcy Code aimed at the orderly administration of a debtor's estate and the uniform treatment of creditors.  Not all is lost for Plaintiff if this adversary proceeding is dismissed, however, as Plaintiff has a $6 million judgment against her son, Sagi, and may collect directly against him any amounts she claims are owed on her judgment against him.

Aside from numerous pleading deficiencies, Plaintiff's claims are barred by the statute of limitations. As will be demonstrated, the Amended Complaint should be dismissed with prejudice in accordance with, *inter alia*, Federal Rules 8, 9(b), and 12.

## JURISDICTION

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The predicates for relief requested herein are Federal Rules 8, 9(b) and 12 and Bankruptcy Rules 7008, 7009 and 7012.

## RELEVANT BACKGROUND

3.      Unless otherwise stated, the facts set forth herein are drawn from the Amended Complaint and other documents properly before this Court on a motion to dismiss, as well as any additional facts pertaining to the bankruptcy case that may be relevant to the issues set forth in this adversary proceeding.[1]

---

[1] The Court is entitled to take into consideration public records such as court filings when deciding a motion to dismiss. *See, e.g., Blue Trees Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir. 2004) ("But we may also look to public records, including complaints filed in state court, in deciding a motion to dismiss.").

A. **The Chapter 7 Case**

4.      On July 12, 2019 (the "Petition Date"), the Debtor commenced a chapter 7 case by filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the Western District of Texas (the "Texas Bankruptcy Court"). The Honorable Tony M. Davis was the bankruptcy judge assigned to this case ("Judge Davis").

5.      On July 12, 2019, Ron Satija was appointed as the chapter 7 trustee of the Debtor's case (the "Prior Trustee").

6.      On August 25, 2019, the Prior Trustee held and closed the section 341(a) meeting of creditors, attended by the Debtor and counsel to all creditors in the case.

7.      On September 13, 2019, Sagi Genger ("Sagi"), the Debtor's brother, filed a motion to dismiss the Debtor's bankruptcy case or alternatively transfer venue to this Court (the "Original Motion to Dismiss/Transfer Venue").

8.      Prior to this case being transferred to this Court, on September 27, 2019, the Prior Trustee entered into a settlement with ADBG LLC, the Genger Litigation Trust, David Broser, Arnold Broser, Arie Genger, Eric Herschmann, Kasowitz Benson Torres LLP, and the Debtor, which among other things,  provided for, full resolution of the Potential Avoidance Action and the Debtor's omestead, and which anticipated the retention by the Prior Trustee of Kasowitz Benson Torres LLP as counsel to the Prior Trustee on a contingency basis to pursue the Debtor's estate's causes of action against Dalia, Sagi, and Michael Oldner.

9.      Judge Davis determined that he would not hear the dismissal aspect of the Original Motion to Dismiss/Transfer Venue, but that he would instead ascertain whether the case should be transferred to this Court.  Judge Davis also determined that he would not consider the Prior Trustee's settlement until after deciding whether to transfer the case.

10.     By order entered on November 7, 2019, Judge Davis transferred this case to this Court. *See* Dkt. No. 168.  Notwithstanding the transfer, the case did not arrive on this Court's docket until December 10, 2019.  In light of the transfer of the case, Judge Davis never held a hearing on the Prior Trustee's Settlement, nor was the matter fully briefed.

11.     On December 11, 2019, Deborah J. Piazza was appointed as the successor Chapter 7 trustee in this case.

12.     On April 24, 2020, Sagi filed his amended and updated Motion to Dismiss (the "Amended Motion to Dismiss"). *See* Dkt. No. 239.  The Court has scheduled a hearing on the Amended Motion to Dismiss for July 21, 2020.

13.     On May 21, 2020, the Trustee filed her *Motion for Order Pursuant to Sections 105, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, 9006 and 9019: Approving (A) Settlement Agreement, (B) Sale of The Debtor's Estate's Causes of Action Against Certain Third Parties, and (C) Financing To Support the Continued Administration of the Case and (D) Granting Related Relief* dated May 21, 2020  (the "Trustee's Motion"). The Court has scheduled a hearing on the Trustee's Motion for July 21, 2020.

