# EXHIBIT B

663 Fed.Appx. 44
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Sagi GENGER, Plaintiff–Appellee,
v.
Orly GENGER, Defendant–Appellant.

15-350 (L)[**]
|
15-1222 (Con)
|
15-3788 (Con)
|
September 29, 2016

**Synopsis**
**Background:** Brother brought breach of contract action against sister, alleging that she breached contract requiring her to indemnify him for half of payments he made to their mother. The United States District Court for the Southern District of New York, Forrest, J., 76 F.Supp.3d 488, granted summary judgment in favor of brother and denied sister's motion for post-judgment relief. Sister appealed.

**Holdings:** The Court of Appeals held that:

[1] district court had subject matter jurisdiction;

[2] two separate documents formed an integrated agreement between brother and sister;

[3] agreement between brother and sister was not void for lack of consideration; and

[4] sister was not entitled to post-judgment relief.

Affirmed.

West Headnotes (10)

[1]    **Federal Courts**  Particular Cases and Contexts

District court had subject matter jurisdiction on the basis of diversity in breach of contract action by brother against sister, as sister was a domiciliary of New York and brother demonstrated that he was a domiciliary of Connecticut; while brother's initial complaint was dismissed without prejudice on the basis that brother was also a domiciliary of New York and the parties thus lacked diversity, brother sufficiently established that he was a domiciliary of Connecticut as of the date he filed his second complaint. 28 U.S.C.A. § 1332(a)(1); Fed. R. Civ. P. 12(b)(1).

[2]    **Judgment**  Judgment on discontinuance, dismissal, or nonsuit

Collateral estoppel did not preclude brother from establishing that he had a diverse domicile, sufficient to convey diversity jurisdiction upon the district court, in brother's breach of contract action against sister, even though brother's first complaint was dismissed on the basis of a lack of diversity; dismissal of brother's first complaint was based on his failure to sufficiently demonstrate a diverse domicile at the time the first complaint was filed, but the issue following filing of brother's second complaint was whether he had demonstrated a change of domicile at the time of the second filing, and since these were separate inquiries, collateral estoppel did not apply. 28 U.S.C.A. § 1332(a)(1); Fed. R. Civ. P. 12(b)(1).

 [3]    Indemnity  Particular Cases and Issues

Two separate documents formed an integrated agreement, under New York law, in which sister had a contractual duty to reimburse brother for half of the amount brother paid to mother for mother's living expenses, in exchange for transfer of mother's stock to trusts benefiting brother and sister equally; document recording sister's agreement to indemnify brother for half of the payments he made to mother was meaningless without document recording brother's promise to pay mother an amount up to the value of stock she conveyed equally to the trusts, these two documents effectuated the same purpose, and brother's promise to mother, without sister's agreement to indemnify him, could have obligated brother to pay mother double the economic benefit brother received from his shares, leaving sister to have effectively received her shares as a gift.

2 Cases that cite this headnote

 [4]    Federal Courts  Defenses

Sister forfeited her argument that the document by which she agreed to indemnify her brother for half of the payments he made to their mother, in exchange for transfer of mother's stock to trusts benefiting brother and sister equally, was inauthentic or forged, and thus sister could not raise it on appeal, in breach of contract action against her by brother; sister's response to brother's motion for summary judgment in the district court did not contend that the indemnity agreement was forged or inauthentic, nor did her summary judgment declaration deny that she signed the document.

 [5]    Federal Civil Procedure  Hearing and Determination

Sister's assertion that she "had no recollection" of signing an agreement to indemnify her brother for half of payments he made to their mother, in exchange for transfer of mother's stock to trusts benefiting brother and sister equally, was insufficient to constitute a denial of brother's allegation that sister signed the agreement, and thus district court's decision to deem the fact that sister signed the document uncontested was warranted as it considered brother's motion for summary judgment in his breach of contract action against sister.

2 Cases that cite this headnote

 [6]    Indemnity  Requisites and Validity of Contracts

Agreement between brother and sister, requiring brother to support their mother and requiring sister to indemnify brother for half of payments he made to mother, in exchange for transfer of mother's stock to trusts benefiting brother and sister equally, was not void for lack of consideration; while sister argued that the record did not reflect that she actually received any money in exchange for relinquishing all rights to the shares she received from mother, any transaction for sister's shares conveyed a benefit upon her, whether the money went to sister herself, as a gift to her father, or to pay other debts, and sister's argument assumed she derived no benefit from her brother's undertaking to support their mother.

