# EXHIBIT V

```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK - CIVIL TERM - PART: JHO
------------------------------------------------------------X
ORLY GENGER, in her individual capacity
and on behalf of the Orly Genger 1993
Trust (both in its individual capacity and
on behalf of D & K Limited Partnership),

                                        Plaintiff,

        -against-

DALIA GENGER, SAGI GENGER, LEAH FANG, D&K
GP LLC, and TPR INVESTMENT ASSOCIATES, INC.,

                                        Defendants.
------------------------------------------------------------X
Index No. 109749-2009            60 Centre Street
Case No. 1429                    New York, New York
                                 May 4, 2017




                        -AND-




------------------------------------------------------------X
ARIE GENGER and ORLY GENGER, in her
individual capacity and on behalf of the
ORLY GENGER 1993 TRUST,,
                                        Plaintiffs,

        -against-

SAGI GENGER, TPR INVESTMENT ASSOCIATES,
INC., DALIA GENGER, THE SAGI GENGER 1993
TRUST, ROCHELLE FANG, individually and as
Trustee of the SAGI GENGER 1993 TRUST,
GLENCLOVA INVESTMENT CO., TR INVESTORS,
LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY
II, LLC, JULES TRUMP, EDDIE TRUMP, MARK
HIRSCH and TRANS-RESOURCES, INC.,

                                        Defendants.
------------------------------------------------------------X
                        -CONTINUED-
```

```
 1                         Proceedings

 2
       ------------------------------------------------------------X
 3     SAGI GENGER, individually and as assignee
       of THE SAGI GENGER 1993 TRUST, and TPR
 4     INVESTMENT ASSOCIATES, INC.,

 5                                         Cross-Claimants,
                                           Counterclaimants, and
 6                                         Third-Party Claimants,

 7                -against-

 8     ARIE GENGER, ORLY GENGER, GLENCOVA
       INVESTMENT COMPANY, TR INVESTORS, LLC, NEW
 9     TR EQUITY I, LLC, NEW TR EQUITY II LLC,
       JULES TRUMP, EDDIE TRUMP, MARK HIRSCH,
10     TRANS-RESOURCES, INC., and WILLIAM DOWD,

11                                         Cross-Claim,
                                           Counterclaim and/or
12                                         Third-Party Defendants.
       ------------------------------------------------------------X
13     Index No. 651089-2010              60 Centre Street
       Case No. 1488                      New York, New York
14                                        May 4, 2017

15     B E F O R E:

16         HONORABLE IRA GAMMERMAN, Justice

17     A P P E A R A N C E S:

18         KASOWITZ, BENSON, TORRES, LLP
           Attorneys for the Plaintiff
19         1633 Broadway
           New York, NY 10019
20         BY:  ANDREW R. KURLAND, ESQ.
                MICHAEL PAUL BOWEN, ESQ.
21
           KELLEY DRYE & WARREN, LLP
22         Attorneys for the Defendant TPR
           101 Park Avenue
23         New York, NY 10178
           BY:  JOHN DELLAPORTAS, ESQ.
24

25
                                          Lisa A. Casey
26                                        Official Court Reporter
```

1                           Proceedings

2              THE COURT:  This case is 1429 in my computer.

3              By decision and order dated April 8th, 2016,

4    Justice Jaffe referred this matter initially to me, and

5    I'm quoting, the damages arising from defendants' breach

6    of their fiduciary duties to plaintiff, and the value of

7    the subject shares that were transferred in the

8    February, 2009 auction, close quote.  There was a

9    consent clarification of that order of reference.

10             The judge indicated that all I was to consider

11   and recommend was what the value was of the LP's TPR

12   shares before the modification, however we had a rather

13   long trial in this matter, over six days, on the 2nd,

14   3rd, 4th of August, and the 8th, 9th and 10th of that

15   same month.  I heard testimony from a lot of witnesses,

16   including members of the Genger family, that's Dalia,

17   Sagi and Orly; Sagi's mother-in-law, Rochelle Fang; a

18   representative of the Trump Group, a man by the name of

19   Mark Hirsch, and finally an expert witness and

20   accountant named Samuel Gunther, called by the

21   defendants.

