**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

| | |
|---|---|
| **In re** : | |
| : | **Chapter 7** |
| **Orly Genger,** : | **Case No. 19-13895 (JLG)** |
| : | |
| **Debtor.** : | |

-----------------------------------------------------------------X

| | |
|---|---|
| **DALIA GENGER,** : | |
| : | |
| **Plaintiff** : | |
| : | |
| **v.** : | **Adv. Pro. No. 20-01010 (JLG)** |
| : | |
| **ORLY GENGER, MICHAEL BOWEN,** : | |
| **ARIE GENGER, ARNOLD BROSER,** : | |
| **DAVID BROSER, ERIC HERSCHMANN,** : | |
| **THE GENGER LITIGATION TRUST,** : | |
| **ADBG LLC, TEDCO INC., and** : | |
| **DEBORAH PIAZZA, as chapter 7 Trustee,** : | |
| : | |
| **Defendants.** : | |

-----------------------------------------------------------------X

**VARIOUS DEFENDANTS' REPLY AND OPPOSITION**
**TO PLAINTIFF DALIA GENGER'S MEMORANDUM OF LAW (A)**
**IN OPPOSITION TO MOTIONS TO DISMISS AMENDED COMPLAINT**
**AND (B) IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

I.    THE COMPLAINT IS BARRED BY THE STATUTE OF
      LIMITATIONS ................................................................................................................ 2

II.   DALIA LACKS STANDING ........................................................................................... 7

A.    Constitutional Standing ................................................................................................... 7

B.    Prudential Standing ......................................................................................................... 9

III.  DALIA FAILS TO STATE A CLAIM FOR A CONSTRUCTIVE
      TRUST ............................................................................................................................ 10

IV.   DALIA'S DECLARATORY JUDGMENT CLAIM SHOULD BE
      DISMISSED ................................................................................................................... 16

V.    DALIA'S EQUITABLE LIEN CLAIM SHOULD BE
      DISMISSED ................................................................................................................... 17

VI.   DALIA'S REQUEST FOR AN INJUNCTION SHOULD BE
      DENIED .......................................................................................................................... 17

VII.  DALIA'S AMENDED COMPLAINT WAS IMPROPERLY
      FILED AND ANY AMENDMENT TO THE COMPLAINT
      WOULD BE FUTILE ..................................................................................................... 18

VIII. DALIA'S CROSS-MOTION FOR SUMMARY JUDGMENT IS
      PROCEDURALLY IMPROPER AND SHOULD BE DENIED ................................... 18

JOINDER IN OTHER MOTIONS TO DISMISS ...................................................................... 21

CONCLUSION ........................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 1031 Tax Grp., LLC*, 439 B.R. 47 (Bankr. S.D.N.Y. 2010).....................................7

*Ackerman v. Ackerman*, No. 10 CIV. 6773 JGK, 2012 WL 407503 (S.D.N.Y.
    Feb. 9, 2012) .............................................................................................................2

*Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140 (2d Cir. 2011)........................7

*Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D.2d 50 (1st Dep't 1988)............16

*Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*, 792 F. Supp. 969
    (S.D.N.Y. 1992) .......................................................................................................16

*Barone v. Barone*, 130 A.D.3d 765 (N.Y. 2015) ...........................................................3

*In re Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 BRL, 2012 WL 892514
    (Bankr. S.D.N.Y. Mar. 14, 2012).............................................................................19

*Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171 (2d Cir. 2007) .........................11

*In re Chowaiki & Co. Fine Art Ltd.*, 593 B.R. 699 (Bankr. S.D.N.Y. 2018) .............8, 9

*Clark-Fitzpatrick, Inc. v Long Island R.R. Co.*, 70 N.Y.2d 382 (N.Y. 1987)...............14

*In re Commodore Bus. Machines, Inc.*, 180 B.R. 72 (Bankr. S.D.N.Y. 1995).............12

*Daisley v. FedEx Ground Package Sys., Inc.*, No. 08 CV 4063 JG LB, 2008 WL
    5083009 (E.D.N.Y. Dec. 1, 2008) .............................................................................4

*Delango v. Delango*, 203 A.D.2d 319 (N.Y. 1994) .........................................................2

*East 51st Street Dev. Co. v. HFZ East 51, LLC*, No. 652135/3016, 2019 WL
    6916089 (N.Y. Sup. Ct. Dec. 19, 2019)....................................................................17

*Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112 (2d Cir. 2005) .................................17

*Genger v. Genger*, 663 F. App'x 44 (2d Cir. 2016).......................................................14

*Genger v. Genger*, 771 F. App'x 99 (2d Cir. 2019)........................................................15

*Gimbel v. Feldman*, 1995 WL 500487 (E.D.N.Y. Aug. 8, 1995) ...................................9

*In re Haber Oil Co.*, 12 F.3d 426 (5th Cir. 1994) ........................................................11

*In re Howard's Appliances Corp.*, 874 F.2d 88 (2d Cir. 1989) ....................................................11

*Intellivision v. Microsoft Corp.*, 484 F. App'x 616 (2d Cir. 2012)..............................................15

*James v. Alderton Dock Yards, Ltd.*, 256 N.Y. 298 (N.Y. 1931) ...................................................17

*MacDraw, Inc. v. CIT Group Equip Fin., Inc.*, 157 F.3d 956 (2d Cir. 1998)...............................14

*McGovern v. Solomon*, 466 F. Supp. 2d 554 (S.D.N.Y. 2006).................................................8, 9

*Miller v. Schloss*, 218 N.Y. 400 (N.Y. 1916)................................................................................14

*Murphy v. Morlitz*, No. 15-CV-7256 (VSB), 2017 WL 4221472 (S.D.N.Y. Sept.
   21, 2017), *aff'd* 751 F. App'x 28 (2d Cir. 2018) .......................................................................2

*In re N. Am. Coin & Currency, Ltd.*, 767 F.2d 1573 (9th Cir. 1985) ...........................................11

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ...........................................................................15

*Ryan v. Cover*, 75 A.D.3d 502 (N.Y. 2010)..................................................................................17

*Sanxhaku v. Margetis*, 151 A.D.3d 778 (2d Dep't 2017) ............................................................12

*In re Servo Corp. of Am., Inc.*, No. 12-76993-AST, 2015 WL 756651 (Bankr.
   E.D.N.Y. 2015) ..........................................................................................................................20

