# EXHIBIT N

## SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement and release (this "Agreement") is entered into as of June 16, 2013, by and between Arie Genger and Orly Genger (in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust), Arnold Broser, David Broser, (in their individual capacity and on behalf of all entities managed, owned or controlled in any way by Arnold Broser or David Broser and which are in any way related to the subject matter hereof ("Broser Entities" and collectively with Arie Genger and Orly Genger in all capacities referenced above, the "AG Group"), and TR Investors, LLC ("TR Investors"), Glenclova Investment Co. ("Glenclova"), New TR Equity I, LLC ("New TR I"), New TR Equity II, LLC ("New TR II" and, together with TR Investors, Glenclova and New TR I, the "Trump Entities"), Trans-Resources, LLC (the successor to Trans-Resources, Inc. and together with its predecessor entities referred to herein as, "Trans-Resources"), Jules Trump, Eddie Trump and Mark Hirsch (collectively, with the Trump Entities and Trans-Resources, the "Trump Group"). The members of the AG Group and the Trump Group are each referred to herein individually as a "Party" and together as the "Parties".

**WHEREAS**, in March 2001, TR Investors, Glenclova, Trans-Resources and TPR Investment Associates, Inc. ("TPR") entered into a stockholders agreement with respect the common stock of Trans-Resources (the "Stockholders Agreement");

1

WHEREAS, since August 2008, Arie Genger, Orly Genger, the Trump Group and others have been engaged in various litigations (described below) concerning the ownership and control of Trans-Resources; and

WHEREAS, the Parties wish to resolve all issues, disputes and disagreements between them, including but not limited to the issue of ownership of all Trans-Resources shares;

NOW, THEREFORE, in consideration of the promises and representations contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.   **Recitals.**   The above recitals are incorporated into and made a part of this Agreement and are binding on all Parties hereto.

2.   **Initial Consideration from the Trump Group**.   Upon dismissal with prejudice of the claims, counterclaims, cross-claims, third-party claims, issues and matters as provided in Paragraph 4 below, the Trump Group shall promptly:

(a)   release all claims they may have to the (i) $7,428,994.00 plus interest held by Skadden, Arps, Slate, Meagher & Flom LLP as escrow agent (the "Skadden Escrow") and (ii) $10,314,005.00 plus interest held by with Pedowitz & Meister as escrow agent (the "P&M Escrow");

(b)   pay to Wachtel, Masyr & Missry, LLP as attorneys for the AG Group ("Wachtel") an amount in cash equal to $35,000,000.00 minus (i) the amount held in the Skadden Escrow, and (ii) the amount held in the P&M Escrow.

2

3.    **Further Consideration from the Trump Group.**  Trans-Resources on

behalf of the Trump Group shall pay: (i) $7,500,000 to Wachtel on the third  anniversary of the

Effective Date (defined below), and (ii) $7,500,000 to Wachtel 364 days following the third

anniversary of the Effective Date The payments provided under this paragraph shall be (a)

subject to the terms and conditions herein and (b) evidenced by two (2) promissory notes that are

substantially in the form attached as Exhibit A hereto (the "Notes").  Notwithstanding anything

else herein, the maturity of the two $7,500,000 Notes shall be delayed beyond their due date until

the earlier (the "Extended Maturity Date") of  (A) such time as all pending claims, cross-claims

and counter-claims brought by any of TPR, Sagi Genger, the Sagi Genger 1993 Trust, the Orly

Genger 1993 Trust (other than the Orly Trust Action (as defined below)), D&K Limited

Partnership, D&K GP LLC, Rochelle Fang, and/or David Parnes (collectively, the "Sagi Group")

against any member of the Trump Group have been dismissed with prejudice and the statute of

limitations shall have run with respect to any other potential claims of the Sagi Group that might

be the subject of the Indemnification provided for by Paragraph 5 below or (B) such time as each

member of the Sagi Group shall have provided the Trump Group with a release of the Trump

Group Released Parties (as defined below) and covenant not to sue in form and substance that is

the same as the AG release and covenant not to sue contained in Paragraph 6(a) below (the "Sagi

Group Release").

Subject to the foregoing, the Notes shall become immediately due and payable upon the

occurrence of any transaction or series of transactions which shall result in the Trump Group

owning or controlling neither (i) a majority of the voting stock of Trans-Resources or its

successors or each of its two principal subsidiaries, Haifa Chemicals, Ltd. and Na-Churs Plant

3

Food Company or their successors, nor (ii) directly or indirectly, a majority of the assets

currently owned by Trans-Resources and its subsidiaries; provided, however, that in such event,

at the request of the Trump Group, the amounts then payable on the Notes shall be placed in

escrow for the duration of their original term or until the Extended Maturity Date (if applicable)

under the provisions of an escrow agreement on reasonable terms to be negotiated at such time in

good faith between Trans-Resources, the payee and an escrow agent selected by their mutual

consent, which shall provide for their release to the Trump Group in payment of Indemnification

Amounts, AG Group Release Amounts and Discovery Costs (as such terms are defined below),

if any, and payment to the payee of such amounts after reduction for Indemnification Amounts,

AG Group Release Amounts and Discovery Costs, if any, upon their original maturity date or the

Extended Maturity Date (if applicable).  If Trans-Resources is unable to pay the Notes as and

when they mature, the Trump Group will be obligated to make payment thereon in an amount

equal to the lesser of (x) the outstanding amounts not paid by the obligor thereunder and (y) any

amount by which cash payments received by members of the Trump Group (other than Trans-

Resources) from Trans-Resources and its subsidiaries since the Effective Date (whether in the

form of dividends, distributions, compensation or otherwise) exceeds reasonable compensation

for services rendered plus payments for goods, services and assets provided by such persons in

amounts that would have been paid for such goods, services and assets in arms' length

transactions with unaffiliated third parties; provided, however, that in neither case shall the

Trump Group be obligated to pay any amount that exceeds the outstanding amounts not paid by

Trans-Resources on the Notes (subject to any Indemnification Amounts, AG Group Release

Amounts or Discovery Costs).

4

4.    **Dismissal of Claims with Prejudice**.  Within two (2) business days of the

Effective Date (defined below), the AG Group and the Trump Group shall take all actions

necessary or desirable to:  (i) effect the dismissal with prejudice of all claims, counterclaims,

cross-claims, third-party claims, issues and matters between them, and to vacate all court orders

which restrain, enjoin or in any way limit actions by any members of the Trump Group, in each

pending action in which members of the AG Group and the Trump Group are parties (whether or

not service of process with respect thereto has been effected), including, without limitation, each

of the following pending actions (collectively, the "Litigation"):  *Genger v. TR Investors, LLC*,

No. 168, 2013 (Del.); *TR Investors, LLC v. Genger*, C.A. No. 6697-CS (Del. Ch.); *Trans-*

*Resources, Inc. v. Genger*, C.A. No. 4391-CS (Del. Ch.) (with respect to Arie Genger only); *TR*

*Investors, LLC, et al. v. Genger*, C.A. No. 3994-CS (Del. Ch.); *Glenclova Investment Co. v.*

*Trans-Resources, Inc., at al.*, No. 08 Civ. 7140 (JFK) (S.D.N.Y.); *Arie Genger and Orly Genger*

*v. Sagi Genger, et al.*, Index No. 651089/2010 (N.Y. Supr.); and (ii) have the New York State

Supreme Court enter a definitive non-appealable order declaring that members of the Trump

Group own all right, title and interest (beneficially, of record and otherwise) to the shares of

Trans-Resources purportedly transferred by TPR in October 2004 to Arie Genger (the ("Arie

Shares") and to the Orly Genger 1993 Trust (the "Orly Trust Shares"),  with the understanding

and agreement that should the request for the entry of such an order with respect to the "Orly

Trust Shares" be denied or not entered in a reasonably timely fashion,  then the AG Group and

the Trump Group shall take all action necessary or desirable to have the New York State

Supreme Court vacate all court orders which restrain, enjoin or in any way limit actions by the

5

parties to the pending action captioned *Dalia Genger, as Trustee of the Orly Genger 1993 Trust
v. TR Investors, LLC, et al.,* C.A. No. 6906-CS (Del. Ch.) (the "Orly Trust Action"), to prosecute,
defend, compromise, settle and otherwise deal with all claims, counterclaims, cross-claims, third-
party claims, issues and matters asserted therein; provided, however, that nothing in this
Agreement is intended to require or permit the dismissal of any claims, counterclaims, cross-
claims, third-party claims, issues and matters, (i) in *Trans-Resources, Inc. v. Genger*, C.A. No.
4391-CS (Del. Ch.) (the "Breach of Fiduciary Duty Case"), as between the Trump Group and
Avi Pelossof and/or William Dowd (subject to the exchange of general releases between the
members of the Trump Group and William Dowd as contemplated below) and (b) against TPR,
the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust, D&K Limited Partnership, D&K GP
LLC, Sagi Genger or Dalia Genger. Any member of the AG Group including, without
limitation, Orly Genger, who is called to testify in the Litigation or the Orly Trust Action, agrees
to testify that he, she (in her individual capacity, ~~on behalf of the Orly Genger 1993 Trust~~, and as
beneficiary of the Orly Genger 1993 Trust) or it has waived all claims he, she (in her individual
capacity, ~~on behalf of the Orly Genger 1993 Trust~~, and as beneficiary of the Orly Genger 1993
Trust) or it had or may have to ownership (record, beneficial or otherwise) of any shares of
Trans-Resources and that he, she (in her individual capacity, ~~on behalf of the Orly Genger 1993
Trust~~, and as beneficiary of the Orly Genger 1993 Trust) or it is opposed to the Orly Genger
1993 Trust seeking any remedy of any kind against any member of the Trump Group.
Notwithstanding the foregoing, upon receipt by the Trump Group of a general release in form
and substance reasonably satisfactory to it, the Trump Group shall provide the same general

6

release to William Dowd and cause the dismissal of the Breach of Fiduciary Duty Case as

between the Trump Group and him.

