# EXHIBIT T

SUPREME COURT: NEW YORK COUNTY

| | |
|---|---|
| ORLY GENGER in her individual capacity and on behalf of the Orly Genger 1993 Trust (both in its individual capacity and on behalf of D & K Limited Partnership), | Index No.: |
| | **SUMMONS** |
| Plaintiff, | |
| - against - | Plaintiff designates New York County as the place of trial based on plaintiff's place of residence, located at 1965 Broadway, Apt. 22G, New York, New York |
| DALIA GENGER, SAGI GENGER, D & K GP LLC, and TPR INVESTMENT ASSOCIATES, INC., | |
| Defendants. | |

**FILED**

**JUL 0 9 2009**

**COUNTY CLERK'S OFFICE**
**NEW YORK**

09109749

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:   New York, New York
          July 8, 2009

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
    Stephen F. Ellman, Esq.
    Yoav M. Griver, Esq.
    Bryan D. Leinbach, Esq.
    Attorneys for Plaintiff
    575 Lexington Avenue
    New York, New York 10022
    (212) 223-0400

Supreme Court Records OnLine Library - page 1 of 48

TO:    DALIA GENGER
       200 East 65th Street, Apt. 32W
       New York, New York 10021

       SAGI GENGER
       1211 Park Avenue
       New York, New York 10128

       D & K GP LLC
       c/o Sagi Genger
       1211 Park Avenue
       New York, New York 10128

       TPR INVESTMENT ASSOCIATES, INC.
       c/o Sagi Genger
       1211 Park Avenue
       New York, New York 10128

553288.v1/10669-002/BDL

Supreme Court Records OnLine Library -  page 2 of 48

SUPREME COURT: NEW YORK COUNTY

| | |
|---|---|
| ORLY GENGER in her individual capacity and on behalf of the Orly Genger 1993 Trust (both in its individual capacity and on behalf of D & K Limited Partnership), | Index No.: |
| Plaintiff, | **VERIFIED COMPLAINT** |
| - against - | |
| DALIA GENGER, SAGI GENGER, D & K GP LLC, and TPR INVESTMENT ASSOCIATES, INC., | |
| Defendants. | |

**FILED**

**JUL 0 9 2009**

**COUNTY CLERK'S OFFICE NEW YORK**

09103749

Plaintiff Orly Genger in her individual capacity and on behalf of the Orly Genger 1993 Trust (both in its individual capacity and on behalf of D & K Limited Partnership), by her attorneys, Zeichner Ellman & Krause LLP, alleges, upon information and belief, for her Verified Complaint against Defendants in this action as follows:

## NATURE OF THE ACTION

1.      As described below, Dalia and Sagi Genger, together with various business entities controlled by them, engaged in a fraud and conspiracy designed to loot the Orly Genger 1993 Trust of its value. Defendants' various acts of self-dealing, material misrepresentations, and material omissions, in breach of their respective fiduciary duties and in violation of New York law, injured Orly Genger, the Orly Genger 1993 Trust, and D & K Limited Partnership.

2.      Specifically, Dalia and Sagi Genger used various closely held family corporations, limited partnerships, and other entities as instrumentalities to improperly foreclose

upon, and conduct a sham sale of, the Orly Genger 1993 Trust's ownership interest in valuable and unique stock of defendant TPR Investment Associates, Inc. ("TPR"). The TPR stock is unique because TPR is a closely held Genger family corporation, and because the value of the TPR stock at issue is largely dependent upon the outcome of a litigation currently pending in Delaware Chancery Court (discussed below, *infra* ¶¶ 60-62). Based upon the ultimate outcome of that litigation, TPR may increase many fold in value.

## THE PARTIES

3.      Plaintiff Orly Genger ("Plaintiff" or "Orly") resides at 1965 Broadway, Apt. 22G, New York, New York 10024. She is the beneficiary of the Orly Genger 1993 Trust dated December 13, 1993 (the "Orly Trust"). The Orly Trust is a limited partner of D & K Limited Partnership ("D&K"), a Delaware limited partnership with a principal office at 1211 Park Avenue, New York, New York 10128. The Orly Trust and the Sagi Genger 1993 Trust (the "Sagi Trust"), each hold a 48% interest in D&K.

4.      Defendant Dalia Genger ("Dalia"), Orly's mother, resides at 200 East 65th Street, Apt. 32W, New York, New York 10021. Dalia is the current sole Trustee of the Orly Trust, being appointed successor Trustee in January 2008. She also holds a 99% interest in defendant D & K GP LLC.

5.      Defendant Sagi Genger ("Sagi"), Orly's brother, maintains an office at 1211 Park Avenue, New York, New York 10128. Sagi is the Chief Executive Officer of TPR and a member of TPR's Board of Directors. Sagi also is the manager of D & K GP LLC ("D&K GP"), holding a 1% interest in D&K GP. Sagi also is a board member of Trans-Resources, Inc. Sagi also is the beneficiary of the Sagi Trust, which holds a 48% interest in D&K.

2

Supreme Court Records OnLine Library - page 4 of 48

6.      Defendant D&K GP is a Delaware limited liability company with a principal office located at 1211 Park Avenue, New York, New York 10128. D&K GP is the general partner of D&K, holding a 4% interest in D&K. As manager of D&K GP, Sagi controls and acts on behalf of D&K.

7.      Defendant TPR is a Delaware corporation with a principal office located at 1211 Park Avenue, New York, New York 10128. As Chief Executive Officer of TPR, Sagi controls and acts on behalf of TPR. Upon information and belief, Sagi and Dalia serve as directors on TPR's two-member board of directors.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over Defendants pursuant to Sections 301 and 302 of the New York Civil Practice Law and Rules ("CPLR").

9.      Venue is proper in this county pursuant to CPLR 503.

## FACTS COMMON TO ALL COUNTS

### A.   The Genger Family, TPR, and TRI

10.     Orly is an accomplished artist and sculptor, who has had little schooling or experience in business or finance. Her brother, defendant Sagi, has an MBA from the Wharton School of Business and years of practical experience as a businessman. In the past, Sagi often provided business advice to Orly, and Orly reposed in Sagi her trust, confidence and reliance as to those matters. In the past, Orly also reposed such trust, confidence and reliance in her mother, Dalia.

3

Supreme Court Records OnLine Library - page 5 of 48

11.    Orly's and Sagi's father, Arie Genger ("Arie"), and mother, defendant Dalia, were married in Israel on July 23, 1967, and remained so until they divorced in New York in October 2004.

12.    Arie, an accomplished entrepreneur, founded Trans-Resources, Inc. ("TRI"), a closely held private corporation, in 1985. TRI is the parent company of several subsidiaries that provide growers with specialty fertilizer and industrial chemicals, including Haifa Chemicals Ltd., Na-Churs Alpine Solutions and Plant Products Co. Ltd. Arie served as TRI's CEO from 1985 until 2007, and was chairman of TRI's Board of Directors until late September 2008. Under Arie's direction, TRI became one of the two largest producers of potassium nitrate in the world, controlling approximately 40% of the global market, and, in recent years, generated record sales and profits. In 2008, TRI had sales of over $1 billion, with over $230 million in earnings before interest, tax, depreciation, and amortization, and over $150 million in net income.

13.    Prior to 1993, Arie also was the sole shareholder of defendant TPR, a closely held corporation also founded by Arie as a holding company for the family's interests, which, among other things, held a controlling interest in TRI. As of March 30, 2001, TPR held a 52.85% interest in TRI, with the remaining minority interest in TRI (47.15%) owned by various entities controlled directly and indirectly by Jules and Eddie Trump (the "Trump Group").

## B.    The Orly Trust and the Sagi Trust

14.    In December 1993, Arie and Dalia established two identical irrevocable *inter vivos* trusts for the benefit of each of their children:  the Orly Trust and the Sagi Trust (together, the "Trusts"). The Trusts were created, in part, as estate planning tools of Arie and Dalia and as a means of ensuring that each child received property of equal value. To this end, Dalia and

4

Arie funded each trust with a $600,000 gift. Sash A. Spencer and Lawrence M. Small were named Co-Trustees of the Trusts and remained Co-Trustees until Arie and Dalia were divorced in 2004.

15.     After the Trusts were funded, each was assigned a 48% interest in D&K, a family-owned limited partnership formed sometime prior to 1993. D&K is shorthand for "Dalia and Kids." As a result of the assignment, the Orly Trust and the Sagi Trust became D&K's sole limited partners. Arie's wife, Dalia, held the remaining 4% interest of D&K and served as the partnership's general manager.

16.     Around the same time that the Trusts were funded, D&K purchased 240 shares of common stock (constituting 49% of the outstanding shares) in TPR for $10,200,000. The purchase price of the TPR shares was satisfied as follows: (a) the Orly Trust and the Sagi Trust each paid $600,000; (b) Dalia paid $50,000; and (c) Dalia, as general partner of D&K, executed a recourse $8,950,000 Promissory Note dated December 21, 1993 (the "Note") in satisfaction of the balance. A copy of the Note is attached hereto as **Exhibit 1**.

