**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 7** |
| Orly Genger, | : | **Case No. 19-13895 (JLG)** |
| | : | |
| Debtor. | : | |

-----------------------------------------------------------------X

| | | |
|---|---|---|
| DALIA GENGER, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | **Adv. Pro. No. 20-01010 (JLG)** |
| | : | |
| ORLY GENGER, MICHAEL BOWEN, | : | |
| ARIE GENGER, ARNOLD BROSER, | : | |
| DAVID BROSER, ERIC HERSCHMANN, | : | |
| THE GENGER LITIGATION TRUST, | : | |
| ADBG LLC, TEDCO INC., and | : | |
| DEBORAH PIAZZA, as chapter 7 Trustee, | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------------------X

**VARIOUS DEFENDANTS' OPPOSITION TO MOTION OF DALIA GENGER
PURSUANT TO FED. R. BANKR. P. 9023 AND LOCAL RULE 9023-1 (I) TO
RECONSIDER THE MEMORANDUM DECISION AND ORDER GRANTING THE
CHAPTER 7 TRUSTEE AND THE VARIOUS DEFENDANTS' MOTIONS TO DISMISS
DALIA GENGER'S AMENDED COMPLAINT; (II) GRANTING REARGUMENT; AND
(III) UPON REARGUMENT, GRANTING LEAVE TO REPLEAD**

TO THE HONORABLE JAMES L. GARRITY JR.,
UNITED STATES BANKRUPTCY JUDGE:

Defendants Orly Genger ("Orly") Arie Genger ("Arie"), Arnold Broser, David Broser, The

Genger Litigation Trust, ADBG LLC, and Tedco, Inc. (collectively, the "Defendants"),

respectfully submit this objection (this "Objection") to the *Motion of Dalia Genger Pursuant to*

*Fed. R. Bankr. P. 9023 and Local Rule 9023-1 (I) to Reconsider the Memorandum Decision and*

*Order Granting the Chapter 7 Trustee and the Various Defendants' Motions to Dismiss Dalia*

*Genger's Amended Complaint; (II) Granting Reargument; and (III) Upon Reargument, Granting*

*Leave to Replead*, filed on August 23, 2021 (Docket No. 45) (the "Motion"), and respectfully state

as follows:

## PRELIMINARY STATEMENT

The Motion fails to present any legitimate basis for reconsideration, reargument or leave

to replead this Court's extremely detailed, well-reasoned 57-page decision granting the

Defendants' motions to dismiss Dalia's Amended Complaint (the "Opinion"). Rather, the Motion

simply regurgitates Dalia's prior arguments, and raises other arguments that have nothing to do

with the Opinion. Moreover, even if the Court were to accept some of Dalia's arguments, the

Motion should still be denied because those arguments would not alter the ultimate result since the

Court granted the Defendants' Motion to Dismiss on multiple grounds, and the arguments do not

touch several of those grounds. The Motion falls far short of meeting Dalia's high burden for

establishing a basis for reconsideration, reargument or leave to replead, and should thus be denied.

## THE OPINION

1.      As relevant here, the Opinion found that the Amended Complaint should be

dismissed because (i) Dalia lacked both constitutional and prudential standing, (ii) Dalia's claims

were barred by the statute of limitations; and (iii) Dalia failed to state a claim. The Court also

rejected Dalia's request for leave to replead her already once amended complaint, finding that

repleading would be futile, and emphasizing the lack of standing and statute of limitations bar.

(Opinion at 56-57.)

## **LEGAL STANDARD**

2.      The standard for reconsideration is strict. Local Bankruptcy Rule 9023-1(a)

provides that a "motion for reargument of a court order determining a motion . . . shall set forth

concisely the matters or controlling decisions which counsel believes the Court has not

considered. No oral argument shall be heard unless the Court grants the motion and specifically

orders that the matter be reargued orally." S.D.N.Y. L.B.R. 9023-1(a).

