IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Orly Genger,<br><br>    Debtor. | Chapter 7<br><br>Case No. 19-13895-JLG |
| DALIA GENGER,<br><br>    Plaintiff,<br><br>-against-<br><br>ORLY GENGER, MICHAEL BOWEN, ARIE GENGER, ARNOLD BROSER, DAVID BROSER, ERIC HERSCHMANN, THE GENGER LITIGATION TRUST, ADBG LLC, TEDCO INC., and DEBORAH PIAZZA as chapter 7 trustee,<br><br>    Defendants. | Adv. P. No. 20-01010 |

**JOINDER OF DEFENDANTS HERSCHMANN AND BOWEN IN
OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION
OF THE DECISION AND ORDER DISMISSING THIS ACTION**

TO THE HONORABLE JAMES L. GARRITY JR.,
UNITED STATES BANKRUPTCY JUDGE:

  Defendants Eric Herschmann and Michael Bowen submit this joinder in the objection filed by other named defendants (the "Objection") to the *Motion of Dalia Genger Pursuant to Fed. R. Bankr. P. 9023 and Local Rule 9023-1 (I) to Reconsider the Memorandum Decision and Order Granting the Chapter 7 Trustee and the Various Defendants' Motions to Dismiss Dalia Genger's Amended Complaint; (II) Granting Reargument; and (III) Upon Reargument, Granting Leave to Replead*, filed on August 23, 2021 (Docket No. 45) (the "Motion"), and state as follows:

**INTRODUCTION**

As demonstrated in the Objection, plaintiff has no grounds to seek reconsideration and cannot satisfy the Local Bankruptcy Rule 9023 standard for reargument. Plaintiff's motion is all-too-obviously disingenuous in claiming that the Court overlooked matters that the Court in fact addressed at length in the thorough written Decision and Order at issue. That written decision refutes all of plaintiff's rehashed arguments in her reconsideration motion. Herschmann and Bowen submit this joinder to emphasize that, in addition to filing a wholly meritless motion for reconsideration, plaintiff's bad faith is underscored by her arguments concerning them when she had already previously agreed, both in writing and in open court, to withdraw her claims in this action as against them.

**ARGUMENT**

Contrary to her wholly indefensible position in her reconsideration motion, Dalia previously stated in writing she was withdrawing her claims against Bowen and Herschmann. Her withdrawal was prompted by Bowen and Herschmann's Rule 9011 motions. After the first complaint in this action was filed, Bowen and Herschmann served Dalia and her counsel with notice of their Rule 9011 motion because the first iteration of her complaint made no actionable claims about them at all. In response, Dalia abandoned that bad faith pleading by filing an amended complaint on June 7, 2020. ECF Doc. No. 8 (the "Compl."). Thereafter, in response to defendants' second Rule 9011 motion, Dalia stated in her opposition to defendants' motion to dismiss that she "agreed" to dismiss her claims against Bowen and Herschmann. Dalia Br., Adv. Pr. 20-1010 ECF No. 39, at 2 ("if they now wish to be excused from the case, Dalia has no objection, as long as it can be assured that the Notes will not be alienated"). At oral argument on March 19, 2021, the Court ruled from the bench dismissing the claims against Bowen. At that same argument, Dalia's counsel reneged on her "agreement" to dismiss Herschmann. She

2

instead tried to condition that dismissal on Herschmann abandoning his security interest in the $2 million loan during oral argument on the motions to dismiss, which he refused.  *See* March 19, 2021 Tr. at 113:17 to 114:4, and 118:8-15.

Because plaintiff's reconsideration motion revives the same blatantly false claims about Herschmann and Bowen – baselessly trying to impugn and becloud their professional reputations for over a year now – they served notice of their third Rule 9011 motion.  (Copy attached hereto as Exhibit A).  Despite repeated warnings and Dalia's own prior withdrawal of her claims against them, she refused to withdraw her motion and newest iteration of her incessantly false claims.

