# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Orly Genger,<br><br>          Debtor. | Chapter 7<br><br>Case No. 19-13895-JLG |
| DALIA GENGER,<br>          Plaintiff,<br><br>-against-<br><br>ORLY GENGER, MICHAEL BOWEN, ARIE GENGER, ARNOLD BROSER, DAVID BROSER, ERIC HERSCHMANN, THE GENGER LITIGATION TRUST, ADBG LLC, TEDCO INC., and DEBORAH PIAZZA as chapter 7 trustee,<br><br>          Defendants. | Adv. P. No. 20-01010 |

**MOTION FOR SANCTIONS AGAINST DALIA GENGER
AND HER COUNSEL PURSUANT TO RULE 9011**

Pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure, Eric D. Herschmann and Michael Paul Bowen (together, "Movants") move for sanctions against Dalia Genger and her counsel, Paul Labov and his firm Pachulski Stang Ziehl & Jones LLP (together, "Dalia") for their frivolous "Motion To Reconsider" after this Court already allowed them to file an amended complaint to try to cure their prior blatantly frivolous complaint.

**INTRODOCUTION**

Mr. Labov told the Court he welcomed a Rule 9011 motion.  Mar. 19, 20201 Tr. at 118:14-16 ("Clearly, Mr. Herschmann doesn't want to give up the lien priority.  Okay?  And so if that issue needs to be litigated, I welcome a Rule [90]11.  That's fine.")  Movants bring that motion now with respect to (i) Dalia's Amended Complaint (ECF No. 8) and (ii) her new motion

for reconsideration (ECF No. 45).  In both filings, Dalia and her counsel make sanctionable false claims against Movants.  They have refused to withdraw these filings voluntarily.  Pursuant to Rule 9011, both filings should be stricken from the record, Dalia and her counsel should be monetarily sanctioned, and movants should be awarded their costs and attorneys' fees incurred on this motion.

As Judge Davis aptly noted at the beginning of this bankruptcy case, he did not "need a linguistic algorithm to tell" him that various court filings signed by others were in fact ghost written by Sagi's lawyer, John Dellaportas.  *In re Orly Genger*, W.D. Tx. Case No. 19-10926, Oct. 24, 2019 Tr at 8:4-6.  "Dalia's" motion, which Mr. Labov submitted as his own argument, to reconsider is so obviously a creation of Sagi's lawyer that it is surprising that Mr. Dellaportas did not just sign his own name.  It has all the Sagi/Dellaportas rhetorical flourishes of bold and italics and allegations that everyone "lied," or "fraudulently concealed" or did some other terrible harm to Sagi and his cohorts.  Similar to his past baseless allegations, he/Dalia is wrong on every front.

The latest request that Dalia get a third bite at the apple to try again to amend her complaint to fix her deficiencies is baseless, and therefore sanctionable.  As to Herschmann, Dalia could only muster this incoherent sentence to try to justify her request to reconsider her complaint:  "Instead, her lawyer/husband trumpeted the Court's mistaken reliance on the fraudulent affidavit as profoundly significant to the merits of the underlying trial (which Orly subsequently went on to lose).  *See* Doc. 419-8, pp. 72-76."

First, the cited transcript in no way supports the allegation about Herschmann "trumpeting" a purported "fraudulent affidavit."  This is why "Dalia" does not quote any part of

it in her motion.[1]  In reality, all Herschmann did was update JHO Gammerman about a ruling

that Justice Jaffe had recently issued quashing a subpoena to Mr. Broser, which is far from

improper.  ECF No. 419-8 at 72:20-24 ("MR. HERSCHMANN: Your Honor, we just got a

notice Judge Jaffe that she quashed the subpoena that Mr. Dellaportas issued to David Broser and

the Broser Family regarding the settlement that happened subsequent to this fraud.")

Herschmann took no position regarding Mr. Broser's motion to quash, and did not "trumpet" the

trial judge's decision as to anything, let alone as "profoundly significant to the merits of the

underlying trial."  The representations of Dalia and her counsel are accordingly demonstrably

false.  Of course, even if they were true, anything Herschmann said in court during the course of

litigation in connection with the representation of his client is definitively a form of protected

speech, protected by the litigation privilege, such that it could never form the basis of Dalia's

false claims.

Unsurprisingly, Dalia's falsehood is almost a direct quote from another baseless and

improper filing made by Sagi against the Kasowitz firm, which the Court did not authorize to be

filed in the first place.  Using similar language as in "Dalia's" instant motion to reconsider, Sagi

previously stated essentially the exact same thing, but in place of "lawyer/husband," the

Kasowitz law firm supposedly did the purported "trumpeting":

> As for David Broser, Mr. Broser succeeded in quashing his subpoena based on an
> affidavit now known to be not just false, but brazenly so.  The incident is
> described on pages 14-16 of Adv. Pro. 20-01010-jlg, Doc. 19… The only
> necessary addition to Doc. 19 is that the Kasowitz firm knew Mr. Broser's
> affidavit was false, but despite their duties as officers of the Court, stood silently
> by while Broser's lawyers promulgated falsehoods.  Then, once the Court
> accepted those falsehoods, they *trumpeted* the ruling to JHO Gammerman *as
> significant to the case at large*. Exh. H 72-78."

---

[1] Moreover, contrary to what Dalia contends, Orly did not go on to lose the trial against Sagi.  Rather, Sagi was
found liable of breaching his fiduciary duties to her, among other wrongdoing, which findings were unanimously
upheld by the New York Appellate Division.  *Orly Genger v. Dalia Genger, et al.*, 147 A.D.3d 443 (N.Y. App. Div.
2017).  The damages portion of the case remains on appeal.

ECF No. 419 at 20 (emphasis added). Sagi had no basis to support his claim against Kasowitz, and Dalia has no basis to support her same claim against Herschmann. But that does not stop her/Sagi from making it again. Moreover, Dalia's "lawyer/husband" comment is also clearly baseless considering it cannot be disputed the quotes that they rely upon in making their frivolous argument were made before Herschmann was married to Orly.

Further, as the Court will recall, Dalia, through counsel, had previously agreed in writing to dismiss Herschmann and Bowen from the case in responding to the motions to dismiss (Dalia Br., ECF No. 39, at 2 ("if they now wish to be excused from the case, Dalia has no objection, as long as it can be assured that the Notes will not be alienated."). However, during oral argument, Mr. Labov reversed himself and his and Dalia's prior written representations to the Court and instead conditioned the dismissal of Herschmann on his waiving his security interest in the bankruptcy estate in connection with his $2 million loan. *See* March 19, 2021 Tr. at 118:8-15. Mr. Labov did agree at the argument, and the Court so-ruled, that Bowen is dismissed from the case . *Id.* at 113:17 to 114:4.

## ARGUMENT

Rule 9011 provides that in order to assert claims against an adversary in an adversary proceeding, the claimant must have evidentiary support for the claims or a reasonable good faith belief that evidentiary support will likely be obtained through discovery. *See* Fed. R. Bankr. P. 9011(b)(1) and (3). On January 22, 2020, Dalia filed an adversary proceeding against Movants (and others), *Dalia Genger v. Orly Genger, et al.*, Adv. Pro. No. 20-01010-JLG, for a declaratory judgment and imposition of a constructive trust. The original complaint in the action made no allegations of actionable conduct against either Movant at all. On May 18, 2020, Movants served Dalia with a Rule 9011 motion based on the fact that her original pleading is wholly

devoid of evidentiary support or any good faith basis.  Instead of defending that indefensible pleading, Dalia abandoned that bad faith pleading by filing an amended complaint on June 7, 2020.  ECF Doc. No. 8 (the "Compl.").  The amended complaint fixed nothing.  It is self-evidently baseless and therefore sanctionable under Rule 9011.

Thereafter, Dalia agreed in her opposition to movant's motion to dismiss to withdraw all claims against Bowen and Herschmann, and the Court did dismiss Bowen from the case during the March 19, 2021 argument on their motion to dismiss.  Dalia has now walked this back by way of her frivolous motion to reconsider, despite having failed to include any allegations which support her claims against Herschmann or Bowen in the amended complaint, and though she has absolutely no basis to seek any relief against them at all.

## I.  DALIA'S FALSE CLAIMS CONCERNING MICHAEL BOWEN

The Complaint and the motion to reconsider contain the following allegations concerning Bowen, all of them are false and have no evidentiary support or good faith basis:

1.   "Bowen holds the Trump Notes as an agent of Orly."  Compl. ¶ 4, *see id.* ¶ 23.

There is no even conceivable basis for this claim.  Bowen holds the notes as agent for the "AG Group," not Orly, as the relevant documentation states.  The AG Group is comprised of Orly Genger, her father (Arie Genger) and two other individuals and their corporate entities, as set forth in the notes and the June 2013 Settlement Agreement pursuant as to which the notes were issued.  This is set forth on the face of settlement agreement and the notes, as amended, which are attached hereto as Exhibit A.

2.   "As Orly's attorney involved in the relevant events, Bowen knew of Dalia's interest in the Trump Notes prior to taking possession thereof."  Compl. ¶ 4.

Bowen does not, nor could he, "know" of "Dalia's interest" since she has no adjudicated interest in the notes, only an as-yet unadjudicated (and baseless) claim to have an interest – a

claim that is contradicted by Bowen's former client, the Debtor Orly Genger.  Bowen, moreover,

"possesses" the notes only as the escrow agent for the AG Group as payee of the notes.  *See* Ex.

A.  He did not "take possession" of the notes in the sense of having or claiming a pecuniary

interest based on a claim of possession, ownership or otherwise.

Moreover, Bowen did not know or begin to represent Orly until January 2015, in

connection with a state court fraud action against Sagi Genger captioned *Orly Genger v. Sagi

Genger*, N.Y. County Index No. 100697/2008.  The settlement agreement and notes were

negotiated and executed two years before this, and the attorney representing the AG Group at the

time was named as the escrow agent for the AG Group.  Ex. A.  It was not until 2017 when the

settlement agreement was amended that Bowen became the escrow agent for the AG Group.  *Id.*

Bowen accordingly had no "involve[ment] in the relevant events" whatsoever.

