UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                              :
                                                    :
Orly Genger,                                        :   Case No. 19-13895 (JLG)
                                                    :   Chapter 7
                          Debtor.                   :
------------------------------------------------------------x
Dalia Genger                                        :
                                                    :
                          Plaintiff,                :   Adv. P. No. 20-01010 (JLG)
                                                    :
             v.                                     :
                                                    :
Orly Genger, Michael Bowen, Arie Genger,            :
Arnold Broser, David Broser, Eric Herschmann,       :
The Genger Litigation Trust, ADBG LLC,              :
Tedco Inc., and Deborah Piazza as                   :
Chapter 7 Trustee,                                  :
                                                    :
                          Defendants.               :
------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER
## DENYING MOTION FOR RECONSIDERATION

**APPEARANCES:**

PACHULSKI STANG ZIEHL & JONES LLP
*Counsel to Dalia Genger*
780 Third Avenue, Fl. 34
New York, New York 10017
By:    Paul J. Labov

GLENN AGRE BERGMAN & FUENTES LLP
*Attorneys for Orly Genger and Michael Bowen*
885 Third Avenue, Fl. 20
New York, New York 10022
By:    Michael Bowen

HUGHES HUBBARD & REED LLP
*Attorneys for Arnold Broser, David Broser,*
*ADBG LLC, and Tedco, Inc.*
One Battery Park Plaza
New York, New York 10004
By:    Christopher Gartman

TOGUT, SEGAL & SEGAL LLP
*Attorneys for Arie Genger*
One Penn Plaza, Suite 3335
New York, New York 10119
By:   Frank A. Oswald


THE GENGER LITIGATION TRUST
By:   Lance Harris


TARTER KRINSKY & DROGIN LLP
*Attorneys for Deborah J. Piazza, Chapter 7 Trustee*
1350 Broadway, Fl. 11
New York, New York 10018
By:   Rocco A. Cavaliere


ERIC HERSCHMANN
*Appearing Pro Se*
210 Lavaca Street #1903
Austin, Texas 78701

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[1]

Orly Genger ("Orly") is a chapter 7 debtor herein. Deborah Piazza is the chapter 7 trustee of Orly's estate (the "Trustee"). Dalia Genger ("Dalia") is Orly's mother. She filed this adversary proceeding against Orly, the Trustee, and certain other defendants (the "Transferee Defendants,"[2] and collectively with Orly and the Trustee, the "Defendants"). In the four-count Amended Complaint,[3] Dalia seeks (i) the entry of a declaratory judgment that certain proceeds, including the Trump Notes, are held by Orly and the Transferee Defendants in constructive trust and/or subject to an equitable lien for her benefit; (ii) the specific enforcement of the remedy of a constructive trust in her favor and for her benefit upon the Proceeds, including the Trump Notes; (iii) the specific enforcement of an equitable lien in her favor and for her benefit upon the proceeds, including the Trump Notes; and (iv) a temporary, preliminary and/or permanent injunction enjoining and restraining the Defendants from transferring or encumbering the Trump Notes.

The Trustee,[4] and Orly with the Transferee Defendants,[5] filed motions to dismiss the Amended Complaint (together, the "Motions to Dismiss"). Those motions argued that the Court should dismiss the complaint because Dalia lacks standing to bring the claims, the claims are time-barred, and the complaint fails to state valid claims to relief against the Defendants. In its Decision

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Amended Complaint.

[2] The Transferee Defendants consist of Arie Genger, who is Orly's father and Dalia's former husband ("Arie"), Michael Bowen, the Genger Litigation Trust, Arnold Broser, David Broser, ADBG LLC, and TEDCO, Inc.

[3] *Amended Complaint*, ECF No. 8. Citations to "ECF No. __" refer to documents filed on the electronic document filed in this Adversary Proceeding.

[4] *Chapter 7 Trustee's Motion to Dismiss Dalia Genger's Complaint*, ECF No. 16.

[5] *Various Defendants' Motion to Dismiss Dalia Genger's Amended Compl*aint, ECF No. 12.

3

and Order,[6] the Court granted the Motions to Dismiss. The Court dismissed the Amended Complaint because Dalia lacked both constitutional and prudential standing to bring the claims, (ii) the claims were time barred by the statute of limitations, and (iii) the claims failed to state claims for relief. The Court also rejected Dalia's request for leave to replead the Amended Complaint.