### B.  Trump Group Settlement Agreement

14.     On June 16, 2013, the Debtor, in her individual capacity and in her capacity as beneficiary of the Orly Genger Trust, Arie Genger, and some of the Broser Parties, on the one hand, and Glencova Investment Company, TR Investors LLC, New TR Equity I, LLC, New TR Equity II, LLC, and Trans-Resources, Inc. (collectively, the "Trump Group") entered into a settlement agreement to settle claims relating to shares of TRI Resources, Inc. (the "Trump Group Settlement Agreement").  While the Trump Group Settlement Agreement provided for total consideration of $50 million, a portion of those monies, namely $10.3 million allocated to the Orly

Genger Trust, and $7.4 million allocated to Arie Genger, were each held in escrow pending determinations by other courts as to whether such amounts would be paid to the Orly Genger Trust and Arie Genger or whether such monies would instead to be distributed to TPR Investment Associates, Inc., an entity owned by Sagi Genger.  Ultimately, courts ruled in favor of TPR Investment Associates, Inc. and these monies that were held in escrow were never paid to either the Orly Genger Trust or to Arie Genger.

15.     As a result of the foregoing, that left $32.3 million of remaining consideration in the Trump Group Settlement Agreement to be distributed, which is comprised of (i) $17.3 million in cash that was paid by the Trump Group (the "Settlement Cash Proceeds") to entities controlled by the Broser Parties and (ii) two $7.5 million notes (the "Trump Notes") payable by the Trump Group, after satisfaction of certain conditions, which include either final orders resolving any litigation against the Trump Group or releases exchanged by Sagi Genger and other affiliated parties to the Trump Group.   The Trump Group has asserted that they are entitled to offset legal fees on account of an indemnity provision in the Trump Notes such that the current amount payable is now asserted to be less than $12 million (down from $15 million).  The recovery of this $32.3 million amount, comprised of the alleged avoidance and recovery of the Settlement Cash Proceeds and the ultimate collection of the Trump Notes, in which liens have been asserted thereon, is the largest potential asset in this bankruptcy case (the "Potential Avoidance Action").

**C.  The 2004 Agreements and Forrest Decisions**

16.     In 2004, it is alleged that Dalia relinquished her marital rights in 794.40 shares (the "Rights") of Trans-Resources, Inc ("TRI") to her children, Orly & Sagi in exchange for their promise to set aside and pay funds received therefrom in an amount equal to all dividends, distributions, proceeds or other payments attributable to the shares…or any lesser amount upon

request by Dalia, for Dalia's retirements. *See* Am. Compl., ¶ 15.  It is alleged that the promise was reflected in counter-signed documents executed by Dalia and her two children (the "2004 Agreements. Id.  The 2004 Agreements included a letter dated October 30, 2004 between Dalia and Sagi (defined in the Amended Complaint, as the "Promise") and a subsequent counter-signed letter between Sagi and Orly. Id. at ¶¶ 17 and 18. The counter-signed letter between Sagi & Orly provided that Orly would indemnify Sagi for ½ of Dalia's Claim (as defined in the Amended Complaint). Id. at ¶ 18.

17.     In 2014, Dalia made her first request for $200,000 under the 2004 Agreements.  Id. at ¶ 28.  Sagi promptly paid the request. Id. Orly refused. Id.  Sagi commenced an action in the District Court for the Southern District of New York to enforce his right to indemnity for ½ of the $200,000 request.  Judge Forrest ruled in favor of Sagi. *Genger v. Genger*, 76 F.Supp.3d 488 (S.D.N.Y. 2015).  Judge Forrest's decision was affirmed on appeal to the Second Circuit. *See Genger v. Genger,* 663 Fed. App'x 44, 49-50 (2d Cir. 2016).

18.     Dalia alleges that, in 2017, Dalia invoked her clawback rights for a second time requesting $6 million from Sagi and Orly. *See* Am. Compl., ¶ 33.  This led to Dalia suing Sagi in District Court.  Sagi, in turn sued Orly.  Judge Forrest entered a judgment in favor of Dalia against Sagi in the amount of $6 million.  Sagi obtained a judgment for ½ of the $6 million judgment plus legal fees, for a total judgment of approximately $3.2 million against Orly.  *Genger v. Genger,* 2018 U.S. Dist Lexis 126958 at *15 (S.D.N.Y. July 27, 2018) (the "Forrest Action").  Orly appealed and the Second Circuit affirmed. *Genger v. Genger*, 771 Fed. App's 99 (2d Cir. 2019).

## **RELIEF REQUESTED**

19.     The Trustee seeks entry of an Order, dismissing the Amended Complaint with prejudice, and without leave to replead.