 [7]    Federal Courts  Failure to mention or inadequacy of treatment of error in appellate briefs

Sister waived for appellate review her argument that her integrated agreement with brother, requiring sister to indemnify brother for half of payments he made to their mother in exchange for transfer of mother's stock to trusts equally benefiting brother and sister, was invalid for lack of consideration, in brother's breach of contract action against her, as the argument section of sister's brief merely asserted that the record did not reveal that sister actually received any money from settlement based upon sister's relinquishment of stock shares transferred into her trust, rather than pressing the point that the integrated agreement was invalid for lack of consideration.

**[8]** Indemnity ⚯ Notice in general

Notice was not required to trigger sister's indemnification obligations under her agreement to indemnify brother for half of payments he made to mother, in exchange for transfer of mother's stock to trusts benefiting brother and sister equally, as brother did not have a good defense to his liability to mother, given that the indemnity agreement between brother and sister gave mother the sole and absolute discretion to request funds for her support.

1 Cases that cite this headnote

**[9]** Federal Civil Procedure ⚯ Further evidence or argument

In breach of contract action brought by brother, sister failed to present new evidence of sufficient importance to warrant vacating the district court's judgment against her on the grounds of newly discovered evidence; while sister argued that witness affidavit used to authenticate sister's signature on her indemnity agreement with brother that formed the basis for the breach of contract dispute was untrustworthy, in light of witness's testimony in a separate lawsuit between brother and sister, the district court did not rely on witness affidavit to authenticate sister's signature, instead concluding that there was no genuine dispute as to the letter's authenticity based on sister's failure to deny that she signed the letter in her statement in response to brother's motion for summary judgment. Fed. R. Civ. P. 60(b)(2); U.S.Dist.Ct.Rules S.&E.D.N.Y, Civ. Rule 56.1.

1 Cases that cite this headnote

**[10]** Federal Civil Procedure ⚯ Fraud; misconduct

Sister was not prevented from fully and fairly presenting her case, as required to support her motion to vacate judgment on the grounds of fraud, misrepresentation, or misconduct by an opposing party, in breach of contract action by brother against sister; while sister asserted that witness affidavit used to authenticate sister's signature on her indemnity agreement with brother that formed the basis for the breach of contract dispute was untrustworthy, in light of witness's testimony in a separate lawsuit between brother and sister, the district court did not rely on witness affidavit to authenticate sister's signature. Fed. R. Civ. P. 60(b)(3).

2 Cases that cite this headnote

**\*46** Appeal from a judgment of the United States District Court for the Southern District of New York (Forrest, J.).
**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

**Attorneys and Law Firms**

FOR APPELLANT: MICHAEL PAUL BOWEN, Daniel R. Benson, Eric Herschmann, Sarmad M. Khojasteh, (Kasowitz BensonTorres & Friedman LLP, New York, NY). Yoav Michael Griver, (Zeichner Ellman & Krause LLP, New York, NY).

FOR APPELLEES: SARAH REID, John G. Dellaportas, (Kelley Drye & Warren LLP, New York, NY).

PRESENT: DENNIS JACOBS, DEBRA ANN LIVINGSTON, Circuit Judges. JED S. RAKOFF,[*] District Judge.

**\*47 SUMMARY ORDER**

Orly Genger appeals from a judgment of the United States District Court for the Southern District of New York (Forrest, J.) granting summary judgment in favor of Sagi Genger on his contract claim against his sister, Orly. Also involved are their mother Dalia, and their father Arie. We refer to them by their given names. On appeal, Orly argues that the district court erred (1) by failing to grant her motion to dismiss for lack of subject-matter jurisdiction, (2) by finding an enforceable contract between Orly and Sagi as a matter of law, and (3) by failing to grant Orly's request for post-judgment relief. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

**[1]** 1. Orly moved to dismiss for lack of subject-matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). The district court's

jurisdiction was premised on diversity, and Orly argues that she and Sagi were non-diverse domiciliaries of New York. See [28 U.S.C. § 1332(a)(1)](). Initially, the district court granted Orly's [Rule 12(b)(1)]() motion, and dismissed without prejudice after finding that Sagi had failed to demonstrate that he had changed domiciles to Connecticut. Two days after the dismissal, Sagi re-filed his complaint in the same court, and the district court found that he had now sufficiently established his domicile in Connecticut.