22             Subsequently, post-trial memoranda was

23   submitted by both sides.  ==It's argued by Sagi Genger==

24   ==that no damages resulted from the breach of fiduciary==

25   ==duty, however Orly seeks an award of approximately $85==

26   ==million in damages==, arriving at that number by arguing

that Sagi deprived her of a 48 percent share of TPR's cash, liquid investments, and net operating loss carry-forwards, which she claims adds up to in excess of $25 million, and that Sagi then deprived her of a 48 percent share of TPR's holding in TRI shares, constituting additional damages that she estimates fell between $36 and $435 million, and seeks damages totaling almost $60 million.

==Based on the modification of the order of reference by Judge Jaffe, the matter only revolves around the value of the TPR shares, and I find that the value, based on, primarily, Mr. Gunther's testimony, was exactly what they were sold for, and that no damages were, therefore, suffered.==  His testimony was, as I recall, that a reasonable prospective investor would not have paid more than two and a half million dollars for what is, in essence, a minority interest in a company that had been losing money for many years, was not paying a dividend, and was not likely to pay a dividend.

Also, he testified, and I was somewhat persuaded by that testimony as well, that any prospective investor would be buying not only a minority interest, but into a company whose shareholders had an extraordinary history of litigation, and that litigation was likely to continue indefinitely, and that certainly

1       Proceedings

2  would have a negative impact. So with respect to that
3  issue, I find that the shares had the value that -- that
4  there was no loss sustained by the plaintiffs as a
5  result of the shares, the sale of the shares.
6            Now, the other matter that -- that takes care
7  of 1429. The next case is 1488. That was referred to
8  me by Justice Jaffe in connection with a claim for
9  attorneys' fees in connection with the, I guess, the
10 preliminary injunction which tied up some fund for some
11 period of time. Arie Genger obtained this preliminary
12 injunction, or temporary restraining order, in 2011,
13 which enjoined TPR from using certain escrowed funds,
14 pending the further ruling. My recollection is that it
15 was Justice Feinman who issued that order. I assume
16 that the attorneys are familiar with the facts in that
17 particular litigation.
18           The order of Judge Feinman ordered that the
19 portion of plaintiffs' motions seeking to enjoin the
20 defendants from making demands upon, or using, or
21 spending the proceeds derived from purported sales to
22 the Trump Group was granted, pending a determination by
23 a court of competent jurisdiction of who was the
24 beneficial owner of those shares. The Trump Group then
25 brought a proceeding in Delaware against Arie Genger and
26 TPR seeking to resolve that issue of that beneficial

1                       Proceedings
2    owner of the shares.
3             TPR then brought a cross-claim and
4    counterclaim in the Delaware action seeking to secure
5    the release of the sale proceeds, and the Delaware
6    Court, in February of 2013, granted summary judgment to
7    the Trump Group, with respect to the beneficial
8    ownership issue, but denied a cross-motion for a release
9    of the enjoined funds, holding that the escrow agent can
10   demand a formal vacating or modification of the
11   injunction here in this court, before it agreed to
12   distribute the funds.
13            An appeal was taken from the order of Judge
14   Feinman, and a decision and order by the First
15   Department.  The Appellate Division granted the
16   cross-appeal to dismiss all of the claims brought
17   against TPR by Arie Genger, as a result of which the
18   preliminary injunction was vacated.
19            In May of 2015, on May 19, Judge Jaffe, who
20   now had the case, held that he would that TPR is
21   entitled to recover reasonable and necessary fees and
22   expenses incurred in opposing the preliminary injection
23   and in prosecuting the appeal from Justice Feinman's
24   order granting that relief.  Justice Jaffe then referred
25   the issue of legal fees and interest incurred to the
26   Special Referee's calendar seeking a report with

1                           Proceedings

2     recommendations.