*Sharp v. Kosmalski*, 40 N.Y.2d 119 (N.Y. 1976) .........................................................................13

*Shoreham Hills, LLC v. Sagaponack Dream House, LLC*, 66 Misc. 3d 1231(A)
   (N.Y. Sup. Ct. 2020) ...................................................................................................................6

*Shovlin v. Klaas*, 555 B.R. 500 (W.D. Pa. 2016) .........................................................................20

*Superintendent of Ins. for the State of New York v. Ochs (In re First Central Fin.
   Corp.)*, 377 F.3d 209 (2d Cir. 2004) ............................................................................9, 11, 14

*Tesauro v. Tesauro*, 112 N.Y.S.2d 246 (N.Y. Sup. Ct. 1952) ........................................................9

*TPR Inv. Assocs., Inc. v. Pedowitz & Meister LLP*, No. 13 CIV 8243 JFK, 2014
   WL 1979932 (S.D.N.Y. May 15, 2014) ...................................................................................5, 14

*Walker v. Jastremski*, 430 F.3d 560 (2d Cir. 2005), *aff'd* 376 F. App'x 80 (2d Cir.
   2010) ............................................................................................................................................4

*Walsh v. Andorn*, 33 N.Y.2d 503 (N.Y. 1974)..............................................................................16

**Statutes and Rules**

Fed. R. Bankr. P. 7056 ..............................................................................................................19, 20

Fed. R. Civ. P. 56 ...........................................................................................................20

L. Bankr. R. 5070-1 ......................................................................................................19

L. Bankr. R. 7056-1 ......................................................................................................19

L. Bankr. R. 7056-1(a) ..................................................................................................19

**Treatises and Periodical Materials**

Restatement (Second) of Judgments § 33 (1982) .........................................................16

TO THE HONORABLE JAMES L. GARRITY JR.,
UNITED STATES BANKRUPTCY JUDGE:

Defendants Orly Genger ("Orly" or the "Debtor"), Arie Genger ("Arie"), Arnold Broser, David Broser, The Genger Litigation Trust, ADBG LLC, and Tedco, Inc. (collectively, the "Defendants"), by and through their respective undersigned counsel, respectfully submit this reply and opposition to Plaintiff Dalia Genger's Memorandum of Law in Opposition to Motions to Dismiss Amended Complaint and in Support of Cross-Motion for Summary Judgment, filed on July 15, 2020 (the "Opposition"), and respectfully state as follows:

### PRELIMINARY STATEMENT

The Opposition fails to establish that this Court should not dismiss the Amended Complaint as improperly filed, time-barred, for lack of standing, and for failure to state a claim. It simply sidesteps the numerous dispositive flaws identified in the Motion. In doing so, Dalia ignores the mountain of evidence against her presented in the Motion. Dalia also ignores her own past statements under oath that the property at issue "belongs to the Orly Trust and no one else", and should be used to "help Orly and our grandchildren build a better life", instead now claiming that the same property belongs to Dalia. While the Defendants dispute that testimony regarding the Orly Trust, Dalia's ownership positions regarding the property at issue are fundamentally at odds with one another, and evidence that Dalia's claims here are baseless and should be dismissed.

Dalia's main argument appears to be that prior decisions in third party actions between Sagi Genger and Orly Genger are somehow binding on the numerous other parties to this action who were not parties to those proceedings and automatically result in victory for Dalia here. That is simply not true, and Dalia also mischaracterizes the weight of those decisions.

For the reasons set forth below and in the Various Defendants' Motion to Dismiss Dalia Genger's Amended Complaint (the "Motion" or "Mot."), the Court should dismiss the Amended

Complaint.  The Opposition also improperly attempts to cross-move for summary judgment in violation of the Local Rules of this Court and the Bankruptcy Rules.  Because the "cross-motion" was not filed in accordance with the applicable rules, it is defective and should be denied.

## I.    THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS

1.    Where a plaintiff brings a claim for a constructive trust and alleges wrongful conduct related to the property at issue, the statute of limitations runs from the alleged wrongdoing. *See Murphy v. Morlitz*, No. 15-CV-7256 (VSB), 2017 WL 4221472, at *7 (S.D.N.Y. Sept. 21, 2017), *aff'd* 751 F. App'x 28 (2d Cir. 2018) (finding that the statute of limitations began to run on the day of the sale of an insurance policy that was being held in trust for the plaintiff).  Further, if the property has been transferred to a third party, the statute of limitations begins to run when a defendant "convey[s] the property out of the plaintiff's reach." *Delango v. Delango*, 203 A.D.2d 319 (N.Y. 1994); *see also Ackerman v. Ackerman*, No. 10 CIV. 6773 JGK, 2012 WL 407503, at *2 (S.D.N.Y. Feb. 9, 2012).

2.    The Opposition attempts to avoid this clear bar to Dalia's claims by asserting that the Complaint does not allege that Orly engaged in wrongful acts relating to the property at issue. However, the Complaint alleges that under the 2013 Settlement Agreement, Orly improperly monetized TRI shares that it claims were assigned to the Orly Trust in 2004 as part of the 2004 Divorce Agreement.  Thus, putting aside that the Orly Trust was not even a party to the agreement at issue, the Complaint clearly alleges that Orly somehow monetized and obtained possession of property that it asserts belonged to another entity, the Orly Trust.  It then alleges that Orly improperly transferred proceeds of that settlement to certain of the other Defendants to frustrate Dalia's purported rights.

3.    Indeed, the Amended Complaint alleges – under a header entitled "The Fraudulent Transfers" that "[i]n order to frustrate Dalia's rights, in 2013 Orly secretly and fraudulently transferred approximately $17.3 million of the $32.3 million obtained in the 2013 Settlement Agreement . . . for no consideration or value to Orly." (Am. Compl. ¶ 39.)  It then alleges that "Orly diverted and misappropriated the proceeds of her monetization of the Rights."  (Am. Compl. ¶ 47.)