5.    **Indemnification**.

(a)    Upon closing of this Agreement, each of the members of the AG

Group with the exception of Arnold Broser and David Broser and the Broser Entities,  jointly

and severally, agrees to indemnify and hold harmless (i) each of the members of the Trump

Group, and their respective past and present affiliates and direct and indirect subsidiaries, and (ii)

each of the past and present agents, representatives, officers, directors, advisors, employees,

general partners, limited partners, shareholders, members, predecessors, successors, heirs,

executors, administrators and assigns of each person and entity referenced in clause (i), from all

reasonable costs, expenses, attorneys' fees of counsel selected by the Trump Group (it being

agreed that the Trump Group will cooperate with the AG Group in all reasonable respects to

cause the amount of such costs, expenses and its attorneys' fees to be minimized), settlements

and/or judgments (whether direct or related to joint and several liability) (the "Indemnification

Amounts") incurred as a result of, in connection with, or relating in any way to any (x) claims,

counterclaims, cross-claims or third-party claims raised or that could have been raised in the

Litigation, and (y) claims that are pending, have been brought, or that may in the future be

brought by or on behalf of any of TPR, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust

(other than those claims currently pending in the Orly Trust Action), D&K Limited Partnership,

D&K GP LLC, Sagi Genger, David Parnes or Dalia Genger, regardless of whether they were or

could have been raised in the Litigation or the Orly Trust Action, relating in any way, whether

directly or indirectly, to (A) the Shareholders Agreement entered into by Trans-Resources

shareholders and Trans-Resources on March 30, 2001, (B) the transfer of interests in TPR or the

purported transfer of shares of Trans-Resources by TPR in October 2004, (C) any activities or

developments relating to or conducted by Trans-Resources or any of its direct or indirect

subsidiaries that occurred prior to September 26, 2008, (D) the acquisition by the Trump Group

of all interests (record, beneficial or otherwise) of the so called "Arie Shares", "Orly Trust

Shares" and the shares of Trans-Resources purportedly transferred by TPR in October 2004 to

the Sagi Genger 1993 Trust (the "Sagi Trust Shares") (including, without limitation, the

negotiations for the ownership or acquisition of such shares), (E) the control of Trans-Resources

or any of its direct or indirect subsidiaries by the Trump Group through its acquisition of the

aforementioned shares, (F) records and documents (including but not limited to electronic files)

in the possession, custody or control of Trans-Resources or any of its direct or indirect

subsidiaries, (G) misrepresentations made or improper acts conducted prior to September 26,

2008 by any officer or director of Trans-Resources, (H) this Agreement, (I) the business or

operations of Trans-Resources or any of its direct or indirect subsidiaries conducted prior to

September 26, 2008 arising from or in any way related to the conduct of any member of the AG

Group, Avi Pelossof or William Dowd, or (J) the conduct of any other individual to the extent

Arie Genger is aware, or should have been aware, thereof. Notwithstanding the foregoing, the

indemnity provided for above shall not apply to any claims which may be brought subsequent to

the Effective Date (and which are entirely unrelated to any claim brought prior to such date) by

any of Sagi Genger, the Sagi Genger 1993 Trust or TPR and which arise solely out of actions

taken or not taken by members of the Trump Group which actions or inactions no member of the

AG Group was aware of or should have been aware of; provided, however, that such claim was

8

not encouraged or solicited by any member of the AG Group and no member thereof cooperates

in asserting, instituting or prosecuting such claim. Notwithstanding anything herein to the

contrary, the undertaking of William Wachtel hereunder shall not exceed under any circumstance

an amount greater than $5,000,000.

(b)    The Trump Group may request payment or reimbursement of the

Indemnification Amounts at any time by providing a written statement or copy of an underlying

invoice or expense documentation to any member of the AG Group at the addresses set forth in

Paragraph 16 below, and the AG Group shall pay such indemnified expenses in full and in cash

within five (5) business days of the date such request is made. The supporting documentation

submitted with any payment or reimbursement request hereunder may be redacted as necessary

to preserve attorney-client privilege, attorney work product, or confidential information the

Trump Group may, in its reasonable determination, need to protect. The Trump Group will

provide the AG Group with reasonable notice prior to making any motion or taking any appeal

with respect to, or in, any past, present or future action or claim for which the Trump Group is

seeking indemnification, and such notice will be accompanied by a non-binding estimate of the

legal fees and costs associated with such motion or appeal. The Trump Group authorizes the AG

Group and their respective counsel to discuss directly with the Trump Group's appointed counsel

the amount and scope of any invoice for which the Trump Group is seeking indemnification.

The AG Group in its sole discretion may settle any indemnified claim so long as there is no

monetary contribution to be paid by the Trump Group, and the Trump Group is released, in form

and substance reasonably satisfactory to it, from any liability relating to any such indemnified

9

claim. The Trump Group shall not enter into any settlement of any indemnified claim, or

discussions with respect thereto, without the express written consent of the AG Group.

(c)    With respect to each Indemnification Amount, until such time as it

has been paid over to the Trump Group, the members of the AG Group shall remain jointly and

severally liable for such Indemnification Amount and, the Trump Group may at its option pursue

all legal remedies available to it and/or withhold an amount equal to such unreimbursed

Indemnification Amount from any payments by Trans-Resources to be made pursuant to the

Notes.

6.    **Releases**.

(a)    **The AG Group Release.** Effective on the Effective Date, each of

the members of the AG Group, for itself, himself or herself, and in all capacities, and on behalf

of its (and its respective affiliates' and direct and indirect subsidiaries'), his or her respective

agents, representatives, officers, directors, advisors, employees, general partners, limited partners,

shareholders, members, subsidiaries and affiliates, and each of their respective predecessors,

successors, heirs, executors, administrators and assigns, and any other persons or entities acting

in concert with any of them including, without limitation, any member of the Sagi Group which

he, she or it shall at any time directly or indirectly control or be deemed authorized to act on

behalf of (individually, an "AG Group Releasing Party" and collectively, the "AG Group

Releasing Parties"): (i) fully, finally, irrevocably and unconditionally waives, releases and

discharges each of the members of the Trump Group and its (and its respective past and present

affiliates' and direct and indirect subsidiaries'), his or her respective past and present agents

10

(including Skadden, Arps, Slate, Meagher & Flom LLP in any capacity, including as Escrow

Agent for the Skadden Escrow or for any escrow in which it held, holds, or may hold, any

dividends or distributions from Trans-Resources), representatives, officers, directors, advisors,

employees, general partners, limited partners, shareholders, members, subsidiaries and affiliates,

and each of their respective predecessors, successors, heirs, executors, administrators and assigns

(collectively, the "Trump Group Released Parties"), from any and all claims, counterclaims,

demands, proceedings, actions, causes of action, orders, obligations, damages, debts, costs,

expenses and other liabilities whatsoever and however arising, whether known or unknown, past,

present or future, suspected or unsuspected, contingent or actual, both at law and in equity,

including without limitation, claims for fraud or fraud in the inducement (collectively, "Claims"),

which such AG Group Releasing Party now has, has ever had or may hereafter claim to have

against any Trump Group Released Party or its, his or her assets, liabilities or operations from

the beginning of the world through the Effective Date (individually, an "AG Group Released

Claim" and collectively, the "AG Group Released Claims"); and (ii) agrees not to assert, institute

or prosecute, or encourage, solicit or cooperate with any other person or entity in asserting,

instituting or prosecuting, any proceeding against any of the Trump Group Released Parties in

any jurisdiction (domestic or foreign, including, without limitation, the State of Israel) with

respect to any AG Group Released Claim or any other Claim relating in any way, directly or

indirectly, to Trans-Resources or any of its direct or indirect subsidiaries, the ownership or

acquisition of Trans-Resources shares (including any dividends or distributions relating thereto

or any escrow in which such dividends or distributions may currently be or in the past have been

held), the Litigation, the Orly Trust Action, control of Trans-Resources or any of its direct or

11

indirect subsidiaries, the business or operations of Trans-Resources or any of its direct or indirect subsidiaries, or arising out of this Agreement including, without limitation, the negotiation and execution of this Agreement or the AG Group Releases provided hereunder; provided, however, that this AG Group Release shall not apply to any Claims (x) seeking equitable relief to enforce the terms of this Agreement or claims seeking payment of the Notes or any indemnification payments required to be paid hereunder, (y) relating solely to events that transpired in their entirety subsequent to the Effective Date and that could not, under any circumstances, have possibly been pursued prior to the Effective Date whether or not then known, and (z) between any of the AG Group Releasing Parties and TPR, and/or any other member of the Sagi Group.