17.     The Note provided that D&K was required to repay principal, together with accrued interest, in annual installments over a ten-year period. In addition, each of the Trusts and Dalia assumed liability for repayment of the Note in proportion to its/her ownership interest in D&K.

18.     The Note was secured by a Pledge Agreement dated December 21, 1993 (the "Pledge Agreement"), pursuant to which D&K pledged its 240 TPR shares as collateral for repayment of the Note. A copy of the Pledge Agreement also is attached hereto as **Exhibit 1.**

19.     As a result of D&K's purchase of TPR stock, the Orly Trust and the Sagi

5

Supreme Court Records OnLine Library - page 7 of 48

Trust each acquired an equal 23.52% indirect interest in TPR, and Dalia acquired a 1.96% indirect interest in TPR. Arie retained his ownership in the remaining 51% of TPR, which held investments in various securities, including TRI common stock, as well as its interest in the Note.

20.     In keeping with the desire to ensure equal wealth transfer to Sagi and Orly and with the estate-planning purposes underlying the creation of the Trusts and D&K's purchase of the TPR shares, every member of the Genger family understood and agreed before the time of their execution that the Note and Pledge Agreement would never be enforced by any of them. Indeed, as described below, Sagi was charged with ensuring that the Note and Pledge Agreement would never be enforced, and, prior to the fraud at issue, he took specific steps to fulfill that charge.

## C.     Arie and Dalia's Divorce and Property Settlement

21.     Dalia and Arie were divorced in October 2004.

22.     On October 26, 2004, Dalia and Arie entered into a Stipulation and Agreement of Settlement as a final settlement of their divorce (the "Settlement Agreement") (attached hereto as **Exhibit 2**). The Settlement Agreement was structured around the understanding and condition that Dalia would obtain control over TPR and, in exchange, Arie and the children would directly hold their interests in TRI while Arie retained control over TRI during his lifetime. To that end, pursuant to the Settlement Agreement, Dalia received, *inter alia*, Arie's 51% interest in TPR and retained her 4% interest in D&K. TPR's 52.85% interest in TRI was transferred to Arie and the Trusts as follows: (i) 13.99% of TRI stock to Arie, (ii) 19.43% of TRI stock to the Orly Trust, and (iii) 19.43% of TRI stock to the Sagi Trust. At the same time, in consideration of the transfer, the Orly Trust and the Sagi Trust each granted Arie an irrevocable lifetime voting proxy over their TRI shares (attached hereto as **Exhibit 3**) so that Arie would continue to control TRI as

6

he always had. Thus, after October 29, 2004, Arie and the two Trusts held a majority interest in TRI, Arie controlled TRI, and TPR no longer owned any TRI common stock.

23.    Below is a side-by-side summary of Arie's, Dalia's, the Orly Trust's, and the Sagi Trust's interests in TPR before and after Arie's and Dalia's divorce.

### TPR OWNERSHIP
### BEFORE AND AFTER DIVORCE

| Person | PERCENTAGE | |
| --- | --- | --- |
| | TPR Before | TPR After |
| Arie Genger | 51.00% | 0% |
| Dalia Genger | 1.96% | 52.96% |
| Orly Trust (through D&K) | 23.52% | 23.52% |
| Sagi Trust (through D&K) | 23.52% | 23.52% |
| **TOTAL** | **100%** | **100%** |

After the divorce, in keeping with the understanding of the parties that the children, Orly and Sagi, would be treated equally, both the Orly Trust and the Sagi Trust continued to have equal ownership interests in the TRI shares (which were owned by the Trusts directly) and in the TPR shares (through the Trusts' interest in D&K).

24.    The chart annexed hereto as **Exhibit 4,** and incorporated into the body of this Verified Complaint by reference, provides a summary of Arie's, Dalia's, the Orly Trust's, and the Sagi Trust's respective ownership interests in TPR, TRI, and D&K as of October 26, 2004 – *i.e.*, the date that Arie and Dalia executed the Settlement Agreement.

## D.    Dalia Gives Sagi Complete Control of D&K

25.    Unfortunately, the Genger divorce was extremely bitter, and has split the

7

Supreme Court Records OnLine Library - page 9 of 48

Genger family.  Dalia, in her anger and hatred of Arie, and in collusion with Sagi, decided to destroy Arie financially.  To achieve this goal, Dalia and Sagi are also willing, and have taken action, to financially destroy Orly.

26.    On October 21, 2004, days before signing the Settlement Agreement, Dalia and Sagi formed D&K GP with the sole business purpose of acting as D&K's general partner. Pursuant to D&K GP's Limited Liability Agreement (attached hereto as **Exhibit 5**), Dalia exchanged her 4% interest in D&K and $1.00 for a 99% membership interest in D&K GP.  Sagi purchased a 1% membership interest in D&K GP for $1.00.  Under D&K GP's Limited Liability Agreement, Sagi was given the power to appoint himself as D&K GP's manager, and he did so.  As D&K GP's manager, Sagi obtained complete control over D&K.

27.    Thus, Dalia effectively ceded complete control over D&K and its assets to Sagi.  By forming D&K GP, Dalia and Sagi also attempted to shield themselves from any personal liability stemming from their interests in D&K, while leaving the Orly Trust and the Sagi Trust potentially liable to TPR on the Note.

28.    As manager of D&K GP (which, in turn, was general partner of D&K), Sagi owes an undiluted fiduciary duty to the partnership's limited partners, including the Orly Trust, to monitor, manage, maintain, and protect D&K's assets, including its ownership interest in TPR, from challenge or diminution in value.

29.    In the same way, D&K GP, as general partner of D&K, also owes an undiluted fiduciary duty to the partnership's limited partners, including the Orly Trust, to monitor, manage, maintain, and protect D&K's assets, including its ownership interest in TPR, from challenge or diminution in value.

8

Supreme Court Records OnLine Library - page 10 of 48

30.    In addition, Sagi owes fiduciary duties to Orly arising from the close familial relationship between him and his sister. Orly reposed complete trust, confidence and reliance upon her brother Sagi to protect both her interests and her Trust's interests, including her Trust's ownership interests in TPR and TRI, and to alert her to anything that may adversely affect her or her Trust's assets.

### E.    Dalia Gives Sagi Complete Control of TPR

31.    On October 30, 2004, Dalia, as 52.96% owner of TPR, entered into a shareholder agreement with TPR, concerning the future management of the company. Pursuant to this shareholder agreement (attached hereto as **Exhibit 6**), Dalia gave D&K, which owned 49% of TPR, the authority to appoint one board member to TPR's two-member board of directors. Sagi used his managerial control over D&K to appoint himself as D&K's representative on TPR's board. In addition, the shareholder agreement appointed Sagi as CEO of TPR. As TPR's majority shareholder, Dalia named herself as TPR's remaining board member.

32.    Sometime in 2007, Sagi stripped Dalia of her majority interest in TPR by selling a 2% interest in TPR to Rochelle Fang, his mother-in-law. At the time of the sale, TPR's assets were worth between approximately $11,000,000 and $12,000,000, plus the value of the Note.

33.    Around the time of her appointment as successor trustee to the Orly Trust in January 2008, Dalia divested herself of the balance of her TPR shares.

34.    Through the above-mentioned transactions, Sagi obtained direct control over TPR and its interest in the Note. Notably, Sagi's role as CEO of TPR (the creditor on the Note) is in direct conflict with his role as manager of D&K (the debtor on the Note), whose role was to

9

Supreme Court Records OnLine Library - page 11 of 48

repay the Note or to contest the Note's enforceability.

35.     Moreover, Sagi's dual control over both TPR and D&K directly conflicts with Sagi's and D&K GP's undiluted fiduciary duties to D&K's limited partners, including the Orly Trust, to manage, maintain and protect D&K's assets from challenge or diminution in value. Sagi would later use his dual positions at TPR and D&K to engage in self-dealing in connection with the Note and to damage the Orly Trust and Orly, in violation of his fiduciary duties.

36.     Notably, other New York courts have recognized Sagi's willingness to engage in self-dealing, ignore clear conflicts of interest, and collude with his mother, Dalia, to the detriment of the other Genger family members. See Orders and Transcripts attached hereto as **Exhibit 7**.

F.     **Dalia Gains Control over the Orly Trust**

37.     In connection with the Settlement Agreement, Dalia required that the Trustees of the Orly Trust and the Sagi Trust (Sash A. Spencer and Lawrence M. Small) resign and be replaced with friends of Sagi.

38.     Numerous successor trustees were appointed to the Orly Trust and the Sagi Trust, all of whom were affiliated with Sagi in one way or another. David Parnes and Eric Gribetz (Sagi's longtime friends) and Leah Fang (Sagi's sister-in-law) were appointed as successor trustees to the Orly Trust. Likewise, Mr. Parnes, Mr. Gribetz, and Rochelle Fang (Sagi's mother-in-law) were each appointed successor trustees of the Sagi Trust.