3.      In *In re Papadopoulos*, the Court summarized the standard as follows:

> The standard applicable to a motion for reargument or
> reconsideration is identical to a motion to amend a judgment
> under FRCP 59(e). *See Lyell Theatre Corp. v. Loews Corp.,* 682
> F.2d 37, 41 (2d Cir.1982) ("[W]here a post-judgment motion is
> timely filed and 'calls into question the correctness of that judgment
> it should be treated as a motion under FRCP 59(e), however it may
> be formally styled.' " (quoting *Dove v. Codesco,* 569 F.2d 807, 809
> (4th Cir.1978))); *In re Jamesway Corp.,* 203 B.R. 543, 545
> (Bankr.S.D.N.Y.1996) (A "motion for 'reargument' is properly in
> the nature of a motion for a new trial or for the amendment of a
> judgment pursuant to Fed. R. Civ. P. 59"); *see also* 10 Collier on
> Bankruptcy ¶ 9023.04 (15th ed. rev.2008) ("Any motion that draws
> into question the correctness of the judgment is functionally a
> motion under Rule 9023, whatever its label. Thus a motion to
> 'reconsider,' 'for clarification,' to 'vacate,' to 'set aside' or to
> 'reargue' is a motion under Rule 9023....").
>
> Under FRCP 59(e), a court can revisit a prior decision based upon
> an intervening change in the controlling law, the availability of new
> evidence, to correct manifest errors of law or fact upon which the
> judgment is based, or to prevent manifest injustice. *Official Comm.
> of Unsecured Creditors of Enron Corp. v. Martin (In re Enron
> Creditors     Recovery     Corp.),* 378     B.R.     54,     56–57
> (Bankr.S.D.N.Y.2007) (citing *Cray     v.     Nationwide     Mut.     Ins.*

*Co.,* 192 F.Supp.2d 37, 39 (W.D.N.Y.2001)). "The standard for granting ... a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked– matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.,* 70 F.3d 255, 256 (2d Cir.1995) ("*Shrader* ") (citing *Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y.1990); *Adams v. United States,* 686 F.Supp. 417, 418 (S.D.N.Y.1988)). In that way, the rule insures "the finality of decisions and ... prevent[s] the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Carolco Pictures, Inc. v. Sirota,* 700 F.Supp. 169, 170 (S.D.N.Y.1988); *see also Park South Tenants Corp. v. 200 Central Park Assocs., L.P.,* 754 F.Supp. 352, 354 (S.D.N.Y.1985) ("The standard for granting a motion for reargument is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court."). It also precludes repetitive arguments on issues that have already been considered by the court. *Ruiz v. Comm'r of Dep't of Transp.,* 687 F.Supp. 888, 890 (S.D.N.Y.), *aff'd,* 858 F.2d 898 (2d Cir.1988); *see also In re Taub,* 421 B.R. 713, 716 (Bankr.E.D.N.Y.1997) (A motion for reconsideration "is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion."). A motion for reconsideration is "limited to the record that was before the Court on the original motion." *Pereira v. Aetna Cas. & Surety Co. (In re Payroll Exp. Corp.),* 216 B.R. 713, 716 (S.D.N.Y.1997) (quoting *Wishner v. Cont'l Airlines,* 1997 WL 615401, at *1 (S.D.N.Y. Oct. 6, 1997))).

No. 12-13125 (JLG), 2015 WL 1216541, at *2 (Bankr. S.D.N.Y. Mar. 13, 2015).

## ARGUMENT

4.    The Motion defies the standard.  It does not point to any change in controlling law, nor any new evidence.  Nor does it point to any controlling decisions or data that the Court overlooked that might reasonably be expected to alter the conclusion reached by the Court. Rather, it repackages and seeks to relitigate three arguments:  (i) that the Court overlooked the decisions of the District Court in Sagi's prepetition litigation against Orly; (ii) that the Court overlooked Orly's alleged prior admissions that she had a fiduciary relationship with Dalia; and (iii) that the statute of limitations should be tolled because the Defendants allegedly concealed

information from Dalia relating to the 2013 Trump Group Settlement.  However, the Court already considered and rejected these arguments.  Thus, the Motion is baseless and should be denied.  Since there is no basis for reargument, the Court should deny Dalia's request for oral argument on her Motion in accordance with Local Bankruptcy Rule 9023-1(a).

## THE COURT ALREADY PROPERLY CONSIDERED AND REJECTED DALIA'S ARGUMENTS REGARDING PRIOR COURT RULINGS

5.    Dalia incorrectly asserts that the Court overlooked certain findings in 2015 and 2018 District Court rulings in Sagi's breach of contract actions against Orly.  In fact, the Court expressly considered the impact of those very rulings in its Opinion.