## I.   DALIA'S FALSE CLAIMS CONCERNING MICHAEL BOWEN

Dalia's motion to reconsider contains or refers to the following allegations concerning Bowen, all of which are false and have no evidentiary support or good faith basis:

1. *"Bowen holds the Trump Notes as an agent of Orly."  Compl. ¶ 4, ¶ 23.*

There is no even conceivable basis for this claim.  Bowen holds the notes as agent for the "AG Group," not Orly, as the relevant documentation states.  The AG Group is comprised of Orly Genger, her father (Arie Genger) and two other individuals and their corporate entities, as set forth in the notes and the June 2013 Settlement Agreement pursuant as to which the notes were issued.  This is set forth on the face of settlement agreement and the notes, as amended, which are attached to the annexed Rule 9011 motion.

2. *"As Orly's attorney involved in the relevant events, Bowen knew of Dalia's interest in the Trump Notes prior to taking possession thereof."  Compl. ¶ 4.*

Bowen does not, nor could he, "know" of "Dalia's interest" since she has no adjudicated interest in the notes, only an as-yet unadjudicated (and baseless) claim to have an interest – a claim that is contradicted by Bowen's former client, the Debtor Orly Genger.  Bowen, moreover, "possesses" the notes only as the escrow agent for the AG Group as payee of the notes.  He did

3

not "take possession" of the notes in the sense of having or claiming a pecuniary interest based on a claim of possession, ownership or otherwise.

Moreover, Bowen did not know or begin to represent Orly until January 2015, in connection with a state court fraud action against Sagi Genger captioned *Orly Genger v. Sagi Genger*, N.Y. County Index No. 100697/2008. The settlement agreement and notes were negotiated and executed two years before this, and the attorney representing the AG Group at the time was named as the escrow agent for the AG Group. It was not until 2017 when the settlement agreement was amended that Bowen became the escrow agent for the AG Group. *Id.* Bowen accordingly had no "involve[ment] in the relevant events" whatsoever.

3. *"Bowen falsely testified under oath and falsely represented to various courts (a) that Orly has nothing to do with either the Trump Notes or an additional $17.3 million that Orly received from the Rights, and (b) that no written agreement exists with respect to the disposition of the proceeds of the Trump Notes." Compl. ¶ 4. See also Mot. to Reconsider at 8 n. 1 ("Mr. Bowen, fraudulently concealed the existence of her March 31, 2017 Escrow Agreement…")*

This claim is made in bad faith, with no conceivable reasonable basis. Bowen testified as the corporate representative for his law firm, Kasowitz Benson Torres LLP, at a deposition taken by Sagi in connection with post-judgment discovery in the action captioned *Dalia Genger v. Sagi Genger*, S.D.N.Y. Case No. 17-cv-8181. In that deposition, Bowen, as representative of the firm, provided testimony about facts known to the firm, including Orly's legal position that she has nothing to do with the Notes or the "additional $17.3 million," that she is entitled to no proceeds in connection with those Notes or funds, and that she has no written agreement allocating the proceeds among the members of the AG Group. Bowen testified truthfully that his law firm is aware of no such written agreement. Moreover, no evidence exists to contradict the legal position as to the Notes taken consistently by Orly throughout all the related litigations. She has never received a penny of any of the Notes proceeds or of the "additional $17.3 million,"

4

and has never made any claim to that money.  Further, and as was confirmed at the trial on the motion to dismiss this bankruptcy, no document exists that contradicts her legal position, including the March 2017 agreement referenced by Dalia.  Dalia and her counsel have no proof to the contrary or any reasonable basis to believe evidence to the contrary exists.  Likewise, the assertion that Bowen fraudulently concealed the March 2017 agreement at the deposition is a patent falsehood.  The questioner never asked about that agreement.  Nor was the topic of that agreement (the relative priority of repayment of the Herschmann Note and the ADBG debt) even raised at the deposition.