3. "Bowen falsely testified under oath and falsely represented to various courts (a) that Orly has
   nothing to do with either the Trump Notes or an additional $17.3 million that Orly received
   from the Rights, and (b) that no written agreement exists with respect to the disposition of the
   proceeds of the Trump Notes."  Compl. ¶ 4.  *See also* Mot. to Reconsider at 8 n. 1 ("Mr.
   Bowen, fraudulently concealed the existence of her March 31, 2017 Escrow Agreement…")

This claim is made in bad faith, with no conceivable reasonable basis.  Bowen testified as

the corporate representative for his law firm, Kasowitz Benson Torres LLP, at a deposition taken

by Sagi in connection with post-judgment discovery in the action captioned *Dalia Genger v. Sagi

Genger*, S.D.N.Y. Case No. 17-cv-8181.  In that deposition, Bowen, as representative of the

firm, provided testimony about facts known to the firm, including Orly's legal position that she

has nothing to do with the Notes or the "additional $17.3 million," that she is entitled to no

proceeds in connection with those Notes or funds, and that she has no written agreement

allocating the proceeds among the members of the AG Group.  Bowen testified truthfully that his

law firm is aware of no such written agreement.  Moreover, no evidence exists to contradict the

legal position as to the Notes taken consistently by Orly throughout all the related litigations.

She has never received a penny of any of the Notes proceeds or of the "additional $17.3 million," and has never made any claim to that money.  Further, and as was confirmed at the trial on the motion to dismiss this bankruptcy, no document exists that contradicts her legal position, including the March 2017 agreement referenced by Dalia.  Dalia and her counsel have no proof to the contrary or any reasonable basis to believe evidence to the contrary exists.  Likewise, the assertion that Bowen fraudulently concealed the March 2017 agreement at the deposition is a patent falsehood.  The questioner never asked about that agreement.  Nor was the topic of that agreement (the relative priority of repayment of the Herschmann Note and the ADBG debt) even raised at the deposition.

No member of the Bar should so-lightly repeatedly accuse another member in good standing of intentional falsehood, much less falsely testifying under oath or making false representations to the courts.  To do so, repeatedly, in utter bad faith, as Dalia and her counsel have done here, should be severely reprimanded with sanctions.

4.  "The Trump Notes were secretly and fraudulently transferred to Bowen, and the future proceeds thereof fraudulently encumbered, in purported satisfaction of false liabilities and for no consideration to Orly."  Compl. ¶ 40.

The Notes were not transferred to Bowen, as even Dalia and her counsel must be aware and are charged with knowing on the ground that they must have done at least minimally competent due diligence.  Bowen serves as escrow agent for the "AG Group," which is comprised of multiple individuals and entities, as set forth in the notes and the settlement agreement pursuant to which the notes were issued.  Ex. A.  Additionally, Bowen became the escrow agent for the AG Group not in secret, but pursuant to a duly authorized written amendment to the settlement agreement which was executed in 2017 by all of the members that comprise the AG Group.  *Id.*  This amendment was produced to Sagi Genger long before this

bankruptcy proceeding began, in connection with post-judgment discovery in Case No. 17-cv-8181, at Bates No. KBT_17cv8181_jdgmt_0000010.

All of these circumstances were made crystal clear to Dalia and the Court, including during the March 19, 2021 hearing on the motions to dismiss. Dalia has no basis to seek any relief whatsoever against Bowen.

## II.    DALIA'S FALSE CLAIMS CONCERNING ERIC HERSCHMANN

The Complaint and the motion to reconsider contain the following allegations concerning Herschmann, and all of them are false and have no evidentiary support or good faith basis:

1. **"Eric claims to have an interest in the Trump Notes, which interest was created after Eric became aware of Dalia's interest therein." Comp. ¶ 7. "Eric claims an interest in Orly's assets including the Trump Notes as evidenced by a UCC lien he filed in 2017. Eric's lien is void because the debt it purports to secure is wholly contrived and false." Comp. ¶ 26.**

Dalia has no interest in the notes, which were issued in connection with the 2013 settlement agreement and which on their face are payable to the AG Group. Ex. A. Dalia is not a member of the AG Group. *Id.*

Dalia also has no basis to claim that the $2 million loan from Herschmann is not real. Two members of the AG Group, Arie Genger and Orly Genger, borrowed $2 million from Herschmann pursuant to a secured promissory note dated December 30, 2016. At their direction, the $2 million was wired to Kasowitz Benson Torres LLP to cover a portion of Orly Genger's outstanding legal bills at that time. A copy of the wire transfer confirmation reflecting the payment on account of the loan is attached hereto as <u>Exhibit B</u>. No evidence contradicts this; nor can Dalia have a reasonable expectation to develop such evidence in discovery. It is a hard fact that the $2 million loan was made, the funds transferred and that the terms are reflected in a loan agreement signed by the relevant parties. None of this has anything to do with "Dalia's interest" claim in the Notes.

In connection with the loan and promissory note, Herschmann obtained a security interest in all of the borrowers' tangible and intangible assets, as reflected in numerous public UCC filings. These UCC filings provide a lien against the notes in that Arie claims to be entitled to the notes proceeds. To that extent (and to the extent that, contrary to Orly's legal position, she is adjudicated to be an owner of the Notes proceeds in whole or in part), Herschmann has a valid interest therein. Again, this is incontestable, as Dalia well knows.

**2.   "Eric knew of Dalia's interest in the Trump Notes prior to asserting his interest therein because he materially participated in the events that led to their creation." Comp. ¶ 7**

As stated above, Dalia has no interest in the notes. *See supra*; Ex. A. Additionally, Herschmann had no involvement whatsoever in the "events that led to the[] creation" of the notes. The notes were issued in 2013. Ex. A. Herschmann and KBT began representing Orly Genger in January 2015 in connection with a state court fraud action against Sagi Genger captioned *Orly Genger v. Sagi Genger*, N.Y. County Index No. 100697/2008, two years after the settlement agreement and notes were created. Dalia has not evidentiary support and no good faith basis to claim evidence will support her patently false claim that Herschmann had any involvement in the creation of the notes or, indeed, in the underlying subject settlement agreement.

**3.   "Eric asserted to Courts on various occasions that Orly has never had an interest in the Trump Notes or the $17.3 million realized from Orly's monetization of the Rights, most recently in a letter to Judge Garrity. That assertion was made despite contrary written recitations in the March 2017 escrow agreement that he executed." Comp. ¶ 7. "Eric also asserts a claim against the Trump Notes through the March 2017 escrow agreement. That agreement was executed after Dalia's constructive trust and/or equitable lien came into being with Eric's full knowledge of the events that led to it." Comp. ¶ 26.**

As noted above, Dalia has no evidentiary basis to claim, contrary to Orly's own legal position, that Orly has an "interest" in the notes.

Dalia's citation to the March 2017 agreement is not evidence to the contrary.  Nothing in
that agreement is proof of any kind that Herschmann made knowingly false statements about
Orly's lack of interest in the notes.

**4.  Eric "was aware of the events that created Dalia's constructive trust and/or equitable lien as he personally represented Orly before Judge Forrest in 2014 and thereafter married her."  Comp. ¶ 26.**

Dalia has no interest in the 2013 settlement agreement or the notes issued pursuant
thereto.  *See supra*; Ex. A.  Additionally, Herschmann did not begin to represent Orly Genger
until January 2015, in the case captioned *Orly Genger v. Sagi Genger*, N.Y. County Index No.
100697/2008.  This is a matter of record.

Further, in the case before Judge Forrest, the Second Circuit held that the determination
regarding Orly's so-called "monetization" attributable to her allocation of TRI shares was that
Orly necessarily received more than a "peppercorn," such that consideration supported the 2004
agreement between Orly and Sagi.  *Genger v. Genger*, 663 F. App'x 44, 49 (2d Cir. 2016).  That
decision, too, is no evidentiary support for Dalia's claim that Herschmann somehow was
"aware" Dalia had an "interest" in the notes.

**5.  "Eric's liens are at the very least a constructive fraud as against Orly and/or Dalia and therefore void."  Comp. ¶ 26.**

First, there is no such thing as "constructive fraud."  Second, this complaint brought by
Dalia cannot purport to assert any cause of action on behalf of Orly Genger.  Third, Dalia alleges
none of the elements of a fraud claim, which would have required Herschmann to make a false
representation of material fact to Dalia, on which Dalia reasonably relied, which caused damage
to Dalia.  Dalia fails to plead any of these elements in the Complaint.

**6. Herschmann "trumpeted" matters to the state court.  Mot. to Reconsider at 9.**

As stated above, this entire concept was lifted directly from an equally frivolous (and unauthorized) filing by Sagi.  In any case, the transcript in question makes crystal-clear that Herschmann did not "trumpet" anything.  Rather, he informed JHO Gammerman that the state court judge had in fact quashed one of the many subpoenas Sagi had served, which is far from improper.  *See* ECF No. 419-8 at 72:20-24.  All of Herschmann's statements are also definitively protected by the litigation privilege.

## III.   THIS MOTION IS TIMELY BROUGHT AND PROCEDURALLY PROPER

This motion was served twenty-one days before it was filed.  By failing to withdraw the Complaint as against Movants, Dalia and her attorneys are in breach of Rule 9011 and should be sanctioned, including dismissal of the action and awarding attorneys' fees to Movants.  The award of fees should be against both Dalia as client and her counsel, who is ethically required to ensure compliance with this rule. Fed R. Bankr. P. 9011(c).  See In re Gorshtein, 285 B.R. 118, 125 (Bankr. S.D.N.Y. 2002); In re Hudson, No. 00-11683, 2010 WL 3504767, at *5 (Bankr. N.D.N.Y. Aug. 30, 2010) (affirming imposition of Rule 9011 sanctions on attorney-litigant); In re R & J Ventures, Inc., No. 07-61325, 2007 WL 4287715, at *3-4 (Bankr. N.D.N.Y. Dec. 4, 2007) (confirming sanctions can be imposed on both parties and their attorneys) (citing Oliveri v. Thompson, 803 F.2d 1265, 1271 (2d Cir. 1986)).

## CONCLUSION

For the foregoing reasons, the Rule 9011 motion should be granted in its entirety, the complaint in the Dalia adversary proceeding and the motion for reconsideration should be stricken, and the Court should award Movants attorneys' fees and costs, against both Dalia and

her counsel, which Movants have incurred in having to bring this motion and respond to the

frivolous motion to reconsider.