The matter before the Court is Dalia's motion pursuant to Federal Rule of Bankruptcy Procedure 9023 (the "Bankruptcy Rules") and Local Rule 9023-1 (i) to reconsider the Decision and Order; (ii) grant reargument; and (iii) upon reargument, grant leave to replead (the "Motion").[7] Orly and the Transferee Defendants jointly filed an opposition to the Motion (the "Response").[8] The Trustee joined in the Response.[9] Dalia filed a reply in support of the Motion (the "Reply").[10]

The Court has considered the parties' submissions and heard arguments on the Motion. For the reasons set forth herein, the Court denies the Motion.

---

[6] *Memorandum Decision and Order Granting the Chapter 7 Trustee and the Various Defendants' Motions to Dismiss Dalia Genger's Amended Complaint*, ECF No. 44 (the "Decision and Order").

[7] *Motion of Dalia Genger Pursuant to Fed. R. Bankr. P. 9023 and Local Rule 9023-1 (i) to Reconsider the Memorandum Decision and Order Granting the Chapter 7 Trustee and the Various Defendants' Motions to Dismiss Dalia Genger's Amended Complaint; (ii) Granting Reargument; and (iii) upon Reargument, Granting Leave to Replead*, ECF No. 47 (the "Motion").

[8] *Various Defendants Opposition to Motion of Dalia Genger Pursuant to Fed. R. Bankr. P. 9023 and Local Rule 9023-1 (i) to Reconsider the Memorandum Decision and Order Granting the Chapter 7 Trustee and the Various Defendants' Motions to Dismiss Dalia Genger's Amended Complaint; (ii) Granting Reargument; and (iii) upon Reargument, Granting Leave to Replead*, ECF No. 47 (the "Response").

[9] *Joinder of Chapter 11 Trustee to Various Defendants Opposition to Motion of Dalia Genger Pursuant to Fed. R. Bankr. P. 9023 and Local Rule 9023-1 (ii) to Reconsider the Memorandum Decision and Order Granting the Chapter 7 Trustee and the Various Defendants' Motions to Dismiss Dalia Genger's Amended Complaint; (ii) Granting Reargument; and (iii) upon Reargument, Granting Leave to Replead*, ECF No. 48.

[10] *Reply Memorandum in Further Support of Motion of Dalia Genger Pursuant to Fed. R. Bankr. P. 9023 and Local Rule 9023-1 (i) to Reconsider the Memorandum Decision and Order Granting the Chapter 7 Trustee and the Various Defendants' Motions to Dismiss Dalia Genger's Amended Complaint; (ii) Granting Reargument; and (iii) upon Reargument, Granting Leave to Replead*, ECF No. 50 (the "Reply").

**Jurisdiction**

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Background**

In 2004, Dalia and Arie divorced. Decision and Order at 6.[11] Their divorce agreement provided that Dalia would give up her marital claim to the economic benefits of 794.40 shares of Trans-Resources, Inc. ("TRI") stock to trusts benefiting Orly and her brother, Sagi Genger ("Sagi"). *Id.* at 6. Ostensibly in exchange for this divestment to her children, around the same time, Orly and Sagi entered into two agreements whose effect was essentially that Sagi agreed pay Dalia for Dalia's living expenses (the "2004 Promise") and Orly agreed to pay Sagi half of whatever Orly paid Dalia (the "2004 Indemnity," and with the 2004 Promise, the "2004 Integrated Agreement"). *Id.* at 6–7.

The dispute in the Amended Complaint ripened when, in 2013, Orly "monetized" the TRI shares held in her trust. *See id.* at 1. In June 2013, Orly, Arie, and others reached a settlement agreement with the Trump Group[12] over the ownership of TRI shares (the "2013 Settlement Agreement"). *Id.* at 12. This settlement resulted in a significant payout (i.e., the monetization)

---

[11] The facts set out here are those that the Court assumed true for purposes of the motions to dismiss.