## BASIS FOR RELIEF

### I.    Legal Standard

20.    To survive a motion to dismiss for failure to state a claim, a plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) (alteration in original).   Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). "To show facial plausibility, the Claimant must plead 'factual content that allows the court to draw the reasonable inference that the [defendant] is liable for the misconduct alleged.'" *In re DJK Residential LLC,* 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

21.    The Amended Complaint also includes vague and non-specific references to alleged fraud on the part of the Transferees.   Where a complaint alleges mistake or fraud, the pleading requirements imposed by Federal Rule 9(b), made applicable here by Bankruptcy Rule 7009, are even more demanding. Under Federal Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. (9)(b), including, at a minimum, facts that give rise to a strong inference of fraudulent intent. *See, e.g., O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674 (2d Cir. 1991).   The heightened pleading standard is applicable where a constructive trust claim is based on fraud or mistake. *See, e.g., Allen-Bradley Co., Inc. v. Commodore Bus. Mach., Inc. (In re Commodore Bus. Mach., Inc.),* 180 B.R. 72, 78-79 (Bankr. S.D.N.Y. 1995) (dismissing constructive trust claim brought under Pennsylvania law).

22.    Here, Plaintiff's allegations fall far short of either standard, and the Amended Complaint should be dismissed with prejudice.

II.    **The Complaint Must Be Dismissed Because The Statute of Limitations Has Lapsed**

23.    The statute of limitations to impose a constructive trust is governed by the six-year statute of limitations in CPLR § 213(1).  "A cause of action for a consecutive trust is governed by New York's six-year statute of limitations applicable to those claims 'for which no limitation is specifically prescribed by law.'" *Reale v. Reale*, 485 F.Supp. 247, 252 (W.D.N.Y. 2007) (*quoting* N.Y. C.P.L.R. 213(1); *see also McGovern v. Solomon*, 466 F.Supp.2d 554, 558 (S.D.N.Y. 2006).

24.    "New York courts have ruled that in claims for the creation of a constructive trust which are similar to actions for an equitable lien, in that both have no applicable limitations prescribed by law and rely essentially on the courts equity powers, the six year statute of limitations for the cause of action does not begin to run until a demand for the property or share in the property is made and rejected." *See In re Tesmetges*, 47 B.R. 385, 391 (E.D.N.Y. 1984).

25.    Dalia's alleged rights to a constructive trust or equitable lien date back to the 2004 Agreements.  Even if the date that triggered the commencement of the statute of limitations was June 2013, upon entry of the Trump Settlement Group Agreement, Dalia's claims may not be brought as they are outside the statute of limitations.

III.    **Count I of the Amended Complaint, Seeking A Declaratory Judgment, Should be Dismissed**

26.    Count I purports to be a cause of action for declaratory judgment seeking a determination that the "proceeds of the monetization of the Shares, including the Trump Notes, up to $12.25 million plus interest, is held by Orly and the Transferees in constructive trust and/or an equitable lien for Dalia's benefit whose interest at all relevant times is and was superior to the interests of Orly, the Transferees and Debtors' other creditors".  *See* Am. Compl. at ¶ 51.

27.    The declaration sought by Count I is plainly redundant of Counts II and III, which asks the Court to impose a constructive trust and equitable lien "in her favor and for her benefit

upon the proceeds of Orly's monetization of the Sgares, including the Trump Notes, up to $12.25 million plus interest". *See* Am. Compl. at ¶¶ 54 and 56.

28.　　Section 541(d) of the Bankruptcy Code provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of the any equitable interest in such property that the debtor does not hold." Plaintiff contends that the "proceeds of Orly's moneteziation of the shares" are being held in constructive trust for Dalia and/or subject to an equitable lien, and consequently is not part of the bankruptcy estate, which is being administered for all of the Debtor's creditors. Thus, the declaration that Plaintiff seeks regarding the funds on hand in this estate is redundant of Plaintiff's claims asserted in Counts II and III.

29.　　Given this redundancy (and the substantive shortcomings discussed below in connection with Plaintiff's constructive trust claim and equitable lien), the Court can, and should, refrain from deciding Count I.

**IV.　Plaintiff's Constructive Trust Claim Should be Dismissed with Prejudice**

　　**A.　The Amended Complaint Fails to State a Claim for Constructive Trust**

30.　　Under New York law, the stated elements for a claim of constructive trust are: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of subject *res* in reliance on that promise; and (4) unjust enrichment. *See, e.g., Superintendent of Ins. for the State of N.Y. v. Ochs (In re First Central Fin. Corp*.), 377 F.3d 209, 212 (2d Cir. 2004). "The fourth element is the most important since the purpose of the constructive trust is prevention of unjust enrichment. *Id.* (internal quotation marks omitted).

31.     Generally, a constructive trust must be proven by plaintiff by clear and convincing evidence. *Schmieder v. Hall,* 421 F.Supp. 1208 (S.D.N.Y.1976), *aff'd,* 545 F.2d 768 (2d Cir.), *cert. denied,* 430 U.S. 955, 97 S.Ct. 1601, 51 L.Ed.2d 805 (1977). The Plaintiff cannot satisfy this exacting standard.