To alter one's citizenship for purposes of [28 U.S.C. § 1332(a)(1)](), the party must show (1) "residence in a new domicil[e]" and (2) "the intention to remain there." [Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000)]() (quoting [Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir. 1998)]()). "The district court's factual findings as to whether there has been a change of residence and whether that move was effected with the requisite intent of permanence may be overturned on appeal only if they are 'clearly erroneous.' " [Id.]() (citing [Fed. R. Civ. P. 52(a)]()).

 [2]  Orly argues collateral estoppel; however, collateral estoppel is only available when a prior proceeding litigated an issue identical to an issue in the current proceeding. [Flaherty v. Lang, 199 F.3d 607, 613 (2d Cir. 1999)](). The question in the first action was whether Sagi had sufficiently demonstrated a change of domicile as of February 2014, the time he filed his first complaint; the issue in the second action was whether Sagi had demonstrated a change of domicile as of July 2014, the time he filed his second complaint. Since these are separate inquiries, collateral estoppel does not apply.

We also find no error in the district court's conclusion that Sagi had sufficiently established a change of domicile as of the date he filed his second complaint. In dismissing the first action, the district court observed that, as of the filing of the first complaint, Sagi did not have tenants at his New York apartment, there was no documentary evidence that he had rented property in Connecticut, and that there was significant doubt that Sagi had removed a religious article that would denote that the apartment was his home. Moreover, Sagi continued to use the address of his New York apartment for several months after filing his first complaint. By the time Sagi filed his second complaint in July 2014, the district court had been presented with much of the missing or doubtful evidence, as well as other evidence supporting Sagi's claim that he had changed domiciles to Connecticut. For example, Sagi swore that he had "not stayed overnight in New York State ... for nearly a year," that his former New York home was now an investment property that had been leased on a long-term basis, and that **\*48** he had registered to vote in Connecticut. J. App'x at 272–73. Considering this evidence, as well as evidence Sagi submitted in the first complaint regarding his attendance at Connecticut religious services, his Connecticut driver's license, his children's attendance in Connecticut schools, and other evidence, we see no clear error in the district court's determination that Sagi had changed domiciles to Connecticut, thereby creating subject-matter jurisdiction.

 [3]  2. Orly challenges the award of summary judgment to Sagi on his breach of contract claim. We "review a ... grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." [Allianz Ins. Co. v. Lerner, 416 F.3d 109, 113 (2d Cir. 2005)]().

Plaintiffs must prove four elements to make out a valid claim for breach of contract under New York law: "[1] formation of a contract, [2] performance by the plaintiff, [3] breach and [4] 'resulting damage.' " [McCormick v. Favreau, 82 A.D.3d 1537, 1541, 919 N.Y.S.2d 572 (2011)]() (quoting [Clearmont Prop., L.L.C. v. Eisner, 58 A.D.3d 1052, 1055, 872 N.Y.S.2d 725 (2009)]()). Only the first element is in dispute.

Three documents are relevant to the contract formation issue. The first is the "Divorce Stipulation" between Dalia and Arie. In it, Dalia and Arie agreed to convey shares of stock to separate trusts benefitting Orly and Sagi (herein referred to as the "Orly Trust" and "Sagi Trust" respectively). The two trusts were to receive equal interests in the stock. The second is a letter signed by Sagi and Dalia in which Sagi agreed to pay Dalia, upon demand, an amount up to the value of the stock she conveyed to the two trusts ("the Promise"). The third is a letter in which Orly agrees to indemnify Sagi for half of such payments he makes to Dalia ("the Indemnity").

As the district court found, the Promise and the Indemnity form an integrated agreement in which Orly has a contractual duty to reimburse Sagi for half of the amount he pays Dalia for living expenses. Whether separate documents form an integrated agreement depends on the intent of the parties. [TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 89 (2d Cir. 2005)](). This is normally a jury question, "[b]ut if the documents in question reflect no ambiguity as to whether they should be read as a single contract, the question is matter of law for the court." [Id.]() Two documents may reach the requisite level of clarity when they are "intended to effectuate the same

purpose" and the later-executed document is "meaningless" without the first. Id. at 89–90. The district court recognized that the Indemnity and Promise meet this test. The two documents jointly created a means by which Sagi and Orly would share the costs of supporting Dalia. The Indemnity is meaningless without the Promise, as the latter includes the claims for which Orly must indemnify Sagi. Similarly, absent the Indemnity, "Sagi could be obligated under the ... Promise to pay Dalia double the economic benefit he received from his shares ... and Orly would effectively have received the shares as a gift." Genger v. Genger, 76 F.Supp.3d 488, 497 (S.D.N.Y. 2015). As the district court found, there was no genuine dispute as to whether the documents were integrated.[3]