3             TPR seeks an amount in excess of $400,000.
4     Incidentally, there's an amount included in that of
5     $20,149.85 which is being sought in connection with this
6     fee application, and it seems to me that whether or not
7     time spent or the legal fees incurred in preparing the
8     fee application and litigating the fee award is
9     something that Justice Jaffe should resolve, not for me,
10    so that I'm not going to recommend, at this point, any
11    portion of that request.

12            There is an issue, however, of proration, and
13    Justice Jaffe, in her decision, reduced any legal fee to
14    be recovered by 80 percent, reasoning that only $1.5
15    million of the $7.24 million at issue was not within the
16    escrow funds; that $5.74 million was escrowed not
17    pursuant to the preliminary injunction.

18            Obviously, the attorney seeking the fee is not
19    in accord with Justice Jaffe's 80 percent reduction, but
20    that's something, again, to take up with her.

21            Counsel for plaintiff argues that the fee
22    that's being sought is not to be awarded because there's
23    no evidence that fees were actually paid.  My position
24    is that payment is irrelevant, and therefore I don't
25    consider that a basis to deny the fee application solely
26    for that reason.

1                           Proceedings

2                  Turning to the argument that the invoices

3          include charges for work in connection with appeals on

4          the underlying claims, as opposed to only the propriety

5          of an injunction, and that therefore the party seeking

6          the fee is entitled to recover, at most, something in

7          the neighborhood of $5,000 or $6,000, Judge Jaffe's

8          decision, as I note, states, and I'm quoting, TPR is

9          entitled to recover reasonable and necessary fees and

10         expenses incurred in opposing the preliminary injunction

11         and of prosecuting the appeal.  The appeal involved a

12         little more -- actually, the appeal resulted in the

13         dismissal of the action, which accomplished the vacating

14         of the preliminary injunction.  As I read the language,

15         the party seeking the fee is entitled to fees incurred

16         in prosecuting the appeal, even though the appeal

17         involved more than an appeal from the preliminary

18         injunction.

19                 Turning to the invoices submitted, I find that

20         the attorney and paralegal rates that are changed are

21         comparable to those charged by attorneys and paralegals

22         doing the type of work involved in this action,

23         particularly in connection with the relative complexity

24         of the action.  I'm reducing, however, by an additional

25         ten percent, the amount I'm recommending because of some

26         blocked billing that's contained in the invoices.  The

|   |   |
|---|---|
| 1 | Proceedings |

2   party seeking fees has already reduced all block-billing
3   charges that include redactions by the 50 percent, but I
4   find that a further reduction is warranted.  Obviously,
5   the failure to set forth individual tasks makes it much
6   more difficult to evaluate whether or not the amount of
7   time spent on a particular aspect of the legal work was
8   reasonable.
9               Accordingly, I'm recommending to Justice Jaffe
10  that the attorney fee award be $70,296.54.
11              Off the record.
12              (Whereupon, an off-the-record discussion took
13  place.)
14              THE COURT:  Back on the record.
15              Presumably somebody is going to make a motion
16  to Justice Jaffe to confirm or disaffirm my
17  recommendation, but that's up to you fellows.
18              MR. DELLAPORTAS:  The order is on the record,
19  your Honor.  Order will be essentially, the --
20              (Continued on the next page.)

|   |   |
|---|---|
| 1 | Proceedings |
| 2 | THE COURT:  My recommendation is included in |
| 3 | the transcript.  I recommended, in connection with the |
| 4 | first case, no damages, and in connection with the |
| 5 | second case the amount I've indicated on the record. |
| 6 | MR. BOWEN:  Yes.  Thank you. |
| 7 | MR. KURLAND:  Thank you. |
| 8 | *     *     *     *     *     * |
| 9 | Certified to be a true and accurate |
| 10 | transcription of the above-entitled matter. |

```
                    _____
                    Lisa A. Casey
                    Senior Court Reporter
```