4.    The Opposition attempts to backtrack on these allegations, arguing that Dalia's claims did not arise until Orly allegedly repudiated her[1] demand, not the date of the transfers she has alleged to have been fraudulently made by Orly, regardless of when Dalia actually knew of her claims.  Thus, under Dalia's theory, she could wait another 25 years to make a demand and then still get the benefit of another six years to file a claim despite the fact that the claim would then be made over 40 years after the 2004 Divorce Agreement and over 30 years after the 2013 Settlement Agreement.  Not surprisingly, the law does not allow for such an absurd result.

5.    Nevertheless, even if the court finds that the gravamen of the plaintiff's cause of action is not based on wrongful acquisition, the statute of limitations then runs from when the defendant allegedly breached her promise.  *See Barone v. Barone*, 130 A.D.3d 765, 766 (N.Y. 2015).  At its core, Dalia's claim here is that Orly breached her alleged promise to Dalia by allegedly fraudulent transferring the proceeds of the 2013 Settlement Agreement.

6.    The Opposition also fails to address why the statute of limitations should not run from the date of her 2004 Divorce Agreement, as Dalia has conceded in court filings in Orly's chapter 7 case that her claim is in the nature of a domestic support obligation.  (Motion ¶ 47.)

---

[1] This "demand" was not a demand from Dalia to Orly but rather a demand from Dalia to Sagi. Sagi then demanded that Orly indemnify him for one half of the amount demanded from him, not Orly, by Dalia.  Sagi's demand was made pursuant to a separate contract to which Dalia is not a party.  (Am. Compl. ¶¶ 17, 18.)

Since Dalia's claims were filed almost sixteen years after her divorce agreement, they were filed nearly ten years late.

7. The Opposition's equitable tolling argument fails to resuscitate her stale claims. It is factually and legally inaccurate. Equitable tolling is only available in "'rare and exceptional cases' where 'extraordinary circumstances prevented a party from timely performing a required act.'" *Daisley v. FedEx Ground Package Sys., Inc.*, No. 08 CV 4063 JG LB, 2008 WL 5083009, at *3 (E.D.N.Y. Dec. 1, 2008) (quoting *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005)), *aff'd* 376 F. App'x 80 (2d Cir. 2010). That is far from true here.

8. Dalia has not identified any extraordinary acts that prevented her from pursuing these claims. Rather, Dalia did pursue claims to recover the property at issue here, just under different legal theories and wearing her trustee of the Orly Trust hat. As detailed at length in the Motion, Dalia has, in her former capacity as trustee of the Orly Trust, been actively litigating claims relating to the property at issue here from nearly the date on which the 2013 Settlement Agreement was executed. Her pursuit of the recovery of the same property at issue here shows that the "claims" have not been concealed from her and that she is not entitled to the rare and extreme benefit of equitable tolling.

9. Dalia was well aware of the 2013 Settlement Agreement as of no later than June 26, 2013. (*See* Declaration of Jared C. Borriello in Support of Various Defendants' Motion to Dismiss Dalia Genger's Amended Complaint ("Borriello Decl."), ECF No. 13, Ex. 12 (2013 Dalia Affidavit) ¶¶ 2-3 ("I was informed that Plaintiff Orly Genger has reached a settlement with the Trump Group . . .").) Further, on August 30, 2013, the Delaware Chancery Court entered the so-ordered Stipulation and Proposed Order of Dismissal whereby Dalia agreed that the Trump Group

had purchased the Orly Trust's TRI Shares from TPR for $10.3 million.  (*See* Boriello Decl., ECF

No. 13, Ex. 17 (So-Ordered Stipulation and Proposed Order of Dismissal).)

10.    Dalia was also already involved in litigation regarding the proceeds of the Orly

Trust shares, which was initiated on November 18, 2013 (the "2013 Action").  *See TPR Inv.*

*Assocs., Inc. v. Pedowitz & Meister LLP*, No. 13 CIV. 8243 JFK, 2014 WL 1979932, at *3

(S.D.N.Y. May 15, 2014) ("[T]he parties are fighting over the Proceeds from the sale of the Orly

Trust Shares.").  Therefore, Dalia was well aware in 2013 that property, now alleged to be held for

her benefit, was in dispute.  Dalia also filed her Surrogate's Court turnover proceeding, which

sought to avoid and recover the same property in 2016, and amended her complaint in 2018.  (*See,*

*e.g.*, Borriello Decl., ECF No. 13, Ex. 19.)  She filed that case as trustee of the Orly Trust, arguing

that the amounts belonged to the Orly Trust, not her or Orly.

11.    Moreover, in agreeing to dismiss claims against the Trump Group relating to the

Orly Trust's TRI shares, Dalia represented to the Delaware Chancery Court that the Trump Group

had paid $10.3 million for the Orly Trust's TRI shares.  (*See* Borriello Decl., ECF No. 13, Ex. 17.)

As set forth in the Motion, Dalia supported the release of those funds to TPR/Sagi.  Yet Dalia has

not sought to impose a constructive trust over those funds, which are the only amounts that have

been paid for the Orly Trust's TRI shares.

12.    Despite her active involvement in a variety of litigation described in the Motion

and above, Dalia failed to pursue the constructive trust claim she asserts in this adversary

proceeding during the nearly sixteen years since her divorce and during the almost seven years

after the 2013 Settlement proceeds were paid, proceeds she now alleges belong to her personally

rather than the Orly Trust.  Rather, as the Motion provides, she did not assert her constructive trust

claim until October 2019, when she did so for the first time in an objection to the predecessor

chapter 7 trustee's motion to approve a settlement relating to those Trump Group settlement proceeds, seeking to avoid the impact of that settlement by removing funds from the estate.

13.    Even if the Trump Notes, which Dalia now alleges an interest in, were relevant to this action, equitable tolling would not be proper.  Equitable tolling requires that a plaintiff "establish that subsequent and specific actions were taken by the defendant, separate from those that provide the factual basis for the underlying cause of action, and that those subsequent actions by the defendant somehow kept the plaintiff from timely bringing suit." *Shoreham Hills, LLC v. Sagaponack Dream House, LLC*, 66 Misc. 3d 1231(A) (N.Y. Sup. Ct. 2020) ("[W]hen the alleged concealment consists of nothing but the defendant's failure to disclose the wrong committed, New York courts have held that the defendant is not estopped from pleading the statute of limitations as a defense.").