If an AG Releasing Party brings an AG Group Released Claim or other Claim in violation of the immediately preceding paragraph, the AG Group, jointly and severally, agrees to indemnify the Trump Group for any and all settlements, judgments, costs and fees, including legal fees and disbursements of counsel chosen by the Trump Group, incurred in working on, preparing for or defending such claim ("AG Group Release Amounts"). With respect to each AG Group Release Amount, until such time as such AG Group Release Amount has been paid over to the Trump Group, the members of the AG Group shall remain jointly and severally liable for such AG Group Release Amount, and the Trump Group may at its option pursue all legal remedies available to it and/or withhold an amount equal to such unreimbursed AG Group Release Amount from any payments to be made by Trans-Resources pursuant to the Notes. For purposes of the removal of all doubt, it is the parties' intention that no claims shall be brought or pursued by any member of the AG Group against any member of the Trump Group for any

reason whatsoever (other than claims permitted under clause (x), (y) and (z) of the immediately
preceding paragraph).

(b)    **The Trump Group Release.** Effective on the Effective Date, each

of the members of the Trump Group, for itself or himself, and in all capacities, and on behalf of

its (and its respective affiliates' and direct and indirect subsidiaries'), or his respective agents,

representatives, officers, directors, advisors, employees, general partners, limited partners,

shareholders, members, subsidiaries and affiliates, and each of their respective predecessors,

successors, heirs, executors, administrators and assigns, and any other persons or entities acting

in concert with any of them (individually, a "Trump Group Releasing Party" and collectively, the

"Trump Group Releasing Parties"):  (i) fully, finally, irrevocably and unconditionally waives,

releases and discharges each of the members of the AG Group and its (and its respective past and

present affiliates' and direct and indirect subsidiaries'), his or her respective past and present

agents, representatives, officers, directors, advisors, employees, general partners, limited partners,

shareholders, members, subsidiaries and affiliates, and each of their respective predecessors,

successors, heirs, executors, administrators and assigns (collectively, the "AG Group Released

Parties"), from any and all claims, counterclaims, demands, proceedings, actions, causes of

action, orders, obligations, damages, debts, costs, expenses and other liabilities whatsoever and

however arising, whether known or unknown, past, present or future, suspected or unsuspected,

contingent or actual, both at law and in equity including, without limitation, claims for fraud or

fraud in inducement, ("Claims"), which such Trump Group Releasing Party now has, has ever

had or may hereafter claim to have against any AG Group Released Party or its, his or her assets,

liabilities or operations from the beginning of the world through the Effective Date (individually,

13

a "Trump Group Released Claim" and collectively, the "Trump Group Released Claims"); and (ii) agrees not to assert, institute or prosecute, or encourage, solicit or cooperate with any other person or entity in asserting, instituting or prosecuting, any proceeding against any member of the AG Group Released Parties with respect to any Trump Group Released Claim or any other Claim relating in any way, directly or indirectly, to Trans-Resources or any of its direct or indirect subsidiaries, the ownership or acquisition of Trans-Resources shares, control of Trans-Resources or any of its direct or indirect subsidiaries, the business or operations of Trans-Resources or any of its direct or indirect subsidiaries, or the negotiation and execution of this Agreement or the Trump Group Releases provided hereunder; provided, however, that this Trump Group Release shall not apply to any Claims (x) seeking equitable relief to enforce  the terms of this Agreement or claims seeking payment of any indemnification payments required to be paid hereunder, (y) relating solely to events that transpired in their entirety subsequent to the Effective Date and that could not, under any circumstances, have possibly been pursued prior to the Effective Date whether or not then known, and (z) between any of the Trump Group Releasing Parties and Avi Pelossof, William Dowd (unless and until the exchange of mutual general releases between the Trump Group and William Dowd referred to above) and/or TPR.

If a Trump Group Releasing Party brings a Trump Group Released Claim or other Claim in violation of the immediately preceding paragraph, the Trump Group, jointly and severally, agrees to indemnify the AG Group for any and all settlements, judgments, costs and fees, including legal fees and disbursements of counsel chosen by the AG Group, incurred in working on, preparing for or defending such claim ("Trump Group Release Amounts").  With respect to each Trump Group Release Amount, until such time as such Trump Group Release Amount has

14

been paid over to the AG Group, the members of the Trump Group shall remain jointly and

severally liable for such Trump Group Release Amount, and the AG Group may at its option

pursue all legal remedies available to it. For purposes of the removal of all doubt, it is the parties

intention that no claims shall be brought or pursued by any member of the Trump Group against

any member of the AG Group for any reason whatsoever (other than claims permitted under

clause (x), (y) and (z) of the immediately preceding paragraph).

      7.    **Discovery Obligations**.    Effective on the Effective Date (defined

below), to the extent that a member of the AG Group or the Orly Genger 1993 Trust seeks

discovery or testimony from any member of the Trump Group, or if any member of the Trump

Group is subpoenaed by any party to an action in which any member of the AG Group or the

Orly Genger 1993 Trust is a party, each of the members of the AG Group, jointly and severally,

agrees that to the extent indemnities of the Trump Group provided for elsewhere in this

Agreement do not apply, they shall indemnify the Trump Group for any and all costs and fees,

including reasonable legal fees and disbursements of counsel to be chosen by the Trump Group

(it being understood that for the purposes of this Discovery Obligation indemnity only, the

indemnification for legal fees shall be limited to $750 per hour of legal services), incurred in

working on, preparing for or defending such claim, it being agreed that the Trump Group will

cooperate with the AG Group in all reasonable respects to cause the amount of such costs and

fees, including its attorneys' fees and disbursements to be minimized ("Discovery Costs"). With

respect to each Discovery Cost, until such time as such Discovery Cost has been paid over to the

Trump Group, the members of the AG Group shall remain jointly and severally liable for such

Discovery Cost, and the Trump Group may at its option pursue all legal remedies available to it

15

and/or withhold an amount equal to such unreimbursed Discovery Cost from any payments to be made by Trans-Resources pursuant to the Notes.

8. **Cooperation.**

(a)     Each member of the AG Group shall take all actions necessary or desirable, as promptly as practicable and as may be requested by the Trump Group from time to time including, without limitation, testifying in the Orly Trust Action, to (i) effectuate the release of the AG Group Released Claims and to prevent or preclude any other person or entity from asserting, instituting or prosecuting, or encouraging, soliciting or cooperating with any other person or entity in asserting, instituting or prosecuting, any proceeding or claims against any of the Trump Group Released Parties with respect to any AG Group Released Claim or any other Claim relating in any way, directly or indirectly, to Trans-Resources or any of its direct or indirect subsidiaries, the ownership or acquisition of Trans-Resources shares, the control of Trans-Resources or any of its direct or indirect subsidiaries, records and documents (including but not limited to electronic files) in the possession, custody or control of Trans-Resources or any of its direct or indirect subsidiaries or the business or operations of Trans-Resources or any of its direct or indirect subsidiaries brought by any party without regard to whether such party is a signatory hereto and (ii) cause the Orly Genger 1993 Trust to release any and all claims against the Trump Group Released Parties, including, without limitation, any claims pending in the Orly Trust Action.

(b)     As a condition to any settlement that any member of the AG Group shall enter into with any member of the Sagi Group, the AG Group parties to such settlement shall cause each Sagi Group party to such settlement to (i) dismiss with prejudice all pending claims, cross-claims and counter claims against any of the Trump Group Released Parties (as defined below)

16

and to provide the Sagi Group Release, and (ii) if the Orly Genger 1993 Trust is a party to such settlement, cause it to agree in writing to become an AG Group member for purposes of providing the indemnity contained in Paragraph 5. Likewise, as a condition to any agreement by the AG Group to a replacement trustee for the Orly Genger 1993 Trust, the AG Group shall use its best efforts to cause such trustee to agree in writing on behalf of the Orly Genger 1993 Trust that it shall be a member of the AG Group for purposes of providing the indemnity contained in Paragraph 5.

(c)     Each member of the AG Group covenants that for so long as the indemnity contained in Paragraph 5 remains in effect, he, she or it shall not contribute or deposit any amounts, or permit to be contributed or deposited any amounts (including, without limitation, any payments made under Paragraphs 2 and 3), to or with the Orly Genger 1993 Trust or to any other trust or entity that any of them directly or indirectly controls or is or was established at their direction, or that is or was established or exists for any of their direct or indirect benefit, unless such trust or entity has agreed in writing to being a member of the AG Group for purposes of providing the indemnity contained in Paragraph 5. The foregoing shall not restrict members of the AG Group from investing in or with such entities provided that that such investment may be liquidated, without restriction, by such member of the AG Group from time to time as may be necessary to comply with the terms of the indemnity contained in Paragraph 5.

(d)     The AG Group covenants that, subject to any confidentiality orders of any court or other restrictions imposed by law (i) with respect to any court filing made or received by it concerning the Orly Genger 1993 Trust, it shall contemporaneously provide a copy thereof to the Trump Group, and (ii) contemporaneously with its becoming aware of any changes or

17

contemplated material changes to the Orly Genger 1993 Trust including, without limitation, the

resignation of its trustee and/or the appointment of a replacement trustee, it shall provide written

notice thereof to the Trump Group.

9. **Confidentiality.** The Parties and their counsel shall not disclose the

terms of this Agreement, except if, upon written advice of counsel, it is required to do so by law.