39.     In January 2008, Dalia was appointed successor Trustee of the Orly Trust. Orly objected to Dalia's appointment and sought her removal before the New York County

10

Surrogate's Court out of fear that Dalia would not protect Orly's interests while serving as Trustee. Indeed, by that time, it had become apparent that Dalia and Sagi were colluding together in an effort to damage Arie and Orly.

40.    In response to Orly's objection to her mother's appointment as Trustee, the Surrogate's Court held that Orly's motion was premature, in that Dalia should be given an opportunity to act as Trustee. As a result, Dalia remained Trustee of the Orly Trust. Of course, as detailed herein, Orly's concerns regarding Dalia were entirely justified, and Orly has now renewed her request to the Surrogate's Court that Dalia be removed as Trustee of the Orly Trust.

41.    As a result of her appointment as Trustee of the Orly Trust, Dalia obtained complete control over the assets of the Orly Trust, including its ownership interests in TPR (through D&K) and TRI.

42.    As Trustee of the Orly Trust, Dalia owes an undiluted fiduciary duty to the Trust's beneficiary, Orly, to monitor, manage, maintain, and protect the Orly Trust's assets, including the Orly Trust's ownership interests in TPR and TRI, from challenge or diminution in value. Indeed, in becoming Trustee, and then fighting to maintain that status, Dalia represented to Orly and to the Surrogate's Court that she was capable and committed to fulfilling her fiduciary duties to the Orly Trust and to Orly.

43.    In addition, Dalia owes fiduciary duties to Orly arising from the familial relationship between herself and her daughter. Orly reasonably relied upon her mother to protect her interests, including her Trust's ownership interests in TPR and TRI and to alert her of any developments that may adversely affect her or her Trust's assets, particularly where Dalia assured Orly and the Surrogate's Court that she would fulfill her duties loyally.

11

Supreme Court Records OnLine Library - page 13 of 48

## G.    The Non-Enforceability of the Note

44.    Payments were made on the Note until 1999, at which time D&K stopped making payments.  In keeping with the parties' understanding at the time the Note was made, no attempt was made to enforce the Note during the near decade from when payments ceased to when Sagi sought to enforce the Note on TPR's behalf.

45.    During the divorce proceedings, Sagi and Dalia again confirmed to Orly and to others that the estate planning would not be changed or reversed, and that TPR would never seek to enforce the Note.  Indeed, Sagi has testified under oath that the changes to the ownership of TPR and TRI that occurred in connection with the divorce proceedings were designed, at least in part, for estate-planning purposes and to ensure that the Note would not be enforced by TPR.  Indeed, Sagi and Dalia claimed that to allow collection of the Note would reverse the estate planning that caused Arie and Dalia to create the Orly and Sagi Trusts and execute the Note in the first place.

46.    David Parnes is the former trustee of the Orly Trust, the present trustee of the Sagi Trust, an officer of TPR, and a director of TRI (allegedly representing TPR).  Mr. Parnes has testified under oath that Orly, Dalia, and Arie tasked Sagi with ensuring that the Note would not be enforced.  In fulfillment of that task, on August 2, 2006, Sagi, as part of his managerial role in D&K GP, assigned the Note to David Parnes for $12,000, it being agreed that, as trustee of both Trusts and as an officer of TPR, Parnes would be the person best suited to prevent collection of the Note.  The very purpose of Sagi's transfer of the Note to Parnes, and Parnes' acceptance of the Note, was to ensure that the Note remained uncollectible, as previously agreed by all parties.

47.    To this end, in the August 2, 2006 Memorandum assigning the Note to Parnes (attached hereto as **Exhibit 8**), Sagi expressly memorialized that D&K "denied

12

Supreme Court Records OnLine Library -  page 14 of 48

enforceability of the Note." Dalia was copied on the Memorandum.

48.     Likewise, in a February 17, 2007 affidavit,[1] Dalia affirmed that the Genger family had agreed "that I [Dalia] not be in a position to foreclose on the [] Note, and to take for myself an interest that Arie and I intended for the children." (Dalia Genger Feb. 17, 2007 Aff. ¶ 3 (attached hereto as **Exhibit 9**)).  Dalia further affirmed that Sagi assigned the Note to Mr. Parnes as part of an effort to implement the understanding and agreement among the members of the Genger family that the Note was never to be enforced. (*Id.* at ¶ 4.)

49.     Orly was well aware of, and relied upon, the agreement that the Note would never be enforced.  She also was aware of, and relied upon, Defendants' various statements and averments, including those set forth above, disclaiming enforceability of the Note.

**H.     Dalia and Sagi Collude to Divest D&K of the TPR Shares**

50.     Despite the clear and consistent agreement that the Note would not be enforced, after they had obtained direct control over D&K, TPR and the Orly Trust, Dalia and Sagi engaged in a scheme – using TPR, D&K, and D&K GP as their instrumentalities – to completely divest the Orly Trust of its ownership interest in TPR, to Orly's direct detriment.

51.     Pursuant to Defendants' scheme, Sagi caused TPR to reclaim the Note from Parnes.  On August 31, 2008, Sagi, acting as CEO of TPR, sent a Notice (the "8/31/08 Notice") to himself as the general manager of D&K purporting to declare a default under the Note:

> Please be advised that you are in default in the payment amounts due under [the Note] due to the failure to pay any principal or interest

---

[1]  This affidavit was submitted to the court in connection with proceedings related to Arie's and Dalia's divorce.

13

Supreme Court Records OnLine Library - page 15 of 48

due since 2005 and failing to make regular payments since 2000. Such default has continued for more than ten (10) business days. Please be advised that pursuant to the Note we hereby declare that the entire unpaid principal amount of the Note immediately due and payable.

The shares of [TPR] pledged to TPR as collateral will be liquidated at a public auction if the full Note is not satisfied.

(A copy of the 8/31/08 Notice, is annexed hereto as **Exhibit 10**.)

52.    Thereafter, Sagi, again acting as CEO of TPR, purported to notify D&K (of which he remained the managing partner) that D&K's 240 shares of TPR stock would be publicly auctioned to the highest bidder on February 27, 2009, and that the money received from the sale would be used to reduce the outstanding debt (the "Sale Notice," attached hereto as **Exhibit 11**). Notably, the 8/31/08 Notice and the Sale Notice are both addressed only from Sagi, on behalf of TPR, to Sagi, on behalf of D&K.  Besides specifically providing notice to himself by way of the Sale Notice, Sagi arranged for notice of the sale to be published in the *New York Post* in October 2008 and February 2009 (*see* **Exhibit 12**).

53.    Sagi did not provide notice to the other parties holding interests in D&K – in particular, Sagi did not provide notice to Orly so that she could make an effort to protect her Trust's interests.  Sagi's failure to inform Orly of the purported default and proposed sale was deliberate and intended to prevent Orly from intervening in Sagi's and Dalia's plot to strip the Orly Trust of its interest in TPR (and any interest that Orly may have in the $27 million that may have been paid to TPR in August 2008, *see infra* ¶¶ 60-62).

54.    Although D&K previously had denied enforceability of the Note, Sagi, as the manager of D&K GP (and thereby a managing agent of D&K), never objected to the 8/31/08

14

Supreme Court Records OnLine Library  -  page 16 of 48

Notice or took any action to prevent the declaration of default or the subsequent sale. Nor did Sagi, as the manager of D&K GP and D&K, ever attempt to make payments under the Note or cure the default. Through his actions and inactions, Sagi breached his fiduciary duties as manager of D&K GP and D&K, and his duty of care and loyalty owed directly to Orly as a result of their familial relationship.

55.     Likewise, though aware of the 8/31/08 Notice and the subsequent "auction," Dalia neither objected to the Notice nor took any action to prevent the declaration of default or the subsequent sale. Nor did Dalia ever attempt to ensure that D&K made payments under the Note or otherwise seek to cure the default. Through her actions and inactions, Dalia breached her fiduciary duties as trustee of the Orly Trust and her duty of care and loyalty as Orly's mother.

56.     Orly never received the 8/31/08 Notice or the Sale Notice. Further, Defendants never informed Orly of the material fact that TPR, despite multiple promises, agreements, and prior acts to the contrary, was seeking to enforce the Note. Of course, Defendants all knew that the Orly Trust and its beneficiary, Orly herself, had financial interests in the Note. Additionally, at all relevant times, Defendants knew Orly's address and other contact information, but never notified her of the impending foreclosure and auction, leaving Orly without any opportunity to protect herself and her Trust's interests.

57.     In consummation of the above-mentioned scheme, on February 27, 2009, TPR (still controlled by Sagi) foreclosed on the Note and purported to conduct an "auction" of the 240 TPR shares previously pledged in connection with the Note (the "Pledged Shares") at the office of Sagi's attorneys, McLaughlin & Stern LLP. Not coincidentally, the Sagi-controlled TPR purchased the Pledged Shares at this "auction" for $2,200,000. (*See* **Exhibit 13**). The proceeds of

15

Supreme Court Records OnLine Library - page 17 of 48

the sale allegedly were used to decrease D&K's obligations under the Note, leaving a balance of approximately $8,800,000 that, purportedly, continues to be guaranteed by the Orly Trust and the Sagi Trust.