6.    As an initial matter, the Motion inaccurately argues that the Court overlooked allegations that were not even in Dalia's Amended Complaint, and that Dalia should be permitted to add allegations that were already in Dalia's Amended Complaint.  Dalia first claims that the Court overlooked "paragraph 24 of the Complaint", and then quotes an allegation from Dalia's original Complaint that Dalia removed when she filed her Amended Complaint.  (*See* Motion ¶ 3.)  Next, Dalia argues, beginning in paragraph 4[1] that, if permitted to replead, she would add quotes from 2015 and 2018 District Court opinions in the Sagi breach of contract cases that Dalia already references in her Amended Complaint.  In some cases, the Amended Complaint already includes the very quotes that Dalia argues would cure the defects in the Amended Complaint.  (*See e.g.*, Amended Compl. ¶¶ 19, 22, 30-32, 35-36.)  Dalia or her counsel's forgetfulness does not provide a basis for reconsideration, reargument or leave to replead.

---

[1] The Defendants dispute Dalia's contention that "the District Court had before it a detailed evidentiary record." (Motion ¶ 6.)

7.      Nevertheless, contrary to Dalia's arguments, the Court clearly did not overlook these 2015 and 2018 District Court decisions or Dalia's arguments relating to them.  Rather, the Court cites to these prior decisions throughout its Opinion, thoroughly analyzed them and ultimately and properly rejected Dalia's position.  (*See, e.g.,* Opinion at 34-36.)[2]  The Court correctly found that Dalia failed to allege any promise Orly made directly to Dalia, as opposed to the 2004 Indemnity that Orly entered into in favor of Sagi.  (*Id.*)  Dalia's mere disagreement with the Court's conclusions does not provide a basis for reconsideration, reargument or leave to replead.

## THE COURT ALREADY PROPERLY CONSIDERED AND REJECTED DALIA'S ALLEGED FIDUCIARY RELATIONSHIP WITH ORLY

8.      Dalia also argues that the Court incorrectly concluded that Dalia lacked a fiduciary relationship with Orly.  Again, Dalia is wrong.

9.      As a threshold matter, Dalia inaccurately states that the Court dismissed Dalia's complaint "on three grounds -- (a) lack of standing, (b) lack of fiduciary relationship, and (c) statute of limitations."  (Motion ¶ 1.)  The Opinion dismissed the Amended Complaint on multiple grounds, including, but not limited to, the subset the Motion identifies.  While the Court correctly found that Dalia lacked a fiduciary relationship with Orly, that finding was part of the Opinion's broader finding that Dalia failed to state a claim, including that Dalia failed to establish the other required elements of the claim – that there was an express or implied promise, a transfer in reliance on that promise, and unjust enrichment.  (*See* Opinion at 52-53.) Accordingly, even if the Court reconsidered its Opinion and found that Dalia had properly

---

[2] The Defendants also dispute Dalia's unsupported assertion that prior decisions against Orly are somehow binding on the other Defendants who were not parties to those actions.  The Defendants reserve all rights, claims and defenses relating thereto.

pleaded the existence of a fiduciary relationship, her constructive trust claim would still fail because she failed to plead the other required elements of her claim. Thus, amendment would be futile.

10.    Yet the Court did not overlook Dalia's fiduciary relationship arguments; rather, the Opinion includes more than three pages of detailed analysis of that issue before properly rejecting Dalia's argument. (*See* Opinion at 47-51.) The Court found that Orly's testimony and allegations in prior actions on which Dalia relied focused on Dalia's fiduciary relationship with Orly in Dalia's capacity as trustee of the Orly Trust, not Orly's familial relationship with Dalia, and that Dalia nevertheless overstated the significance of her familial relationship with Orly because the "case law is clear that such a relationship is relevant to but is not *per se* determinative that a confidential relationship exists among Dalia and Orly." (*Id.* at 49-50 (citations omitted)).