In the Decision and Order, this Court ruled that plaintiff is misreading Bowen's testimony and her charge that he provided false testimony has no support in the transcript of the actual testimony.  Her motion to reconsider is based on nothing more than the same already-rejected misreading.  Her argument for reconsideration amounts to a plea that the Court "re-read" the entirety of the transcript – which is for all practical purposes an express acknowledgement that the Court overlooked nothing and consequently that no basis for reconsideration exists in this regard at all.

4. *"The Trump Notes were secretly and fraudulently transferred to Bowen, and the future proceeds thereof fraudulently encumbered, in purported satisfaction of false liabilities and for no consideration to Orly."  Compl. ¶ 40.*

The Notes were not transferred to Bowen, as even Dalia and her counsel must be aware and are charged with knowing on the ground that they must have done at least minimally competent due diligence.  Bowen serves as escrow agent for the "AG Group," which is comprised of multiple individuals and entities, as set forth in the notes and the settlement agreement pursuant to which the notes were issued.  Additionally, Bowen became the escrow agent for the AG Group not in secret, but pursuant to a duly authorized written amendment to the settlement agreement which was executed in 2017 by all of the members that comprise the AG

5

Group. This amendment was produced to Sagi Genger long before this bankruptcy proceeding began, in connection with post-judgment discovery in Case No. 17-cv-8181, at Bates No. KBT_17cv8181_jdgmt_0000010.

All of these circumstances were made crystal clear to Dalia and the Court, including during the March 19, 2021 hearing on the motions to dismiss. Dalia has no basis to seek any relief whatsoever against Bowen.

## II.  DALIA'S FALSE CLAIMS CONCERNING ERIC HERSCHMANN

Dalia's motion to reconsider contains or refers to the following allegations concerning Herschmann, all of which are false and have no evidentiary support or good faith basis:

1. *"Eric claims to have an interest in the Trump Notes, which interest was created after Eric became aware of Dalia's interest therein." Comp. ¶ 7. "Eric claims an interest in Orly's assets including the Trump Notes as evidenced by a UCC lien he filed in 2017. Eric's lien is void because the debt it purports to secure is wholly contrived and false." Comp. ¶ 26.*

As demonstrated in the attached Rule 9011 motion with exhibits, Dalia has no interest in the notes, which were issued in connection with the 2013 settlement agreement and which on their face are payable to the AG Group. Dalia is not a member of the AG Group.

Dalia also has no basis to claim that the $2 million loan from Herschmann is not real. Two members of the AG Group, Arie Genger and Orly Genger, borrowed $2 million from Herschmann pursuant to a secured promissory note dated December 30, 2016. At their direction, the $2 million was wired to Kasowitz Benson Torres LLP to cover a portion of Orly Genger's outstanding legal bills at that time. A copy of the wire transfer confirmation reflecting the payment on account of the loan is attached hereto to the Rule 9011 motion. No evidence contradicts this; nor can Dalia have a reasonable expectation to develop such evidence in discovery. It is a hard fact that the $2 million loan was made, the funds transferred and that the

terms are reflected in a loan agreement signed by the relevant parties. None of this has anything to do with "Dalia's interest" claim in the Notes.

In connection with the loan and promissory note, Herschmann obtained a security interest in all of the borrowers' tangible and intangible assets, as reflected in numerous public UCC filings. These UCC filings provide a lien against the notes in that Arie claims to be entitled to the notes proceeds. To that extent (and to the extent that, contrary to Orly's legal position, she is adjudicated to be an owner of the Notes proceeds in whole or in part), Herschmann has a valid interest therein. Again, this is incontestable, as Dalia well knows.

2. *"Eric knew of Dalia's interest in the Trump Notes prior to asserting his interest therein because he materially participated in the events that led to their creation." Comp. ¶ 7*

As stated above, Dalia has no interest in the notes. Additionally, Herschmann had no involvement whatsoever in the "events that led to the[] creation" of the notes. The notes were issued in 2013. Herschmann and KBT began representing Orly Genger in January 2015 in connection with a state court fraud action against Sagi Genger captioned *Orly Genger v. Sagi Genger*, N.Y. County Index No. 100697/2008, two years after the settlement agreement and notes were created. Dalia has not evidentiary support and no good faith basis to claim evidence will support her patently false claim that Herschmann had any involvement in the creation of the notes or, indeed, in the underlying subject settlement agreement.