Dated: August 29, 2021

By:  /s/ Eric D. Herschmann            GLENN AGRE BERGMAN & FUENTES
Eric D. Herschmann                     LLP
210 Lavaca Street, #1903
Austin TX  78701                       By: /s/ Michael Paul Bowen
EDHNoice@gmail.com                     55 Hudson Yards, 20th Floor
                                       New York, NY 10001
                                       (212) 358-5600
                                       mbowen@glennagre.com

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement and release (this "Agreement") is entered into as of
June 16, 2013, by and between Arie Genger and Orly Genger (in her individual capacity and in
her capacity as beneficiary of the Orly Genger 1993 Trust), Arnold Broser, David Broser, (in
their individual capacity and on behalf of all entities managed, owned or controlled in any way
by Arnold Broser or David Broser and which are in any way related to the subject matter hereof
("Broser Entities" and collectively with Arie Genger and Orly Genger in all capacities referenced
above, the "AG Group"), and TR Investors, LLC ("TR Investors"), Glenclova Investment Co.
("Glenclova"), New TR Equity I, LLC ("New TR I"), New TR Equity II, LLC ("New TR II" and,
together with TR Investors, Glenclova and New TR I, the "Trump Entities"), Trans-Resources,
LLC (the successor to Trans-Resources, Inc. and together with its predecessor entities referred to
herein as, "Trans-Resources"), Jules Trump, Eddie Trump and Mark Hirsch (collectively, with
the Trump Entities and Trans-Resources, the "Trump Group"). The members of the AG Group
and the Trump Group are each referred to herein individually as a "Party" and together as the
"Parties".

**WHEREAS**, in March 2001, TR Investors, Glenclova, Trans-Resources and TPR
Investment Associates, Inc. ("TPR") entered into a stockholders agreement with respect the
common stock of Trans-Resources (the "Stockholders Agreement");

1

**WHEREAS**, since August 2008, Arie Genger, Orly Genger, the Trump Group and others have been engaged in various litigations (described below) concerning the ownership and control of Trans-Resources; and

**WHEREAS**, the Parties wish to resolve all issues, disputes and disagreements between them, including but not limited to the issue of ownership of all Trans-Resources shares;

**NOW, THEREFORE**, in consideration of the promises and representations contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.    **Recitals.**    The above recitals are incorporated into and made a part of this Agreement and are binding on all Parties hereto.

2.    **Initial Consideration from the Trump Group.**    Upon dismissal with prejudice of the claims, counterclaims, cross-claims, third-party claims, issues and matters as provided in Paragraph 4 below, the Trump Group shall promptly:

(a)    release all claims they may have to the (i) $7,428,994.00 plus interest held by Skadden, Arps, Slate, Meagher & Flom LLP as escrow agent (the "Skadden Escrow") and (ii) $10,314,005.00 plus interest held by with Pedowitz & Meister as escrow agent (the "P&M Escrow");

(b)    pay to Wachtel, Masyr & Missry, LLP as attorneys for the AG Group ("Wachtel") an amount in cash equal to $35,000,000.00 minus (i) the amount held in the Skadden Escrow, and (ii) the amount held in the P&M Escrow.

2

3.    **Further Consideration from the Trump Group.**  Trans-Resources on

behalf of the Trump Group shall pay: (i) $7,500,000 to Wachtel on the third  anniversary of the

Effective Date (defined below), and (ii) $7,500,000 to Wachtel 364 days following the third

anniversary of the Effective Date The payments provided under this paragraph shall be (a)

subject to the terms and conditions herein and (b) evidenced by two (2) promissory notes that are

substantially in the form attached as Exhibit A hereto (the "Notes").  Notwithstanding anything

else herein, the maturity of the two $7,500,000 Notes shall be delayed beyond their due date until

the earlier (the "Extended Maturity Date") of  (A) such time as all pending claims, cross-claims

and counter-claims brought by any of TPR, Sagi Genger, the Sagi Genger 1993 Trust, the Orly

Genger 1993 Trust (other than the Orly Trust Action (as defined below)), D&K Limited

Partnership, D&K GP LLC, Rochelle Fang, and/or David Parnes (collectively, the "Sagi Group")

against any member of the Trump Group have been dismissed with prejudice and the statute of

limitations shall have run with respect to any other potential claims of the Sagi Group that might

be the subject of the Indemnification provided for by Paragraph 5 below or (B) such time as each

member of the Sagi Group shall have provided the Trump Group with a release of the Trump

Group Released Parties (as defined below) and covenant not to sue in form and substance that is

the same as the AG release and covenant not to sue contained in Paragraph 6(a) below (the "Sagi

Group Release").

Subject to the foregoing, the Notes shall become immediately due and payable upon the

occurrence of any transaction or series of transactions which shall result in the Trump Group

owning or controlling neither (i) a majority of the voting stock of Trans-Resources or its

successors or each of its two principal subsidiaries, Haifa Chemicals, Ltd. and Na-Churs Plant

3

Food Company or their successors, nor (ii) directly or indirectly, a majority of the assets

currently owned by Trans-Resources and its subsidiaries; provided, however, that in such event,

at the request of the Trump Group, the amounts then payable on the Notes shall be placed in

escrow for the duration of their original term or until the Extended Maturity Date (if applicable)

under the provisions of an escrow agreement on reasonable terms to be negotiated at such time in

good faith between Trans-Resources, the payee and an escrow agent selected by their mutual

consent, which shall provide for their release to the Trump Group in payment of Indemnification

Amounts, AG Group Release Amounts and Discovery Costs (as such terms are defined below),

if any, and payment to the payee of such amounts after reduction for Indemnification Amounts,

AG Group Release Amounts and Discovery Costs, if any, upon their original maturity date or the

Extended Maturity Date (if applicable).  If Trans-Resources is unable to pay the Notes as and

when they mature, the Trump Group will be obligated to make payment thereon in an amount

equal to the lesser of (x) the outstanding amounts not paid by the obligor thereunder and (y) any

amount by which cash payments received by members of the Trump Group (other than Trans-

Resources) from Trans-Resources and its subsidiaries since the Effective Date (whether in the

form of dividends, distributions, compensation or otherwise) exceeds reasonable compensation

for services rendered plus payments for goods, services and assets provided by such persons in

amounts that would have been paid for such goods, services and assets in arms' length

transactions with unaffiliated third parties; provided, however, that in neither case shall the

Trump Group be obligated to pay any amount that exceeds the outstanding amounts not paid by

Trans-Resources on the Notes (subject to any Indemnification Amounts, AG Group Release

Amounts or Discovery Costs).

4

4.     **Dismissal of Claims with Prejudice**.  Within two (2) business days of the

Effective Date (defined below), the AG Group and the Trump Group shall take all actions

necessary or desirable to:  (i) effect the dismissal with prejudice of all claims, counterclaims,

cross-claims, third-party claims, issues and matters between them, and to vacate all court orders

which restrain, enjoin or in any way limit actions by any members of the Trump Group, in each

pending action in which members of the AG Group and the Trump Group are parties (whether or

not service of process with respect thereto has been effected), including, without limitation, each

of the following pending actions (collectively, the "Litigation"):  *Genger v. TR Investors, LLC*,

No. 168, 2013 (Del.); *TR Investors, LLC v. Genger*, C.A. No. 6697-CS (Del. Ch.); *Trans-*

*Resources, Inc. v. Genger*, C.A. No. 4391-CS (Del. Ch.) (with respect to Arie Genger only); *TR*

*Investors, LLC, et al. v. Genger*, C.A. No. 3994-CS (Del. Ch.); *Glenclova Investment Co. v.*

*Trans-Resources, Inc., at al.*, No. 08 Civ. 7140 (JFK) (S.D.N.Y.); *Arie Genger and Orly Genger*

*v. Sagi Genger, et al.*, Index No. 651089/2010 (N.Y. Supr.); and (ii) have the New York State

Supreme Court enter a definitive non-appealable order declaring that members of the Trump

Group own all right, title and interest (beneficially, of record and otherwise) to the shares of

Trans-Resources purportedly transferred by TPR in October 2004 to Arie Genger (the ("Arie

Shares") and to the Orly Genger 1993 Trust (the "Orly Trust Shares"),  with the understanding

and agreement that should the request for the entry of such an order with respect to the "Orly

Trust Shares" be denied or not entered in a reasonably timely fashion,  then the AG Group and

the Trump Group shall take all action necessary or desirable to have the New York State

Supreme Court vacate all court orders which restrain, enjoin or in any way limit actions by the

5

parties to the pending action captioned *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors, LLC, et al.,* C.A. No. 6906-CS (Del. Ch.) (the "Orly Trust Action"), to prosecute, defend, compromise, settle and otherwise deal with all claims, counterclaims, cross-claims, third-party claims, issues and matters asserted therein; provided, however, that nothing in this Agreement is intended to require or permit the dismissal of any claims, counterclaims, cross-claims, third-party claims, issues and matters, (i) in *Trans-Resources, Inc. v. Genger,* C.A. No. 4391-CS (Del. Ch.) (the "Breach of Fiduciary Duty Case"), as between the Trump Group and Avi Pelossof and/or William Dowd (subject to the exchange of general releases between the members of the Trump Group and William Dowd as contemplated below) and (b) against TPR, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust, D&K Limited Partnership, D&K GP LLC, Sagi Genger or Dalia Genger. Any member of the AG Group including, without limitation, Orly Genger, who is called to testify in the Litigation or the Orly Trust Action, agrees to testify that he, she (in her individual capacity, ~~on behalf of the Orly Genger 1993 Trust,~~ and as beneficiary of the Orly Genger 1993 Trust) or it has waived all claims he, she (in her individual capacity, ~~on behalf of the Orly Genger 1993 Trust,~~ and as beneficiary of the Orly Genger 1993 Trust) or it had or may have to ownership (record, beneficial or otherwise) of any shares of Trans-Resources and that he, she (in her individual capacity, ~~on behalf of the Orly Genger 1993 Trust,~~ and as beneficiary of the Orly Genger 1993 Trust) or it is opposed to the Orly Genger 1993 Trust seeking any remedy of any kind against any member of the Trump Group. Notwithstanding the foregoing, upon receipt by the Trump Group of a general release in form and substance reasonably satisfactory to it, the Trump Group shall provide the same general

6

release to William Dowd and cause the dismissal of the Breach of Fiduciary Duty Case as

between the Trump Group and him.

     5.    **Indemnification**.