[12] The Trump Group refers to a group of investors led by Jules Trump and Eddie Trump. Decision and Order at 11. This group became involved in the Genger family disputes when they purchased a controlling interest in TRI from Arie in 2008. *Id.* The Trump Group's claim to ownership of TRI shares, including those held by the Orly Trust, was a central issue in the various lawsuits and settlements involving the Genger family. *Id.* The 2013 Settlement Agreement recognized the Trump Group as the rightful owner of all TRI shares, including those previously claimed by Orly and her trust. *Id.* at 12.

5

where the Trump Group paid $17.3 million in cash to the AG Group's counsel[13] and issued two promissory notes worth $7.5 million each for the benefit of the AG Group. *Id.* at 12–13.

**The Amended Complaint and the Motions to Dismiss**

On January 22, 2020, Dalia brought this adversary proceeding by filing the two-count Complaint.[14] She sought a declaratory judgment establishing a constructive trust over the monetized proceeds of the TRI shares. Decision and Order at 19. On June 7, 2020, Dalia filed the Amended Complaint.

In response, the Trustee and Orly and the Transferee Defendants filed the Motions to Dismiss. The motions centered on three arguments: (i) that Dalia lacked standing to bring her claims; (ii) that the claims were time-barred under the applicable statute of limitations; and (iii) that the Amended Complaint failed to state valid claims to relief against the Defendants. *Id.* at 3–4.

**The Decision and Order**

The Court granted the Motions to Dismiss. It ruled that Dalia lacked both constitutional and prudential standing to bring her claims. *Id.* at 36. The Court found that Dalia failed to demonstrate a financial interest in the proceeds from Orly's monetization of the TRI shares. *Id.*

Second, the Court determined that Dalia's claims were time-barred by New York's six-year statute of limitations for imposition of a constructive trust or equitable lien. *Id.* at 45. The Court found that the statute began running in 2013 when Orly monetized the rights at issue, and

---

[13] The "AG Group" consisted of Arie Genger, Orly Genger, and David Broser (individually and on behalf of entities he controlled). *Id.* Specifically, the payment was allegedly made to an individual named Wachtel Masyr, counsel to the AG Group. *Id.*

[14] *Dalia Genger's Complaint Seeking a Declaratory Judgment and the Imposition of a Constructive Trust for the Benefit of Dalia Genger*, ECF No. 1 (the "Complaint").

6

since Dalia did not file suit until 2020, her claims fell outside the six-year period. *Id.* at 39–40. The Court also rejected Dalia's arguments for tolling the statute of limitations. *Id.* at 43.

Third, the Court analyzed each of Dalia's claims[15] (beyond the problems noted above) and found that none stated a claim upon which relief could be granted:

1. For the constructive trust claim (Count Two), the Court found that Dalia failed to adequately allege a confidential or fiduciary relationship with Orly. *Id.* at 49–50. The Court noted that a parent-child relationship alone is insufficient to establish a confidential relationship, and that Dalia failed to allege an express or implied promise by Orly to support Dalia, or demonstrate unjust enrichment. *Id.* at 51, 53.

2. For the equitable lien claim (Count Three), the Court determined that Dalia failed to allege facts pointing to any agreement that specific property would secure an obligation. *Id.* at 54–55.

3. For the injunction claim (Count Four), the Court found that it failed because Dalia did not demonstrate any right to or interest in the Trump Notes or other proceeds of the 2013 Settlement Agreement. *Id.* at 56.

Finally, the Court denied Dalia's request for leave to file a further-amended complaint, finding that amendment would be futile given the fundamental defects in standing and timeliness. *Id.* at 56.

**The Motion**

Dalia argues that the Court overlooked evidence and misconstrued controlling precedent on three key issues. Motion ¶ 2. First, she contends that the Court overlooked the fact that Orly directly promised to financially support Dalia from the proceeds of certain TRI shares—particularly as evidenced by a 2015 district court decision. *Id.* ¶¶ 2, 4. That decision found that "[a]s part of the divorce, Dalia agreed to convey her marital rights to 794.40 shares of TRI to trusts

---

[15] Dalia agreed to dismiss Count One, because the relief she sought on that ground was subsumed by Counts Two and Three. Decision and Order at 4.