32.     Plaintiff has failed to demonstrate these required elements in the Amended Complaint.  At best, Plaintiff offers only conclusory allegations of certain elements, *see, e.g.,* Am. Compl. at ¶¶ 43-51, which are insufficient.  As a result, Plaintiff has failed to state a claim even under the more liberal pleading standard imposed by Federal Rule 12(b) and certainly under the heightened pleading requirements of Federal Rule 9.

### 1.    *Plaintiff Cannot Show a Confidential or Fiduciary Relationship*

33.     Plaintiff contends that "a confidential and fiduciary relationship of familial trust and confidence existed between Dalia and her daughter, Orly, when Dalia transferred the Rights to her." *See* Am. Compl. at ¶ 51. However, it was Dalia, not Orly, that was the trustee of the Orly Genger Trust and who owed a fiduciary duty to Orly; not the other way around.  Plaintiff's foregoing and self-serving allegation is insufficient because the Amended Complaint fails to adequately plead that Orly owed Dalia a fiduciary duty.

34.     Accordingly, no fiduciary relationship exists between the Debtor and Plaintiff. *See, e.g., LFD Operating, Inc. v. Ames Dept. Stores, Inc. (In re Ames Dept. Stores, Inc.)*, 274 B.R. 600, 626 (Bankr. S.D.N.Y. 2002) (concluding that "Ames was not a fiduciary to LFD because Ames and LFD entered into an arms-length contractual arrangement and arms-length contractual arrangements do not give rise to fiduciary relationships").

35.     For this reason alone, Plaintiff's constructive trust claim fails.

##### 2. *Plaintiff Does Not Identify Any Promise by the Debtor That Was Relied Upon in Connection with the Transfer*

36.    Even if the fiduciary relationship requirement was satisfied (which it is not), it is difficult to see how the "promise" requirement could be satisfied.

37.    As reflected in the Forrest Action, Dalia obtained a judgment against Sagi, not Orly, in connection with an agreement between Dalia and Sagi in which Sagi promised to support her lifestyle.  Thus, a necessary element of a constructive trust on the Debtor's property is missing in the Amended Complaint.  There was no promise made by Orly to her mother.  However, as noted herein, Dalia has the ability to enforce the judgment in the amount of $6 million she obtained in the Forrest Action by collecting from her son and judgment debtor, Sagi.  Meanwhile, Sagi, in turn, may assert an unsecured claim in the case for the judgment in the approximate amount of $3.2 million, which claim shall be subject to the claim reconciliation process.

38.    The existence of a promise upon which a plaintiff relied is necessary for the imposition of a constructive trust, and absent the predicate promise, the extraordinary equitable relief of imposition of a constructive trust cannot be granted. *See generally* 106 N.Y. Jur. 2d Trusts § 173. Thus, by its very terms, the Amended Complaint fails to allege the necessary elements for a constructive trust claim.

39.    Lastly, courts have held that if there is a contract or agreement in place between the plaintiff and defendant, a constructive trust cannot be found.  *See e.g. First Central*, 377 F.3d at 212 (the existence of controlling agreements precludes the imposition of a constructive trust). Further, the Second Circuit found "it is well-established under New York law that "equity will not entertain jurisdiction where there is an adequate remedy at law." *First Central*, 377 F.3d at 215, *citing Boyle v. Kelley*, 42 N.Y.2d 88, 91 (1977). With respect to constructive trusts specifically, New York courts have clarified that "[a]s an equitable remedy, a constructive trust should not be

imposed unless it is demonstrated that a legal remedy is inadequate." *Bertoni v. Catucci*, 117 A.D.2d 892 (1986); *see also Evans v. Winston & Strawn*, 757 N.Y.S.2d 532, 534 (2003) ("Plaintiffs' claim for a constructive trust was properly dismissed since plaintiffs do not claim that [defendant] is unable to repay plaintiffs' capital contributions, and it does not otherwise appear that the legal remedy of damages will be inadequate."). As demonstrated, Dalia has an adequate remedy at law: collect her judgment against her son, Sagi.

### 3.    *Plaintiff Fails to Properly Allege A Transfer In Reliance on A Promise*

40.    As indicated, Dalia cannot allege Orly made a promise to her, without distorting Judge Forrest's decisions. Judge Forrest found that Sagi was indebted to Dalia and entered a judgment in favor of Dalia against him; not Orly. As such, courts have found that when a complaint cannot allege that a transfer took place in reliance on a promise, the plaintiff has not satisfied the third element of a constructive trust claim. *See Van Brunt v. Rauschenberg,* 799 F.Supp. 1467, 1474 (S.D.N.Y. 1992) ("without a transfer of property in reliance of a promise or agreement, there cannot be a constructive trust); *see also Caballero v. Anselmo*, 759 F. Supp. 144, 148 (S.D.N.Y. 1991).