 **\*49** [4] [5] Orly also argues that the district court ignored factual disputes as to whether the Indemnity was inauthentic or forged. Orly thus contends it was improper for the district court to determine on summary judgment that an enforceable contract existed between her and Sagi. But her response to Sagi's motion for summary judgment does not contend (let alone prove) that the Indemnity was forged or inauthentic. Orly has thus forfeited this argument and cannot raise it on appeal. See United States v. Keppler, 2 F.3d 21, 23–24 (2d Cir. 1993) ("Generally, issues not raised in the trial court ... will be deemed waived on appeal."). In any event, Orly's summary judgment declaration does not deny that she signed the document.[4] Therefore, the district court properly concluded that there was no genuine dispute regarding the Indemnity's authenticity.

 [6] [7] The district court rejected Orly's assertion that any contract between her and Sagi would be void for lack of consideration. See Murray v. Northrop Grumman Info. Tech., Inc., 444 F.3d 169, 178 (2d Cir. 2006) (noting that New York law requires contracts to be supported by consideration). Specifically, the district court observed that Orly, along with Arie and their litigation funders, received $32 million in exchange for relinquishing all rights to the shares she received as part of the Divorce Stipulation. Although Orly asserts that the record does not reveal that she actually received any money from the settlement, the argument section of her brief does not press the point that the integrated agreement at issue here is invalid for lack of consideration. For this reason alone, we would properly deem this argument waived for purposes of this appeal. To the extent Orly attempts to make this argument, she seeks to ground it by suggesting that the record does not reveal that she received any money from the settlement. But surely any $32 million transaction for her shares would confer upon her more than a peppercorn, which is all we need to conclude (and all we do conclude) as to the extent of any benefit she received.[5] Consideration encompasses more than just receiving cash: it "exists where there is 'either a benefit to the promisor or a detriment to the promisee.'" See Hollander v. Lipman, 65 A.D.3d 1086, 1087, 885 N.Y.S.2d 354 (2009) (quoting Weiner v. McGraw–Hill, Inc., 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441, 444 (1982)). Orly does not dispute that she was part of a group that settled a claim involving the shares she was to receive as part of the Divorce Stipulation. Orly benefitted from the shares regardless of whether the settlement money went to Orly, as a gift to Arie, or to pay debts owed to her litigation **\*50** partners.[6] Moreover, her argument oddly assumes that she derives no benefit from her brother's undertaking to support the mother of them.

 [8] The district court determined that Orly lacked any valid defense to Sagi's breach of contract claim. Orly argues that she need not reimburse Sagi because he did not afford her an opportunity to defend against Dalia's claim. See Chase Manhattan Bank v. 264 Water St. Assocs., 222 A.D.2d 229, 231, 634 N.Y.S.2d 687 (1995). But as the district court observed, notice is unnecessary if an indemnitee can "establish that [it] would have been liable and that there was no good defense to that liability." Deutsche Bank Trust Co. v. Tri–Links Inv. Trust, 74 A.D.3d 32, 39, 900 N.Y.S.2d 246 (2010). The agreement between Orly and Sagi gave Dalia "sole and absolute discretion" to request funds "to support [her] lifestyle." J. App'x at 15. Orly asserts that she or Sagi might have resisted a claim by challenging Dalia's need for the money she demanded. But Orly's speculation of Dalia's bad faith is insufficient to create a genuine dispute as to material fact. Therefore, we find no merit in her argument.[7]

 [9] 3. We also find no merit in Orly's appeal of the district court's denial of her post-judgment motion. Specifically, Orly moved the district court to set aside its judgment pursuant to Federal Rule of Civil Procedure 60(b)(2),(3), and (6). We review a district court's denial of a Rule 60(b) motion for abuse of discretion. Boule v. Hutton, 328 F.3d 84, 95 (2d Cir. 2003).

Rule 60(b)(2) allows a district court to vacate a prior judgment on the grounds of newly discovered evidence. However, to succeed on this ground, Orly had to show that the new evidence was "of such importance that it probably would have changed the outcome" of the case. United States v. Int'l Bhd. Of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001). The district court expressly stated that the new evidence Orly presented

would not have changed the decision; and we find no abuse of discretion in that determination.