14.    Here, stripping away all of the rhetoric,[2] Dalia alleges that there was a change in the escrow agent on the Trump Notes and an agreement that subordinated Mr. Herschmann's valid secured claim to ADBG's prior claim as litigation funder.  But those Trump Notes were issued in June 2013.  If Dalia thought that she had any entitlement to the Trump Notes by way of her alleged interest in the TRI shares, she could have raised these claims in the 2013 Action, the very purpose of which was to determine the ownership of the proceeds in which she now claims to have an interest.  She also could have sought to pursue the claims she did pursue on the Orly Trust's behalf, subject to defenses, but failed to do so.  Thus, it is puzzling why she now takes the position that these developments somehow concealed her claims to her.  The fact that Mr. Bowen later replaced

---

[2] Defendants dispute Plaintiff's factual allegations in the Opposition and in Dalia's purported Rule 56.1 statement, which totals five paragraphs.  Defendants refer the Court to the detailed factual summary contained in the Motion, along with the exhibits filed in support of the Motion and the arguments made herein.

the original escrow agent does not in any way impact the date on which Dalia's purported claims arose.

15.     Accordingly, the Amended Complaint is long time barred and should be dismissed with prejudice.

## II.    DALIA LACKS STANDING

16.     For the reasons set forth in the Motion, even if the Amended Complaint was not time barred by the statute of limitations (which it is), it should nevertheless be dismissed because Dalia lacks standing to claim a constructive trust or an equitable lien (or the related declaratory judgment and injunction claims) related to the 2013 Settlement Agreement proceeds because she has no legal or equitable claim to those proceeds.  To meet the burden on standing, a plaintiff "must allege facts that <u>affirmatively and plausibly</u> suggest that [he or she] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir. 2011) (emphasis added). The Complaint utterly fails in this respect, and the Opposition ignores these deficiencies, offering only conclusory statements suggesting *anyone* who asserts a constructive trust claim has constitutional standing to do so, regardless of whether she has suffered an actual personal injury, all while asserting the purported rights of a third party—the Orly Trust—which is impermissible under the doctrine of prudential standing.  As a result, Dalia has failed to establish standing and the Complaint should be dismissed.

### A.  Constitutional Standing

17.     To meet the constitutional standing requirement, a plaintiff must allege three necessary and independent elements: (1) actual personal injury, (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) that it is likely to be redressed by the requested relief.  *See e.g.*, *In re 1031 Tax Grp., LLC*, 439 B.R. 47, 59-60 (Bankr. S.D.N.Y. 2010).

18.    As set forth in the Motion, considering that Dalia lacks privity with Orly (her contract is with Sagi), and possesses no legal or equitable interest in the TRI shares or the proceeds therefrom—as a result of the 2004 Divorce Agreement, the 2004 Support Agreement, the 2004 Indemnity, or any other agreement—Dalia cannot sufficiently plead that she has suffered any actual personal injury. (Mot. ¶¶ 60-62.)  As stated in the Motion, Dalia's own prior acts reflect as much – Dalia sued Sagi, not Orly, for breach of contract, and has pursued her prior litigation on behalf of the Orly Trust, not herself individually, contending that the 2013 Settlement Agreement proceeds belong to the Orly Trust, not Orly or Dalia.

19.    In the Opposition, Dalia incorrectly cites to various cases conferring constitutional standing upon plaintiffs seeking the imposition of a constructive trust. (*See* Opp. at 20.)  In each of the cases cited by Dalia, the court declined to impose a constructive trust.  In fact, the ruling of each of the cases is detrimental to Dalia's claim that she in fact has standing to seek the imposition of a constructive trust.  Nowhere in *In re Chowaiki & Co. Fine Art Ltd*., 593 B.R. 699, 712 (Bankr. S.D.N.Y. 2018), does this Court mention that one who *merely* asserts a constructive trust has standing to bring a claim.  More importantly, this Court refused to impose a constructive trust in that case, holding that "[t]he Court finds that the Amended Complaint, read in a light most favorable to Rosen, does not sufficiently plead facts to support a finding of unjust enrichment, which is the predicate injury for the remedy of a constructive trust." *Id*.  Furthermore, Dalia cites *McGovern v. Solomon*, 466 F. Supp. 2d 554, 557 (S.D.N.Y. 2006), where a daughter brought a counterclaim seeking to impose a constructive trust on assets transferred *inter vivos* by her mother to her sibling at a time when the mother was allegedly incompetent.  Those facts are wholly different than those here.  More importantly, in *McGovern*, this Court similarly refused to impose a constructive trust.  466 F. Supp. 2d at 557.

20.     Dalia also incorrectly cites *Gimbel v. Feldman*, 1995 WL 500487, *4 (E.D.N.Y. Aug. 8, 1995), where the court found that the plaintiff had standing to bring an action for a constructive trust, but yet again did not impose one.  In *Gimbel*, a family sought to recover assets that they claimed were transferred from their mother, who was deemed to have a diminished capacity, by fraud and undue influence to their aunt.  The *Gimbel* court's holding was narrow, as it noted that it "is also implicit that the equitable doctrine of the constructive trust—which operates upon a defendant's promise to the decedent made within a confidential relationship, reliance by the decedent, and unjust enrichment of the defendant to the detriment of the plaintiffs—conveys standing to the plaintiffs."  *Id.* (quoting *Tesauro v. Tesauro*, 112 N.Y.S.2d 246 (N.Y. Sup. Ct. 1952)).  This narrow ruling does not align with the facts of this case, as there was no promise made by Orly to Dalia, nor is it as flexible in its application as plaintiffs had previously cited.  More importantly, both *McGovern* and *Gimbel* do not arise in a bankruptcy context, and, as this Court states in *Chowaiki*, "we believe it important to carefully note the difference between constructive trust claims arising in bankruptcy as opposed to those that do not, as the equities of bankruptcy are not the equities of the common law." 593 B.R. at 720 (quoting *Superintendent of Ins. for the State of New York v. Ochs (In re First Central Fin. Corp.)*, 377 F.3d 209, 218 (2d Cir. 2004)).