Notwithstanding the foregoing, disclosure may be made by the Parties: (i) to their respective

accountants, financial advisors or attorneys (collectively, "Advisors") as required to obtain tax or

legal advice, it being agreed that each Party shall apprise its Advisors of the obligation to

maintain such confidentiality and that each Party shall be accountable for any breach of this

provision by its respective Advisors, and (ii) notwithstanding anything to the contrary in this

Agreement, the Parties may disclose the terms of this Agreement if necessary in any action to

enforce this Agreement or as may be required to respond to a valid subpoena, court order or

other legal process. Each Party agrees that he, she or it will promptly give notice of any attempt

to compel disclosure of the terms of this Agreement to each of the other Parties, at least five (5)

days before compliance is required.

10. **Third Party Beneficiaries.** This Agreement shall have no third party

beneficiaries except for those persons and entities that are not Parties hereto but are covered by

the releases set forth in Paragraph 6 above, who may enforce those releases.

11. **Binding Effect**

This Agreement shall be binding upon and inure to the benefit of each of the Parties hereto and

(where applicable) their respective current and former agents, representatives, officers, directors,

advisors, employees, general partners, limited partners, shareholders, members, subsidiaries and

18

affiliates, and each of their respective predecessors, successors, heirs, executors, administrators and assigns.

12.    **Representations and Warranties.**

(a)    Each Party represents that it, he or she is authorized to enter into this Agreement and to grant the rights granted by it, him or her in this Agreement. Each Party further represents that, to the extent any non-party consents are required for the performance of any of its, his or her obligations under this Agreement (including, without limitation, with any entity controlled by any Party, including any of its partners or equity holders), it, he or she has obtained such consents.

(b)    Each Party has the benefit of the advice of counsel chosen and employed by it, him or her concerning this Agreement.

(c)    Each Party is the sole owner and holder of the Claims it is releasing under this Agreement, and represents that none of the Claims released herein have been assigned, pledged, encumbered, or otherwise transferred in whole or in part, to any other person or entity.

(d)    Each member of the AG Group represents that he, she or it is knowledgeable, sophisticated and experienced in business, financial and other matters relevant to his, her or its entry into this Agreement and the transactions contemplated hereby, and has engaged advisors, experienced in the matters contemplated by this Agreement. Each member of the AG Group has undertaken such investigation and has been provided with and has evaluated such documents and information as he, she or it has deemed necessary to enable him, her or it to make an informed decision with respect to the execution, delivery and performance of this Agreement and the transactions contemplated hereby. Each member of the AG Group is

19

consummating the transactions contemplated hereby without reliance upon any express or

implied representations or warranties of any nature, whether in writing, orally or otherwise, made

by or on behalf of or imputed to any of the Trump Group Released Parties, except as expressly

set forth in this Agreement, and no member of the AG Group shall make any Claim with respect

thereto. Each member of the AG Group acknowledges that he, she or it is taking full

responsibility for making his, her or its own evaluation of the adequacy and accuracy of all

documents or information that may have been furnished to him, her or it, and that no member of

the AG Group shall have any Claim against any of the Trump Group Released Parties with

respect thereto, including for Claims relating to the accuracy or completeness of the information

that may have been furnished to him her or it. Each member of the AG Group acknowledges and

understands that each member of the Trump Group Released Parties expressly disclaims any and

all liability that may be based on any of the documents and information that may have been

furnished to any member of the AG Group and all liability based on such documents or

information or errors therein or omissions therefrom. Accordingly, each member of the AG

Group acknowledges that none of the Trump Group Released Parties has made any

representation or warranty with respect to (i) any historical information, financial or otherwise,

including without limitation results of operations (or any component thereof), cash flows, or

financial condition (or any component thereof), of Trans-Resources and/or any of its subsidiaries,

(ii) any valuations or projections or estimates of future revenues, future results of operations (or

any component thereof), future cash flows or future financial condition (or any component

thereof) of Trans-Resources and/or any of its subsidiaries or the future business and operations of

Trans-Resources and/or any of its subsidiaries, (iii) any Claims any member of the AG Group

20

may have against any of the Trump Group Released Parties or (iv) any other information or

documents that may have been made available to any member of the AG Group or their

respective counsel, accountants or advisors with respect to any of the Trump Group Released

Parties any of their respective businesses, assets, liabilities or operations, except as expressly set

forth in this Agreement. In addition to the foregoing, each member of the AG Group

acknowledges that his, her or its entry into this Agreement and the transactions contemplated

hereby is based solely on his, her or its respective assessment and valuation of all Claims that he,

she or it may have against any of the Trump Group Released Parties and the likelihood of

success of such Claims in a court of competent jurisdiction. Each member of the AG Group

acknowledges that the consideration to be received by the AG Group pursuant to this Agreement

constitutes full and fair consideration for the release of all Claims contemplated hereunder.

(e)     Each member of the Trump Group represents that he, she or it is knowledgeable,

sophisticated and experienced in business, financial and other matters relevant to his, her or its

entry into this Agreement and the transactions contemplated hereby, and has engaged advisors,

experienced in the matters contemplated by this Agreement. Each member of the Trump Group

has undertaken such investigation and has been provided with and has evaluated such documents

and information as he, she or it has deemed necessary to enable him, her or it to make an

informed decision with respect to the execution, delivery and performance of this Agreement and

the transactions contemplated hereby. Each member of the Trump Group is consummating the

transactions contemplated hereby without reliance upon any express or implied representations

or warranties of any nature, whether in writing, orally or otherwise, made by or on behalf of or

imputed to any of the AG Group Released Parties, except as expressly set forth in this

21

Agreement, and no member of the Trump Group shall make any Claim with respect

thereto. Each member of the Trump Group acknowledges that he, she or it is taking full

responsibility for making his, her or its own evaluation of the adequacy and accuracy of all

information that may have been furnished to him, her or it, and that no member of the Trump

Group shall have any Claim against any of the AG Group Released Parties with respect thereto,

including for Claims relating to the accuracy or completeness of the information that may have

been furnished to him her or it. Each member of the Trump Group acknowledges and

understands that each member of the AG Group Released Parties expressly disclaims any and all

liability that may be based on any of the documents and information that may have been

furnished to any member of the Trump Group and all liability based on such documents or

information or errors therein or omissions therefrom. Accordingly, each member of the Trump

Group acknowledges that none of the AG Group Released Parties has made any representation or

warranty with respect to (i) any historical information, financial or otherwise, including without

limitation results of operations (or any component thereof), cash flows, or financial condition (or

any component thereof), of Trans-Resources and/or any of its subsidiaries, (ii) any valuations or

projections or estimates of future revenues, future results of operations (or any component

thereof), future cash flows or future financial condition (or any component thereof) of Trans-

Resources and/or any of its subsidiaries or the future business and operations of Trans-Resources

and/or any of its subsidiaries, (iii) any claims any member of the Trump Group may have against

any of the AG Group Released Parties or (iv) any other information or documents that may have

been made available to any member of the Trump Group or their respective counsel, accountants

or advisors with respect to any of the AG Group Released Parties any of their respective

22

businesses, assets, liabilities or operations, except as expressly set forth in this Agreement. In addition to the foregoing, each member of the Trump Group acknowledges that his, her or its entry into this Agreement and the transactions contemplated hereby is based solely on his, her or its respective assessment and valuation of all Claims that he, she or it may have against any of the AG Group Released Parties and the likelihood of success of such Claims in a court of competent jurisdiction. Each member of the Trump Group acknowledges that the consideration to be received by the Trump Group pursuant to this Agreement constitutes full and fair consideration for the release of all claims contemplated hereunder.

13.    **Attorneys' Fees.** The Parties agree to be responsible for their own attorneys' fees and costs incurred in connection with this Agreement and negotiations related to and preparation of this Agreement and not to seek from each other reimbursement of any such costs, expenses or attorneys' fees.

14.    **Governing Law.**

This Agreement, and all disputes arising under this Agreement or related thereto, shall be governed by, construed and interpreted in accordance with the laws of the State of Delaware, applicable to instruments made, delivered and performed entirely in such state, without regard to the choice of law provisions thereof.

15.    **Arbitration.** UNLESS THIS AGREEMENT SPECIFICALLY PROVIDES FOR ANOTHER TYPE OF DISPUTE RESOLUTION WITH RESPECT TO A PARTICULAR KIND OF DISPUTE, ANY AND ALL CONTROVERSIES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH, TERMINATION OR VALIDITY THEREOF, SHALL BE EXCLUSIVELY SETTLED BY FINAL AND BINDING

ARBITRATION IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THIS
SECTION.

(a)     The arbitration shall be conducted in accordance with the Commercial
Arbitration Rules of the American Arbitration Association ("AAA") then in effect (the "Rules"),
except as set forth herein.  Any member of the Trump Group on behalf of the Trump Group, on
the one hand, and any member of the AG Group on behalf of the AG Group, on the other hand,
may demand arbitration by giving the other written notice to such effect in accordance with the
Rules.