58.    As a result of Sagi's self-dealing and Dalia's failure to act in the best interests of the Orly Trust, D&K's only asset – its ownership interest in TPR – was transferred to TPR, which is controlled by Sagi.  The foregoing scheme injured Orly and the Orly Trust, and benefited Sagi and Dalia, in a number of ways.  The Orly Trust's interest in D&K is now worthless, as it purportedly no longer owns any interest in TPR, while Sagi now has direct control over all of the TPR shares.  The scheme also destroyed Arie's and Dalia's tax and estate-planning intent that both children have equal shares in the family's wealth.

59.    Upon information and belief, if not restrained from further meddling, Dalia and Sagi will inflict additional harm upon Orly by divesting the Orly Trust of its one remaining asset – its ownership interest in the TRI shares.

## I.    Orly's Discovery of Sagi's and Dalia's Scheme

60.    On or about August 22, 2008, and unbeknownst to Orly, Rochelle Fang, as Trustee of the Sagi Trust, and Sagi, as President/CEO of TPR, attempted to sell the Sagi Trust's 19.43% interest in TRI to the Trump Group, who already owned 47.15% of TRI's outstanding shares, for $26,715,416.  This sale purportedly transferred control of TRI from Arie to the Trump Group who thereafter purported to hold 66.58% of TRI's outstanding common stock.  A copy of the Stock Purchase Agreement is attached hereto as **Exhibit 14**.

61.    The validity of this approximately $27 million sale of TRI stock currently is

16

Supreme Court Records OnLine Library -  page 18 of 48

being disputed in litigation in Delaware Chancery Court. The parties to the action are Arie, TRI, and various entities affiliated with the Trump Group. The Orly Trust has not appeared in that action.[2]

62.     In that action, the Trump Group claims to have bought the shares either from the Sagi Trust or from TPR – thus, the approximately $27 million purportedly paid by the Trump Group either belongs to the Sagi Trust or to TPR, depending on the outcome of the litigation in Delaware. Notably, both Sagi and David Parnes maintain seats on TRI's Board of Directors on behalf of TPR. By, among other things, maintaining those seats on TPR's behalf, Sagi has taken the position that TPR owned the TRI stock, and is entitled to the $27 million. Upon information and belief, TPR is in possession of the $27 million, where it is at risk of dissipation by Sagi. Indeed, that dissipation already has begun: The Stock Purchase Agreement provided that $500,000 would be given to charity (in Sagi's name and at his choosing), and, upon information and belief, large sums from the $27 million have been given by Sagi to his niece, Yonit Sternberg.[3]

63.     After learning of the Sagi Trust's purported sale of its TRI shares and out of fear that Dalia would not protect the TRI shares held in her Trust, Orly instructed Dalia to protect the Orly Trust's interest in its TRI shares. Specifically, by letter dated January 10, 2009, Orly requested that "for now, and until further notice, it is my strong desire to retain all of the shares of TRI that are currently in the Orly Trust, and I direct you not to sell them." Letter from Orly Genger to Dalia Genger (Jan. 10, 2009) (a copy of which is attached hereto as **Exhibit 15**). Dalia refused to

---

[2]   Orly continues to reserve her right to bring an action related to this attempted sale of TRI shares and the resulting loss of her Trust's control premium, but she has not yet done so.

[3]   Orly continues to reserve her right to bring an shareholder derivative action on behalf of D&K related to Sagi's (and Dalia's) improper management and dissipation of TPR's assets, but she has not yet done so.

17

Supreme Court Records OnLine Library  -  page 19 of 48

agree to retain the TRI shares in the Orly Trust.

64.    As detailed previously, the Surrogate's Court previously had declined to grant Orly's application to remove Dalia as Trustee of the Orly Trust.  Instead, the Surrogate's Court suggested that Orly commence an SCPA § 2201 proceeding to obtain evidence necessary to support a future application to have Dalia removed.  Pursuant to the Surrogate Court's suggestion, Orly's counsel sent Dalia a letter dated May 14, 2009 (attached hereto as **Exhibit 16**) requesting documents related to the Orly Trust's assets.  A copy of this May 14th letter was forwarded to Dalia's counsel, Robert A. Meister, Esq., once Orly's counsel learned of Mr. Meister's retention.

65.    On June 1, 2009, Mr. Meister responded to Orly's document demand by informing Orly's counsel that the Orly Trust no longer owned any interest in TPR.  Letter from Robert A. Meister, Esq., to Judith E. Siegel-Baum, Esq. (June 1, 2009) (a copy of which is attached hereto as **Exhibit 17**).  It was at this time that Orly first learned that TPR purportedly had foreclosed on the Note and sold the Pledged Shares back to TPR for $2,220,000.

66.    By letter dated June 11, 2009, Orly's counsel specifically requested that Dalia stipulate in writing that she would refrain from selling, transferring, or removing the Orly Trust's remaining asset – its TRI shares – until all issues between Orly and Dalia were resolved. Letter from Judith E. Siegel-Baum, Esq., to Robert A. Meister, Esq. (June 11, 2009) (a copy of which is attached hereto as **Exhibit 18**).  Dalia failed even to respond to this request, let alone agree to refrain from divesting the Orly Trust of its TRI shares until the issues between the Trustee and the Trust's beneficiary were resolved.

18

**J.**   **The June 22, 2009 Surrogate Court Application**

67.   Based, in part, upon Dalia's failure to respond to Orly's request, Orly made a second application to the New York County Surrogate's Court on June 22, 2009, by order to show cause seeking, among other things: a) to immediately enjoin and restrain Dalia or her agents from withdrawing, transferring, assigning, removing, pledging, redeeming, mortgaging, encumbering, liening, hypothecating or secreting the Orly Trust's TRI shares; b) removing Dalia as Trustee of the Orly Trust; c) seeking to surcharge Dalia for damages; and d) appointing Michael D. Grohman, Esq., as successor Trustee (the "Removal Application"), on the grounds that Dalia has intentionally and blatantly breached her fiduciary duties as Trustee of the Orly Trust, as set forth in this Verified Complaint.

68.   Given the urgency of Orly's request and the possibility for immediate and irreparable harm, the Surrogate's Court scheduled a July 1, 2009 hearing on Orly's Removal Application.  At the July 1 hearing (which Dalia declined to attend), the Surrogate's Court ordered that Dalia would be required to give Orly at least ten days' notice before in any way disposing of the Orly Trust's TRI shares, to allow Orly sufficient time to seek relief from the Surrogate's Court. The Court's decision is attached hereto as **Exhibit 19**.

69.   On July 2, 2009, Orly, on behalf of herself, her Trust, and D&K, made written demand upon TPR to return the Pledged Shares to D&K by July 7, 2009.  A copy of that written demand is attached hereto as **Exhibit 20**.  To date, TPR has declined to do comply with this demand.

19

Supreme Court Records OnLine Library -  page 21 of 48

## FIRST CAUSE OF ACTION
**(Claim for Breach of Fiduciary Duty On Behalf of Orly Against Dalia)**

70.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 69.

71.     As Trustee of the Orly Trust, Dalia owes an undiluted fiduciary duty to the Trust's beneficiary, Orly, to monitor, manage, maintain, and protect the Orly Trust's assets, including the Orly Trust's ownership interests in TPR and TRI, from challenge or diminution in value.

72.     In addition, Dalia also owes duties of care and loyalty to Orly arising from the close familial relationship between herself and her daughter.  Orly relied upon her mother to protect her interests, including her Trust's ownership interests in TPR and TRI, and alert her to anything that may adversely affect her or her Trust's assets.

73.     Dalia breached her fiduciary duties to Orly by: (a) failing to inform Orly of TPR's foreclosure on the Note and the sale of the Pledged Shares, which completely divested the Orly Trust of its 23.52% indirect interest in TPR; (b) failing to take any action to protect or defend the Orly Trust's interest in TPR, in the face of Sagi's purported enforcement of the Note; and (c) failing to defend the Orly Trust's ownership interest in the Pledged Shares despite Orly's repeated requests that Dalia protect her interests.

74.     As stated above, Dalia understood and agreed before signing the Note and the Pledge Agreement that the Note would never be enforced by her or by any of the interested parties and, therefore, that TPR would never seek to foreclose on the Note or repossess the Pledged Shares.

20

Supreme Court Records OnLine Library -  page 22 of 48

75.     Thereafter, Dalia made sworn statements affirming that all interested parties to the Note (Arie, Sagi, Orly, TPR and D&K) had agreed that TPR would never seek to enforce the Note, and Sagi (acting through TPR) assigned the Note to his longtime friend David Parnes (then acting as Trustee of the Orly and Sagi Trusts and as an officer of TPR) in order to prevent anyone from enforcing the Note.