11.    In response, Dalia merely cites to a prior court filing by Orly (Motion ¶ 12), which Dalia cannot rely upon now because she failed to raise it in her opposition to the Defendants' motions to dismiss. As this Court recognized in *Papadopoulus*, a "motion for reconsideration is 'limited to the record that was before the Court on the original motion.'" 2015 WL 1216541, at *2 (quoting *In re Payroll Exp.*, 216 B.R. at 716 (quoting *Wishner*, 1997 WL 615401, at *1)). Even if the Court did consider this filing, it too also clearly relates to Dalia's role as trustee of the Orly Trust, so it would have no impact on the Court's Opinion.

## THE COURT ALREADY PROPERLY CONSIDERED AND REJECTED DALIA'S TOLLING ARGUMENTS

12.    Next, Dalia incorrectly argues that the Court overlooked her arguments that the statute of limitations should have been tolled. She is wrong again. The Court thoroughly analyzed and properly rejected Dalia's statute of limitations and related tolling arguments.

(Opinion at 36-45.) The Court found that "Dalia's cause of action against Orly accrued when Orly monetized the Rights pursuant to the 2013 Settlement Agreement and failed to account for Dalia's alleged interest in the Proceeds. That is because when, as here, alleged trust property is transferred to a third party in violation of the alleged trust, "the statute of limitations begins to run when the defendant 'convey[s] the property out of the plaintiffs' reach.'" (Opinion at 39 (citations omitted).)

13.    Dalia now simply regurgitates her prior losing arguments that her claims should be tolled because Orly and the Defendants allegedly engaged in various bad acts to conceal and encumber the two $7.5 million Trump Notes. But the Court already expressly considered and rejected this very argument, finding:

> In her Opposition, Dalia contends that her claim to impose a constructive trust or equitable lien on the Proceeds did not arise until 2017 and 2018, when Orly began encumbering the anticipated proceeds of the Trump Notes. She says that is so because prior to that time, and notwithstanding the payment of $17.3 million in Proceeds to Arnold Broser and Davis Broser (collectively, the "Brosers"), the proceeds of the Trump Notes – which have not been paid – were sufficient to cover the amount payable by Orly to Dalia under the 2004 Integrated Agreement (i.e., $12.25 million). Opposition at 13. She reasons that only then – effectively when the Proceeds "last dollars" were put at risk of loss - did her claim to impose a constructive trust or equitable lien on the Proceeds arise. *Id*. Dalia cites no support for that contention, and the Court finds no merit to it.

*Id*. Thus, there is no basis for reargument, reconsideration or leave to replead as to this point.

14.    In the process, Dalia once again recklessly smears Messrs. Bowen and Broser's reputations by repeating her and Sagi's oft-repeated allegations that they provided false testimony despite the fact that the Court already found such allegations to be irrelevant and/or

wrong.  (*See* Opinion at 43-45.[3])  Once again, Dalia cannot now relitigate her past losing arguments merely because she disagrees with the Court's rulings.

## DALIA'S ARGUMENTS REGARDING THE GENGER LITIGATION TRUST ARE IRRELEVANT AND INACCURATE

15.     Dalia also raises baseless new arguments relating to the Genger Litigation Trust, challenging the validity of the Genger Litigation Trust.  Effectively, Dalia is seeking—on a motion for reconsideration—a declaratory judgment that the Genger Litigation Trust is not a valid trust.  This is patently improper, and the Motion provides no authority that Dalia may make such a request on such a motion.

16.     Dalia's argument also should be rejected because the Opinion did not have anything to do with the validity of the Genger Litigation Trust.  It did not make any determination relating to the validity of the Genger Litigation Trust, nor did it have to do so.  As noted above, Dalia cannot raise new arguments on a motion for reconsideration that she failed to raise previously.  The Motion is littered with irrelevant new arguments relating to the Genger Litigation Trust, which should accordingly be disregarded.

17.     In paragraph 20 of the Motion, Dalia argues:

> Further, even had Dalia known of the Genger Litigation Trust, Orly's purported assignment of the litigation proceeds was ineffectual under the law, and thus did not frustrate Dalia's constructive trust.   Under EPTL § 1-1.18 "transfer is not