3. *Eric asserted to Courts on various occasions that Orly has never had an interest in the Trump Notes or the $17.3 million realized from Orly's monetization of the Rights, most recently in a letter to Judge Garrity. That assertion was made despite contrary written recitations in the March 2017 escrow agreement that he executed." Comp. ¶ 7. "Eric also asserts a claim against the Trump Notes through the March 2017 escrow agreement. That agreement was executed after Dalia's constructive trust and/or equitable lien came into being with Eric's full knowledge of the events that led to it." Comp. ¶ 26.*

As noted above, Dalia has no evidentiary basis to claim, contrary to Orly's own legal position, that Orly has an "interest" in the notes.

7

Dalia's citation to the March 2017 agreement is not evidence to the contrary.  Nothing in that agreement is proof of any kind that Herschmann made knowingly false statements about Orly's lack of interest in the notes.  Her reconsideration motion, moreover, wholly ignores that the statements and positions taken by Herschmann as a legal advocate for his client are protected by an absolute litigation privilege.  *See Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718 (2015) (affirming it is "well-settled that statements made in the course of litigation are entitled to absolute privilege").

4. Eric *"was aware of the events that created Dalia's constructive trust and/or equitable lien as he personally represented Orly before Judge Forrest in 2014 and thereafter married her."* Comp. ¶ 26.

Dalia has no interest in the 2013 settlement agreement or the notes issued pursuant thereto.  Additionally, Herschmann did not begin to represent Orly Genger until January 2015, in the case captioned *Orly Genger v. Sagi Genger*, N.Y. County Index No. 100697/2008.  This is a matter of record.

Further, in the case before Judge Forrest, the Second Circuit held that the determination regarding Orly's so-called "monetization" attributable to her allocation of TRI shares was that Orly necessarily received more than a "peppercorn," such that consideration supported the 2004 agreement between Orly and Sagi.  *Genger v. Genger*, 663 F. App'x 44, 49 (2d Cir. 2016).  That decision, too, is no evidentiary support for Dalia's claim that Herschmann somehow was "aware" Dalia had an "interest" in the notes.

5. *"Eric's liens are at the very least a constructive fraud as against Orly and/or Dalia and therefore void."* Comp. ¶ 26.

First, there is no such thing as "constructive fraud."  Second, this complaint brought by Dalia cannot purport to assert any cause of action on behalf of Orly Genger.  Third, Dalia alleges none of the elements of a fraud claim, which would have required Herschmann to make a false

8

representation of material fact to Dalia, on which Dalia reasonably relied, which caused damage to Dalia. Dalia fails to plead any of these elements in the Complaint.

6.   *Herschmann "trumpeted" matters to the state court. Mot. to Reconsider at 9.*

The relevant transcript of proceedings in state court makes crystal-clear that Herschmann did not "trumpet" anything. Rather, he informed JHO Gammerman that the state court judge had in fact quashed one of the many subpoenas Sagi had served, which is far from improper. *See* ECF No. 419-8 at 72:20-24.

### III.   JOINDER IN OBJECTION OF OTHER DEFENDANTS

Herschmann and Bowen also join and hereby adopt and incorporate herein all of the arguments and authorities cited in the Objection by the other defendants and other joinders therein.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration should be denied in its entirety and a return date for the annexed Rule 9011 motion should be set.

Dated: October 13, 2021

By: /s/ Eric D. Herschmann
Eric D. Herschmann
210 Lavaca Street, #1903
Austin TX  78701
EDHNoice@gmail.com

GLENN AGRE BERGMAN & FUENTES LLP

By: /s/ Michael Paul Bowen
55 Hudson Yards, 20th Floor
New York, NY 10001
(212) 358-5600
mbowen@glennagre.com

9