     (a)    Upon closing of this Agreement, each of the members of the AG

Group with the exception of Arnold Broser and David Broser and the Broser Entities, jointly

and severally, agrees to indemnify and hold harmless (i) each of the members of the Trump

Group, and their respective past and present affiliates and direct and indirect subsidiaries, and (ii)

each of the past and present agents, representatives, officers, directors, advisors, employees,

general partners, limited partners, shareholders, members, predecessors, successors, heirs,

executors, administrators and assigns of each person and entity referenced in clause (i), from all

reasonable costs, expenses, attorneys' fees of counsel selected by the Trump Group (it being

agreed that the Trump Group will cooperate with the AG Group in all reasonable respects to

cause the amount of such costs, expenses and its attorneys' fees to be minimized), settlements

and/or judgments (whether direct or related to joint and several liability) (the "Indemnification

Amounts") incurred as a result of, in connection with, or relating in any way to any (x) claims,

counterclaims, cross-claims or third-party claims raised or that could have been raised in the

Litigation, and (y) claims that are pending, have been brought, or that may in the future be

brought by or on behalf of any of TPR, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust

(other than those claims currently pending in the Orly Trust Action), D&K Limited Partnership,

D&K GP LLC, Sagi Genger, David Parnes or Dalia Genger, regardless of whether they were or

could have been raised in the Litigation or the Orly Trust Action, relating in any way, whether

directly or indirectly, to (A) the Shareholders Agreement entered into by Trans-Resources

shareholders and Trans-Resources on March 30, 2001, (B) the transfer of interests in TPR or the

purported transfer of shares of Trans-Resources by TPR in October 2004, (C) any activities or

developments relating to or conducted by Trans-Resources or any of its direct or indirect

subsidiaries that occurred prior to September 26, 2008, (D) the acquisition by the Trump Group

of all interests (record, beneficial or otherwise) of the so called "Arie Shares", "Orly Trust

Shares" and the shares of Trans-Resources purportedly transferred by TPR in October 2004 to

the Sagi Genger 1993 Trust (the "Sagi Trust Shares") (including, without limitation, the

negotiations for the ownership or acquisition of such shares), (E) the control of Trans-Resources

or any of its direct or indirect subsidiaries by the Trump Group through its acquisition of the

aforementioned shares, (F) records and documents (including but not limited to electronic files)

in the possession, custody or control of Trans-Resources or any of its direct or indirect

subsidiaries, (G) misrepresentations made or improper acts conducted prior to September 26,

2008 by any officer or director of Trans-Resources, (H) this Agreement,  (I) the business or

operations of Trans-Resources or any of its direct or indirect subsidiaries conducted prior to

September 26, 2008 arising from or in any way related to the conduct of any member of the AG

Group, Avi Pelossof or William Dowd, or (J) the conduct of any other individual to the extent

Arie Genger is aware, or should have been aware, thereof. Notwithstanding the foregoing, the

indemnity provided for above shall not apply to any claims which may be brought subsequent to

the Effective Date (and which are entirely unrelated to any claim brought prior to such date) by

any of Sagi Genger, the Sagi Genger 1993 Trust or TPR and which arise solely out of actions

taken or not taken by members of the Trump Group which actions or inactions no member of the

AG Group was aware of or should have been aware of; provided, however, that such claim was

8

not encouraged or solicited by any member of the AG Group and no member thereof cooperates

in asserting, instituting or prosecuting such claim. Notwithstanding anything herein to the

contrary, the undertaking of William Wachtel hereunder shall not exceed under any circumstance

an amount greater than $5,000,000.

(b)   The Trump Group may request payment or reimbursement of the

Indemnification Amounts at any time by providing a written statement or copy of an underlying

invoice or expense documentation to any member of the AG Group at the addresses set forth in

Paragraph 16 below, and the AG Group shall pay such indemnified expenses in full and in cash

within five (5) business days of the date such request is made.  The supporting documentation

submitted with any payment or reimbursement request hereunder may be redacted as necessary

to preserve attorney-client privilege, attorney work product, or confidential information the

Trump Group may, in its reasonable determination, need to protect.  The Trump Group will

provide the AG Group with reasonable notice prior to making any motion or taking any appeal

with respect to, or in, any past, present or future action or claim for which the Trump Group is

seeking indemnification, and such notice will be accompanied by a non-binding estimate of the

legal fees and costs associated with such motion or appeal. The Trump Group authorizes the AG

Group and their respective counsel to discuss directly with the Trump Group's appointed counsel

the amount and scope of any invoice for which the Trump Group is seeking indemnification.

The AG Group in its sole discretion may settle any indemnified claim so long as there is no

monetary contribution to be paid by the Trump Group, and the Trump Group is released, in form

and substance reasonably satisfactory to it, from any liability relating to any such indemnified

9

claim. The Trump Group shall not enter into any settlement of any indemnified claim, or

discussions with respect thereto, without the express written consent of the AG Group.

(c)     With respect to each Indemnification Amount, until such time as it

has been paid over to the Trump Group, the members of the AG Group shall remain jointly and

severally liable for such Indemnification Amount and, the Trump Group may at its option pursue

all legal remedies available to it and/or withhold an amount equal to such unreimbursed

Indemnification Amount from any payments by Trans-Resources to be made pursuant to the

Notes.

6.     **Releases**.

(a)     **The AG Group Release.** Effective on the Effective Date, each of

the members of the AG Group, for itself, himself or herself, and in all capacities, and on behalf

of its (and its respective affiliates' and direct and indirect subsidiaries'), his or her respective

agents, representatives, officers, directors, advisors, employees, general partners, limited partners,

shareholders, members, subsidiaries and affiliates, and each of their respective predecessors,

successors, heirs, executors, administrators and assigns, and any other persons or entities acting

in concert with any of them including, without limitation, any member of the Sagi Group which

he, she or it shall at any time directly or indirectly control or be deemed authorized to act on

behalf of (individually, an "AG Group Releasing Party" and collectively, the "AG Group

Releasing Parties"): (i) fully, finally, irrevocably and unconditionally waives, releases and

discharges each of the members of the Trump Group and its (and its respective past and present

affiliates' and direct and indirect subsidiaries'), his or her respective past and present agents

10

(including Skadden, Arps, Slate, Meagher & Flom LLP in any capacity, including as Escrow

Agent for the Skadden Escrow or for any escrow in which it held, holds, or may hold, any

dividends or distributions from Trans-Resources), representatives, officers, directors, advisors,

employees, general partners, limited partners, shareholders, members, subsidiaries and affiliates,

and each of their respective predecessors, successors, heirs, executors, administrators and assigns

(collectively, the "Trump Group Released Parties"), from any and all claims, counterclaims,

demands, proceedings, actions, causes of action, orders, obligations, damages, debts, costs,

expenses and other liabilities whatsoever and however arising, whether known or unknown, past,

present or future, suspected or unsuspected, contingent or actual, both at law and in equity,

including without limitation, claims for fraud or fraud in the inducement (collectively, "Claims"),

which such AG Group Releasing Party now has, has ever had or may hereafter claim to have

against any Trump Group Released Party or its, his or her assets, liabilities or operations from

the beginning of the world through the Effective Date (individually, an "AG Group Released

Claim" and collectively, the "AG Group Released Claims"); and (ii) agrees not to assert, institute

or prosecute, or encourage, solicit or cooperate with any other person or entity in asserting,

instituting or prosecuting, any proceeding against any of the Trump Group Released Parties in

any jurisdiction (domestic or foreign, including, without limitation, the State of Israel) with

respect to any AG Group Released Claim or any other Claim relating in any way, directly or

indirectly, to Trans-Resources or any of its direct or indirect subsidiaries, the ownership or

acquisition of Trans-Resources shares (including any dividends or distributions relating thereto

or any escrow in which such dividends or distributions may currently be or in the past have been

held), the Litigation, the Orly Trust Action, control of Trans-Resources or any of its direct or

11

indirect subsidiaries, the business or operations of Trans-Resources or any of its direct or indirect subsidiaries, or arising out of this Agreement including, without limitation, the negotiation and execution of this Agreement or the AG Group Releases provided hereunder; provided, however, that this AG Group Release shall not apply to any Claims (x) seeking equitable relief to enforce the terms of this Agreement or claims seeking payment of the Notes or any indemnification payments required to be paid hereunder, (y) relating solely to events that transpired in their entirety subsequent to the Effective Date and that could not, under any circumstances, have possibly been pursued prior to the Effective Date whether or not then known, and (z) between any of the AG Group Releasing Parties and TPR, and/or any other member of the Sagi Group.

If an AG Releasing Party brings an AG Group Released Claim or other Claim in violation of the immediately preceding paragraph, the AG Group, jointly and severally, agrees to indemnify the Trump Group for any and all settlements, judgments, costs and fees, including legal fees and disbursements of counsel chosen by the Trump Group, incurred in working on, preparing for or defending such claim ("AG Group Release Amounts"). With respect to each AG Group Release Amount, until such time as such AG Group Release Amount has been paid over to the Trump Group, the members of the AG Group shall remain jointly and severally liable for such AG Group Release Amount, and the Trump Group may at its option pursue all legal remedies available to it and/or withhold an amount equal to such unreimbursed AG Group Release Amount from any payments to be made by Trans-Resources pursuant to the Notes. For purposes of the removal of all doubt, it is the parties' intention that no claims shall be brought or pursued by any member of the AG Group against any member of the Trump Group for any

12

reason whatsoever (other than claims permitted under clause (x), (y) and (z) of the immediately

preceding paragraph).

        (b)    **The Trump Group Release.** Effective on the Effective Date, each

of the members of the Trump Group, for itself or himself, and in all capacities, and on behalf of

its (and its respective affiliates' and direct and indirect subsidiaries'), or his respective agents,

representatives, officers, directors, advisors, employees, general partners, limited partners,

shareholders, members, subsidiaries and affiliates, and each of their respective predecessors,

successors, heirs, executors, administrators and assigns, and any other persons or entities acting

in concert with any of them (individually, a "Trump Group Releasing Party" and collectively, the

"Trump Group Releasing Parties"): (i) fully, finally, irrevocably and unconditionally waives,

releases and discharges each of the members of the AG Group and its (and its respective past and

present affiliates' and direct and indirect subsidiaries'), his or her respective past and present

agents, representatives, officers, directors, advisors, employees, general partners, limited partners,

shareholders, members, subsidiaries and affiliates, and each of their respective predecessors,

successors, heirs, executors, administrators and assigns (collectively, the "AG Group Released

Parties"), from any and all claims, counterclaims, demands, proceedings, actions, causes of

action, orders, obligations, damages, debts, costs, expenses and other liabilities whatsoever and

however arising, whether known or unknown, past, present or future, suspected or unsuspected,

contingent or actual, both at law and in equity including, without limitation, claims for fraud or

fraud in inducement, ("Claims"), which such Trump Group Releasing Party now has, has ever

had or may hereafter claim to have against any AG Group Released Party or its, his or her assets,

liabilities or operations from the beginning of the world through the Effective Date (individually,

13

a "Trump Group Released Claim" and collectively, the "Trump Group Released Claims"); and (ii)

agrees not to assert, institute or prosecute, or encourage, solicit or cooperate with any other

person or entity in asserting, instituting or prosecuting, any proceeding against any member of

the AG Group Released Parties with respect to any Trump Group Released Claim or any other

Claim relating in any way, directly or indirectly, to Trans-Resources or any of its direct or

indirect subsidiaries, the ownership or acquisition of Trans-Resources shares, control of Trans-

Resources or any of its direct or indirect subsidiaries, the business or operations of Trans-

Resources or any of its direct or indirect subsidiaries, or the negotiation and execution of this

Agreement or the Trump Group Releases provided hereunder; provided, however, that this

Trump Group Release shall not apply to any Claims (x) seeking equitable relief to enforce  the

terms of this Agreement or claims seeking payment of any indemnification payments required to

be paid hereunder, (y) relating solely to events that transpired in their entirety subsequent to the

Effective Date and that could not, under any circumstances, have possibly been pursued prior to

the Effective Date whether or not then known, and (z) between any of the Trump Group

Releasing Parties and Avi Pelossof, William Dowd (unless and until the exchange of mutual

general releases between the Trump Group and William Dowd referred to above) and/or TPR.