7

benefiting Sagi and Orly . . . in exchange for a commitment by Sagi and Orly to financially support her." *Id.* ¶ 4 (quoting *Genger v. Genger*, 76 F. Supp. 3d 488, 492 (S.D.N.Y. 2015) ("*Genger I*")).[16] Dalia contends that this commitment was initially made only verbally, because Orly was vacationing in Fiji when the 2004 Promise was signed and could not reduce that promise to a contemporaneous writing. *Id.* ¶ 5. The Motion argues that, if allowed to replead, Dalia would expressly allege "that the District Court expressly found . . . that both Sagi and Orly had committed to support Dalia out of the proceeds of the TRI shares." *Id.* ¶ 4. Dalia asserts this allegation would establish a plausible claim that Orly made a direct promise to Dalia. *Id.* ¶¶ 4–7.

Second, Dalia argues that she and Orly had a family-based fiduciary relationship. *Id.* ¶ 2. On this, she points to Orly's own prior admissions in pleadings from other cases. *Id.* ¶¶ 9–13. Specifically, she quotes Orly's allegation, in another case, that "[a]s Trustee of the Orly Trust, Dalia owes an undiluted fiduciary duty to the Trust's beneficiary, Orly, to monitor, manage, maintain, and protect the Orly Trust's assets." *Id.* ¶ 9 (quoting Verified Complaint, *Orly Genger, in her Individual Capacity and on Behalf of the Orly Genger 1993 Trust (Both in its Individual Capacity and on Behalf of D&K Partnership) v. Dalia Genger, et al.,* No. 109749/2009, NYSCEF No. 2 ¶ 71 (N.Y. Sup. Ct. filed Aug. 24, 2009) (the "State Court Verified Complaint")). She also asks the Court to consider Orly's statement that "Dalia also owes duties of care and loyalty to Orly arising from the close familial relationship between herself and her daughter. Orly relied upon her mother to protect her interests, including her Trust's ownership interests in TPR and TRI, and alert her to anything that may adversely affect her or her Trust's assets." *Id.* ¶ 9 (quoting State Court Verified Complaint, ¶ 72). Dalia argues that these statements are judicial admissions of a fiduciary

---

[16] Dalia asserts that the district court reaffirmed this fact in its summary judgment ruling in *Genger v. Genger*, 2018 WL 3632521, at *1 (S.D.N.Y. July 27, 2018) ("*Genger III*"). Motion ¶ 4.

8

relationship between mother and daughter, separate from their trustee-beneficiary relationship. *Id.* ¶¶ 10–13. The motion contends that the Court overlooked these admissions in dismissing Dalia's complaint. *Id.* ¶¶ 9–13.

Third, Dalia contends that any steps taken by Orly to frustrate Dalia's constructive trust within six years of the January 22, 2020 filing date were fraudulently concealed. *Id.* ¶ 2. Dalia argues that she was unaware of any arrangements between Orly and either the Litigation Trust or ADBG[17] until late 2018, less than two years before she commenced this proceeding. *Id.* ¶ 15. Dalia contends that this lack of awareness was a product of Orly's concealment and false statements by David Broser. *Id.* She alleges that Mr. Broser, the purported co-trustee of the so-called Genger Litigation Trust,[18] possessed documents that would have revealed the existence of the trust and Orly's commitments, but these were not produced in response to a 2016 subpoena. *Id.* ¶ 17. Instead, Mr. Broser falsely attested under oath that he had no such documents. *Id.* Dalia argues that this fraudulent concealment prevented her from discovering the facts necessary to bring her claim earlier, and thus the statute of limitations should not bar her claim. *Id.* ¶¶ 15–19.

**The Response**

The Response argues that the Court did not overlook evidence or misconstrue precedent as Dalia claims.[19] It argues that the Court examined the district court decisions that Dalia cites.

---

[17] Dalia alleged that ADBG LLC was a limited liability company with its "principal place of business in New York, whose managing member upon information and belief is David Broser." Amended Complaint ¶ 9.

[18] The parties dispute whether the Genger Litigation Trust was properly formed under New York law. *See* Motion ¶¶ 20–22; Response ¶¶ 15–26; Reply ¶¶ 5–8. This issue is not material to the Motion and the Court will not address it.

[19] Eric Herschmann and Michael Bowen also filed a document joining the Response. *Joinder of Defendants Herschmann and Bowen in Opposition to Plaintiff's Motion for Reconsideration of the Decision and Order Dismissing This Action*, ECF No. 49. In addition to joining the Response, Herschmann and Bowen argue that Dalia had previously agreed to withdraw her claims against them. It also refutes allegations made by Dalia about Herschmann and Bowen as false and without evidentiary support. Those matters are not relevant to the Motion.