41.    This is especially the case when the Court considers that the alleged "promise" was not expressly set forth in the Divorce Agreement.

### 4.    *Plaintiff Fails to Allege Unjust Enrichment*

42.    Plaintiff has not alleged facts demonstrating that there would be any unjust enrichment to any other party if the Court refused to impose a constructive trust. "Unjust enrichment is a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties." *In re Ames Dept. Stores, Inc.*, 274 B.R. at 626. It is the key element of any constructive trust claim. *See, e.g., id.* ("Despite the elasticity of the doctrine, the

prevention of unjust enrichment remains the key requirement for a constructive trust."). However, here, the argument that the Debtor and its creditors would be unjustly enriched absent the imposition of a constructive trust is unavailing when made in the context of a Chapter 7 case.

43.     To show unjust enrichment, a plaintiff must show that a defendant was enriched at the plaintiff's expense. *See, e.g., Fangio v. DivLend Equip. Leasing, LLC (In re Ajax Integrated, LLC)*, 2016 WL 1178350, at *7 (Bankr. N.D.N.Y. Mar. 23, 2016). That is not the case here. The funds that comprise the Trump Settlement Proceeds will be distributed by the Trustee to all creditors who hold allowed claims in accordance with the priority scheme under the Bankruptcy Code. Upon information and belief, while Sagi has not paid his mother Dalia the total sums due to Dalia, he has attempted to satisfy the judgment against him by providing Dalia a lien on certain of his real property as well as any recoveries he may obtain on any allowed claim in this case. Thus, Dalia will recover whatever amounts that Sagi recovers in this case.

44.     Under these circumstances, the imposition of a constructive trust would only serve to prejudice the Debtor's other creditors by granting priority to Plaintiff and diminishing the pool of assets to be distributed to claim holders. Because the constructive trust in bankruptcy harms other creditors rather than the debtor, courts in this jurisdiction have viewed constructive trusts as "'anathema to the equities of bankruptcy' since they essentially punish competing creditors rather than the 'offending debtor.'" *In re Ajax Integrated, LLC*, 2016 WL 1178350, at *8 (citations omitted). For this reason, even where wrongful conduct may have occurred, bankruptcy courts are reluctant to impose a constructive trust where doing so would prejudice creditors. *See id.* ("[T]he imposition of a constructive trust is at odds with the general goals of the Bankruptcy Code....") (citing *First Central,* 377 F.3d at 217-18).

45.     Indeed, the Second Circuit has observed that "retention by the bankruptcy estate of assets that, absent bankruptcy, would go to a particular creditor is not inherently unjust." *Ades & Berg Grp. Investors v. Breeden (In re Ades & Berg Grp. Investors),* 550 F.3d 240, 245 (2d Cir. 2008). "Equity and good conscience do not demand the creation of a constructive trust in this instance, and accordingly," the Court should decline to impose one here. *Id.*

46.     This concern takes on even greater significance here where Plaintiff has alleged that the Debtor and the other Defendants engaged in fraudulent transfers *(*Am. Compl. at ¶¶ 39 - 41). As the Court is aware, the Trustee, as a court-appointed fiduciary, is in the best position to pursue recoveries of any alleged fraudulent transfers. Indeed, the Trustee has repeatedly asserted in this case that she believes the Potential Avoidance Action is property of the estate and she intends on either settling or pursuing the Potential Avoidance Action for the benefit of the estate.

47.     Dalia's requested relief would hinder the Trustee's ability to administer the estate and is contrary to the basic purposes of the Bankruptcy Code. *See, e.g., Cadle Co. v. Mangan (In re Flanagan),* 503 F.3d 171, 182 (2d Cir. 2007) ("[T]he effect of a constructive trust in bankruptcy is to take the property out of the debtor's estate and to place the constructive trust claimant ahead of other creditors with respect to the trust *res....* This type of privileging of one unsecured claim over another clearly thwarts the principle of ratable distribution underlying the Bankruptcy Code."); *First Central,* 377 F.3d at 217 ("[B]y creating a separate allocation mechanism outside the scope of the bankruptcy system, the constructive trust doctrine can wreak ... havoc with the priority system ordained by the Bankruptcy Code.") (citation and internal quotation marks omitted); *In re Dreier LLP,* 429 B.R. 112, 137 (Bankr. S.D.N.Y. 2010) ("The imposition of a constructive trust grants a priority to the beneficiary of the constructive trust, and is fundamentally at odds with the principle of equal distribution among creditors.") (citation omitted).