Orly's theory proceeds as follows: (1) The district court granted summary judgment against Orly after concluding that Orly had entered into an enforceable contract. (2) The district court based its finding of a contract on a letter purportedly signed by Orly. (3) The only evidence authenticating the signed letter was an affidavit by a man named Parnes. (4) Orly asserts that, in a separate lawsuit between Orly and Sagi, Parnes gave deposition testimony indicating that Parnes never saw whether Orly had signed the letter. (5) Therefore, Orly concludes, the district court lacked sufficient evidence from which to determine that Orly was subject to a legally enforceable contract.

The problem with this theory is that the district court never relied on the Parnes affidavit to authenticate the letter. Indeed, as mentioned above, Orly did not deny that she signed the letter in her Rule 56.1 Statement. It was for that reason rather than because of the Parnes affidavit that **\*51** the district court identified no genuine dispute as to the letter's authenticity. Orly's claimed inability to remember signing the letter does not change this analysis. See Nat'l Union Fire Ins. Co., 205 F.3d at 75. In short, Orly is attempting to cast doubt on a piece of evidence that was wholly irrelevant to the district court's decision.

 **[10]**  Orly's Rule 60(b)(3) motion fails for similar reasons. Rule 60(b)(3) allows a district court to vacate a judgment on the grounds of fraud, misrepresentation, or misconduct by an opposing party. However, "[t]o prevail[,] ... a movant 'must show that the conduct complained of prevented the moving party from fully and fairly presenting [her] case." State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 176 (2d Cir. 2004) (quoting Taylor v. Texgas Corp., 831 F.2d 255, 259 (11th Cir. 1987)). Given that the district court did not even rely on the evidence that Orly characterizes as crucial, she cannot be said to have been "prevented ... from fully and fairly presenting [her] case."

Orly's Rule 60(b)(6) motion fares no better. "[I]f the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)." Int'l Bhd. Of Teamsters, 247 F.3d at 391–92. In effect, Orly's motion was premised on newly discovered evidence and fraud, which can be considered under Rule 60(b)(2) and (3). Consequently, she has no claim to relief under Rule 60(b)(6).

Accordingly, the judgment of the district court is hereby **AFFIRMED.**

**All Citations**

663 Fed.Appx. 44

Footnotes

| | |
|---|---|
| \*\* | 15–350 was closed on May 22, 2015. |
| \* | The Honorable Jed S. Rakoff, United States District Court for the Southern District of New York, sitting by designation. |
| 3 | Orly argues that the district court improperly failed to consider whether the Divorce Stipulation was also integrated with the Indemnity and Promise. Though vague, Orly appears to argue that Arie would not have approved of the agreement between Orly, Sagi, and Dalia, or perhaps would not have entered into the Divorce Stipulation had he known of the arrangement. But Orly has not shown that Arie's approval was necessary to form the agreement among Sagi, Orly, and Dalia. |
| 4 | Orly argues that, because she had stated she "ha[d] no recollection" of signing the Indemnity, she thereby denied signing the document. Appellant Reply Br. at 3. This statement does not constitute a denial. See FDIC v. Nat'l Union Fire Ins. Co., 205 F.3d 66, 75 (2d Cir. 2000) ("[V]ague denials and memory lapses ... do not create genuine issues of material fact."). Consequently the district court properly deemed the fact that Orly signed the document as uncontested. See T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted ... are uncontested and admissible."). |
| 5 | Sagi suggests, elliptically, that the bare fact that he, Sagi, received payments relating to the shares he was to receive as part of the Divorce Stipulation would be sufficient to trigger the Indemnity. This argument was neither considered by the district court or fairly before us on appeal, and we expressly decline to decide that issue. |
| 6 | Orly does not argue on appeal that the shares she received under the Divorce Stipulation are invalid as past consideration. In any event, this argument would be foreclosed by N.Y. Gen. Oblig. Law § 5–1105, which allows for past consideration. And since the agreement was supported by consideration, we do not need to consider whether Sagi was entitled to relief based on a promissory estoppel theory. |

7   Orly did not advance on appeal any of the other defenses she argued to the district court. They are therefore forfeited, Keppler, 2 F.3d at 23–24, and to the extent she does raise them on appeal, we find them so vague and inarticulate as to lack substance or merit.

---

**End of Document**                           © 2020 Thomson Reuters. No claim to original U.S. Government Works.