### B.  Prudential Standing

21.     Dalia concedes that she had no interest in the TRI shares after the 2004 Divorce Agreement, as confirmed by the 2008 Final Arbitration Award.  (Opp. at 21 ("Since transferring her interest in the TRI shares pursuant to the 2004 Divorce Agreement (including the 2004 [Support Agreement] and [2004 Indemnity) Dalia has never claimed an interest in the actual TRI shares.")).  Nevertheless, Dalia asserts "Sagi and Orly granted [Dalia] an interest in the future monetization of her marital rights to those shares, - *i.e.*, the proceeds."  (*See* Opp. at 21.)  This is a *non sequitur* as no such interest was granted by Orly purportedly having agreed to indemnify her

brother for their mother's expenses. Dalia's assertion that "[n]othing in the 2004 Divorce Agreement prohibits this grant" is irrelevant as no such interest was granted in the first instance. Furthermore, Dalia's assertion that Judge Forrest's finding that other agreements entered concurrently with the Divorce Agreement were incorporated by reference and that Orly had monetized her TRI shares in no way grants Dalia an interest in those shares or any purported proceeds therefrom. No Court has determined that the actual proceeds of the 2013 Settlement Agreement belong to Orly; rather, the Second Circuit found simply that she received more than a peppercorn of benefit from the settlement. Also, the Orly Trust, the recipient of the TRI shares under the 2004 Divorce Agreement, was not even a party to the 2013 Settlement Agreement.

22.     Dalia's lack of interest in the TRI shares, and her past repeated assertions that the proceeds of those shares belong to the Orly Trust, not her or Orly, are fundamentally inconsistent with her present claim that she is asserting any rights on her own behalf. She is not.

23.     Dalia also fails to allege how her dressed up avoidance claims are any different from the claim Sagi Genger is pursuing to avoid and recover the same transfers, or from the claim that each of the two chapter 7 trustees has informally pursued in Orly's chapter 7 case. While the Defendants dispute that the property at issue is avoidable or recoverable under any of these claims, Dalia fails to allege how her claims are personal to her as opposed to all creditors of Orly's estate. As her claims are generalized rather than particular, she has no prudential standing.

## III.    DALIA FAILS TO STATE A CLAIM FOR A CONSTRUCTIVE TRUST

24.     The Opposition fails to counter Defendants' arguments establishing that Dalia has failed to state a constructive trust claim. In fact, the Opposition confirms that Dalia has failed to establish <u>any</u> of the elements of such a claim.

25.     The Opposition argues that imposition of a constructive trust may be appropriate

notwithstanding the fact that Dalia is asserting her claim in the bankruptcy context.  (Opp. at 24.)

However, the Opposition simply ignores the recent, probative Second Circuit cases that

Defendants' cite in the Motion—namely *Superintendent of Insurance for the State of New York v.*

*Ochs (In re First Central Financial Corp.)*, 377 F.3d 209 (2d Cir. 2004) and *Cadle Co. v. Mangan*

*(In re Flanagan)*, 503 F.3d 171 (2d Cir. 2007).  *In re First Central Financial*, in particular, is

instructive because it addressed the one Second Circuit case that the Opposition does cite—*In re*

*Howard's Appliance Corp.*  (*See* Opp. at 24 (citing *In re Howard's Appliances Corp.*, 874 F.2d

88, 93 (2d Cir. 1989).)  In *In re First Central Financial*, the Second Circuit stated that while it was

not departing from its holding in *Howard's* that bankruptcy law does not outright preempt state

law with respect to constructive trusts, it nevertheless "note[d] that [its] obligation to apply New

York constructive trust law [did] not diminish the need to 'act very cautiously' to minimize conflict

with the goals of the Bankruptcy Code."  377 F.3d at 217 (quoting *In re N. Am. Coin & Currency,*

*Ltd.*, 767 F.2d 1573, 1575 (9th Cir. 1985)).  The Second Circuit continued, stating that, in "light

of the fact that these goals can be compromised by the imposition of a constructive trust,

'bankruptcy courts are generally reluctant to impose constructive trusts without a substantial

reason to do so.'"  *In re First Central Financial*, 377 F.3d at 217-218 (quoting *In re Haber Oil*

*Co.*, 12 F.3d 426, 436 (5th Cir. 1994) (internal quotation marks and citations omitted)).

26.     With that general cautiousness and reluctance in mind, Dalia's complaint fails as a

matter of law to establish that this Court should impose a constructive trust on any of the

Defendants.  Although the Opposition spends a page explaining that Dalia need not actually

establish each of the elements of her constructive trust claim (Opp. at 25), the Opposition cites no

case supporting the proposition that this Court may impose a constructive trust where <u>none</u> of the elements are met.

27.    The Opposition fails to establish that any confidential or fiduciary relationship existed between the Debtor and Dalia.  The Amended Complaint includes only the conclusory allegation that a "confidential and fiduciary relationship of familial trust and confidence existed between Dalia and her daughter, Orly, when Dalia transferred the Rights to her."  (Am. Compl. ¶ 43.)  Although the Opposition asserts that family members "often" stand in a fiduciary relationship with one another, and that a fiduciary duty "may arise" out of a close family relationship (Opp. at 26), the Amended Complaint does not include any factual allegations supporting the conclusion that that was the case with respect to Dalia and Orly.  Such conclusory allegations are insufficient to withstand a motion to dismiss.  *See In re Commodore Bus. Machines, Inc.*, 180 B.R. 72, 79 (Bankr. S.D.N.Y. 1995) (Garrity, J.) (conclusory allegations insufficient to support the imposition of a constructive trust).  Instead, the Opposition merely talks about Dalia's later confidential and fiduciary relationship *as trustee of the Orly Trust* – a clear fiduciary relationship to a beneficiary.

28.    The Opposition argues that the fact that Dalia allegedly transferred her "marital claim" to the TRI shares to the Orly Trust "establishes on its face the existence of a confidential and fiduciary relationship" between Dalia and Orly.  (Opp. at 27.)  The Court should reject this circular reasoning, as the alleged transfer, in and of itself, does not establish a confidential or fiduciary relationship.  *See Sanxhaku v. Margetis*, 151 A.D.3d 778, 779-80 (2d Dep't 2017) ("defendant's intention at the time of the transfer was to provide each of her children with a residential property in Brooklyn as a gift, and . . . defendant had sufficient means to make such a transfer and thereafter provide for her own financial needs").  Moreover, even if Dalia transferred property to the Orly Trust, that would not by itself establish a confidential or fiduciary relationship

with Orly, who is only a beneficiary of the Orly Trust and who has never herself received any shares or proceeds from those shares.