(b)     The arbitration will be held before one neutral arbitrator.  Within thirty (30)
days after the other Party's receipt of the demand for arbitration, the Party seeking arbitration
will invite the other Party to join it in approaching the following list of individuals about serving
as arbitrator and will approach such individuals with such other Party (if its invitation is accepted)
or without such other Party (if its invitation is rejected or not responded to within five (5)
business days): The Honorable William B. Chandler III, David A. Jenkins, Esq., Stephen E.
Jenkins, Esq., Robert J. Katzenstein, Esq., and Andre G. Bouchard, Esq.  If only one such
individual is available and willing, he shall serve as the arbitrator.  If more than one such
individual is available and willing, the Parties will mutually determine which of those so
available and willing will serve as the arbitrator.  If the Parties are unable to agree, the arbitrator
will be selected by the AAA from the foregoing list in accordance with the listing, striking and
ranking procedure in the Rules, with each Party being given a limited number of strikes, except
for cause.  If none of the foregoing individuals is available, the arbitrator will be selected by the
AAA in accordance with the listing, striking and ranking procedure in the Rules, with each Party

24

being given a limited number of strikes, except for cause. Any arbitrator appointed by the AAA shall be a retired judge that presided over a state or federal court located in Delaware or a practicing attorney licensed in Delaware with no less than fifteen years of experience with large commercial cases. Any such arbitration proceedings shall be and remain confidential. The place of arbitration shall be in Manhattan, New York or elsewhere if otherwise agreed to.

(c)    Discovery will be limited to the request for and production of documents, directly related to the issues in dispute, limited depositions of limited duration, and interrogatories. Interrogatories will be allowed only as follows: a Party may request the other Party to identify by name, last known address and telephone number (i) all persons having knowledge of facts relevant to the dispute and a brief description of that person's knowledge, and (ii) any experts who may be called as an expert witness, the subject matter about which the expert is expected to testify, the mental impressions and opinions held by the expert and the facts known by the expert. All issues concerning discovery upon which the parties cannot agree will be submitted to the arbitrator for determination.

(d)    Each of the Parties agrees that it will use commercially reasonable efforts to join (and will allow the other party to join) any third party that the Parties have agreed is indispensable to the arbitration. If any such third party does not agree to be joined, the arbitration will proceed nonetheless.

(e)    The arbitrators are not empowered to award damages not permitted by the terms of this Agreement and if so permitted, then not in excess of compensatory damages, except with respect to indemnification obligations for punitive damages as provided hereunder, and

25

each Party irrevocably waives the right to recover punitive, exemplary or multiple damages with respect to any dispute other than with respect to indemnification obligations for such punitive damages as provided hereunder. The decision of, and award rendered by, the arbitrator will be final and binding on the Parties, will be in writing and will include the findings of fact and conclusions of law upon which it is based, if any.

(f)    The Parties specifically acknowledge that this Agreement evidences a transaction involving, affecting, affected by, and a part of, interstate commerce and that this agreement to arbitrate is governed by and enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

(g)    Except to the extent that any of the indemnification provisions contained herein shall be applicable (i) the Parties shall each be responsible for their own costs and expenses (including legal fees and disbursements) incurred in any arbitration, and (ii) the AG Group on the one hand and the Trump Group on the other shall each be responsible for 50% of the fees and disbursements of the arbitrator and of any costs and expenses payable to the AAA.

(h)    With respect to the enforcement, modification or vacating of any arbitration award (it being reconfirmed hereby that the arbitration award shall itself be final and binding on the Parties), the Parties submit to the exclusive jurisdiction of one or the other of (i) the United Stated District Court of the Southern District of New York sitting in the Borough of Manhattan in the City of New York and (ii) the Commercial Division of the New York State Supreme Court sitting in the Borough of Manhattan in the City of New York.

16.    **Notice.** If any Party is required to give notice to any other Party under this Agreement, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, one business day following its being sent to the recipient via Federal Express or another

26

nationally recognized over-night courier, or by e-mail with confirmation of receipt to the

following individuals or to such other address or person as such Parties may from time to time

specify by written notice given in the manner provided above:

**If to the Trump Group:**

Mark S. Hirsch, Esq.

The Trump Group

41 Madison Avenue, Suite 4101

New York, NY 10010

Phone: (212) 838-1000

E-mail: mhirsch@trumpgroup.com

**With Copy to:**

Thomas J. Allingham II, Esq.

Anthony W. Clark, Esq.

Douglas D. Herrmann, Esq.

Skadden, Arps, Slate, Meagher & Flom LLP

One Rodney Square

P.O. Box 636

Wilmington, DE 19899

Phone: (302) 651-3000

E-mail: thomas.allingham@skadden.com

27

E-mail:  anthony.clark@skadden.com

E-mail:  douglas.herrmann@skadden.com

**If to Arie Genger:**

Arie Genger

104 West 40th Street, 19th Floor

New York, NY 10018

E-mail:  wachtel@wmllp.com

**With Copy to:**

Stephen P. Lamb, Esq.

Paul Weiss

500 Delaware Avenue, Suite 200

Wilmington, DE 19889

**If to Orly Genger:**

Orly Genger

104 West 40th Street, 19th Floor

New York, NY 10018

E-mail: wachtel@wmllp.com

**With Copy to:**

28

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.

New York, NY 10017


[]


**If to Arnold Broser or David Broser:**

David Broser

104 West 40th, 19th FloorNew York, NY 10018

E-mail: wachtel@wmll.com

**With Copy to:**

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.
New York, NY 10017

17.   **Entire Agreement.** This Agreement contains the entire agreement between the Parties concerning the subject matter hereof. Neither this Agreement nor any of its terms or provisions shall be binding on any Party until all the Parties hereto have signed. The Parties agree that all drafts of this Agreement are strictly confidential and shall supplement and complement any protection, which may attach to the exchange of confidential information in settlement discussions, whether by common law or statute including, but not limited to, Federal Rule of Evidence 408 and comparable state laws. Any and all prior discussions and agreements between the Parties concerning the subject matter of this Agreement are merged into this Agreement when signed. This Agreement may not be modified or amended, nor any of its provisions waived, except by an instrument in writing signed by all Parties. No Party has made any warranty or representation to the other Parties that is not set forth expressly herein. In entering into this Agreement, no Party has relied on any statement or representation made by or on behalf of any other Party, by or on behalf of any affiliate of such other Party, or by counsel for such other Party that is not set forth expressly in this Agreement.

18.   **No Drafting Presumption.** This Agreement shall be interpreted or construed without any presumption that the provisions hereof should be strictly construed against the drafter, it being agreed that the Parties and their respective counsel and other agents have fully and equally participated in the preparation, negotiation, review and approval of all provisions of this Agreement.

19.   **No Admissions.** The Parties have executed this Agreement for the sole purpose of settling and disposing of all Claims between them, and it is expressly understood and agreed that no Party hereto admits any wrongdoing on its, his or her part by executing this Agreement.

30

20.    **Binding Effect.**  It is the intention of the parties to extinguish all AG Group Released

Claims and all Trump Group Released Claims and, consistent with such intention, each of the

Parties hereby waives any and all rights, to the extent permitted by law, to assert that the Release

provided by it in Paragraph 6 hereunder is unenforceable as to any claim whatsoever and for any

reason including, without limitation, any and all rights under section 1542 of the California Civil

Code, if applicable, or any other applicable similar law or principle of common law, which may

have the effect of limiting the Releases herein.  Section 1542 of the California Civil Code

provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR.

21.    **Headings.**  The section headings contained in this Agreement are for reference purposes

only and shall not in any way effect or control the meaning or interpretation of this Agreement.

22.    **Execution in Counterparts and by PDF e-mail.**  This Agreement may be executed in

multiple counterparts and by fax or PDF e-mail, each of which, when so executed and delivered,

shall be an original, but such counterparts shall together constitute one and the same instrument

and agreement.

23.    **Effective Date.**  This Agreement shall be effective immediately upon execution and

delivery by all Parties hereto (the "Effective Date").

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be duly

executed as follows:

**TR Investors, LLC**                          **Arie Genger**

By: _____    _____

Print: _____     Date: ___6/15/13___

Title: _____

Date: _____


**Glenclova Investment Co.**                   **Orly Genger (in her individual capacity and**

                                               **in her capacity as beneficiary of the**

By: _____    **Orly Genger 1993 Trust)**

Print: _____

                                               _____

Title: _____

                                               Date: ___6/15/13___

Date: _____

32

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be duly executed as follows:

TR Investors, LLC                                   Arie Genger

By: _Mark S Hirsch_____               _____

Print: _MARK S. HIRSCH_____               Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_____


Glenclova Investment Co.                          Orly Genger (in her individual capacity and

                                                 in her capacity as beneficiary of the

By: _Mark S Hirsch_____                 Orly Genger 1993 Trust)

Print: _MARK S. HIRSCH_____

Title: _Executive VP/General Counsel_           _____

Date: _June 16, 2013_____                 Date: _____

32

**New TR Equity I, LLC**

By: _____

Print: _____

Title: _____

Date: _____


**Arnold Broser**

Date: _____ 6/16/13 _____


**New TR Equity II, LLC**

By: _____

Print: _____

Title: _____

Date: _____


**David Broser**

Date: _____ 6/16/13 _____


33

New TR Equity I, LLC                         Arnold Broser

By: _Mark S Hirsch_____        _____

Print: _MARK S.Hirsch_____              Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_____


New TR Equity II, LLC                        David Broser

By: _Mark S Hirsch_____       _____

Print: _MARK S. Hirsch_____             Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_____