76.     Dalia's sworn statements and assertions of material fact were intended to be accepted as true and relied upon by interested parties to the Note, including Orly.  Orly was aware of Dalia's repeated statements and assertions that the Note would never be enforced, and she relied upon those statements and assertions.  Furthermore, Orly reasonably believed, based upon Dalia's statements and assertions, that Dalia would not allow anyone to enforce the Note against D&K. Additionally, Orly relied on Dalia, as Trustee of the Orly Trust and as her mother, to protect both her individual interests and the interests of the Orly Trust, of which she is the beneficiary.

77.     However, at the time that Dalia made these sworn statements and factual assertions, she never intended to abide by or honor the parties' agreement that the Note would not be enforced, and she never intended to protect the Orly Trust's interest in D&K's Pledged Shares.

78.     Upon information and belief, Dalia knew but deliberately and intentionally failed to notify Orly that Sagi: (a) was not making payments on the Note as manager of D&K GP; (b) intended to and eventually purported to declare a default under the Note on behalf of TPR; (c) sent the Sale Notice supposedly notifying D&K that its shares of TPR stock were to be auctioned as a result of the purported default under the Note; and (d) conducted a sham "auction" where Sagi (on behalf of TPR) "bought" the Pledged Shares at a significant discount to their actual value.

21

79.     Dalia's intentional failure to notify Orly about the foreclosure on the Note
and sale of D&K's Pledged Shares were material omissions of fact that were intended to be, and in
fact were, relied upon by Orly. As Trustee, at a minimum Dalia had a fiduciary duty to speak, and
she could not properly remain silent regarding these material facts. She also had a duty to act with
the utmost of loyalty on behalf of the Trust, which required her to take action to protect the Orly
Trust's interests, particularly, its financial interests.

80.     As a direct and proximate result of Dalia's material misrepresentations,
failure to inform Orly of the foreclosure and sale, and failure to take action as Trustee to protect the
Orly Trust's interests, Orly has suffered damages, including the total loss of the Orly Trust's interest
in TPR, the Orly Trust's potential liability for the outstanding indebtedness under the Note (which,
by failing to contest the foreclosure and sale, Dalia failed to challenge as unenforceable), as well as
attorneys' fees incurred by Orly in connection with her attempts to ensure that her rights and
interests are protected, including her rights and interests stemming from her position as beneficiary
of the Orly Trust.

81.     Upon information and belief, Dalia's material misstatements, material
omissions, acts and failures to act, were malicious, wanton and intentionally or recklessly designed
to cause harm to Orly and, as such, Orly is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Claim for Breach of Fiduciary Duty On Behalf of the Orly Trust and
### D&K Against Sagi and D&K GP)

82.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 81.

22

83.     Orly, as beneficiary of the Orly Trust, has the right to assert causes of action on behalf of the Orly Trust. Further, given Dalia's involvement in the fraud and Orly's renewed attempt to remove Dalia as Trustee, it would be futile for Orly to demand that Dalia commence legal action on behalf of the Orly Trust.

84.     The Orly Trust, as limited partner of D&K, has the right to assert causes of action on behalf of D&K against both D&K GP and Sagi. Moreover, it would be futile for the Orly Trust to demand that Sagi and D&K GP, as general partner of D&K, commence a legal action against themselves.

85.     Alternatively, the Orly Trust has the right to assert claims against Sagi directly because D&K GP is a mere instrumentality or alter ego of Sagi that should be ignored in its entirety, in the interests of justice. D&K GP was formed for the sole purpose of attempting to shield Sagi (and Dalia) from personal liability arising from their planned fraudulent acts. Thus, D&K GP was created for a fraudulent purpose, and, as a result, should be treated as a mere alter ego or instrumentality of Sagi.

86.     As manager of D&K GP (which, in turn, is general partner of D&K), Sagi owes an undiluted fiduciary duty to the partnership's limited partners, including the Orly Trust, to manage, maintain and protect D&K's assets, including its ownership interest in TPR, from challenge or diminution in value.

87.     In the same way, D&K GP, as general partner of D&K, owes an undiluted fiduciary duty to D&K to monitor, manage, maintain, and protect D&K's assets, including its ownership interest in TPR, from challenge or diminution in value.

23

Supreme Court Records OnLine Library - page 25 of 48

88.    Sagi breached these fiduciary duties by engaging in blatant self-dealing and willful fraud using D&K GP, D&K and TPR as instrumentalities to orchestrate a sham transaction which stripped D&K of its ownership in TPR while simultaneously inuring to Sagi's benefit, and to the detriment of the Orly Trust and his sister, Orly.

89.    Specifically, Sagi (purportedly acting on behalf of TPR):

a)    sent the 8/31/08 Notice only to himself as manager of D&K's assets, purporting to declare a default under the Note;

b)    then sent the Sale Notice only to himself as manager of D&K's assets, purporting to notify D&K that its shares of TPR stock were to be auctioned off as a result of the purported default under the Note; and

c)    orchestrated a sham auction at the offices of his attorneys, McLaughlin & Stern LLP, where Sagi purported to foreclose upon the Note, and purchase D&K's TPR shares for a fraction of the shares' actual value.

90.    At the same time, Sagi and D&K GP (purportedly acting on behalf of D&K):

a)    Failed to make payments on the Note;

b)    failed to challenge or defend D&K's principle asset – the Pledged Shares – in the face of Sagi's own use of TPR to foreclose upon the Note; and

c)    failed to notify Orly of Sagi's intent and attempt to enforce the Note through TPR.

91.    Sagi and D&K GP failed to honor their fiduciary duties to manage and protect D&K's assets with knowledge that the interested parties to the Note (Arie, Dalia, Sagi, Orly, TPR, and D&K) had expressly disavowed enforceability of the Note.

24

Supreme Court Records OnLine Library - page 26 of 48

92.     As stated above, all parties understood and agreed before the time of their signing that the Note and Pledge Agreement would never be enforced by any of them.

93.     Thereafter, Sagi, on behalf of both himself and D&K GP, made statements and assertions of material fact, including during the divorce proceedings, intended to induce all interested parties to the Note, including Orly, to rely upon the promise that the Note and Pledge Agreement would never be enforced against the Note's debtors.

94.     Orly was aware of Sagi's repeated assertions, on behalf of both himself and D&K GP, that the Note and Pledge Agreement would never be enforced, and she justifiably relied upon Sagi's assertions.  Further, Orly was aware that Sagi had been tasked with ensuring the non-enforcement of the Note, and that Sagi had acted to prevent enforcement of the Note by assigning it to Parnes.  Given all these facts, Orly reasonably believed and justifiably relied on Sagi, as manager of D&K's assets and as her brother, to protect both her and the Orly Trust's interests in D&K and D&K's interest in TPR.

95.     However, at the time Sagi made these statements, on behalf of both himself and D&K GP, he never intended to abide by or honor the agreement not to enforce the Note and never intended to protect the Orly Trust's interest in D&K's Pledged Shares.  Indeed, Sagi knew his statements materially misrepresented and hid his true intentions – to convert D&K's assets for his own benefit and to the detriment of Orly, the Orly Trust, and D&K.

96.     As a direct and proximate result of Sagi's and D&K GP's material misrepresentations and material omissions, the Orly Trust has suffered damages, including the total loss of the Orly Trust's interest in TPR, the Orly Trust's potential liability for the outstanding indebtedness under the Note (which, despite his previous statements, Sagi sought to enforce on

25

behalf of TPR), as well as extensive attorneys' fees that have been incurred in connection with Orly's efforts to protect the Orly Trust's rights and interests.

97.     As a direct and proximate result of Sagi's and D&K GP's material misrepresentations and material omissions, D&K has suffered damages, including the total loss of D&K's interest in TPR.

98.     Upon information and belief, both Sagi's and D&K GP's actions were malicious, wanton and intentionally or recklessly designed to cause harm to D&K and to the Orly Trust, and, as such, D&K and the Orly Trust are entitled to an award of punitive damages.

**THIRD CAUSE OF ACTION**
**(Claim for Aiding and Abetting Breach of Fiduciary Duty On Behalf of**
**Orly, the Orly Trust, and D&K Against Sagi and D&K GP)**

99.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 98.

100.     Sagi knowingly participated and assisted Dalia's breaches of the fiduciary duties owed to Orly by, among other things: (a) seeking to enforce the Note on behalf of TPR despite repeated assurances that the Note would never be enforced; (b) purporting to foreclose on the Note on behalf of TPR; (c) purporting to sell the Pledged Shares at "auction" and purporting to purchase those shares on behalf of TPR; (d) failing to provide notice to Orly of the purported enforcement of the Note and foreclosure thereon; (e) failing to provide notice to Orly of the purported sale of the Pledged Shares; and (f) failing to monitor, manage and protect D&K's (and, thereby, the Orly Trust's) interests in the Pledged Shares.