---

[3] "She complains that the statute should be tolled because certain of the Transferee Defendants allegedly 'stymied' her efforts to learn about the Trump Notes 'typically with false statements under oath.' *Id*. The Court finds no merit to that contention. First, although Dalia complains about the level of Mr. Bowen's cooperation at a deposition, she does not accurately recite his testimony.[83] More significantly, even if Dalia's recitation of Mr. Broser's actions in avoiding disclosure of matters relating to the Trump Notes is accurate (Opposition at 14-15), it does not provide grounds to toll the running of the statute of limitations. As noted, the statute was triggered by Orly's monetization of the Rights, including the issuance of the Trump Notes and transfer of the $17.3 million in cash. It is undisputed that Dalia was aware of all of those matters no later than 2016, if not sooner. If Dalia believed she had grounds for seeking to impress a constructive trust on the notes and other proceeds, she could have sued Orly in 2016, when she sued Sagi. Actions to encumber the notes did not trigger a new limitations period. Accordingly, the Court dismisses the Amended Complaint for the additional reason that it is time-barred."

accomplished by recital of assignment, holding or receipt in the trust instrument." Thus, in *In re Estate of Rothwell*, 189 Misc. 2d 191 (Surr. Ct., Dutchess Cnty. 2001), for example, the court held that simply attaching a schedule, which recited that certain assets belonged to the trust was not sufficient, and that the grantor was obligated to actually transfer the assets to the trust." See also Turano's Commentary to McKinney's EPTL § 7-1.18 ("[i]t is not sufficient to recite in a "Schedule A" that certain assets belong to the trust, or have been assigned to the trust; the grantor must actually transfer them. Transfer means recording the deed or completing the registration of the stock certificates. If the assets are not registrable or recordable, the grantor must assign particular assets to the trust in writing"); Warren's Heaton on Surrogate's Court Practice § 210.02[5] (under New York law, a trust cannot provide for a disposition of after-acquired assets)."

18.    In addition to Dalia's complete lack of evidence to support her incoherent argument, this paragraph blatantly omits information that completely contradicts Dalia's allegations.  For instance, Dalia quotes only a portion of EPTL Section 7-1.18 (miscited as 1-1.18 the first time), which provides:  "*A lifetime trust shall be valid as to any assets therein to the extent the assets have been transferred to the trust.*   For purposes of this section, (a) transfer is not accomplished by recital of assignment, holding or receipt in the trust instrument, and (b) in the case of a trust of which the creator is the sole trustee, transfer shall mean in the case of assets capable of registration such as real estate, stocks, bonds, bank and brokerage accounts and the like, the recording of the deed or the completion of registration of the asset in the name of the trust or trustee, and in the case of other assets a written assignment describing the asset with particularity."  (Emphasis added.)  Thus, the sentence immediately preceding the passage that Dalia cites contradicts her claim.  EPTL § 7-1.18 does not provide a temporal requirement for *when* the trust must be funded, nor does it in any way indicate that, if a trust is not funded at its creation, it is invalid.  To the contrary, Section 7-1.18 expressly contemplates that trusts are *not* required to be funded immediately.

19.     The Motion also cites *In re Estate of Rothwell*, 189 Misc. 2d 191 (Surr. Ct.,

Dutchess Cnty. 2001), which is simply inapplicable here.  In *Rothwell*, the issue was that the

grantor failed to transfer *any* property to the trust before he died.  For that reason, the court held

that the trust was invalid because it had *never* been funded during the grantor's lifetime and thus

was bereft of property.  Here, there cannot be any dispute that the Genger Litigation Trust has

been funded.  Indeed, Dalia has alleged that "an account titled to the [Genger] Litigation Trust

improperly received $17.3 million . . . ."  (Am. Compl. ¶ 8.)

20.     In addition to *In re Rothwell*, all of the cases that the Defendants have identified

that cite EPTL § 7-1.18 have cited the statute in the same context of a grantor who failed to fund

a trust by not transferring the intended property before the grantor's death.  *See e.g. Gaines v.

City of New York*, 137 A.D.3d 673, 674 (N.Y. App. Div. 2016), *aff'd*, 29 N.Y.3d 1003 (N.Y.

2017) (collecting cases) (decedent's failure to fund a supplemental needs trust prior to her death

"was fatal to the [trust's] existence").  *Gaines* and the other cases citing Section 7-1.18 interpret

the Section to mean that a trust that is never funded (meaning not funded before the time of its

execution) is "inoperative," not that a trust must be funded at the time of its creation in order to

be valid.  *See In re Doman*, 68 A.D.3d 862 (N.Y. App. Div. 2009) (Inter vivos trust was not

invalid, on grounds that trust was not funded at time of creation of trust, where property that was

subject of trust was transferred into trust six months after trust was created.).