If a Trump Group Releasing Party brings a Trump Group Released Claim or other Claim

in violation of the immediately preceding paragraph, the Trump Group, jointly and severally,

agrees to indemnify the AG Group for any and all settlements, judgments, costs and fees,

including legal fees and disbursements of counsel chosen by the AG Group, incurred in working

on, preparing for or defending such claim ("Trump Group Release Amounts").  With respect to

each Trump Group Release Amount, until such time as such Trump Group Release Amount has

14

been paid over to the AG Group, the members of the Trump Group shall remain jointly and

severally liable for such Trump Group Release Amount, and the AG Group may at its option

pursue all legal remedies available to it.  For purposes of the removal of all doubt, it is the parties

intention that no claims shall be brought or pursued by any member of the Trump Group against

any member of the AG Group for any reason whatsoever (other than claims permitted under

clause (x), (y) and (z) of the immediately preceding paragraph).

   7. **Discovery Obligations**.  Effective on the Effective Date (defined

below), to the extent that a member of the AG Group or the Orly Genger 1993 Trust seeks

discovery or testimony from any member of the Trump Group, or if any member of the Trump

Group is subpoenaed by any party to an action in which any member of the AG Group or the

Orly Genger 1993 Trust is a party, each of the members of the AG Group, jointly and severally,

agrees that to the extent indemnities of the Trump Group provided for elsewhere in this

Agreement do not apply, they shall indemnify the Trump Group for any and all costs and fees,

including reasonable legal fees and disbursements of counsel to be chosen by the Trump Group

(it being understood that for the purposes of this Discovery Obligation indemnity only, the

indemnification for legal fees shall be limited to $750 per hour of legal services), incurred in

working on, preparing for or defending such claim, it being agreed that the Trump Group will

cooperate with the AG Group in all reasonable respects to cause the amount of such costs and

fees, including its attorneys' fees and disbursements to be minimized ("Discovery Costs").  With

respect to each Discovery Cost, until such time as such Discovery Cost has been paid over to the

Trump Group, the members of the AG Group shall remain jointly and severally liable for such

Discovery Cost, and the Trump Group may at its option pursue all legal remedies available to it

and/or withhold an amount equal to such unreimbursed Discovery Cost from any payments to be made by Trans-Resources pursuant to the Notes.

8.  **Cooperation.**

(a)    Each member of the AG Group shall take all actions necessary or desirable, as promptly as practicable and as may be requested by the Trump Group from time to time including, without limitation, testifying in the Orly Trust Action, to (i) effectuate the release of the AG Group Released Claims and to prevent or preclude any other person or entity from asserting, instituting or prosecuting, or encouraging, soliciting or cooperating with any other person or entity in asserting, instituting or prosecuting, any proceeding or claims against any of the Trump Group Released Parties with respect to any AG Group Released Claim or any other Claim relating in any way, directly or indirectly, to Trans-Resources or any of its direct or indirect subsidiaries, the ownership or acquisition of Trans-Resources shares, the control of Trans-Resources or any of its direct or indirect subsidiaries, records and documents (including but not limited to electronic files) in the possession, custody or control of Trans-Resources or any of its direct or indirect subsidiaries or the business or operations of Trans-Resources or any of its direct or indirect subsidiaries brought by any party without regard to whether such party is a signatory hereto and (ii) cause the Orly Genger 1993 Trust to release any and all claims against the Trump Group Released Parties, including, without limitation, any claims pending in the Orly Trust Action.

(b)    As a condition to any settlement that any member of the AG Group shall enter into with any member of the Sagi Group, the AG Group parties to such settlement shall cause each Sagi Group party to such settlement to (i) dismiss with prejudice all pending claims, cross-claims and counter claims against any of the Trump Group Released Parties (as defined below)

16

and to provide the Sagi Group Release, and (ii) if the Orly Genger 1993 Trust is a party to such

settlement, cause it to agree in writing to become an AG Group member for purposes of

providing the indemnity contained in Paragraph 5. Likewise, as a condition to any agreement by

the AG Group to a replacement trustee for the Orly Genger 1993 Trust, the AG Group shall use

its best efforts to cause such trustee to agree in writing on behalf of the Orly Genger 1993 Trust

that it shall be a member of the AG Group for purposes of providing the indemnity contained in

Paragraph 5.

(c)     Each member of the AG Group covenants that for so long as the indemnity

contained in Paragraph 5 remains in effect, he, she or it shall not contribute or deposit any

amounts, or permit to be contributed or deposited any amounts (including, without limitation,

any payments made under Paragraphs 2 and 3), to or with the Orly Genger 1993 Trust or to any

other trust or entity that any of them directly or indirectly controls or is or was established at

their direction, or that is or was established or exists for any of their direct or indirect benefit,

unless such trust or entity has agreed in writing to being a member of the AG Group for purposes

of providing the indemnity contained in Paragraph 5. The foregoing shall not restrict members

of the AG Group from investing in or with such entities provided that that such investment may

be liquidated, without restriction, by such member of the AG Group from time to time as may be

necessary to comply with the terms of the indemnity contained in Paragraph 5.

(d)     The AG Group covenants that, subject to any confidentiality orders of any court

or other restrictions imposed by law (i) with respect to any court filing made or received by it

concerning the Orly Genger 1993 Trust, it shall contemporaneously provide a copy thereof to the

Trump Group, and (ii) contemporaneously with its becoming aware of any changes or

17

contemplated material changes to the Orly Genger 1993 Trust including, without limitation, the

resignation of its trustee and/or the appointment of a replacement trustee, it shall provide written

notice thereof to the Trump Group.

9. **Confidentiality.** The Parties and their counsel shall not disclose the

terms of this Agreement, except if, upon written advice of counsel, it is required to do so by law.

Notwithstanding the foregoing, disclosure may be made by the Parties: (i) to their respective

accountants, financial advisors or attorneys (collectively, "Advisors") as required to obtain tax or

legal advice, it being agreed that each Party shall apprise its Advisors of the obligation to

maintain such confidentiality and that each Party shall be accountable for any breach of this

provision by its respective Advisors, and (ii) notwithstanding anything to the contrary in this

Agreement, the Parties may disclose the terms of this Agreement if necessary in any action to

enforce this Agreement or as may be required to respond to a valid subpoena, court order or

other legal process. Each Party agrees that he, she or it will promptly give notice of any attempt

to compel disclosure of the terms of this Agreement to each of the other Parties, at least five (5)

days before compliance is required.

10.    **Third Party Beneficiaries.** This Agreement shall have no third party

beneficiaries except for those persons and entities that are not Parties hereto but are covered by

the releases set forth in Paragraph 6 above, who may enforce those releases.

11.    **Binding Effect**

This Agreement shall be binding upon and inure to the benefit of each of the Parties hereto and

(where applicable) their respective current and former agents, representatives, officers, directors,

advisors, employees, general partners, limited partners, shareholders, members, subsidiaries and

18

affiliates, and each of their respective predecessors, successors, heirs, executors, administrators

and assigns.

12.    **Representations and Warranties.**

(a)    Each Party represents that it, he or she is authorized to enter into

this Agreement and to grant the rights granted by it, him or her in this Agreement. Each Party

further represents that, to the extent any non-party consents are required for the performance of

any of its, his or her obligations under this Agreement (including, without limitation, with any

entity controlled by any Party, including any of its partners or equity holders), it, he or she has

obtained such consents.

(b)    Each Party has the benefit of the advice of counsel chosen and

employed by it, him or her concerning this Agreement.

(c)    Each Party is the sole owner and holder of the Claims it is releasing

under this Agreement, and represents that none of the Claims released herein have been assigned,

pledged, encumbered, or otherwise transferred in whole or in part, to any other person or entity.

(d)    Each member of the AG Group represents that he, she or it is

knowledgeable, sophisticated and experienced in business, financial and other matters relevant to

his, her or its entry into this Agreement and the transactions contemplated hereby, and has

engaged advisors, experienced in the matters contemplated by this Agreement. Each member of

the AG Group has undertaken such investigation and has been provided with and has evaluated

such documents and information as he, she or it has deemed necessary to enable him, her or it to

make an informed decision with respect to the execution, delivery and performance of this

Agreement and the transactions contemplated hereby. Each member of the AG Group is

19

consummating the transactions contemplated hereby without reliance upon any express or

implied representations or warranties of any nature, whether in writing, orally or otherwise, made

by or on behalf of or imputed to any of the Trump Group Released Parties, except as expressly

set forth in this Agreement, and no member of the AG Group shall make any Claim with respect

thereto. Each member of the AG Group acknowledges that he, she or it is taking full

responsibility for making his, her or its own evaluation of the adequacy and accuracy of all

documents or information that may have been furnished to him, her or it, and that no member of

the AG Group shall have any Claim against any of the Trump Group Released Parties with

respect thereto, including for Claims relating to the accuracy or completeness of the information

that may have been furnished to him her or it. Each member of the AG Group acknowledges and

understands that each member of the Trump Group Released Parties expressly disclaims any and

all liability that may be based on any of the documents and information that may have been

furnished to any member of the AG Group and all liability based on such documents or

information or errors therein or omissions therefrom. Accordingly, each member of the AG

Group acknowledges that none of the Trump Group Released Parties has made any

representation or warranty with respect to (i) any historical information, financial or otherwise,

including without limitation results of operations (or any component thereof), cash flows, or

financial condition (or any component thereof), of Trans-Resources and/or any of its subsidiaries,

(ii) any valuations or projections or estimates of future revenues, future results of operations (or

any component thereof), future cash flows or future financial condition (or any component

thereof) of Trans-Resources and/or any of its subsidiaries or the future business and operations of

Trans-Resources and/or any of its subsidiaries, (iii) any Claims any member of the AG Group

20

may have against any of the Trump Group Released Parties or (iv) any other information or

documents that may have been made available to any member of the AG Group or their

respective counsel, accountants or advisors with respect to any of the Trump Group Released

Parties any of their respective businesses, assets, liabilities or operations, except as expressly set

forth in this Agreement.  In addition to the foregoing, each member of the AG Group

acknowledges that his, her or its entry into this Agreement and the transactions contemplated

hereby is based solely on his, her or its respective assessment and valuation of all Claims that he,

she or it may have against any of the Trump Group Released Parties and the likelihood of

success of such Claims in a court of competent jurisdiction.  Each member of the AG Group

acknowledges that the consideration to be received by the AG Group pursuant to this Agreement

constitutes full and fair consideration for the release of all Claims contemplated hereunder.