Response ¶ 7. It also asserts that the Court correctly interpreted these decisions and found that they did not support Dalia's claim of a direct promise from Orly. *Id.* The Response emphasizes that the Court properly concluded Dalia failed to allege any promise Orly made directly to her, as distinct from the 2004 Indemnity that Orly entered with Sagi. *Id.*

The Response also disputes Dalia's claim that the Court overlooked evidence of a fiduciary relationship. The Response says that the Court found that Orly's prior testimony and allegations focused on Dalia's fiduciary relationship with Orly in Dalia's capacity as trustee of the Orly Trust, not their familial relationship. *Id.* ¶ 10. It notes that the Court recognized that while a familial relationship is relevant to determining a confidential relationship, it is not determinative on its own. *Id.*

The Response also rejects Dalia's argument that the Court overlooked her tolling arguments. The Response asserts that the Court correctly determined that Dalia's cause of action accrued when Orly monetized her rights pursuant to the 2013 Settlement Agreement and failed to account for Dalia's alleged interest in the proceeds of that agreement. *Id.* ¶ 12. It notes that the Court expressly considered and rejected Dalia's arguments about alleged concealment by Orly and others, finding them without merit. *Id.* ¶ 13. The Response also argues that Dalia is merely repeating arguments the Court has already considered and rejected, which is not a proper basis for reconsideration. *Id.* ¶¶ 13–14.

## **Legal Standards**

The Motion is one for reconsideration pursuant to Bankruptcy Rule 9023 and Local Bankruptcy Rule 9023-1.[20] Rule 9023 makes Rule 59 of the Federal Rules of Civil Procedure

---

[20] The Local Rule provides, as relevant:

applicable in bankruptcy proceedings, except that such motions must be filed within fourteen days after the entry of judgment. Fed. R. Bankr. P. 9023. Rule 59(e) permits motions to "alter or amend a judgment." Fed. R. Civ. P. 59(e).

The standard for granting a motion for reconsideration is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Generally, courts deny such motions unless the moving party can demonstrate that a court overlooked "controlling decisions or data" that could reasonably be expected to "alter the conclusion reached by the court." *Id.* A court should not grant a motion for consideration "where the moving party seeks solely to relitigate an issue already decided," but if the moving party introduces "additional relevant case law and substantial legislative history" that was not previously considered, a court has discretion to reconsider its earlier ruling. *Id.* Courts generally take a narrow view of the rule "in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered." *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391–92 (S.D.N.Y. 2000).

## Analysis

### Misreading of the Amended Complaint

Dalia contends that the Court overlooked allegations in the Amended Complaint that Orly made an express promise to Dalia.[21] This argument centers on paragraph 44 of the Amended

---

[A] motion for reargument of a court order determining a motion must be served within fourteen (14) days after the entry of the Court's order determining the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment, and, unless the Court orders otherwise, shall be made returnable within the same amount of time as required for the original motion. The motion must set forth concisely the matters or controlling decisions which counsel believes the Court has not considered.

L.B.R. 9023-1.

[21] In the Motion, Dalia also argues that the Court overlooked paragraphs in the Complaint where Dalia alleged that Orly expressly promised Dalia that she would support her. Motion at ¶ 9. Dalia is correct that the Court did not consider those paragraphs. However, the Court did not overlook them. "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d

Complaint, which stated that "Orly promised to pay Dalia from the monetized proceeds of the Rights and/or reimburse and indemnify Sagi for his payments to Dalia made pursuant to Dalia's request." Amended Complaint ¶ 44. The Court disagrees. Reading this allegation in the context of the entire Amended Complaint shows that it does not allege a direct promise from Orly to Dalia.

It is a well-established principle that "the plaintiff is the master of the complaint." *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). This principle affords plaintiffs latitude in framing their claims. This Court, however, is only bound to interpret the complaint as written; "plaintiffs have the responsibility to plead their case adequately, without defendants' or the Court's assistance." *In re Merrill Lynch Ltd. Partnerships Litig.*, 7 F. Supp. 2d 256, 276 (S.D.N.Y. 1997), *aff'd*, 154 F.3d 56 (2d Cir. 1998).