48.     As reflected in *In re Adelphia Communications, Corp.,* 325 B.R. 89, 112-13 (Bankr.

S.D.N.Y. 2005), *affirmed in part and reversed in part*, 331 B.R. 93 (S.D.N.Y. 2005) (citing cases):

> Moreover, while the Second Circuit has rejected the notion that bankruptcy law trumps state constructive trust law," the Circuit has further recognized that the obligation to consider the application of constructive trust law "does not diminish the need to 'act very "cautiously' to minimize conflict with the goals of the Bankruptcy Code." In that connection, the Second Circuit cautioned in *First Central Financial* that the Bankruptcy Code's goals can be compromised by the imposition of a constructive trust, and observed, as a consequence, that "bankruptcy courts are generally reluctant to impose constructive trusts without a substantial reason to do so." The *First Central Financial* court cited and quoted from four separate decisions from lower courts in the Second Circuit recognizing the extent to which the imposition of constructive trusts against assets that would otherwise be estate property is an anathema to the equitable nature of cases under the Bankruptcy Code.
>
> The Second Circuit thus noted in *First Central Financial* that: although we do not disturb the general rule that constructive trusts must be determined under state law, we believe it important to carefully note the difference between constructive trust claims arising in bankruptcy as opposed to those that do not, as the "equities of bankruptcy are not the equities of the common law.

49.     For these reasons, even if the Amended Complaint satisfied the first three elements

of a constructive trust claim, which it does not, Plaintiff has failed to demonstrate unjust

enrichment, the most critical element in the constructive trust claim.

**V.     Plaintiff's Request For An Equitable Lien Must Be Dismissed With Prejudice**

50.     The Court must also dismiss Count III because there is no basis for an equitable

lien under New York based on the facts alleged in the Amended Complaint.

51.     "In order to establish an equitable lien, New York law requires a "particular

agreement ... to confer a security interest in the property at issue." *In re Food Management Group*

*LLC*, 2008 WL 2788738 at *5 (Bankr. S.D.N.Y. July 18, 2008) (citing cases); *see also MBM*

*Entertainment, LLC*, 531 B.R. 363, 416 (Bankr. S.D.N.Y. 2015) (for an equitable lien to exist

under New York law, an equitable lien is imposed on property when a party, who has a confidential

relationship with the owner, expends money to improve that property based on the owner's promise to convey, reimburse or grant an interest in the property to the party); *In re Integrated Resources, Inc.*, 123 B.R. 181, 187 (Bankr. S.D.N.Y.1991) ("the mere expectation that a debt will be paid out of some particular fund when the fund arises is insufficient to create an equitable lien on the fund").

52.   The intention that there is to be a lien must be clear. *Conkling v. First Nat'l Bank of Olean, N.Y.,* 286 A.D. 537, 541, 145 N.Y.S.2d 682 (App.Div.4th Dept.1955). The "subjective expectation of plaintiff that an interest in the property would be conveyed to him, however sincere, is insufficient to establish an equitable lien." *Farr v. Covert,* 34 A.D.3d at 1205, 824 N.Y.S.2d 515;

53.   The doctrine is further limited to situations where a secured creditor is prevented from perfecting its interest by an uncooperative debtor. *See In re Trim-Lean Meat Products, Inc.,* 10 B.R. 333, 335 (D. Del. 1981). Therefore, an equitable lien will not be upheld as against a trustee where all available means of perfecting a legal lien were not employed by the would-be secured creditor. *Miller v. Wells Fargo Bank International Corp.*, 406 F.Supp. 452, 484 (S.D.N.Y.1975), aff'd, 540 F.2d 548 (2d Cir. 1976); *see also In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104, 119 (Bankr. S.D.N.Y. 1982) (dismissing equitable lien vis a vis trustee).

54.   The Plaintiff clearly does not adequately allege the existence of an equitable lien. There is no specific fund that was identified in the 2004 Agreements, and clearly none would exist as between Dalia and Orly, since Orly never signed an agreement with Dalia.  As there was no agreement between the parties, there was also no clear intent by the parties to create an equitable lien in favor of Dalia.   This claim must be dismissed.

## VI.    Plaintiff's Request For An Injunction Should Be Dismissed With Prejudice

55.    Court IV of the Complaint requests a temporary, preliminary or permanent injunction.

56.    As set forth in *In re Corporate Resources Services, Inc.*, 2020 WL 1907538 at *6 (Bankr. S.D.N.Y. April 15, 2020), in the Second Circuit, courts recognize that a preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies" that should be granted only in extraordinary circumstances. *Amusement Indus., Inc. v. Citigroup Glob. Mkts. Realty Corp. (In re First Republic Group Realty, LLC.)*, 421 B.R. 659, 677 (Bankr. S.D.N.Y. 2009) (*quoting Hanson Trust PLC v. SCM Corp.,* 774 F.2d 47, 60 (2d Cir. 1985). Because the issuance of a preliminary injunction is considered an extraordinary remedy, the movant bears a heavy burden to show that it is entitled to an injunction. *See Sussman v. Crawford*,  488 F.3d 136, 139–40 (2d Cir. 2007) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.") (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).  The same holds true for temporary restraining orders. *See In re MF Global Holdings Ltd.*, 562 B.R. 55, 66 (Bankr. S.D.N.Y. 2017) ("[T]he standards for a temporary restraining order and a preliminary injunction are not materially different) (citation omitted).