29.     Notably, the Opposition also argues that Dalia transferred her purported marital rights in the TRI shares in reliance on the supposed relationship, thus dispensing with the need for Dalia to establish that Orly made any promise to Dalia.  (Opp. at 28.)  Thus, according to the Opposition, the single alleged fact that Dalia transferred her purported marital rights to the TRI shares to a non-debtor trust establishes three of the four elements of the constructive trust claim. That is simply wrong.

30.     As the Opposition tacitly admits, the Amended Complaint fails to establish that Orly made any promise to Dalia.  The Opposition suggests that the 2004 "indemnity" agreement constitutes the necessary promise (Opp. at 27 (arguing that Orly "made an express 'commitment . . . to financially support' Dalia, "based on the writing between the parties" (citation omitted)), while simultaneously asserting that Orly's "oral promise is not contained in [the Debtor's] executed 2004 indemnity" (Opp. at 28.)  The fact is that the indemnity was a promise that Orly made to Sagi, not to Dalia.

31.     Furthermore, the Opposition engages in these gymnastics because it simply has no answer for the fact that Dalia cannot establish unjust enrichment where a contract governs the relationship that allegedly gives rise to the constructive trust.  The Opposition cites a 44-year-old New York Court of Appeals case, *Sharp v. Kosmalski*, 40 N.Y.2d 119 (N.Y. 1976), for the proposition that "New York courts have sanctioned constructive trusts in the wake of an oral or implied promise and in the absence of a direct claim for breach of contract."  (Opp. at 28[3].)  *Sharp*

---

3.  The Opposition also cites "Maya, supra" for this proposition, but the Opposition does not otherwise identify or cite any case with "Maya" in the name, and the Defendants are not aware of any such case that is on point.

has nothing to do with the "well-settled principle[] of New York law" that "a finding of unjust enrichment" is barred "in the face of a valid and enforceable written agreement." *In re First Central Fin.*, 377 F.3d at 213 (quoting *Clark-Fitzpatrick, Inc. v Long Island R.R. Co.*, 70 N.Y.2d 382 (N.Y. 1987) and *MacDraw, Inc. v. CIT Group Equip Fin., Inc.*, 157 F.3d 956 (2d Cir. 1998)). Dalia spends a substantial portion of the Amended Complaint discussing "The 2004 Agreements" (Am. Compl. ¶¶ 15-20), which makes clear that whatever claims Dalia may have against the Debtor are based in contract, not equity, which claims carry with them a six year statute of limitations. N.Y. CPLR § 213. The Opposition offers no support for its assertion that this Court may find that Dalia's claim is equitable in nature because the 2004 agreements only encompass the "economic substance" of the Debtor's purported promise. (Opp. at 28.) It is black letter law that Dalia cannot simultaneously rely on a claim that there is a valid and enforceable contract establishing whatever obligations the Debtor might have with respect to Dalia and proceed on an equitable theory of unjust enrichment. *See Miller v. Schloss*, 218 N.Y. 400, 407-08 (N.Y. 1916).

32.    Dalia cannot establish unjust enrichment for a more pressing reason – Orly never received any money from the 2013 Settlement Agreement. The $10.3 million from the TRI shares allocated to the Orly Trust went to TPR/Sagi as a result of the 2013 Action. *See TPR Investment Associates, Inc. v. Pedowitz & Meister LLP*, No. 13-cv-8243, 2014 WL 1979932, at *23 (S.D.N.Y. May 15, 2014). While Dalia alleges that Orly "monetized" the Orly Trust's shares, she relies on a determination that was later clarified on appeal indicating "her shares would confer upon her more than a peppercorn, which is all we need to conclude (*and all we do conclude*) as to the extent of any benefit she received." *Genger v. Genger*, 663 F. App'x 44, 49 (2d Cir. 2016) (emphasis added). That decision and a subsequent decision allowing Sagi to enforce the 2004 Indemnity

against Orly make no mention about whether Orly ever received or is entitled to any funds resulting from the 2013 Settlement Agreement. *See Genger v. Genger,* 771 F. App'x 99 (2d Cir. 2019).

33.     The Opposition also has no answer for the fact that the Amended Complaint fails to allege that Dalia transferred anything to Orly in reliance on any promise.  This is because, as discussed above, Orly made no promise to Dalia, the Orly Trust, not Orly, received the TRI shares at issue, and under the plain language of the 2004 Divorce Agreement and 2008 Arbitration Award, Dalia had no further interest in any TRI shares post-divorce.  Dalia swore in a February 20, 2015 Affidavit that Dalia filed with the New York Supreme Court that she and Arie "established the Orly Trust . . . to improve our daughter's, and also specifically our grandchildren's (hopefully her kids'), lives."  (Declaration of Jared C. Borriello in Support of Various Defendants' Reply and Opposition to Plaintiff Dalia Genger's Memorandum of Law in Opposition to Motions to Dismiss Amended Complaint and in Support of Cross-Motion for Summary Judgment ("Borriello Reply Decl."), Ex. 1 (Feb. 20, 2015 Affidavit of Dalia Genger) ¶ 6.)  Dalia did not assert that she had only transferred her "marital claim" to the TRI shares to the Orly Trust because the Debtor promised to simply return any proceeds from those rights to Dalia upon request.  Rather, Dalia swore that the 2013 Settlement "funds should be used for what [she and Arie] intended—financing education, improving health, and generally helping Orly and our grandchildren build a better life." (*Id.*)

34.     Dalia also swore in the 2015 Affidavit that the 2013 Settlement "money belongs to the Orly Trust and no one else."  (Boriello Reply Decl., Ex. 1 ¶ 3.)  Dalia cannot now take a position "clearly inconsistent" with what she swore to the New York Supreme Court, and claim that the 2013 Settlement belonged to her all along. *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001)).  Even if

Dalia is not judicially estopped from arguing that the Debtor has been unjustly enriched, Dalia certainly cannot seek the equity of an unjust enrichment finding where she has previously taken the opposite position in a sworn affidavit. *See Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*, 792 F. Supp. 969, 969-70 (S.D.N.Y. 1992) (denying equity where party made sworn statements that directly contradict each other)

35.     The Opposition thus fails to establish that the Amended Complaint states a claim for a constructive trust, and this Court should dismiss that claim.