33

**Trans-Resources, LLC**


By: _Mark S Hirsch_____


Print: _MARK S. HIRSCH_____


Title: _Executive VP/General Counsel_____


Date: _June 16, 2013_____

34

**Jules Trump**

Date: ___6/16/2013___

**Eddie Trump**

_____

Date: _____

**Mark Hirsch**

_____

Date: _____

35

**Jules Trump**

_____

Date: _____

**Eddie Trump**

_____

Date: June 16, 2013

**Mark Hirsch**

_____

Date: _____

**Jules Trump**

_____


Date: _____


**Eddie Trump**

_____


Date: _____



**Mark Hirsch**

_____


Date: June 16, 2013 _____

EXHIBIT A

2200-01100110-jlg    Doc 384-25    Filed 06/25/21    Entered 06/25/21 23:58:49    Exhibit A
Settlement Agreement and Notes    Pg 41 of 59

*6/16/13*
*Draft - Confidential*

# [FORM OF SUBORDINATED NOTE]

**THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY APPLICABLE STATE SECURITIES LAWS AND MAY NOT BE SOLD OR TRANSFERRED WITHOUT COMPLIANCE WITH THE REGISTRATION OR QUALIFICATION PROVISIONS OF APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR APPLICABLE EXEMPTIONS THEREFROM.**

TRANS-RESOURCES

## SUBORDINATED NOTE

$7,500,000.00                                                    June __, 2013

**FOR VALUE RECEIVED**, Trans-Resources, LLC a Delaware entity (the successor to Trans-Resources, Inc. and referred to herein as the "Maker"), hereby promises to pay to the order of [_____] (the "Payee"), the principal sum of Seven Million, Five-Hundred Thousand Dollars ($7,500,000.00) pursuant to the terms and conditions of and at the times provided in the Settlement Agreement (as defined below).

1.    Notes. This Subordinated Note (this "Note") is issued pursuant to, and is subject to the terms and conditions of, the Settlement Agreement and Release, dated as of June __, 2013 by and among the AG Group and the Trump Group, as amended, restated, supplemented or otherwise modified from time to time (the "Settlement Agreement"). Terms used herein and not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement.

2.    No Interest. This Note will not accrue interest, pursuant to the terms of the Settlement Agreement.

3.    Maturity. Subject to the terms and conditions of the Settlement Agreement and this Paragraph 3, this Note shall mature and be redeemed or satisfied in full by the Maker in one installment, which shall be paid by the Maker no later than the ___ anniversary of the Effective Date (the "Maturity Date"). Notwithstanding the foregoing, the Maturity Date shall automatically be extended until the earlier (the "Extended Maturity Date") of (i) such time as all pending claims, cross-claims and counter-claims brought by any of TPR, Sagi Genger, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust (other than the Orly Trust Action), D&K Limited Partnership, D&K GP LLC, Rochelle Fang, and/or David Parnes (collectively, the "Sagi Group") against any member of the Trump Group have been dismissed with prejudice and the statute of limitations shall have run with respect to any other potential claims of the Sagi Group that might be the subject of the indemnification obligations provided for by Paragraph 5 of the Settlement Agreement and (ii) such time as each member of the Sagi Group shall have provided the Trump Group with a release of the Trump Group Released Parties and covenant not to sue in form and substance that is the same as the AG Group Release and covenant not to sue contained in Paragraph 6(a) of the Settlement Agreement. Subject to the foregoing, this Note shall become immediately due and payable upon the occurrence of any transaction or series of transactions which shall result in the Trump Group owning or controlling neither (i) a majority of the voting stock of Trans-Resources or its successors or each of its two principal subsidiaries, Haifa

Chemicals, Ltd. and Na-Churs Plant Food Company or their successors, nor (ii) directly or indirectly, a majority of the assets currently owned by Trans-Resources and its subsidiaries; provided, however, that in such event, at the request of the Trump Group, the amounts then payable on this Note shall be placed in escrow until the Maturity Date or until the Extended Maturity Date (if applicable) under the provisions of an escrow agreement on reasonable terms to be negotiated at such time in good faith between the Maker, the Payee and an escrow agent selected by mutual consent of the Maker and the Payee (such consent, not to be unreasonably withheld, conditioned or delayed), which shall provide for the release of funds from such escrow to the Maker in satisfaction of any and all Indemnification Amounts, AG Group Release Amounts and Discovery Costs owing to Maker, if any, and payment to the Payee of any amounts remaining in escrow after payment to Maker of all Indemnification Amounts, AG Group Release Amounts and Discovery Costs, if any, upon the Maturity Date hereunder or the Extended Maturity Date (if applicable).

4.  Optional Prepayments. The Maker may voluntarily prepay this Note prior to the Maturity Date, in whole or in part, at any time, without premium or penalty.

5.  Adjustment. In accordance with the terms of the Settlement Agreement, in the event that at any time Indemnification Amounts, Discovery Costs, AG Group Release Amounts, or other amounts due and payable by the AG Group to the Trump Group pursuant to the Settlement Agreement (the "Costs") have not been paid to the Trump Group in accordance with the terms of the Settlement Agreement, the Maker may, upon written notice to the Payee, set off and apply as a credit against the amount due under this Note any and all due, unpaid and outstanding Costs. The rights and remedies described herein are in addition to any other rights and remedies the Parties may have under the Settlement Agreement or other applicable law.

6.  Subordination. Pursuant to the terms of the Settlement Agreement, this Note is unsecured and shall be fully subordinated to any obligation of Trans-Resources, including, but not limited to, outstanding credit facilities, bonds, loans, tax obligations and payables.

7.  Enforcement. The Maker hereby agrees to pay on demand all reasonable costs and expenses, including without limitation attorneys' fees and costs of collection, incurred or paid by the Payee in enforcing this Note in accordance with the Settlement Agreement.

8.  Amendments. No failure or delay on the part of the Maker or the Payee in exercising any right, power, privilege or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power, privilege or remedy preclude any other or further exercise thereof or the exercise of any other right, power, privilege or remedy. This Note may not be amended and the provisions hereof may not be waived, except in accordance with the terms of the Settlement Agreement.

9.  Lost Notes, etc. If this Note is mutilated, destroyed, lost or stolen, upon receipt of evidence satisfactory to the Maker of such loss, theft, destruction or mutilation of this Note and, if requested in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to the Maker, or, in the case of any such mutilation, upon surrender and cancellation of this Note, the Maker shall issue a new Note of like tenor and amount, in lieu of this Note.

- 2 -

10.    <u>ASSIGNMENT</u>.  THIS NOTE, INCLUDING THE RESPECTIVE RIGHTS AND OBLIGATIONS OF THE MAKER AND THE PAYEE PURSUANT THIS NOTE, MAY NOT BE ASSIGNED, TRANSFERRED, SOLD OR OTHERWISE DISPOSED OF BY EITHER THE MAKER OR THE PAYEE WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER WHICH CONSENT MAY BE WITHHELD IN SUCH PARTY'S SOLE DISCRETION.

11.    <u>Binding Effect</u>.  The provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns permitted hereby.

*[signature page follows]*

**Error! Unknown document property name.**

**IN WITNESS WHEREOF**, the Maker has caused this Subordinated Note to be duly executed under seal on the date set forth above by a duly authorized representative of the Maker.

TRANS-RESOURCES, LLC


By:_____
    Name:
    Title:

4

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY APPLICABLE STATE SECURITIES LAWS AND MAY NOT BE SOLD OR TRANSFERRED WITHOUT COMPLIANCE WITH THE REGISTRATION OR QUALIFICATION PROVISIONS OF APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR APPLICABLE EXEMPTIONS THEREFROM.

TRANS-RESOURCES

**SUBORDINATED NOTE**

$7,500,000.00                                                    June 16, 2013

     **FOR VALUE RECEIVED**, Trans-Resources, LLC a Delaware entity (the successor to Trans-Resources, Inc. and referred to herein as the "Maker"), hereby promises to pay to the order of Wachtel, Masyr & Missry, LLP, as attorneys (the "Payee"), the principal sum of Seven Million, Five-Hundred Thousand Dollars ($7,500,000.00) pursuant to the terms and conditions of and at the times provided in the Settlement Agreement (as defined below).

     1.    Notes. This Subordinated Note (this "Note") is issued pursuant to, and is subject to the terms and conditions of, the Settlement Agreement and Release, dated as of June 16, 2013 by and among the AG Group and the Trump Group, as amended, restated, supplemented or otherwise modified from time to time (the "Settlement Agreement"). Terms used herein and not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement.