101.     D&K GP knowingly participated and assisted Dalia's breaches of the fiduciary duties owed to Orly by, among other things:  (a) failing to make payments on the Note if

26

such payments were required; (b) failing to defend against TPR's attempt to enforce the Note, foreclose thereon, and sell the Pledged Shares for a mere fraction of their actual value; (c) failing to provide notice to Orly of the purported enforcement of the Note and the purported foreclosure thereon; (d) failing to provide notice to Orly of the purported sale of the Pledged Shares; and (e) failing to monitor, manage and protect D&K's interest in the Pledged Shares.

102.    As a direct and proximate result of Sagi's and D&K GP's aiding and abetting, Orly has suffered damages, including the total loss of the Orly Trust's interest in TPR, the Orly Trust's potential liability for the outstanding indebtedness under the Note, as well as extensive attorneys' fees that have been incurred in connection with Orly's efforts to protect the Orly Trust's rights and interests.

103.    As a direct and proximate result of Sagi's and D&K GP's aiding and abetting, the Orly Trust has suffered damages, including the total loss of the Orly Trust's interest in TPR, the Orly Trust's potential liability for the outstanding indebtedness under the Note, as well as extensive attorneys' fees that have been incurred in connection with Orly's efforts to protect the Orly Trust's rights and interests.

104.    As a direct and proximate result of Sagi's and D&K GP's aiding and abetting, D&K has suffered damages, including the total loss of D&K's interest in TPR, D&K's potential liability for the outstanding indebtedness under the Note, as well as extensive attorneys' fees incurred in connection with Orly's efforts to protect D&K's rights and interests.

105.    Upon information and belief, Sagi's and D&K GP's actions were malicious, wanton and intentionally or recklessly designed to cause harm to Orly, the Orly Trust, and D&K, and, as such, Orly, the Orly Trust, and D&K are entitled to an award of punitive damages.

27

## FOURTH CAUSE OF ACTION
### (Claim for Tortious Interference with Contract On Behalf of the Orly Trust and D&K Against Sagi and D&K GP)

106.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 105.

107.    Sagi and D&K GP tortiously interfered with D&K's contractual obligations under the Note by preventing D&K from honoring its obligations under the Note, without any justification.

108.    Under the Note, D&K was required to repay principal, together with accrued interest, in annual installments over a ten-year period. Though the Note was disavowed by Sagi, when he chose to seek its enforcement on behalf of TPR, he implicitly acknowledged that D&K had obligations under the Note.

109.    Sagi and D&K GP were well aware of D&K's rights and obligations under the Note.

110.    As a direct and proximate result of Sagi and D&K GP's interference with D&K's payment obligations under the Note, both D&K, and its limited partners, including the Orly Trust, have suffered damages, including the total loss of D&K's interest in TPR.

111.    Upon information and belief, Sagi and D&K GP actions were malicious, wanton and intentionally or recklessly designed to cause harm to D&K and the Orly Trust. As such, D&K and the Orly Trust are entitled to an award of punitive damages.

28

Supreme Court Records OnLine Library -  page 30 of 48

## FIFTH CAUSE OF ACTION
### (Claim for Fraud On Behalf of Orly Against Dalia)

112.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 111.

113.    As stated above, every member of the Genger family, including Dalia, understood and agreed before the time of their signing that the Note and Pledge Agreement would never be enforced by any of them.

114.    Thereafter, Dalia made statements, including sworn statements, affirming that all interested parties to the Note (Arie, Sagi, Orly, TPR and D&K) had agreed that TPR would never seek to enforce the Note, and Sagi (acting through TPR) assigned the Note to his longtime friend David Parnes (then acting as Trustee of the Orly and Sagi Trusts and an officer of TPR) in an attempt to prevent anyone from enforcing the Note.

115.    Dalia's sworn statements and assertions of material fact were intended to be accepted as true and relied upon by interested parties to the Note, including Orly.

116.    Orly was aware of Dalia's repeated assertions that the Note would never be enforced, and she relied upon Dalia's assertions that the Note would never be enforced.  Further, Orly reasonably believed, based upon Dalia's assertions, that Dalia would not allow anyone to enforce the Note against D&K.  Further, Orly justifiably relied on Dalia, as Trustee of the Orly Trust and as her mother, to protect both her and the Orly Trust's interests.

117.    However, at the time Dalia made these statements and factual assertions, she never intended to abide by or honor the agreement not to enforce the Note and never intended to protect the Orly Trust's interest in D&K's Pledged Shares.

29

118.    Upon information and belief, Dalia knew but deliberately and intentionally failed to notify Orly that Sagi: (a) was not making payments on the Note as manager of D&K GP; (b) was purporting to declare a default under the Note on behalf of TPR; (c) sent notice of the sale to himself as manager of D&K, but did not intend to inform Orly of the sale; and (d) conducted a sham "auction" during which Sagi "bought" D&K's Pledged Shares on behalf of TPR at a fraction of their actual value.

119.    Dalia's intentional failure to notify Orly about the foreclosure on the Note and sale of the Pledged Shares were material omissions of fact that were intended to be, and in fact were, relied upon by Orly.  As Trustee, at a minimum Dalia had a fiduciary duty to speak, and she could not properly remain silent regarding these material facts.  She also had a duty to act with the utmost of loyalty on behalf of the Trust, which required her to take action to protect the Orly Trust's interests, particularly, its financial interests.

120.    As a direct and proximate result of Dalia's material misrepresentations and material failure to inform Orly of the foreclosure and the sale of the Orly Trust's indirect interest in TPR, Orly has suffered damages, including the total loss of the Orly Trust's interest in TPR, the Orly Trust's potential liability for the outstanding indebtedness under the Note, as well as extensive attorneys' fees that have been incurred in connection with Orly's efforts to protect the Orly Trust's rights and interests.

121.    Upon information and belief, Dalia's material misstatements, material omissions, acts and failures to act were malicious, wanton and intentionally or recklessly designed to cause harm to Orly, and, as such, Orly is entitled to an award of punitive damages.

30

## SIXTH CAUSE OF ACTION
### (Claim for Fraud On Behalf of the Orly Trust and D&K Against Sagi and D&K GP)

122.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 121.

123.     As stated above, every interested party understood and agreed before the time of their signing that the Note and Pledge Agreement would never be enforced by any of them.

124.     Thereafter, Sagi, on behalf of both himself and D&K GP, made statements and assertions of material fact, including during the divorce proceeding, that the Note and Pledge Agreement were not intended to be, and would not be, enforced.

125.     Orly was aware of Sagi's repeated assertions, on behalf of both himself and D&K GP, that the Note and Pledge Agreement would never be enforced, and she relied upon Sagi's assertions.  Further, Orly reasonably believed that Sagi would not allow anyone to enforce the Note against D&K.  Further, Orly justifiably relied on Sagi, as manager of D&K's assets and as her brother, to protect both her and the Orly Trust's interests in D&K.

126.     However, at the time Sagi made these statements, on behalf of both himself and D&K GP, he never intended to abide by or honor the agreement not to enforce the Note and never intended to protect the Orly Trust's interest in the TPR shares which D&K owned.  Indeed, Sagi knew his statements materially misrepresented and hid his true intentions – to take D&K assets for his own benefit, to the detriment of both D&K and the Orly Trust.

127.     As a direct and proximate result of Sagi's and D&K GP's material misrepresentations and material silence, the Orly Trust has suffered damages, including the total loss of the Orly Trust's interest in TPR, the Orly Trust's potential liability for the outstanding

31

indebtedness under the Note, as well as extensive attorneys' fees that have been incurred in connection with Orly's efforts to protect the Orly Trust's rights and interests.

128.   As a direct and proximate result of Sagi's and D&K GP's material misrepresentations and material silence, D&K has suffered damages, including the total loss of D&K's interest in TPR, D&K's potential liability for the outstanding indebtedness under the Note, as well as extensive attorneys' fees incurred in connection with Orly's efforts to protect D&K's rights and interests.

129.   Upon information and belief, both Sagi's and D&K GP's actions were malicious, wanton and intentionally or recklessly designed to cause harm to D&K and the Orly Trust and, as such, D&K and the Orly Trust are entitled to an award of punitive damages.

### SEVENTH CAUSE OF ACTION
**(Claim for Aiding and Abetting Fraud On Behalf of the Orly Trust and D&K Against Sagi and D&K GP)**

130.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 129.

131.   Sagi and D&K GP knowingly participated and assisted Dalia in committing fraud against Orly by, among other things, assisting in the sham sale of the Pledged Shares, making misrepresentations regarding the Note, and failing properly to notify D&K's members of the purported foreclosure and sale.

132.   As a direct and proximate result of Sagi's and D&K GP's aiding and abetting of Dalia's fraud, the Orly Trust has suffered damages, including the total loss of the Orly Trust's interest in TPR, the Orly Trust's potential liability for the outstanding indebtedness under

32

Supreme Court Records OnLine Library - page 34 of 48

the Note, as well as extensive attorneys' fees that have been incurred in connection with Orly's efforts to protect the Orly Trust's rights and interests.