21.     Dalia's interpretation of EPTL § 7-1.18 is also directly contradicted by her

citation to Turano's comment on Section 7-1.18 and to Warren's Heaton on Surrogate's Court

Practice.  Turano's comment states, "A trust is not valid until property has been transferred into

it.  Even if the grantor has properly executed the trust instrument, the trust does not become valid

until she transfers the corpus to the trustee.  The trust is not retroactively invalidated because the

property is not transferred into it promptly; it simply is not valid *until it has a corpus*." N.Y. Est. Powers & Trusts Law § 7-1.18 (McKinney) (emphasis added). The Motion misleadingly quotes 12 Warren's Heaton on Surrogate's Court Practice § 210.02 as providing that, "in New York a trust cannot provide for the disposition of after-acquired assets." But the next two sentences in Warren's Heaton state, "It can only control assets that it refers to at the time of its creation. There is, however, no requirement that funding be simultaneous with execution and the mere lapse of time from execution of the trust to the date of funding will not render the trust invalid." 12 Warren's Heaton on Surrogate's Court Practice § 210.02 (2021).

22.    Here, assets were both referred to at the time of the Genger Litigation Trust's creation and were transferred to the Genger Litigation Trust thereafter. In addition to the assignment of proceeds of specified litigation claims that are described with particularity in schedule A to the Genger Litigation Trust Agreement, there is a separate assignment of the same proceeds pursuant to the March 31, 2012 First Amendment to Credit Agreement.[4]

23.    The Genger Litigation Trust Agreement provides: "Arie Genger and Orly Genger hereby transfer and assign to the Trustees the property listed on Schedule 'A' annexed hereto and

---

[4] While the March 31, 2012 Amendment to the ADBG Credit Agreement is not in the record with respect to the Motion, it was admitted into evidence in Orly's chapter 7 case, and further supports the assignment made to the Genger Litigation Trust. It provides, in relevant part, as follows:

2. Assignment. the Stockholders, Arie, and Orly individually at the request of the Lender hereby assign all their rights to collect any and all net proceeds from the Lawsuits, the Additional Lawsuits, and any and all Future Lawsuits that the Stockholder, Arie, or Orly have or may have relating to the Company including the settlement of any Lawsuits, Additional Lawsuits or Future Lawsuits and further including the receipt of monies by the Stockholders, Arie, or Orly from any of the named parties, including, directly or indirectly, through third parties, in the Lawsuits, Additional Lawsuits, and/or Future Lawsuits including but not limited to Dalia Genger, Sagi Genger, TPR Investment Associates, Inc., The Sagi Genger 1993 Trust, Rochelle Fang, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump, Mark Hirsch and/or Trans-Resources, Inc. and all of their related entities, associates, employees, and attorneys to the New Trust.

*See In re Orly Genger*, No. 19-13895 (Docket Nos. 423-74, 423-75 (ex. 68 parts 7&8)).

made a part hereof, to hold in trust for the benefit of ADBG, LLC ("Lender"), in accordance with

the provisions of Article I." (*See* Docket No. 13, Ex. 10 at 1).  Schedule A thereto provides:

> The Trustees shall collect all net proceeds from the Lawsuits, the Additional Lawsuits, and any and all Future Lawsuits that Arie Genger and/or Orly Genger have or may have relating to the Company including the settlement of any Lawsuits, Additional Lawsuits or Future Lawsuits including the receipt of monies by Arie Genger or Orly Genger from any of the named parties, including, directly or indirectly, through third parties, in the Lawsuits, Additional Lawsuits, and/or Future Lawsuits including but not limited to Dalia Genger, Sagi Genger, TPR Investment Associates, Inc., The Sagi Genger 1993 Trust, Rochelle Fang, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, New TR Equity 11, LLC, Jules Trump, Eddie Trump, Mark Hirsch and/or Trans-Resources, Inc. and all of their related entities, associates, employees, and attorney.  The Trustees shall collect all proceeds from the Lawsuits, the Additional Lawsuits, and any and all Future Lawsuits that Arie Genger and/or Orly Genger have or may have relating to the Company including the settlement of any Lawsuits, Additional Lawsuits or Future Lawsuits including the receipt of TRI shares by Arie Genger or Orly Genger.