(e)      Each member of the Trump Group represents that he, she or it is knowledgeable,

sophisticated and experienced in business, financial and other matters relevant to his, her or its

entry into this Agreement and the transactions contemplated hereby, and has engaged advisors,

experienced in the matters contemplated by this Agreement.  Each member of the Trump Group

has undertaken such investigation and has been provided with and has evaluated such documents

and information as he, she or it has deemed necessary to enable him, her or it to make an

informed decision with respect to the execution, delivery and performance of this Agreement and

the transactions contemplated hereby.  Each member of the Trump Group is consummating the

transactions contemplated hereby without reliance upon any express or implied representations

or warranties of any nature, whether in writing, orally or otherwise, made by or on behalf of or

imputed to any of the AG Group Released Parties, except as expressly set forth in this

21

Agreement, and no member of the Trump Group shall make any Claim with respect

thereto. Each member of the Trump Group acknowledges that he, she or it is taking full

responsibility for making his, her or its own evaluation of the adequacy and accuracy of all

information that may have been furnished to him, her or it, and that no member of the Trump

Group shall have any Claim against any of the AG Group Released Parties with respect thereto,

including for Claims relating to the accuracy or completeness of the information that may have

been furnished to him her or it. Each member of the Trump Group acknowledges and

understands that each member of the AG Group Released Parties expressly disclaims any and all

liability that may be based on any of the documents and information that may have been

furnished to any member of the Trump Group and all liability based on such documents or

information or errors therein or omissions therefrom. Accordingly, each member of the Trump

Group acknowledges that none of the AG Group Released Parties has made any representation or

warranty with respect to (i) any historical information, financial or otherwise, including without

limitation results of operations (or any component thereof), cash flows, or financial condition (or

any component thereof), of Trans-Resources and/or any of its subsidiaries, (ii) any valuations or

projections or estimates of future revenues, future results of operations (or any component

thereof), future cash flows or future financial condition (or any component thereof) of Trans-

Resources and/or any of its subsidiaries or the future business and operations of Trans-Resources

and/or any of its subsidiaries, (iii) any claims any member of the Trump Group may have against

any of the AG Group Released Parties or (iv) any other information or documents that may have

been made available to any member of the Trump Group or their respective counsel, accountants

or advisors with respect to any of the AG Group Released Parties any of their respective

22

businesses, assets, liabilities or operations, except as expressly set forth in this Agreement. In addition to the foregoing, each member of the Trump Group acknowledges that his, her or its entry into this Agreement and the transactions contemplated hereby is based solely on his, her or its respective assessment and valuation of all Claims that he, she or it may have against any of the AG Group Released Parties and the likelihood of success of such Claims in a court of competent jurisdiction. Each member of the Trump Group acknowledges that the consideration to be received by the Trump Group pursuant to this Agreement constitutes full and fair consideration for the release of all claims contemplated hereunder.

13.    **Attorneys' Fees.** The Parties agree to be responsible for their own attorneys' fees and costs incurred in connection with this Agreement and negotiations related to and preparation of this Agreement and not to seek from each other reimbursement of any such costs, expenses or attorneys' fees.

14.    **Governing Law.**

This Agreement, and all disputes arising under this Agreement or related thereto, shall be governed by, construed and interpreted in accordance with the laws of the State of Delaware, applicable to instruments made, delivered and performed entirely in such state, without regard to the choice of law provisions thereof.

15.    **Arbitration.** UNLESS THIS AGREEMENT SPECIFICALLY PROVIDES FOR ANOTHER TYPE OF DISPUTE RESOLUTION WITH RESPECT TO A PARTICULAR KIND OF DISPUTE, ANY AND ALL CONTROVERSIES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH, TERMINATION OR VALIDITY THEREOF, SHALL BE EXCLUSIVELY SETTLED BY FINAL AND BINDING

23

ARBITRATION IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THIS
SECTION.

(a)    The arbitration shall be conducted in accordance with the Commercial
Arbitration Rules of the American Arbitration Association ("AAA") then in effect (the "Rules"),
except as set forth herein.  Any member of the Trump Group on behalf of the Trump Group, on
the one hand, and any member of the AG Group on behalf of the AG Group, on the other hand,
may demand arbitration by giving the other written notice to such effect in accordance with the
Rules.

(b)    The arbitration will be held before one neutral arbitrator.  Within thirty (30)
days after the other Party's receipt of the demand for arbitration, the Party seeking arbitration
will invite the other Party to join it in approaching the following list of individuals about serving
as arbitrator and will approach such individuals with such other Party (if its invitation is accepted)
or without such other Party (if its invitation is rejected or not responded to within five (5)
business days): The Honorable William B. Chandler III, David A. Jenkins, Esq., Stephen E.
Jenkins, Esq., Robert J. Katzenstein, Esq., and Andre G. Bouchard, Esq.  If only one such
individual is available and willing, he shall serve as the arbitrator.  If more than one such
individual is available and willing, the Parties will mutually determine which of those so
available and willing will serve as the arbitrator.  If the Parties are unable to agree, the arbitrator
will be selected by the AAA from the foregoing list in accordance with the listing, striking and
ranking procedure in the Rules, with each Party being given a limited number of strikes, except
for cause.  If none of the foregoing individuals is available, the arbitrator will be selected by the
AAA in accordance with the listing, striking and ranking procedure in the Rules, with each Party

24

being given a limited number of strikes, except for cause. Any arbitrator appointed by the AAA shall be a retired judge that presided over a state or federal court located in Delaware or a practicing attorney licensed in Delaware with no less than fifteen years of experience with large commercial cases. Any such arbitration proceedings shall be and remain confidential. The place of arbitration shall be in Manhattan, New York or elsewhere if otherwise agreed to.

(c)    Discovery will be limited to the request for and production of documents, directly related to the issues in dispute, limited depositions of limited duration, and interrogatories. Interrogatories will be allowed only as follows: a Party may request the other Party to identify by name, last known address and telephone number (i) all persons having knowledge of facts relevant to the dispute and a brief description of that person's knowledge, and (ii) any experts who may be called as an expert witness, the subject matter about which the expert is expected to testify, the mental impressions and opinions held by the expert and the facts known by the expert. All issues concerning discovery upon which the parties cannot agree will be submitted to the arbitrator for determination.

(d)    Each of the Parties agrees that it will use commercially reasonable efforts to join (and will allow the other party to join) any third party that the Parties have agreed is indispensable to the arbitration. If any such third party does not agree to be joined, the arbitration will proceed nonetheless.

(e)    The arbitrators are not empowered to award damages not permitted by the terms of this Agreement and if so permitted, then not in excess of compensatory damages, except with respect to indemnification obligations for punitive damages as provided hereunder, and

25

each Party irrevocably waives the right to recover punitive, exemplary or multiple damages with respect to any dispute other than with respect to indemnification obligations for such punitive damages as provided hereunder. The decision of, and award rendered by, the arbitrator will be final and binding on the Parties, will be in writing and will include the findings of fact and conclusions of law upon which it is based, if any.

(f)     The Parties specifically acknowledge that this Agreement evidences a transaction involving, affecting, affected by, and a part of, interstate commerce and that this agreement to arbitrate is governed by and enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

(g)     Except to the extent that any of the indemnification provisions contained herein shall be applicable (i) the Parties shall each be responsible for their own costs and expenses (including legal fees and disbursements) incurred in any arbitration, and (ii) the AG Group on the one hand and the Trump Group on the other shall each be responsible for 50% of the fees and disbursements of the arbitrator and of any costs and expenses payable to the AAA.

(h)     With respect to the enforcement, modification or vacating of any arbitration award (it being reconfirmed hereby that the arbitration award shall itself be final and binding on the Parties), the Parties submit to the exclusive jurisdiction of one or the other of (i) the United Stated District Court of the Southern District of New York sitting in the Borough of Manhattan in the City of New York and (ii) the Commercial Division of the New York State Supreme Court sitting in the Borough of Manhattan in the City of New York.

16.   **Notice.** If any Party is required to give notice to any other Party under this Agreement, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, one business day following its being sent to the recipient via Federal Express or another

26

nationally recognized over-night courier,  or by e-mail with confirmation of receipt to the

following individuals or to such other address or person as such Parties may from time to time

specify by written notice given in the manner provided above:

**If to the Trump Group:**

> Mark S. Hirsch, Esq.
>
> The Trump Group
>
> 41 Madison Avenue, Suite 4101
>
> New York, NY 10010
>
> Phone: (212) 838-1000
>
> E-mail: mhirsch@trumpgroup.com

**With Copy to:**

> Thomas J. Allingham II, Esq.
>
> Anthony W. Clark, Esq.
>
> Douglas D. Herrmann, Esq.
>
> Skadden, Arps, Slate, Meagher & Flom LLP
>
> One Rodney Square
>
> P.O. Box 636
>
> Wilmington, DE 19899
>
> Phone: (302) 651-3000
>
> E-mail:  thomas.allingham@skadden.com

27

E-mail: anthony.clark@skadden.com

E-mail: douglas.herrmann@skadden.com

**If to Arie Genger:**

Arie Genger

104 West 40th Street, 19th Floor

New York, NY 10018

E-mail: wachtel@wmllp.com

**With Copy to:**

Stephen P. Lamb, Esq.