Read in isolation, this language suggests that the alleged promise was a separate promise to pay Dalia directly, or to reimburse Sagi for his payments to Dalia, because the phrase "reimburse and indemnify Sagi for his payments to Dalia" clearly refers to the 2004 Indemnity alone. However, read in the context of the 2004 Integrated Agreement,[22] the use of "and/or" suggests that the first part of the sentence ("promised to pay Dalia") is not a separate promise, but an alternative way of describing the same obligation under the 2004 Indemnity. In other words, the Amended Complaint alleges that Orly's obligation to pay Dalia was effectuated through her agreement to reimburse Sagi. This is how the Court interpreted the allegation.

---

665, 668 (2d Cir. 1977). Because Dalia filed an amended complaint, the Court considered only that pleading and not the previous one.

[22] The district court decided that the 2004 Indemnity and 2004 Promise should be read together, and thus referred to them as the "2004 Integrated Agreement." *Genger I*, 76 F. Supp. 3d at 497.

12

This reading is consistent with the rest of the Amended Complaint, which repeatedly frames Orly's obligations in terms of the 2004 Integrated Agreement (or the "2004 Agreements," as the Amended Complaint puts it) with Sagi and Dalia. If Dalia had intended to allege a separate, direct promise from Orly to herself, she could have done so clearly. As the master of her complaint, she chose not to do so.

Even if paragraph 44 could be read to allege a direct promise from Orly to Dalia, such an allegation would still be insufficient to state a plausible claim to relief. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding what factual matter to accept as true, courts do not "credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)).

In the context of Dalia's claim, even if paragraph 44 were interpreted as alleging a direct promise, it would amount to nothing more than a bare, conclusory assertion. The Amended Complaint provides no supporting factual detail about the circumstances, timing, or terms of this alleged promise. It does not explain when or where this promise was made, what was said, or what consideration was given in exchange. Without any of these details, that paragraph is merely a conclusory allegation couched as a fact.

**Misreading of *Genger I* and *Genger III***

Dalia argues that the Court misinterpreted the district court's decisions in *Genger I* and *Genger III*. The Court disagrees.

13

The Court correctly noted that these decisions did not find a direct verbal agreement between Orly and Dalia. In *Genger I*, the district court characterized the case as "a simple breach of contract action. Nothing more, nothing less." *Genger I*, 76 F. Supp. 3d at 491. The "breach" at issue was Orly's alleged violation of her obligations to Sagi under the 2004 Integrated Agreement, not any direct promise to Dalia. While the district court found that Orly had certain obligations to Dalia under the 2004 Promise and the 2004 Indemnity, this finding does not equate to a conclusion that Orly made a direct promise to Dalia.

Similarly, in *Genger III*, while the court referenced a "commit[ment] to financially support Dalia," this was in the context of describing the overall arrangement between the parties, not a finding of a specific, enforceable promise from Orly to Dalia. *Genger III*, 2018 WL 3632521, at *1.[23] The court's characterization was part of its background discussion and was not essential to its holding.

Furthermore, even if the district court had made a more definitive statement about Orly's obligations to Dalia, such a finding would not preclude the parties from arguing otherwise here. For collateral estoppel to apply, the issue must have been necessary to support a valid and final judgment on the merits in the previous case. *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003). The precise nature of Orly's obligations to Dalia was not essential to the district court's judgments in either *Genger I* or *Genger III*. More to the point, Dalia was responsible for making those allegations rather than relying on the Court to impute one interpretation of the district court's

---

[23] More specifically, the issue was not whether Dalia had an agreement with Orly, since "Dalia moved for summary judgment against Sagi" for breach of contract. *Genger III*, 2018 WL 3632521, at *1. Specifically, the Court explained that Orly's representation to Sagi that she would not honor her obligation to reimburse him under the 2004 Indemnity, "constitute[d] an anticipatory breach of the 2004 Indemnity" and held that Sagi was "entitled to seek relief for that anticipatory breach in the form of a judgment setting the amount of Orly's liability." *Id.* at *7.

14

conclusions to her Amended Complaint. Even if those cases said as Dalia contends, it was incumbent on Dalia to plead those facts herself.