57.    The Second Circuit has explained that a party seeking a preliminary injunction must show that either "he is likely to succeed on the merits; that he is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in his favor; and that an injunction is in the public interest," or, alternatively, "show irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the

preliminary relief." *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015) (internal quotation marks and citations omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

58.     Further Dalia's request for a permanent injunction must also be denied. A permanent injunction shall issue under Fed.R.Civ.P. 65(a) if (i) plaintiff is successful on the merits of the claim; (iii) there is no available remedy at law; and (iii) the balance of equities favors granting such relief. *In re Houbigant, Inc.*, 182 B.R. 958, 981 (Bankr. S.D.N.Y. 1995); *see also Travellers Int'l AG v. Trans World Airlines, Inc.,* 722 F.Supp. 1087, 1096 (S.D.N.Y.1989), *aff'd,* 41 F.3d 1570 (2d Cir.1994).

59.     Plaintiff alleges that "Dalia will suffer irreparable harm if Orly and/or the Transferees sell, transfer, assign, encumber, hypothecate or otherwise alienate the proceeds of Orly's monetization of the Rights, including the Trump Notes." *See* Am. Compl. ¶ 58. The definition of "Transferees" in the Amended Complaint includes all of the other Defendants, except the Trustee.  Dalia's request for an injunction must fail because the other Defendants are aware that the Debtor's bankruptcy case operates as a stay against the enforcement of "property of the estate". *See* 11 U.S.C. 362(a)(3).  The Trustee has repeatedly advised the parties that she intends on either settling for value or pursuing to collection the Potential Avoidance Action.

60.     As set forth in this Motion to Dismiss, Dalia has not demonstrated a right to a constructive trust or equitable lien on the Rights, including the Trump Notes.  As such, any request for a "temporary, preliminary and/or permanent injunction" is not appropriate under these circumstances under New York law.  This is especially the case since Dalia failed to assert a constructive trust or equitable lien claim in any court, until this bankruptcy case was filed.

**VII.**     **This Court Should Not Permit Plaintiff To Amend The Complaint**

61.     While it is true that an amendment to a complaint is often permitted, Plaintiff should not be permitted another opportunity to amend this Complaint.

62.     First, the original complaint was served on May 11, 2020.  Under Rule 15(a) of the Federal Rules of Civil Procedure, a complaint may be amended as a matter of course "21 days after serving it".  In defiance of the Federal Rules of Civil Procedure, rather than seek written consent or the Court's leave as required by Fed. R. Civ. Proc. 15(b), Dalia filed her Amended Complaint on June 7, 2020, which is 26 days after serving the original complaint.   As a matter of law, this Court could strike the Complaint under such circumstances.  Alternatively, the Court should simply refuse to grant Dalia the ability to amend the Amended Complaint yet again.  There are clearly no "new facts" that can be alleged that have not already been considered that could be added to another amended complaint that would survive yet another motion to dismiss.

63.     Courts have held that the usual right to amend a complaint does need not be granted when an amendment to a complaint would be futile. *In re Worldcom Inc.*, 372 B.R. 159, 164 (Bankr. S.D.N.Y. 2007) *citing Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir.2003); *see Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").

64.     Here, the statute of limitations has passed and it would be futile to allow an amendment that would simply be subject of another motion to dismiss. *See e.g.*, *Leonelli v. Pennwalt Corp.,* 997 F.2d 1195, 1198 (2d Cir.1989) (affirming district court's denial of motion to amend where claims are time-barred).

65.     If, for some reason, the Court does not believe that the statute of limitations has lapsed, the Trustee respectfully submits that Dalia will still be unable to cure the deficiencies in

the Amended Complaint. Courts deny requests for leave to amend as futile where "it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 Fed. Appx. 617, 622 (2d Cir. 2009) (citing *Joblove v. Barr Labs., Inc.*, 466 F.3d 187, 220 (2d Cir. 2006) ); *see also Nat'l Credit Union Admin. Bd. v. HSBC Bank USA, N.A.*, 117 F. Supp. 3d 392, 398 (S.D.N.Y. 2015) ("Where a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to replead is futile.") (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ).