**IV.    DALIA'S DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED**

36.     The Opposition presents no argument why this Court should issue a declaratory judgment.  The declaratory judgment claim suffers from the same fatal flaws as Dalia's constructive trust claims—*i.e.*, it is barred by the applicable statute of limitations, Dalia lacks standing to assert it, and Dalia fails to state a claim.  This Court may also dismiss Dalia's declaratory judgment claim because, as Defendants argued in their Motion, Dalia's declaratory judgment "claim" is entirely duplicative of Dalia's constructive trust claim.  *See* Restatement (Second) of Judgments § 33 (1982) ("A litigant's seeking a declaratory remedy when he could have maintained a conventional action for coercive relief often signifies that he is in a quandary not only as to what his rights and duties are, but also as to how to secure their adjudication."); *see also Walsh v. Andorn*, 33 N.Y.2d 503, 507 (N.Y. 1974) ("Where there is no necessity for resorting to the declaratory judgment[,] it should not be employed."); *Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D.2d 50, 53 (1st Dep't 1988) ("A cause of action for a declaratory judgment is unnecessary and inappropriate where the plaintiff has an adequate, alternative remedy in another form of action.").

## V. DALIA'S EQUITABLE LIEN CLAIM SHOULD BE DISMISSED

37.    The Opposition also ignores the Defendants' argument that this Court dismiss Dalia's equitable lien claim as barred by the statute of limitations and for lack of standing.  The Court should therefore dismiss the equitable lien claim on those grounds.

38.    The Opposition argues that the "Rights" or the "monetization of the Rights" constitute the "specific property" upon the lien should be imposed.  The Opposition offers absolutely no support for the argument that "rights" meet the definition of "specific property," and they do not.  The Opposition cites *James v. Alderton Dock Yards, Ltd.*, 256 N.Y. 298, 303 (N.Y. 1931) in support of the argument that the "rights" at issue here "fit[] well within" the equitable lien doctrine.  (Opp. at 32.)  To the contrary, *Alderton* rejected the imposition of an equitable lien on the proceeds of a sale because an agreement "to pay a debt out of a designated fund does not give an equitable lien upon the fund nor operate as an equitable assignment thereof." *Alderton*, 256 N.Y. at 303.

39.    The Opposition also fails to establish that the Amended Complaint adequately alleges the requisite "clear intent" that the specific property at issue act as security for any obligation. *East 51st Street Dev. Co. v. HFZ East 51, LLC*, No. 652135/3016, 2019 WL 6916089, at *8-9 (N.Y. Sup. Ct. Dec. 19, 2019) (dismissing equitable lien claim where plaintiffs failed to allege that there was any express or implied agreement that the property at issue was to be held as security for the obligations defendants allegedly owed to plaintiffs) (citing *Ryan v. Cover*, 75 A.D.3d 502, 502 (N.Y. 2010)).  The Court should therefore dismiss Dalia's equitable lien claim.

## VI. DALIA'S REQUEST FOR AN INJUNCTION SHOULD BE DENIED

40.    The Opposition also ignores entirely the Motion's argument that this Court should reject Dalia's request for an injunction.  (Mot. ¶ 82.)  Dalia thus offered no argument whatsoever that she will suffer irreparable harm or that she is likely to succeed on the merits. *See Freedom*

*Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005).  This Court should therefore reject Dalia's request for an injunction.

## VII.   DALIA'S AMENDED COMPLAINT WAS IMPROPERLY FILED AND ANY AMENDMENT TO THE COMPLAINT WOULD BE FUTILE

41.     The Opposition also fails to substantively respond to Defendants' argument that the Court should dismiss the Amended Complaint because Dalia failed to either seek leave from the Court or the consent of the Defendants prior to filing.  (Mot. ¶ 84.)  The Opposition asserts that Dalia amended the complaint "as of right," (Opp. at 33), but provides no explanation why this Court should consider the amendment where Dalia filed the Amended Complaint more than 21 days after service of the original and never sought any Defendant's consent or this Court's leave.

42.     The Opposition similarly ignores Defendants' argument that repleading would be futile.  (Mot. ¶¶ 86 & 87.)  Not only are Dalia's lack of standing and the statute of limitations absolute, non-curable bars to her claims, she also will be unable to cure the fact that her constructive trust claim is actually either a fraudulent transfer claim based on the 2013 Settlement Agreement, or a contract claim that relies on the 2004 Agreements.

43.     Moreover, Dalia has been party to years of litigation with Orly and Arie and thus has had the benefit of extensive discovery.

44.     This Court should thus deny Dalia's perfunctory request for leave to file a second amended complaint.

## VIII.   DALIA'S CROSS-MOTION FOR SUMMARY JUDGMENT IS PROCEDURALLY IMPROPER AND SHOULD BE DENIED

45.     On July 15, 2020, Dalia's Opposition was accompanied by an untimely cross-motion for summary judgment noticed for hearing at the July 21, 2020 hearing on Defendants' motions to dismiss.  However, Dalia's request is procedurally improper because she has failed to cite to any authority indicating that she is permitted to file such a cross-motion without first seeking

18

a pre-motion conference in accordance with Local Bankruptcy Rule 7056-1 or that such a cross-motion can be heard on six days' notice.  Defendants are aware of no such authority.  Accordingly, Dalia's motion for summary judgment should be denied on this basis alone.

46.    Local Bankruptcy Rule 7056-1 provides, in relevant part, that "[u]nless the Court orders otherwise, no party shall file a motion for summary judgment without first seeking a pre-motion conference.  The request for a pre-motion conference shall be made by letter, filed with the Court, on the docket of the case, and served on all other parties setting forth the issues to be presented in the motion and the grounds for relief."  L. Bankr. R. 7056-1(a).  Here, the Court did not order otherwise because Dalia never sought a pre-motion conference by letter in accordance with the Local Rules.[4]  Dalia's "cross-motion" is thus procedurally deficient and should be denied because she failed to comply with Local Rule 7056-1.  *See In re Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 BRL, 2012 WL 892514, at n.5 (Bankr. S.D.N.Y. Mar. 14, 2012) ("[a]s a threshold issue, [movant's] Motion is procedurally deficient because it violates the Case Management Order...and Local Rule 7056–1.  Specifically, [the movant] failed to (i) obtain leave of the Court before making a pre-discovery motion for summary judgment, and (ii) seek a pre-motion conference prior to moving for summary judgment . . . .")