     2.    No Interest. This Note will not accrue interest, pursuant to the terms of the Settlement Agreement.

     3.    Maturity. Subject to the terms and conditions of the Settlement Agreement and this Paragraph 3, this Note shall mature and be redeemed or satisfied in full by the Maker in one installment, which shall be paid by the Maker no later than June 16, 2016 (the "Maturity Date"). Notwithstanding the foregoing, the Maturity Date shall automatically be extended until the earlier (the "Extended Maturity Date") of (i) such time as all pending claims, cross-claims and counter-claims brought by any of TPR, Sagi Genger, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust (other than the Orly Trust Action), D&K Limited Partnership, D&K GP LLC, Rochelle Fang, and/or David Parnes (collectively, the "Sagi Group") against any member of the Trump Group have been dismissed with prejudice and the statute of limitations shall have run with respect to any other potential claims of the Sagi Group that might be the subject of the indemnification obligations provided for by Paragraph 5 of the Settlement Agreement and (ii) such time as each member of the Sagi Group shall have provided the Trump Group with a release of the Trump Group Released Parties and covenant not to sue in form and substance that is the same as the AG Group Release and covenant not to sue contained in Paragraph 6(a) of the Settlement Agreement. Subject to the foregoing, this Note shall become immediately due and payable upon the occurrence of any transaction or series of transactions which shall result in the Trump Group owning or controlling neither (i) a majority of the voting stock of Trans-Resources or its successors or each of its two principal subsidiaries, Haifa Chemicals, Ltd. and Na-Churs Plant Food Company or their successors, nor (ii) directly or indirectly, a majority of the assets currently owned by Trans-Resources and its subsidiaries; provided, however, that in such event,



1

at the request of the Trump Group, the amounts then payable on this Note shall be placed in
escrow until the Maturity Date or until the Extended Maturity Date (if applicable) under the
provisions of an escrow agreement on reasonable terms to be negotiated at such time in good
faith between the Maker, the Payee and an escrow agent selected by mutual consent of the Maker
and the Payee (such consent, not to be unreasonably withheld, conditioned or delayed), which
shall provide for the release of funds from such escrow to the Maker in satisfaction of any and all
Indemnification Amounts, AG Group Release Amounts and Discovery Costs owing to Maker, if
any, and payment to the Payee of any amounts remaining in escrow after payment to Maker of
all Indemnification Amounts, AG Group Release Amounts and Discovery Costs, if any, upon the
Maturity Date hereunder or the Extended Maturity Date (if applicable).

     4.    Optional Prepayments. The Maker may voluntarily prepay this Note prior to the
Maturity Date, in whole or in part, at any time, without premium or penalty.

     5.    Adjustment. In accordance with the terms of the Settlement Agreement, in the
event that at any time Indemnification Amounts, Discovery Costs, AG Group Release Amounts,
or other amounts due and payable by the AG Group to the Trump Group pursuant to the
Settlement Agreement (the "Costs") have not been paid to the Trump Group in accordance with
the terms of the Settlement Agreement, the Maker may, upon written notice to the Payee, set off
and apply as a credit against the amount due under this Note any and all due, unpaid and
outstanding Costs. The rights and remedies described herein are in addition to any other rights
and remedies the Parties may have under the Settlement Agreement or other applicable law.

     6.    Subordination. Pursuant to the terms of the Settlement Agreement, this Note is
unsecured and shall be fully subordinated to any obligation of Trans-Resources, including, but
not limited to, outstanding credit facilities, bonds, loans, tax obligations and payables.

     7.    Enforcement. The Maker hereby agrees to pay on demand all reasonable costs
and expenses, including without limitation attorneys' fees and costs of collection, incurred or
paid by the Payee in enforcing this Note in accordance with the Settlement Agreement.

     8.    Amendments. No failure or delay on the part of the Maker or the Payee in
exercising any right, power, privilege or remedy shall operate as a waiver thereof, nor shall any
single or partial exercise of any such right, power, privilege or remedy preclude any other or
further exercise thereof or the exercise of any other right, power, privilege or remedy. This Note
may not be amended and the provisions hereof may not be waived, except in accordance with the
terms of the Settlement Agreement.

     9.    Lost Notes, etc. If this Note is mutilated, destroyed, lost or stolen, upon receipt of
evidence satisfactory to the Maker of such loss, theft, destruction or mutilation of this Note and,
if requested in the case of any such loss, theft or destruction, upon delivery of an indemnity
agreement reasonably satisfactory to the Maker, or, in the case of any such mutilation, upon
surrender and cancellation of this Note, the Maker shall issue a new Note of like tenor and
amount, in lieu of this Note.

     10.    ASSIGNMENT. THIS NOTE, INCLUDING THE RESPECTIVE RIGHTS
AND OBLIGATIONS OF THE MAKER AND THE PAYEE PURSUANT THIS NOTE, MAY

NOT BE ASSIGNED, TRANSFERRED, SOLD OR OTHERWISE DISPOSED OF BY EITHER THE MAKER OR THE PAYEE WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER WHICH CONSENT MAY BE WITHHELD IN SUCH PARTY'S SOLE DISCRETION.

11.     Binding Effect.  The provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns permitted hereby.

**IN WITNESS WHEREOF**, the Maker has caused this Subordinated Note to be duly executed under seal on the date set forth above by a duly authorized representative of the Maker.

TRANS-RESOURCES, LLC

By: _____

Name: MARK S. HIRSCH

Title: EXEC VP/GEN'L COUNSEL

3

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY APPLICABLE STATE SECURITIES LAWS AND MAY NOT BE SOLD OR TRANSFERRED WITHOUT COMPLIANCE WITH THE REGISTRATION OR QUALIFICATION PROVISIONS OF APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR APPLICABLE EXEMPTIONS THEREFROM.

TRANS-RESOURCES

## SUBORDINATED NOTE

$7,500,000.00                                                                June 16, 2013

      **FOR VALUE RECEIVED**, Trans-Resources, LLC a Delaware entity (the successor to Trans-Resources, Inc. and referred to herein as the "Maker"), hereby promises to pay to the order of Wachtel, Masyr & Missry, LLP, as attorneys (the "Payee"), the principal sum of Seven Million, Five-Hundred Thousand Dollars ($7,500,000.00) pursuant to the terms and conditions of and at the times provided in the Settlement Agreement (as defined below).

      1.    Notes. This Subordinated Note (this "Note") is issued pursuant to, and is subject to the terms and conditions of, the Settlement Agreement and Release, dated as of June 16, 2013 by and among the AG Group and the Trump Group, as amended, restated, supplemented or otherwise modified from time to time (the "Settlement Agreement"). Terms used herein and not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement.

      2.    No Interest. This Note will not accrue interest, pursuant to the terms of the Settlement Agreement.

      3.    Maturity. Subject to the terms and conditions of the Settlement Agreement and this Paragraph 3, this Note shall mature and be redeemed or satisfied in full by the Maker in one installment, which shall be paid by the Maker no later than June 14, 2017 (the "Maturity Date"). Notwithstanding the foregoing, the Maturity Date shall automatically be extended until the earlier (the "Extended Maturity Date") of (i) such time as all pending claims, cross-claims and counter-claims brought by any of TPR, Sagi Genger, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust (other than the Orly Trust Action), D&K Limited Partnership, D&K GP LLC, Rochelle Fang, and/or David Parnes (collectively, the "Sagi Group") against any member of the Trump Group have been dismissed with prejudice and the statute of limitations shall have run with respect to any other potential claims of the Sagi Group that might be the subject of the indemnification obligations provided for by Paragraph 5 of the Settlement Agreement and (ii) such time as each member of the Sagi Group shall have provided the Trump Group with a release of the Trump Group Released Parties and covenant not to sue in form and substance that is the same as the AG Group Release and covenant not to sue contained in Paragraph 6(a) of the Settlement Agreement. Subject to the foregoing, this Note shall become immediately due and payable upon the occurrence of any transaction or series of transactions which shall result in the Trump Group owning or controlling neither (i) a majority of the voting stock of Trans-Resources or its successors or each of its two principal subsidiaries, Haifa Chemicals, Ltd. and Na-Churs Plant Food Company or their successors, nor (ii) directly or indirectly, a majority of the assets currently owned by Trans-Resources and its subsidiaries; provided, however, that in such event,

1



at the request of the Trump Group, the amounts then payable on this Note shall be placed in escrow until the Maturity Date or until the Extended Maturity Date (if applicable) under the provisions of an escrow agreement on reasonable terms to be negotiated at such time in good faith between the Maker, the Payee and an escrow agent selected by mutual consent of the Maker and the Payee (such consent, not to be unreasonably withheld, conditioned or delayed), which shall provide for the release of funds from such escrow to the Maker in satisfaction of any and all Indemnification Amounts, AG Group Release Amounts and Discovery Costs owing to Maker, if any, and payment to the Payee of any amounts remaining in escrow after payment to Maker of all Indemnification Amounts, AG Group Release Amounts and Discovery Costs, if any, upon the Maturity Date hereunder or the Extended Maturity Date (if applicable).

4.      Optional Prepayments.  The Maker may voluntarily prepay this Note prior to the Maturity Date, in whole or in part, at any time, without premium or penalty.

5.      Adjustment.  In accordance with the terms of the Settlement Agreement, in the event that at any time Indemnification Amounts, Discovery Costs, AG Group Release Amounts, or other amounts due and payable by the AG Group to the Trump Group pursuant to the Settlement Agreement (the "Costs") have not been paid to the Trump Group in accordance with the terms of the Settlement Agreement, the Maker may, upon written notice to the Payee, set off and apply as a credit against the amount due under this Note any and all due, unpaid and outstanding Costs.  The rights and remedies described herein are in addition to any other rights and remedies the Parties may have under the Settlement Agreement or other applicable law.

6.      Subordination.  Pursuant to the terms of the Settlement Agreement, this Note is unsecured and shall be fully subordinated to any obligation of Trans-Resources, including, but not limited to, outstanding credit facilities, bonds, loans, tax obligations and payables.

7.      Enforcement.  The Maker hereby agrees to pay on demand all reasonable costs and expenses, including without limitation attorneys' fees and costs of collection, incurred or paid by the Payee in enforcing this Note in accordance with the Settlement Agreement.