133.    As a direct and proximate result of Sagi's and D&K GP's aiding and abetting of Dalia's fraud, D&K has suffered damages, including the total loss of D&K's interest in TPR, D&K's potential liability for the outstanding indebtedness under the Note, as well as extensive attorneys' fees that have been incurred in connection with Orly's efforts to protect D&K's rights and interests.

134.    Upon information and belief, Sagi's and D&K GP's actions were malicious, wanton and intentionally or recklessly designed to cause harm to the Orly Trust and D&K, and, as such, the Orly Trust and D&K are entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION
### (Claim for Conspiracy to Commit Fraud On Behalf of Orly, the Orly Trust, and D&K Against Sagi, Dalia, D&K GP and TPR)

135.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 134.

136.    As set forth above, Dalia and Sagi agreed upon and engaged in a scheme, using TPR and D&K GP as their instrumentalities (collectively, the "Conspirators"), to fraudulently divest D&K of its ownership interest in TPR, thereby depriving the Orly Trust of its ownership interest in TPR, to Orly's direct detriment.

137.    By himself or through the instrumentalities, Sagi furthered the conspiracy by, among other things:

> a)    failing to make payment on the Note, if such payments were required;

33

b)  sending the 8/31/08 Notice – purporting to declare a default under the Note – only to himself as manager of D&K's assets;

c)  sending the Sale Notice – purporting to notify D&K that its Pledged Shares were to be auctioned as a result of the purported default under the Note – only to himself as manager of D&K's assets;

d)  orchestrating a sham auction at the offices of his attorneys, McLaughlin & Stern LLP, where Sagi purported to foreclose upon the Note, and simultaneously sell and purchase the Pledged Shares for a fraction of their actual value; and

e)  failing to notify or inform Orly about the foreclosure and the sale of the Pledged Shares.

138.    Likewise, by herself or through the instrumentalities, Dalia furthered the conspiracy by, among other things:

a)  failing to notify or inform Orly about the foreclosure and the sale of the Pledged Shares; and

b)  failing to challenge the foreclosure and the sale or otherwise defend the Orly Trust's interests in the Pledged Shares.

139.    As a direct and proximate result of the above-mentioned conspiracy to commit fraud, Orly, the Orly Trust, and D&K have suffered damages, including the total loss of D&K's and the Orly Trust's interest in TPR, D&K's and the Orly Trust's potential liability for the outstanding indebtedness under the Note, as well as extensive attorneys' fees that have been incurred in connection with Orly's efforts to protect D&K's, the Orly Trust's, and her own rights and interests.

140.    Upon information and belief, the Conspirators' actions were malicious, wanton, and intentionally or recklessly designed to harm D&K, the Orly Trust, and Orly, and, as such, D&K, the Orly Trust, and Orly are entitled to an award of punitive damages.

34

Supreme Court Records OnLine Library - page 36 of 48

## NINTH CAUSE OF ACTION
### (Claim for Declaratory Relief and Damages Pursuant to NY UCC §§ 9-627, 610, 611-614 On Behalf of the Orly Trust Against TPR)

141.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 140.

142.    TPR orchestrated a sham sale that purported to dispose of D&K's Pledged Shares. However, the sale of these Pledged Shares was not "commercially reasonable" within the meaning of NY UCC Article 9.

143.    Upon information and belief, TPR failed to send timely authenticated notification of disposition of the Pledged Shares to the Orly Trust, or its beneficiary Orly, in violation of NY UCC §§9-611(c)(2) and 9-612(b). Although aware of her financial interest in D&K and the TPR shares, TPR made no attempt to contact Orly to inform her of the UCC sale.

144.    As a secondary obligor under the Note, the Orly Trust had a right to be given notice of the sale of the Pledged Shares. TPR's failure to send proper authenticated notification to either the Orly Trust or Orly is commercially unreasonable.

145.    In addition, the 8/31/08 Notice fails to satisfy the requirements for a proper notification before disposition of collateral. Specifically, the 8/31/08 Notice: (a) fails to state that D&K is entitled to an accounting of the unpaid indebtedness, in violation of NY UCC § 9-613(a)(4); and (b) fails to state the time and place of Sagi's purported disposition of collateral, in violation of NY UCC § 9-613(a)(5).

146.    Further, the purported sale price for D&K's Pledged Shares ($2,200,000) was only a fraction of the original purchase price for the shares ($10,200,000). Moreover, the sale price did not take into account the $27 million potentially received by TPR from the purported sale

35

of TRI stock to the Trump Group, or the substantial dollar value of TRI. Similarly, the sale price did not take into account TPR's limited partnership interest in Riverside Properties (Canada) LP, an entity which owns extremely valuable residential real estate complexes in Canada.

147.   Due to TPR's and Sagi's failure to proceed in accordance with UCC Article 9, Part 6, the Orly Trust is entitled, under NY UCC §9-625(b), to the recovery of the loss caused by such noncompliance.

## TENTH CAUSE OF ACTION
### (Claim for Conversion and Replevin On Behalf of D&K Against TPR)

148.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 147.

149.   Around December 1993, D&K purchased the Pledged Shares.

150.   Pursuant to this purchase, D&K had a possessory right and interest in the Pledged Shares at the time when TPR (controlled by Sagi) conducted the "auction" of those shares and took possession of those shares through an unlawful act of conversion.

151.   Although TPR currently has possession of the Pledged Shares, TPR has no lawful right to possess or control those shares.

152.   On July 2, 2009, Orly, acting on behalf of the Orly Trust, in turn acting on behalf of D&K, made a demand to TPR for recovery of the Pledged Shares. A copy of the July 2, 2009 demand letter is attached hereto as **Exhibit 20**.

153.   TPR failed to return the Pledged Shares in response to the above-mentioned request for their return.

36

Supreme Court Records OnLine Library -  page 38 of 48

154.    The Pledged Shares are unique because TPR is a closely held Genger family corporation, and because the value of the TPR stock at issue is largely dependent on the outcome of an action currently pending in Delaware Chancery Court concerning the ownership of TRI. Based upon the outcome of this litigation, the value of TPR's shares may increase by $250 to $350 million.

155.    As a direct and proximate result of the conversion of D&K's Pledged Shares by TPR, D&K has suffered damages in the amount of the value of the TPR shares on February 27, 2009, the date of the purported auction.

156.    Further, D&K is entitled to an order directing TPR to return the Pledged Shares at issue to D&K.

### ELEVENTH CAUSE OF ACTION
**(Claim for Declaratory Judgment of D&K's Superior Right to Possess
Chattel Under CPLR 7101 On Behalf of D&K Against TPR)**

157.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 156.

158.    As set forth above, D&K had a possessory right and interest in the Pledged Shares at the time when TPR (controlled by Sagi) conducted the sham sale of those shares and took possession of these shares through an unlawful act of conversion.

159.    Although TPR currently has possession of the Pledged Shares, TPR has no lawful right to possess or control those shares.

160.    In addition, TPR has refused Orly's demand for the return of D&K's Pledged Shares.

37

Supreme Court Records OnLine Library  -  page 39 of 48

161.     As a direct and proximate result of TPR's conversion of the Pledged Shares, D&K has suffered damages, including the total loss of its interest in TPR.

162.     The Pledged Shares are unique because TPR is a closely-held Genger family corporation, and because the value of the TPR stock at issue is largely dependent on the outcome of an action currently pending in Delaware Chancery Court concerning the ownership of TRI. Based upon the outcome of this litigation, the value of TPR's shares may increase by $250 to $350 million.

163.     As a result, D&K is entitled to a declaratory judgment pursuant to CPLR 7101 which, in turn, would allow this Court to enter an Order of Seizure pursuant to CPLR 7102, directing the sheriff to seize the Pledged Shares for return to D&K.

## TWELFTH CAUSE OF ACTION
### (Claim for Preliminary Injunction to Recover Chattel Under CPLR 7109 On Behalf of D&K Against TPR)

164.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 163.

165.     As set forth above, D&K has a possessory interest in the Pledged Shares that is superior to TPR's purported possessory interest in those shares. Indeed, TPR has no legal right to the possession of the Pledged Shares.

166.     Due to D&K's superior possessory interest in the Pledged Shares, this Court should grant D&K a temporary restraining order preventing TPR from removing those shares from the state or otherwise transferring, selling, pledging, assigning or otherwise disposing of those shares until further order from this Court, pending a final determination of D&K's request for declaratory judgment for right to possession of the Pledged Shares.

38

167.    Without action by this Court, there is a strong chance that TPR will attempt to assign or dispose of the property in order to prevent D&K from recovering the Pledged Shares, causing irreparable harm to D&K and its limited partners, including the Orly Trust.

168.    The speculative and contingent value of TPR, a closely held family corporation, makes TPR's shares unique.  Indeed, based upon the outcome of the litigation over TRI, TPR may increase many fold in value.

## THIRTEENTH CAUSE OF ACTION
### (Claim for Constructive Trust On Behalf of D&K Against TPR)

169.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 168.