*Id.* at 31.

> 24.    Next, in paragraph 22, Dalia alleges:

> Indeed, the Genger Litigation Trust never existed at all, as it is undisputed that the Trust Agreement was never signed by the Trustee and witnessed as required under New York law. *See* EPTL § 7-1.17(a) ("Every lifetime trust shall be in writing and shall be executed and acknowledged by the person establishing such trust and, unless such person is the sole trustee, by at least one trustee thereof, in the manner required by the laws of this state for the recording of a conveyance of real property or, in lieu thereof, executed in the presence of two witnesses who shall affix their signatures to the trust instrument."); *see also In re Will of D'elia*, 40 Misc.3d 355 (Surr. Ct., Nassau County, 2013) (invalidating trust agreement not signed by trustee).

> 25.    This allegation is blatantly false.  Lance Harris signed the Genger Litigation Trust

Agreement and so it was signed by the Trustee.  (*See* Docket No. 13, Ex. 10 at 27).  It was also

signed in the presence of two witnesses and notarized. *Id.* at 27-30. For over 9 years since June 2012, the Genger Litigation Trust has been operating as a valid trust. It has opened bank accounts. It has made bank transfers, and it has received bank transfers. It has made and defended various legal filings. Mr. Harris and Mr. Broser have both testified that they are the trustees of the Genger Litigation Trust. Orly and Arie have both acknowledged its validity.

26.    Thus, Dalia's arguments pertaining to the Genger Litigation Trust are wildly inaccurate. However, Dalia's arguments relating to the validity of the Genger Litigation Trust would not alter the outcome of the Opinion in any event because the Court's decision had nothing to do with the Genger Litigation Trust. Accordingly, the portion of the Motion pertaining to the Genger Litigation Trust is procedurally deficient and should be denied.

## THE COURT PROPERLY DENIED LEAVE TO REPLEAD

27.    While Dalia also seeks leave to replead, the Court already considered and properly denied Dalia's prior request to do so. (*See* Opinion at 56-57.) As the Court noted, repleading would be futile because Dalia failed to state claims for relief, lacks standing to pursue her claims and her claims are barred by the statute of limitations.[5] For the reasons above, Dalia has advanced no basis that would allow her to correct these fatal deficiencies. Moreover, the statute of limitations is a black and white, date-driven test that Dalia cannot plead around. But even if the Motion was granted in its entirety, Dalia's claims would still fail because, as discussed above with respect to Dalia's fiduciary duty argument, the Court found that Dalia also

---

[5] "For the reasons set forth above, the Court finds that Dalia has failed to state any claims for relief against the Defendants. Moreover, as discussed above, the Court finds that Dalia lacks standing to bring this suit and, in any event, that the suit is barred by the six-year statute of limitations. The Court is not persuaded that Dalia can plead around those defects. As such, the Court denies Dalia's request for leave to replead on the grounds that it would be futile for her to do so." (citations omitted.)

failed to plea the other required elements of her claims.  Thus, Dalia's request to replead should be denied.

## JOINDER IN OTHER OBJECTIONS

The Defendants hereby join in any other objections to the Motion, to the extent not inconsistent with this Objection.

## CONCLUSION

WHEREFORE, Defendants respectfully request entry of an order denying the Motion, awarding them fees and expenses (including attorneys' fees) in connection with their defense of the baseless Motion, and for such other and further relief as the Court may deem just and appropriate.

DATED:    New York, New York
          October 13, 2021

*/s/ Michael Paul Bowen*
Michael Paul Bowen
Glenn Agre Bergman & Fuentes LLP
55 Hudson Yards, 20th Floor
New York, New York 10001
(212) 358-5600
Email: mbowen@glennagre.com

*Attorneys for Orly Genger*

*/s/ Christopher Gartman*
Christopher Gartman
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
Email: chris.gartman@hugheshubbard.com

*Attorneys for Arnold Broser, David Broser,
ADBG LLC, and Tedco, Inc.*

*/s/ Frank A. Oswald*
Frank A. Oswald
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 201-5590
Email: frankoswald@teamtogut.com

*Attorneys for Arie Genger*

*/s/ Lance Harris*
Lance Harris, Esq., as Trustee of
The Genger Litigation Trust