Paul Weiss

500 Delaware Avenue, Suite 200

Wilmington, DE 19889

**If to Orly Genger:**

Orly Genger

104 West 40th Street, 19th Floor

New York, NY 10018


E-mail: wachtel@wmllp.com

**With Copy to:**

28

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.

New York, NY 10017


[]


**If to Arnold Broser or David Broser:**

David Broser

104 West 40th, 19th FloorNew York, NY 10018

E-mail:  wachtel@wmll.com

**With Copy to:**

William Wachtel

Wachtel Masyr & Missry LLP

885 second ave.
New York, NY 10017


29

17.     **Entire Agreement.** This Agreement contains the entire agreement between the Parties

concerning the subject matter hereof. Neither this Agreement nor any of its terms or provisions

shall be binding on any Party until all the Parties hereto have signed. The Parties agree that all

drafts of this Agreement are strictly confidential and shall supplement and complement any

protection, which may attach to the exchange of confidential information in settlement

discussions, whether by common law or statute including, but not limited to, Federal Rule of

Evidence 408 and comparable state laws. Any and all prior discussions and agreements between

the Parties concerning the subject matter of this Agreement are merged into this Agreement

when signed. This Agreement may not be modified or amended, nor any of its provisions

waived, except by an instrument in writing signed by all Parties. No Party has made any

warranty or representation to the other Parties that is not set forth expressly herein. In entering

into this Agreement, no Party has relied on any statement or representation made by or on behalf

of any other Party, by or on behalf of any affiliate of such other Party, or by counsel for such

other Party that is not set forth expressly in this Agreement.

18.     **No Drafting Presumption.** This Agreement shall be interpreted or construed without

any presumption that the provisions hereof should be strictly construed against the drafter, it

being agreed that the Parties and their respective counsel and other agents have fully and equally

participated in the preparation, negotiation, review and approval of all provisions of this

Agreement.

19.     **No Admissions.** The Parties have executed this Agreement for the sole purpose of

settling and disposing of all Claims between them, and it is expressly understood and agreed that

no Party hereto admits any wrongdoing on its, his or her part by executing this Agreement.

30

20.    **Binding Effect.**  It is the intention of the parties to extinguish all AG Group Released

Claims and all Trump Group Released Claims and, consistent with such intention, each of the

Parties hereby waives any and all rights, to the extent permitted by law, to assert that the Release

provided by it in Paragraph 6 hereunder is unenforceable as to any claim whatsoever and for any

reason including, without limitation, any and all rights under section 1542 of the California Civil

Code, if applicable, or any other applicable similar law or principle of common law, which may

have the effect of limiting the Releases herein.  Section 1542 of the California Civil Code

provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR.

21.    **Headings.**  The section headings contained in this Agreement are for reference purposes

only and shall not in any way effect or control the meaning or interpretation of this Agreement.

22.    **Execution in Counterparts and by PDF e-mail.**  This Agreement may be executed in

multiple counterparts and by fax or PDF e-mail, each of which, when so executed and delivered,

shall be an original, but such counterparts shall together constitute one and the same instrument

and agreement.

23.    **Effective Date.**  This Agreement shall be effective immediately upon execution and

delivery by all Parties hereto (the "Effective Date").

31

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be duly
executed as follows:

**TR Investors, LLC**                              **Arie Genger**

By: _____

Print: _____     Date: ___6/15/13___

Title: _____

Date: _____


**Glenclova Investment Co.**                 **Orly Genger (in her individual capacity and**

**in her capacity as beneficiary of the**

By: _____     **Orly Genger 1993 Trust)**

Print: _____

                                        _____

Title: _____

                                        Date: ___6/15/13___

Date: _____

32

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be duly

executed as follows:

**TR Investors, LLC**                                      **Arie Genger**


By: _____        _____


Print: MARK J. HIRSCH                         Date: _____


Title: Executive VP/General Counsel


Date: June 16, 2013



**Glenclova Investment Co.**                      **Orly Genger (in her individual capacity and**

**in her capacity as beneficiary of the**

By: _____        **Orly Genger 1993 Trust)**


Print: MARK S. HIRSCH                         _____


Title: Executive VP/General Counsel


                                                          Date: _____

Date: June 16, 2013

32

**New TR Equity I, LLC**                    **Arnold Broser**

By: _____

Print: _____          Date: ____6/11/13____

Title: _____

Date: _____


**New TR Equity II, LLC**                   **David Broser**

By: _____

Print: _____          Date: ____6/16/13____

Title: _____

Date: _____

33

**New TR Equity I, LLC**                    **Arnold Broser**

By: _Mark S. Hirsch_____          _____

Print: _MARK S. HIRSCH_____               Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_____


**New TR Equity II, LLC**                   **David Broser**

By: _Mark S. Hirsch_____          _____

Print: _MARK S. HIRSCH_____               Date: _____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_____

33

**Trans-Resources, LLC**

By: _Mark S Hirsch_____

Print: _MARK S. HIRSCH_____

Title: _Executive VP/General Counsel_

Date: _June 16, 2013_____

34

**Jules Trump**

Date: _6/16/2013_

**Eddie Trump**

Date: _____

**Mark Hirsch**

Date: _____

35

**Jules Trump**

_____

Date: _____

**Eddie Trump**

_____

Date: _June 16, 2013_

**Mark Hirsch**

_____

Date: _____

**Jules Trump**

_____

Date: _____


**Eddie Trump**

_____

Date: _____


**Mark Hirsch**

_____

Date: June 16, 2013

EXHIBIT A

*6/16/13*
*Draft - Confidential*

## [FORM OF SUBORDINATED NOTE]

**THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY APPLICABLE STATE SECURITIES LAWS AND MAY NOT BE SOLD OR TRANSFERRED WITHOUT COMPLIANCE WITH THE REGISTRATION OR QUALIFICATION PROVISIONS OF APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR APPLICABLE EXEMPTIONS THEREFROM.**

TRANS-RESOURCES

### SUBORDINATED NOTE

$7,500,000.00                                                  June __, 2013

**FOR VALUE RECEIVED**, Trans-Resources, LLC a Delaware entity (the successor to Trans-Resources, Inc. and referred to herein as the "Maker"), hereby promises to pay to the order of [_____] (the "Payee"), the principal sum of Seven Million, Five-Hundred Thousand Dollars ($7,500,000.00) pursuant to the terms and conditions of and at the times provided in the Settlement Agreement (as defined below).

1.      Notes. This Subordinated Note (this "Note") is issued pursuant to, and is subject to the terms and conditions of, the Settlement Agreement and Release, dated as of June __, 2013 by and among the AG Group and the Trump Group, as amended, restated, supplemented or otherwise modified from time to time (the "Settlement Agreement"). Terms used herein and not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement.

2.      No Interest. This Note will not accrue interest, pursuant to the terms of the Settlement Agreement.

3.      Maturity. Subject to the terms and conditions of the Settlement Agreement and this Paragraph 3, this Note shall mature and be redeemed or satisfied in full by the Maker in one installment, which shall be paid by the Maker no later than the ___ anniversary of the Effective Date (the "Maturity Date"). Notwithstanding the foregoing, the Maturity Date shall automatically be extended until the earlier (the "Extended Maturity Date") of (i) such time as all pending claims, cross-claims and counter-claims brought by any of TPR, Sagi Genger, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust (other than the Orly Trust Action), D&K Limited Partnership, D&K GP LLC, Rochelle Fang, and/or David Parnes (collectively, the "Sagi Group") against any member of the Trump Group have been dismissed with prejudice and the statute of limitations shall have run with respect to any other potential claims of the Sagi Group that might be the subject of the indemnification obligations provided for by Paragraph 5 of the Settlement Agreement and (ii) such time as each member of the Sagi Group shall have provided the Trump Group with a release of the Trump Group Released Parties and covenant not to sue in form and substance that is the same as the AG Group Release and covenant not to sue contained in Paragraph 6(a) of the Settlement Agreement. Subject to the foregoing, this Note shall become immediately due and payable upon the occurrence of any transaction or series of transactions which shall result in the Trump Group owning or controlling neither (i) a majority of the voting stock of Trans-Resources or its successors or each of its two principal subsidiaries, Haifa

Chemicals, Ltd. and Na-Churs Plant Food Company or their successors, nor (ii) directly or indirectly, a majority of the assets currently owned by Trans-Resources and its subsidiaries; provided, however, that in such event, at the request of the Trump Group, the amounts then payable on this Note shall be placed in escrow until the Maturity Date or until the Extended Maturity Date (if applicable) under the provisions of an escrow agreement on reasonable terms to be negotiated at such time in good faith between the Maker, the Payee and an escrow agent selected by mutual consent of the Maker and the Payee (such consent, not to be unreasonably withheld, conditioned or delayed), which shall provide for the release of funds from such escrow to the Maker in satisfaction of any and all Indemnification Amounts, AG Group Release Amounts and Discovery Costs owing to Maker, if any, and payment to the Payee of any amounts remaining in escrow after payment to Maker of all Indemnification Amounts, AG Group Release Amounts and Discovery Costs, if any, upon the Maturity Date hereunder or the Extended Maturity Date (if applicable).

4.      Optional Prepayments.  The Maker may voluntarily prepay this Note prior to the Maturity Date, in whole or in part, at any time, without premium or penalty.

5.      Adjustment.  In accordance with the terms of the Settlement Agreement, in the event that at any time Indemnification Amounts, Discovery Costs, AG Group Release Amounts, or other amounts due and payable by the AG Group to the Trump Group pursuant to the Settlement Agreement (the "Costs") have not been paid to the Trump Group in accordance with the terms of the Settlement Agreement, the Maker may, upon written notice to the Payee, set off and apply as a credit against the amount due under this Note any and all due, unpaid and outstanding Costs.  The rights and remedies described herein are in addition to any other rights and remedies the Parties may have under the Settlement Agreement or other applicable law.

6.      Subordination.  Pursuant to the terms of the Settlement Agreement, this Note is unsecured and shall be fully subordinated to any obligation of Trans-Resources, including, but not limited to, outstanding credit facilities, bonds, loans, tax obligations and payables.

7.      Enforcement.  The Maker hereby agrees to pay on demand all reasonable costs and expenses, including without limitation attorneys' fees and costs of collection, incurred or paid by the Payee in enforcing this Note in accordance with the Settlement Agreement.

8.      Amendments.  No failure or delay on the part of the Maker or the Payee in exercising any right, power, privilege or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power, privilege or remedy preclude any other or further exercise thereof or the exercise of any other right, power, privilege or remedy.  This Note may not be amended and the provisions hereof may not be waived, except in accordance with the terms of the Settlement Agreement.