**Failure to Consider Evidence from *Genger I***

Dalia also argues, in effect, that the Court should have considered evidence in the record underlying *Genger I*, particularly Sagi's declaration describing an oral promise from Orly to Dalia. *See* Motion ¶ 8 ("the District Court's factual findings, coupled with the underlying, unrebutted sworn testimony and contemporaneous documentary record, establish that it is at least plausible that Orly made a direct oral promise to Dalia."). Fundamentally, this argument is unpersuasive because plausibility is determined by what Dalia alleged in this proceeding.

As noted above, the Court was not bound to consider evidence from another case that was not alleged in the Amended Complaint before it. On a motion to dismiss, "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken are considered." *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993). Sagi's declaration from a separate case does not fall into any of these categories. His declaration was not incorporated into or integral to the Amended Complaint.[24] If Dalia wished to rely on testimony from the *Genger I* or *Genger III* proceedings, and believed that it was accurate, she could have alleged those facts herself. She chose not to.[25]

---

[24] Moreover, the district court in *Genger I* never said that it relied on Sagi's declaration, much less considered it, to establish a promise from Orly to Dalia.

[25] Relatedly, and as noted above, Dalia maintains that "[w]ere Dalia allowed to replead, she would expressly allege in her Amended Complaint, as she noted on page 5 of her opposition brief . . . that the District Court expressly found in its 2015 summary judgment ruling . . . that both Sagi and Orly had committed to support Dalia out of the proceeds of the TRI shares." Motion ¶ 4 (emphasis omitted). But this would not save her from dismissal because her characterizations of the district court's findings are not relevant to determining whether she states a plausible claim to relief. Her own factual allegations are.

15

**Fiduciary Relationship**

Dalia says that in the Complaint, she alleged that she and Orly were in a confidential and fiduciary relationship—as mother and daughter, when she agreed to transfer the TRI shares to Orly's trust. Motion ¶ 9. She says that in dismissing the Amended Complaint, the Court erroneously rejected these allegations and that the Court should grant her leave to replead them.[26] She relies on a pleading in another action that the Court expressly considered in the Decision and Order, and on a memorandum of law in another action that it did not. *Id.* ¶¶ 9–13. The Court will address these in turn.

First, Dalia points to two paragraphs in the State Court Verified Complaint that allege the following:

> 71. As Trustee of the Orly Trust, Dalia owes an undiluted fiduciary duty to the Trust's beneficiary, Orly, to monitor, manage, maintain, and protect the Orly Trust's assets, including the Orly Trust's ownership interests in TPR and TRI, from challenge or diminution in value.
>
> 72. In addition, Dalia also owes duties of care and loyalty to Orly arising from the close familial relationship between herself and her daughter. Orly relied upon her mother to protect her interests, including her Trust's ownership interests in TPR and TRI, and alert her to anything that may adversely affect her or her Trust's assets.

Verified Complaint, *Genger*, No. 109749/2009, NYSCEF No. 2.

In the Decision and Order, the Court explained that "[i]n proper context it is clear that Orly is focusing on Dalia's fiduciary relationship, as Trustee of the Orly Trust, with Orly, as Trust beneficiary, not Orly's familial relationship with Dalia." Decision and Order at 49–50. The Court

---

[26] Again, it was the factual allegations in the Amended Complaint that were relevant to the Decision and Order—not those in the Complaint. *See supra* n.21. The Decision explicitly considered, and rejected as "lack[ing] factual support and . . . not meet[ing] the pleading standards," Dalia's allegation of a confidential and fiduciary relationship as mother and daughter when Dalia agreed to transfer the TRI shares to Orly's trust. Decision and Order at 22, 51.

16

acknowledges that Dalia draws a different conclusion about the import of these paragraphs—namely that paragraph 72 alleges some confidential relationship aside from Dalia's fiduciary relationship. However, she raised this point already; the Court did not overlook it and will not reconsider it now. *Cf. Davey v. Dolan*, 496 F. Supp. 2d 387, 389 (S.D.N.Y. 2007) ("A motion for reconsideration 'is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved.'" (quoting *In re Initial Pub. Offering Antitrust Litig.*, No. 01-cv-2014, 2004 WL 789770, at *1 (S.D.N.Y. Apr. 13, 2004))).[27]

Dalia's other argument depends on "a November 24, 2009 memorandum of law Orly filed in opposition to Dalia's motion to dismiss the state court action." Motion ¶ 12. There, Orly argued that a "a fiduciary relationship existed between Dalia and Orly because Orly had long reposed her trust, confidence and reliance with respect to business matters in Dalia." *Id.*[28] Dalia apparently means to intimate that the nature of that "fiduciary relationship" was one between child and parent because Dalia highlights Orly's reliance on *Braddock v. Braddock*, which held that "[f]amily members stand in a fiduciary relationship toward one another in a co-owned business venture." 871 N.Y.S.2d 68 (App. Div. 2009).