66.    This estate is suffering from excessive advocacy on the part of Dalia, Sagi, and the Orly Genger Trust.  This complaint is just one of many strategic maneuvers that is causing considerable expense in this case.[2]  The Trustee should not be forced to incur more legal fees on another motion to dismiss a clearly improper and frivolous action.

## JOINDER IN OTHER MOTIONS TO DISMISS

67.    The Trustee hereby joins in the Motions to Dismiss filed by the other Defendants, only to the extent not inconsistent herewith.  While the Trustee agrees with the other Defendants that they have complete defenses to the constructive trust and equitable lien claims asserted by Dalia, for the avoidance of all doubt, the Trustee expressly does not join in any portion of the other Defendants' Motions to Dismiss that would impact in any way the Trustee's ability to pursue or collect the Potential Avoidance Action for the benefit of the estate.  Specifically, and without limitation, the Trustee does not join in the other Defendants' Motions to Dismiss to the extent it is

---

[2] While the Trustee does not believe that the Rights (as described in the Amended Complaint) is property of the Orly Genger Trust, the Orly Genger Trust has repeatedly indicated in this Court and other courts that such monies belong to the Orly Genger Trust.  This adversary proceeding is directly adverse to the interests of the Orly Genger Trust. Yet, Mr. Oldner, the trustee of the Orly Genger Trust, has not intervened, and by his silence, acquiesces in allowing Dalia to proceed with this action. In standing on the sidelines with full awareness of the negative impact on the Orly Genger Trust, Mr. Oldner may have breached his fiduciary duty to the beneficiaries of the Orly Genger Trust.

alleged therein that (i) the Rights, including the Trump Notes, are not property of the estate, (ii)

the Potential Avoidance Action that the Trustee may commence lacks merit, and (iii) Defendants

have complete defenses against the pursuit by the Trustee of the Potential Avoidance Action.

## NOTICE

68.    Notice of this Motion has been provided to counsel for Plaintiff and counsel to the

other Defendants.  In light of the relief requested, the Trustee respectfully submits that no further

notice is necessary.

## NO PRIOR REQUEST FOR RELIEF

69.    No prior request for the relief sought herein has been made to this or any other

court.

## CONCLUSION

70.    There are many frustrated judges in the New York Court system that have

commented about the never-ending litigation concerning the Genger family. There are too many

quotes to choose from, but perhaps Judge Cooper, handling an unrelated dispute between Dalia

and Arie concerning the legitimacy of a "coin toss" executed by Sagi's counsel, said it best:

> Despite having more money than they could ever hope to spend, the Genger's
> interminable battle over who gets what has resulted in the two family camps
> having no relationship with the other; the only contact the siblings have with each
> other and each parent has with the child with whom he or she is not aligned is
> when they are in a courtroom litigating.  Perhaps the saddest manifestation is that
> Arie has never seen his grandchildren. One gets the sense that this may indeed be
> a case where it really is not about the money: it is about a dysfunctional family
> where each member is intent on inflicting as much pain as possible on his or her
> ex-spouse, parent, child or sibling.
>
> The Gengers have the right, of course, to make each other as miserable as they
> want. The problem is that the method they have chosen adversely impacts the
> court system and the people it serves. Litigation like the type the Genger family
> members have engaged in over the last decade—litigation that knows no bounds

and is brought to inflict punishment on former loved-ones as much as it is to resolve actual claims—demands a disproportionate share of already limited judicial resources. The result is that litigants who lack the resources to command a "small army of lawyers," but often have claims equally or more pressing than the Genger's, find themselves receiving less time and attention from the courts than their cases deserve.

*Genger v. Genger*, 52 Misc.3d 926, 931 (Sup. Ct. N.Y. 2016).

71.     This Amended Complaint is just yet another example of an abusive filing that further tests the judicial resources of yet another court.  This Complaint should be dismissed without leave to amend, as there is no ability to state a claim upon which relief could be granted, and just as importantly, the statute of limitations, as it relates to Dalia's claim, expired long ago. Dalia is not a creditor in this case and <u>may</u> and should <u>seek</u> recourse from her son, Sagi.

**WHEREFORE,**     the     Trustee     respectfully     request     entry     of     an     order dismissing the Amended Complaint *with prejudice*, and such other and further relief as the Court may deem just and appropriate.

Dated: New York, New York
          June 26, 2020

                              TARTER KRINSKY & DROGIN LLP
                              *Attorneys for Deborah J. Piazza*
                              *Chapter 7 Trustee*


                              By:     /s/Rocco A. Cavaliere
                                      Rocco A. Cavaliere
                                      1350 Broadway, 11th Floor
                                      New York, New York 10018
                                      (212) 216-8000