47.    In addition, Bankruptcy Rule 7056 provides that "any motion for summary judgment must be made at least 30 days before the initial date set for an evidentiary hearing on

---

[4] The Defendants meant no disrespect to the Court whatsoever by stating in a letter dated July 17, 2020 (ECF No. 21) that they did not intend to address substantive deficiencies with Dalia's "cross-motion" unless the Court ordered otherwise, and apologize sincerely if the letter was interpreted differently than was intended.  The Defendants were simply trying to bring to the Court's attention that the "cross-motion" was not properly filed because the Court had not "ordered otherwise" as such phrase is referenced in Local Rule 7056-1(a) and Bankruptcy Rule 7056.  That same requirement must be met pursuant to Local Rule 5070-1 ("*Unless the court orders otherwise*, prior to serving a motion, *cross-motion*, or application, the moving party must obtain a return date from the assigned Judge's chambers.") (Emphasis added).  While we do not know whether Dalia complied with Local Rule 5070-1 here, we suspect that she did not given the improper notice period.

any issue for which summary judgment is sought, unless a different time is set by local rule or the court orders otherwise."  Fed. R. Bankr. P. 7056; *Shovlin v. Klaas*, 555 B.R. 500, 506 (W.D. Pa. 2016) (explaining that FRBP 7056 dictates that Rule 56 of the Fed. R. Civ. P. applies in adversary proceedings, with the exception that a motion for summary judgment is required to be submitted 30 days prior to the initial date set for an evidentiary hearing on any issue for which summary judgment is sought); *In re Servo Corp. of Am., Inc.*, No. 12-76993-AST, 2015 WL 756651, at *3 (Bankr. E.D.N.Y. 2015) (reiterating the exception to Rule 56 that under Bankruptcy Rule 7056, any motion for summary judgment must be filed 30 days before the date set for the relevant evidentiary hearing).  Dalia also failed to comply with this rule by filing the cross motion a mere six days – not 30 days – before the July 21st evidentiary hearing on the Motion.  Accordingly, Dalia's cross-motion should be denied on this procedural basis alone.

48.     In any event, Dalia's motion should be denied because it is extremely premature. The Opposition acknowledges as much, arguing just two paragraphs earlier that Dalia should be granted leave to amend her already amended complaint because "issue has not been joined, substantive discovery has not commenced and the case is still in its earliest stage"  (Opp. at 33.) Many of the Defendants have not had the benefit of the years of discovery that Dalia has had, and as the Court is aware, Dalia is seeking to evade her own deposition in the main chapter 7 case here. To the extent the Motion is denied, the Defendants should have the benefit of discovery prior to any motion by Dalia for summary judgment.

49.     Because the "cross-motion" violates the Local Rules and the Bankruptcy Rules, it is procedurally defective and therefore void.  Should the Court deny the movants' motions to dismiss this adversary proceeding, which it should not, it can then consider a request by Dalia to seek summary judgment in accordance with the Bankruptcy Rules and Local Rules.  But any such

motion must be made in accordance with the applicable rules, and should be subject to full and proper notice and the corresponding time period for Defendants to file objections.

50.    Accordingly, the Defendants hereby reserve all rights, claims and defenses relating to the "cross-motion's" substantive deficiencies.  However, summary judgment could *never* be granted in Dalia's favor because Dalia has previously submitted sworn testimony that the property over which she now seeks a constructive trust – because it allegedly belongs to her – instead "belongs to the Orly Trust and no one else." (*See* Borriello Reply Decl., Exhibit 1 ¶ 3).  That same affidavit makes clear that Dalia intended the property to be used by Orly and Dalia's grandchildren, not Dalia.  (*Id.* ¶ 6 ("These funds should be used for what we intended – financing education, improving health, and generally helping Orly and our grandchildren build a better life.").)  While Defendants dispute the contention that the proceeds of the 2013 Settlement Agreement belong to the Orly Trust, it is directly inconsistent with Dalia's amended complaint.

51.    The "cross-motion" also fails as a matter law for the reasons set forth in the Motion, the supporting exhibits, the reasons stated above (including but not limited to Dalia's mischaracterization of the court opinions on which she relies for her "cross-motion"), including that Dalia's action should be dismissed because it is long time barred, Dalia lacks standing to assert her claims, and the Complaint fails to sufficiently plead claims for constructive trust or an equitable lien (or her related declaratory judgment and injunction claims).  Accordingly, Dalia's "cross-motion" for summary judgment should be denied.

## **JOINDER IN OTHER MOTIONS TO DISMISS**

The Defendants hereby join in any other replies to the Opposition, and any other defendant's opposition to Dalia's cross-motion for summary judgment, to the extent not inconsistent herewith.

**CONCLUSION**

**WHEREFORE**, Defendants respectfully request entry of an order dismissing the

Complaint with prejudice, and for such other and further relief as the Court may deem just and

appropriate.

DATED:    New York, New York
              July 17, 2020

_/s/ Yann Geron_                              _/s/ Christopher Gartman_
Yann Geron                                    Christopher Gartman
Reitler Kailas & Rosenblatt LLC               Hughes Hubbard & Reed LLP
885 Third Avenue                              One Battery Park Plaza
20th Floor                                    New York, NY 10004
New York, NY 10022                            (212) 837-6000
(212) 209-3050                                Fax : (212) 422-4726
Fax : (212) 371-5500                          Email: chris.gartman@hugheshubbard.com
Email: ygeron@reitlerlaw.com

_Attorneys for Debtor Orly Genger_            _Attorneys for Arnold Broser, David Broser,_
                                              _ADBG LLC, and Tedco, Inc._


_/s/ Frank A. Oswald_                         _/s/ Lance Harris_
Frank A. Oswald                               Lance Harris, Esq., as Trustee of
Togut, Segal & Segal LLP                      The Genger Litigation Trust
One Penn Plaza, Suite 3335
New York, NY 10119
(212) 201-5590
Fax : (212) 967-4258
Email: frankoswald@teamtogut.com

_Attorneys for Arie Genger_