8.      Amendments.  No failure or delay on the part of the Maker or the Payee in exercising any right, power, privilege or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power, privilege or remedy preclude any other or further exercise thereof or the exercise of any other right, power, privilege or remedy.  This Note may not be amended and the provisions hereof may not be waived, except in accordance with the terms of the Settlement Agreement.

9.      Lost Notes, etc.  If this Note is mutilated, destroyed, lost or stolen, upon receipt of evidence satisfactory to the Maker of such loss, theft, destruction or mutilation of this Note and, if requested in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to the Maker, or, in the case of any such mutilation, upon surrender and cancellation of this Note, the Maker shall issue a new Note of like tenor and amount, in lieu of this Note.

10.      ASSIGNMENT.  THIS NOTE, INCLUDING THE RESPECTIVE RIGHTS AND OBLIGATIONS OF THE MAKER AND THE PAYEE PURSUANT THIS NOTE, MAY

2



NOT BE ASSIGNED, TRANSFERRED, SOLD OR OTHERWISE DISPOSED OF BY EITHER THE MAKER OR THE PAYEE WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER WHICH CONSENT MAY BE WITHHELD IN SUCH PARTY'S SOLE DISCRETION.

      11.   Binding Effect.  The provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns permitted hereby.

      **IN WITNESS WHEREOF**, the Maker has caused this Subordinated Note to be duly executed under seal on the date set forth above by a duly authorized representative of the Maker.

TRANS-RESOURCES, LLC

By: _____

Name: MARK S. HIRSCH

Title: EXEC VP/GEN'L COUNSEL

## FIRST AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE

Reference is made to the Settlement Agreement and Release entered into as of June 16,

2013 (the "Agreement"), by and between (1) Arie Genger, (2) Orly Genger (in her individual

capacity and as beneficiary of the Orly Genger 1993 Trust), (3) Arnold Broser, (4) David Broser;

and (5) TR Investors, LLC, (6) Glenclova Investment Co., (7) New TR Equity I, LLC, (8) New

TR Equity II, LLC, (9) Trans-Resources, LLC, (10) Jules Trump, (11) Eddie Trump, and (12)

Mark Hirsch (collectively, the "Parties").

**WHEREAS**, Section 3 of the Agreement directs that certain payments under the

Agreement are to be made to certain of the Parties designated in that Agreement as the "AG

Group" by making said payments to "Wachtel" (as defined in the Agreement) as attorney for the

AG Group;

**WHEREAS**, the AG Group has decided that the payments to be made under Section 3 of

the Agreement are to be made to new counsel for the AG Group; and,

**WHEREAS**, the Parties agree to modify the Agreement pursuant to Section 17 of the

Agreement;

### IT IS HEREBY AGREED THAT:

1.      All references to "Wachtel" in the first sentence of Section 3 of the Settlement

Agreement, titled "Further Consideration from the Trump Group," are deleted, and in their place,

the following is inserted:

> Michael Paul Bowen, of the law firm Kasowitz Benson Torres LLP ("KBT"),
> as attorney, (via wire transfer to the KBT Firm's escrow account, or as directed
> by Bowen or KBT in writing).

2.     All other terms of the Agreement, including the remainder of Section 3, shall remain unchanged, and in full force and effect.

3.     The Trump Group shall execute and issue amended Subrogated Notes that reflect the change noted in paragraph 1, above.  Upon execution of this Agreement, the previously issued Subordinated Notes payable to the AG Group, which designate Wachtel, Masyr & Missry, LLP, as payee are null and void.

4.     This agreement may be executed in multiple counterparts and by fax or PDF, each of which, when so executed and delivered, shall be considered an original, but such counterparts shall together constitute one and the same instrument agreement.

[signature pages follow]

2

IN WITNESS WHEREOF, the Parties have caused this First Amendment to the

Settlement Agreement to be duly executed as follows:

TR Investors, LLC                          Arie Genger

*[signature]*

Name: *MARK S. HIRSCH*

Title: *EXEC VP/GENERAL COUNSEL*

Date: _7/24/2017_

Glenclova Investment Co.                    Orly Genger (in her individual capacity
                                            and in her capacity as beneficiary of the
                                            Orly Genger 1993 Trust)

By *[signature]*

Name: *MARK S. HIRSCH*

Title: *EXEC VP/GENERAL COUNSEL*

Date: _7/24/2017_

IN WITNESS WHEREOF, the Parties have caused this First Amendment to the

Settlement Agreement to be duly executed as follows.

TR Investors, LLC                          Arie Genger

9/13/17

Name: MARK S. HIRSCH

EXEC VP/GENERAL
COUNSEL

Date: 7/24/2017

Glenclova Investment Co.                   Orly Genger (in her individual capacity
                                           and in her capacity as beneficiary of the
                                           Orly Genger 1993 Trust)

By: 

Name: MARK S. HIRSCH

EXEC VP/GENERAL
COUNSEL

7/24/2017

New TR Equity I, LLC                          Arnold Broser

By: _Mark S. Hirsch_

Name: MARK S. HIRSCH

Title: EXEC VP/GENERAL          Date
         COUNSEL

Date: 7/24/2017

New TR Equity II, LLC                         David Broser

By: _Mark S. Hirsch_

Name: MARK S. HIRSCH

Title: EXEC VP/GENERAL          Date
         COUNSEL

Date: 7/24/2017

Trans-Resources, LLC

By _Mark S. Hirsch_

Name: MARK S. HIRSCH

Title: EXEC VP/GENERAL
         COUNSEL

Date: 7/24/2017

**New TR Equity I, LLC**

**Arnold Broser**

By: _____

Name: _____

Date: 9/15/17

Title: _____

Date: _____

**New TR Equity II, LLC**

**David Broser**

By: _____

Name: _____

Date: 9/16/17

Title: _____

Date: _____

**Trans-Resources, LLC**

By: _____

Name: _____

Title: _____

Date: _____

4

Jules Trump

Date: 7/24/2017

Eddie Trump

Date: 7/24/2017

Mark Hirsch

Date: 7/24/2017

TRANS-RESOURCES

**FIRST AMENDMENT TO SUBORDINATED NOTE**

Pursuant to Section 8 of the Subordinated Note, dated June 16, 2013, from Trans-Resources, LLC, a Delaware entity (the "Marker"), to Wachtel, Masyr & Missry, LLP, as attorneys, for Seven Million Five Hundred Thousand Dollars ($7,500,000.00) (the "Original Note") with the Maturity Date (as such term is defined in the Original Note) of no later than June 14, 2017, notwithstanding which, the Maturity Date shall automatically be extended until the Extended Maturity Date (as such term is defined in the Original Note), the Maker hereby modifies the Original Note solely by striking the first paragraph and substituting the following:

> **FOR VALUE RECEIVED**, Trans-Resources, LLC a Delaware entity (the successor to Trans-Resources, Inc. and referred to herein as the "Maker"), hereby promises to pay to the order of Michael Paul Bowen, Esq. of Kasowitz Benson Torres, LLP, as attorney, or as he directs in writing (the "Payee"), the principal sum of Seven Million, Five-Hundred Thousand Dollars ($7,500,000.00) pursuant to the terms and conditions of and at the times provided in the Settlement Agreement (as defined below).

This amendment is to be appended to the Original Note, which, in all respects, as so modified remains in full force and effect.

IN WITNESS WHEREOF, the Maker has caused this First Amendment to Subordinated Note to be duly executed under seal on the date set forth below by a duly authorized representative of the Maker:

November **20**, 2017

TRANS-RESOURCES, LLC

By: _____

Name: _MARK J. HIRSCH_

Title: _EXECUTIVE VP and GENERAL COUNSEL_

<u>TRANS-RESOURCES</u>

## **<u>FIRST AMENDMENT TO SUBORDINATED NOTE</u>**

Pursuant to Section 8 of the Subordinated Note, dated June 16, 2013, from Trans-Resources, LLC, a Delaware entity (the "Marker"), to Wachtel, Masyr & Missry, LLP, as attorneys, for Seven Million Five Hundred Thousand Dollars ($7,500,000.00) (the "Original Note") with the Maturity Date (as such term is defined in the Original Note) of no later than June 16, 2016, notwithstanding which, the Maturity Date shall automatically be extended until the Extended Maturity Date (as such term is defined in the Original Note), the Maker hereby modifies the Original Note solely by striking the first paragraph and substituting the following:

> **FOR VALUE RECEIVED**, Trans-Resources, LLC a Delaware entity (the successor to Trans-Resources, Inc. and referred to herein as the "<u>Maker</u>"), hereby promises to pay to the order of Michael Paul Bowen, Esq. of Kasowitz Benson Torres, LLP, as attorney, or as he directs in writing (the "<u>Payee</u>"), the principal sum of Seven Million, Five-Hundred Thousand Dollars ($7,500,000.00) pursuant to the terms and conditions of and at the times provided in the Settlement Agreement (as defined below).

This amendment is to be appended to the Original Note, which, in all respects, as so modified remains in full force and effect.

IN WITNESS WHEREOF, the Maker has caused this First Amendment to Subordinated Note to be duly executed under seal on the date set forth below by a duly authorized representative of the Maker:

November **20**, 2017

TRANS-RESOURCES, LLC

By: _____

Name: _MARK J. HIRSCH_

Title: _EXECUTIVE VP and GENERAL COUNSEL_