170.    A constructive trust is appropriate because this case involves fraud and self-dealing.  Specifically, TPR participated in a fraudulent scheme to defraud D&K of its shares in TPR.

## FOURTEENTH CAUSE OF ACTION
### (Claim for Constructive Fraudulent Conveyance Under NY Debtor & Creditor Law Sections 273 and 277 On Behalf of the Orly Trust Against TPR)

171.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 170.

172.    As secondary obligor under the Note, the Orly Trust is a contingent creditor of D&K.  In addition, the Orly Trust is a future creditor of TPR arising from their tort liability to the Orly Trust, as set forth in this Verified Complaint.

173.    Sagi, acting in his capacity as manager of D&K GP, caused D&K to convey D&K's Pledged Shares to TPR by purposely and intentionally failing to act to prevent the

39

foreclosure and the sale of those shares to TPR for $2,200,000, far less than fair consideration as defined in Section 272 of the New York Debtor and Creditor Law.

174.    Sagi, acting on behalf of D&K GP, caused the above-mentioned conveyance of the Pledged Shares to TPR to occur at a time when D&K was insolvent, or at a time when D&K became insolvent as a result of the transfer, as defined in Section 271 of the New York Debtor and Creditor Law.

175.    Based upon the above, the transfer of the Pledged Shares to TPR constitutes a fraudulent conveyance under to Sections 273 and 277 of the New York Debtor and Creditor Law.

176.    As a result, the transfer of the Pledged Shares to TPR shall be set aside pursuant to Section 278 and 279 of the New York Debtor and Creditor Law.

### FIFTEENTH CAUSE OF ACTION
**(Claim for Actual Fraudulent Conveyance Under Section 276 of the
New York Debtor and Creditor Law On Behalf of the Orly Trust
Against TPR)**

177.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 176.

178.    As a secondary obligor under the Note, the Orly Trust is a contingent creditor of D&K.  In addition, the Orly Trust is a future creditor of TPR arising from their tort liability to the Orly Trust, as set forth in this Verified Complaint.

179.    At the direction of Sagi, acting in his capacity as manager of D&K GP, D&K transferred its Pledged Shares to TPR as part of a sham sale specifically designed to divest the Orly Trust of its ownership interest in TPR and to benefit TPR, and Sagi himself.

40

180.   As set forth above, Sagi used both D&K GP and TPR as his instrumentalities to effectuate a transfer of the Pledged Shares to TPR with the actual intent of hindering, delaying or defrauding the Orly Trust and its beneficiary, Orly, constituting a violation of Section 276 of the New York Debtor and Creditor Law.

181.   As a result, the transfer of the Pledged Shares shall be set aside pursuant to Sections 278 and 279 of the New York Debtor and Creditor Law.

182.   In addition, the Orly Trust is entitled to a judgment against TPR in the amount of the reasonable attorneys' fees incurred in connection with its efforts to protect its interests, as fixed by this Court pursuant to Section 276-a of the New York Debtor and Creditor Law.

## SIXTEENTH CAUSE OF ACTION
**(Claim for Promissory Estoppel On Behalf of D&K and the Orly Trust
Against Sagi and TPR)**

183.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 182.

184.   As stated above, every interested party, including Sagi and TPR, understood and agreed before the time of their signing that the Note and Pledge Agreement would never be enforced by any of them.

185.   Thereafter, both Sagi and TPR made statements and took actions that were intended to, and did induce, D&K and the Orly Trust to reasonably rely upon the fact that the Note and Pledge Agreement would not be enforced against D&K.

41

Supreme Court Records OnLine Library -  page 43 of 48

186.   As a direct and proximate result of Sagi's and TPR's statements and actions, and D&K's and the Orly Trust's reliance upon them, D&K and the Orly Trust have suffered damages, including the total loss of their interest in TPR, their potential liability for the outstanding indebtedness under the Note, as well as extensive attorneys' fees incurred in connection with Orly's efforts to protect their rights and interests.

## DEMAND FOR RELIEF

WHEREFORE, Orly Genger, in her individual capacity, and on behalf of the Orly Genger 1993 Trust both in its individual capacity and on behalf of D&K Limited Partnership, demands judgment as follows:

(a)   on the first cause of action, against Dalia in an amount equal to Orly's compensatory and punitive damages to be determined at trial with interest accruing from February 27, 2009;

(b)   on the second cause of action, against Sagi and D&K GP, in an amount equal to the Orly Trust's and/or D&K's compensatory and punitive damages to be determined at trial with interest accruing from February 27, 2009;

(c)   on the third cause of action, against Sagi and D&K GP in an amount equal to Orly's compensatory and punitive damages to be determined at trial with interest accruing from February 27, 2009;

(d)   on the fourth cause of action, against Sagi and D&K GP in an amount equal to the Orly Trust's and/or D&K's compensatory and punitive damages to be determined at trial with interest accruing from February 27, 2009;

(e)   on the fifth cause of action, against Dalia in an amount equal to Orly's compensatory and punitive damages to be determined at trial with interest accruing from February 27, 2009;

(f)   on the sixth cause of action, against Sagi and D&K GP in an amount equal to the Orly Trust's and/or D&K's compensatory and punitive damages to be determined at trial with interest accruing from February 27, 2009;

42

Supreme Court Records OnLine Library -  page 44 of 48

(g)    on the seventh cause of action, against Sagi and D&K GP in an amount equal to Orly's compensatory and punitive damages to be determined at trial with interest accruing from February 27, 2009;

(h)    on the eighth cause of action, against Sagi, Dalia, D&K GP and TPR in an amount equal to Orly's, the Orly Trust's, and/or D&K's compensatory and punitive damages to be determined at trial with interest accruing from February 27, 2009;

(i)    on the ninth cause of action, declaring that TPR's purported sale of the Pledged Shares was "commercially unreasonable" pursuant to Article 9 of the New York Uniform Commercial Code and awarding damages to the Orly Trust pursuant to N.Y. U.C.C. § 9-625(b);

(j)    on the tenth cause of action, against TPR in an amount equal to the value of the Pledged Shares as of February 27, 2009, and an order directing TPR to return the Pledged Shares to D&K;

(k)    on the eleventh cause of action, declaring that D&K, and not TPR, has the superior right to possess the Pledged Shares;

(l)    on the twelfth cause of action, enjoining TPR from removing the Pledged Shares from the state or otherwise transferring, selling, pledging, assigning or otherwise disposing of those TPR shares until further Order from this Court;

(m)    on the thirteenth cause of action, establishing a constructive trust in favor of D&K over Pledged Shares;

(n)    on the fourteenth cause of action, against TPR to set aside the constructive fraudulent conveyance of the Pledged Shares orchestrated by Sagi in his capacity as manager of D&K GP;

(o)    on the fifteenth cause of action, against TPR to set aside the actual fraudulent conveyance of the Pledged Shares orchestrated by Sagi in his capacity as manager of D&K GP and awarding the Orly Trust its reasonable attorneys' fees;

(p)    on the sixteenth cause of action, awarding damages to the Orly Trust and/or D&K arising from Sagi's and TPR's breach of promise, in an amount to be determined at trial with interest accruing from February 27, 2009;

(q)    for costs, fees and disbursements; and

43

Supreme Court Records OnLine Library - page 45 of 48

(r)    such further and other relief as the Court deems just and proper.

Dated:    New York, New York
          July 8, 2009

                                    ZEICHNER ELLMAN & KRAUSE LLP

                                    By: _____
                                        Stephen F. Ellman
                                        Yoav M. Griver
                                        Bryan D. Leinbach
                                        Attorneys for Plaintiff
                                        575 Lexington Avenue
                                        New York, New York 10022
                                        (212) 223-0400

## **VERIFICATION**

STATE OF NEW YORK,
COUNTY OF NEW YORK.

       ORLY GENGER, being duly sworn, says that she is the plaintiff named in the

foregoing complaint; that she has read the foregoing complaint, and that the complaint is true to her

own knowledge except as to those matters therein stated to be alleged upon information and belief,

and that as to those matters she believes them to be true.

_____
ORLY GENGER

Sworn to before me this
8th day of July, 2009

_____
Notary Public

MICHAEL W. ANTONIVICH
Notary Public, State of New York
No. 01AN4762190
Qualified in Nassau County
Commission Expires June 30, 20_10_

SUPREME COURT: NEW YORK COUNTY                    Index No.:

---

ORLY GENGER in her individual capacity
and on behalf of the Orly Genger 1993 Trust
(both in its individual capacity and on behalf
of D & K Limited Partnership),

                              Plaintiff,

            - against -

DALIA GENGER, SAGI GENGER, D & K
GP LLC, and TPR INVESTMENT
ASSOCIATES, INC.,

                              Defendants.

---

## SUMMONS AND
## VERIFIED COMPLAINT

---

### ZEICHNER ELLMAN & KRAUSE LLP

575 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022
TEL: (212) 223-0400
FAX: (212) 753-0396
www.zeklaw.com