9.      Lost Notes, etc.  If this Note is mutilated, destroyed, lost or stolen, upon receipt of evidence satisfactory to the Maker of such loss, theft, destruction or mutilation of this Note and, if requested in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to the Maker, or, in the case of any such mutilation, upon surrender and cancellation of this Note, the Maker shall issue a new Note of like tenor and amount, in lieu of this Note.

- 2 -

10.    ASSIGNMENT. THIS NOTE, INCLUDING THE RESPECTIVE RIGHTS AND OBLIGATIONS OF THE MAKER AND THE PAYEE PURSUANT THIS NOTE, MAY NOT BE ASSIGNED, TRANSFERRED, SOLD OR OTHERWISE DISPOSED OF BY EITHER THE MAKER OR THE PAYEE WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER WHICH CONSENT MAY BE WITHHELD IN SUCH PARTY'S SOLE DISCRETION.

11.    Binding Effect. The provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns permitted hereby.

*[signature page follows]*

Error! Unknown document property name.

**IN WITNESS WHEREOF**, the Maker has caused this Subordinated Note to be duly executed under seal on the date set forth above by a duly authorized representative of the Maker.

TRANS-RESOURCES, LLC


By:_____
    Name:
    Title:

### FIRST AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE

Reference is made to the Settlement Agreement and Release entered into as of June 16, 2013 (the "Agreement"), by and between (1) Arie Genger, (2) Orly Genger (in her individual capacity and as beneficiary of the Orly Genger 1993 Trust), (3) Arnold Broser, (4) David Broser; and (5) TR Investors, LLC, (6) Glenclova Investment Co., (7) New TR Equity I, LLC, (8) New TR Equity II, LLC, (9) Trans-Resources, LLC, (10) Jules Trump, (11) Eddie Trump, and (12) Mark Hirsch (collectively, the "Parties").

**WHEREAS**, Section 3 of the Agreement directs that certain payments under the Agreement are to be made to certain of the Parties designated in that Agreement as the "AG Group" by making said payments to "Wachtel" (as defined in the Agreement) as attorney for the AG Group;

**WHEREAS**, the AG Group has decided that the payments to be made under Section 3 of the Agreement are to be made to new counsel for the AG Group; and,

**WHEREAS**, the Parties agree to modify the Agreement pursuant to Section 17 of the Agreement;

### IT IS HEREBY AGREED THAT:

1.      All references to "Wachtel" in the first sentence of Section 3 of the Settlement Agreement, titled "Further Consideration from the Trump Group," are deleted, and in their place, the following is inserted:

> Michael Paul Bowen, of the law firm Kasowitz Benson Torres LLP ("KBT"),
>
> as attorney, (via wire transfer to the KBT Firm's escrow account, or as directed
>
> by Bowen or KBT in writing).

2.      All other terms of the Agreement, including the remainder of Section 3, shall remain unchanged, and in full force and effect.

3.      The Trump Group shall execute and issue amended Subrogated Notes that reflect the change noted in paragraph 1, above.  Upon execution of this Agreement, the previously issued Subordinated Notes payable to the AG Group, which designate Wachtel, Masyr & Missry, LLP, as payee are null and void.

4.      This agreement may be executed in multiple counterparts and by fax or PDF, each of which, when so executed and delivered, shall be considered an original, but such counterparts shall together constitute one and the same instrument agreement.

[signature pages follow]

IN WITNESS WHEREOF, the Parties have caused this First Amendment to the
Settlement Agreement to be duly executed as follows:

TR Investors, LLC                         Arie Genger

Name: MARK S. HIRSCH

Title: EXEC VP/GENERAL COUNSEL

Date: 7/24/2017

Glenclova Investment Co.                  Orly Genger (in her individual capacity
                                          and in her capacity as beneficiary of the
                                          Orly Genger 1993 Trust)

By MARK S. HIRSCH

Name: MARK S. HIRSCH

Title: EXEC VP/GENERAL COUNSEL

Date: 7/24/2017

IN WITNESS WHEREOF, the Parties have caused this First Amendment to the

Settlement Agreement to be duly executed as follows.

TR Investors, LLC

Name: MARK S. HIRSCH

Exec VP/GENERAL COUNSEL

Date: 7/24/2017

Glenclova Investment Co.

By Name: MARK S. HIRSCH

Exec VP/GENERAL COUNSEL

7/24/2017

Arie Genger

9/13/17

Orly Genger (in her individual capacity
and in her capacity as beneficiary of the
Orly Genger 1993 Trust)

New TR Equity I, LLC                                    Arnold Broser

By: _Mark S Hirsh_

Name: MARK S. HIRSH                          Date

Title: EXEC VP/GENERAL
                    COUNSEL

Date: 7/24/2017

New TR Equity II, LLC                          David Broser

By: _Mark S Hirsh_

Name: MARK S. HIRSCH

Title: EXEC VP/GENERAL            Date
                    COUNSEL

Date: 7/24/2017

Trans-Resources, LLC

By _Mark S Hirsh_

Name: MARK S. HIRSCH

Title: EXEC VP/GENERAL
                    COUNSEL

Date: 7/24/2017

4

**New TR Equity I, LLC**

By: _____

Name: _____

Title: _____

Date: _____

**New TR Equity II, LLC**

By: _____

Name: _____

Title: _____

Date: _____

**Trans-Resources, LLC**

By: _____

Name: _____

Title: _____

Date: _____

**Arnold Broser**

_____

Date: 9/15/17

**David Broser**

_____

Date: 9/16/17

4

Jules Trump

Date: 7/24/2017

Eddie Trump

Date: 7/24/2017

Mark Hirsch

Date: 7/24/2017

<u>TRANS-RESOURCES</u>

**<u>FIRST AMENDMENT TO SUBORDINATED NOTE</u>**

Pursuant to Section 8 of the Subordinated Note, dated June 16, 2013, from Trans-Resources, LLC, a Delaware entity (the "Marker"), to Wachtel, Masyr & Missry, LLP, as attorneys, for Seven Million Five Hundred Thousand Dollars ($7,500,000.00) (the "Original Note") with the Maturity Date (as such term is defined in the Original Note) of no later than June 14, 2017, notwithstanding which, the Maturity Date shall automatically be extended until the Extended Maturity Date (as such term is defined in the Original Note), the Maker hereby modifies the Original Note solely by striking the first paragraph and substituting the following:

> **FOR VALUE RECEIVED**, Trans-Resources, LLC a Delaware entity (the successor to Trans-Resources, Inc. and referred to herein as the "<u>Maker</u>"), hereby promises to pay to the order of Michael Paul Bowen, Esq. of Kasowitz Benson Torres, LLP, as attorney, or as he directs in writing (the "<u>Payee</u>"), the principal sum of Seven Million, Five-Hundred Thousand Dollars ($7,500,000.00) pursuant to the terms and conditions of and at the times provided in the Settlement Agreement (as defined below).

This amendment is to be appended to the Original Note, which, in all respects, as so modified remains in full force and effect.

IN WITNESS WHEREOF, the Maker has caused this First Amendment to Subordinated Note to be duly executed under seal on the date set forth below by a duly authorized representative of the Maker:

November _20_, 2017

TRANS-RESOURCES, LLC

By: _____

Name: _MARK J. HIRSCH_

Title: _EXECUTIVE VP and GENERAL COUNSEL_

<u>TRANS-RESOURCES</u>

**<u>FIRST AMENDMENT TO SUBORDINATED NOTE</u>**

Pursuant to Section 8 of the Subordinated Note, dated June 16, 2013, from Trans-Resources, LLC, a Delaware entity (the "Marker"), to Wachtel, Masyr & Missry, LLP, as attorneys, for Seven Million Five Hundred Thousand Dollars ($7,500,000.00) (the "Original Note") with the Maturity Date (as such term is defined in the Original Note) of no later than June 16, 2016, notwithstanding which, the Maturity Date shall automatically be extended until the Extended Maturity Date (as such term is defined in the Original Note), the Maker hereby modifies the Original Note solely by striking the first paragraph and substituting the following:

> **FOR VALUE RECEIVED**, Trans-Resources, LLC a Delaware entity (the successor to Trans-Resources, Inc. and referred to herein as the "<u>Maker</u>"), hereby promises to pay to the order of Michael Paul Bowen, Esq. of Kasowitz Benson Torres, LLP, as attorney, or as he directs in writing (the "<u>Payee</u>"), the principal sum of Seven Million, Five-Hundred Thousand Dollars ($7,500,000.00) pursuant to the terms and conditions of and at the times provided in the Settlement Agreement (as defined below).

This amendment is to be appended to the Original Note, which, in all respects, as so modified remains in full force and effect.

IN WITNESS WHEREOF, the Maker has caused this First Amendment to Subordinated Note to be duly executed under seal on the date set forth below by a duly authorized representative of the Maker:

November _20_, 2017

TRANS-RESOURCES, LLC

By: _Mark J. Hirsch_

Name: _MARK J. HIRSCH_

Title: _Executive VP and General Counsel_

# EXHIBIT B

Dec 29 2016 16:42:42 EST REDACTED

REDACTED    Confirmation

Value Date: 29-Dec-16
Amount Paid: USD 2000000.00
REDACTED    Reference:    REDACTED
Account Number:  REDACTED

Sys Ref In: Not Provided                    Sys Ref Out: Not Provided
Transfer Requested By:                      For Final Payment To:
ERIC DANIEL HERSCHMANN                       KASOWITZ, BENSON, TORRES
210 LAVACA ST APT 1903AUSTINTX78701         1633 BROADWAY
                                            NEW YORK NY 10019-6708

Through Ordering Bank:                      Through Beneficiary's Bank:

REDACTED                                    REDACTED

Paid to   REDACTED    Through:             Paid by   REDACTED    To:
ERIC DANIEL HERSCHMANN
210 LAVACA ST APT 1903AUSTINTX78701

Bank to Bank Information:                    Details for Beneficiary:
                                            REF: ERIC HERSCHMANN
REDACTED
                                               Genger

Instructing Party's Reference:              Beneficiary's Reference:
       REDACTED                                    REDACTED

This is a confirmation of a Funds Transfer processed by          REDACTED
Confirmation Sent: 29-Dec-2016 16:41 EST

Notice to recipient:
This message is meant for only the intended recipient of the transmission,
and may be a communication privileged by law.  If you received this message
in error, any review, use, dissemination, distribution or copying of this
information is strictly prohibited.

       REDACTED

Batch # 130075
EDH