Dalia contends that this is a binding judicial admission. Again, the place to argue this point was in the Motion to Dismiss, not for the first time in her Motion asking the Court to reconsider the Decision and Order. Even if the Court were to grant the Motion and consider the argument, Dalia fails to offer a plausible explanation how the outcome of the Decision and Order would have

---

[27] The motion in *Davey* was one brought under Rule 6.3 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, but the principle is equally applicable here.

[28] For this quote, the Motion cites to "Exhibit A hereto at 15," but the Motion has no Exhibit A. The Court has located a document on Westlaw entitled "Plaintiff Orly Genger's Omnibus Memorandum of Law in Opposition to Defendants' Converted Motions for Summary Judgment." The Court assumes that Dalia meant to cite to this document, which was filed in *Genger v. Genger*, No. 109749/2009, 2009 WL 9101198 (N.Y. Sup. Ct. Nov. 24, 2009).

17

differed. She argues that "Orly's multiple, prior admissions of a familial-based fiduciary relationship between herself and Dalia prior to 2009 create a plausible inference that such a relationship in fact existed. That is all that is needed for a motion to dismiss." Motion ¶ 13. But that is not "all that is needed." Dalia would still need to establish the elements for a constructive trust to be entitled to such a remedy. As the Decision and Order explained:

> Assuming *arguendo*, that the Court accepts Dalia's proposition that a confidential relationship exists with Orly merely due to their familial relationship, the claim for constructive trust still fails because Dalia does not plead the other elements of a constructive trust claim, namely that Orly made a promise and Dalia transferred her Rights in reliance thereon.

Decision and Order at 51. Dalia cannot demonstrate that she received a promise from Orly, so even if the Court were to consider and accept the argument that a fiduciary relationship existed, the same conclusion would result.

**Statute of Limitations**

Dalia argues that the Court was wrong to find that the claims in the Amended Complaint were time barred. Specifically, she says that the Decision and Order overlooked that she "was not aware of any arrangements between Orly and either the Litigation Trust or ADBG no earlier [sic] than late 2018 (i.e., less than two years before Dalia commenced this proceeding), when the truth was finally revealed in post-judgment discovery." Motion ¶ 15. She says that David Broser, "the purported co-trustee of the Genger Litigation Trust," lied to prevent her from discovering "the existence of the Genger Litigation Trust and ADBG and Orly's purported commitments in connection therewith." *Id.* ¶ 17.

The Decision and Order explained "that Dalia's cause of action against Orly accrued when Orly monetized the Rights pursuant to the 2013 Settlement Agreement." Decision and Order at 39. The Court held:

18

> In 2013, Orly breached her alleged promise to Dalia and violated the alleged trust when she monetized her beneficial interests in the Rights—without making provision for Dalia—and transformed those interests into the Trump Notes and the $17.3 million cash that was distributed to the Brosers and their affiliated entities, including the Litigation Trust and ADBG, in purported satisfaction of certain liabilities and allegedly for no consideration or value to Orly.

Decision and Order ¶ 40. Again, the Court will not reconsider the issue here. Dalia's argument that "[t]here was nothing in the 2013 Settlement Agreement, in and of itself, that thwarted Dalia's constructive trust, sufficient to require her to start the running [sic] of the statute of limitations," Motion ¶ 19, is only relevant if she has pleaded facts, assumed true, that entitle her to a constructive trust. Thus, even if the Court reconsidered this argument and found that it should not have concluded that the claims were untimely, the disposition of those claims would be unaffected because Dalia did not demonstrate the existence of a promise necessary to support a constructive trust.

## Conclusion

Based on the foregoing, the Court denies the Motion.

IT IS SO ORDERED.

Dated: September 1, 2024
New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge